\U OPTRONICS CORPORATION v. LG.PHILIPS LCD CO., LTD.                    07-C-0137-S

| DIST. | OFF | DOCKET YR. NMBR | ORIG. | FILE DATE | J | NATURE OF SUIT | | RULE 23 | DEMAND $1,000s | JUDGE | MAGISTRATE | COUNTY | JURY DEMAND? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0758 | 3 | 07 0137 | 1 | 03/08/2007 | 3 | 830 | | No | | 5805 | 58BC | 88888 | Yes |

**CAUSE:** PROPERTY RIGHTS; Patent

## PLAINTIFF

AU OPTRONICS CORPORATION

## DEFENDANTS

LG.PHILIPS LCD CO., LTD.
LG.PHILIPS LCD AMERICA

## COUNSEL FOR PLAINTIFF

JAMES R. TROUPIS
MICHAEL BEST & FRIEDRICH, LLP
ONE SOUTH PINCKNEY, SUITE 700
P.O. BOX 1806
MADISON, WI 53701-1806
(608) 257-3501
  *for:* AU OPTRONICS CORPORATION


M.CRAIG TYLER
WILSON SONSINI GOODRICH & ROSATI
8911 CAPITAL OF TEXAS HIGHWAY NORTH
WESTECH 360, SUITE 3350
AUSTIN, TX 78759-8497

  *for:* AU OPTRONICS CORPORATION


JERRY CHEN
WILSON SONSINI GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050
  *for:* AU OPTRONICS CORPORATION

## COUNSEL FOR DEFENDANTS

JAMES D. PETERSON
GODFREY & KAHN, S.C.
ONE EAST MAIN STREET, SUITE 500
P.O. BOX 2719
MADISON, WI 53701-2719
(608) 257-3911
  *for:* LG.PHILIPS LCD AMERICA
    LG.PHILIPS LCD CO., LTD.


GASPARE J. BONO
MCKENNA, LONG & ALDRIDGE LLP
1900 K STREET NW
WASHINGTON, DC 20006-1108
(202) 496-7500
  *for:* LG.PHILIPS LCD AMERICA
    LG.PHILIPS LCD CO., LTD.

A TRUE COPY, Certified
June 1, 2007

Theresa M. Owens, Clerk
U.S. District Court
Western District of Wisconsin

By E. Stendroff
          Deputy Clerk

| DATE | NR. | PROCEEDINGS |
|------|-----|-------------|
| 03/08/2007 | | NORTC - FEE PAID. |
| 03/08/2007 | 001 | JS-44 |
| 03/08/2007 | 002 | COMPLAINT - SUMMONS ISSUED. |
| 03/08/2007 | 003 | DISCLOSURE OF CORP. AFFIL. & FINAN. INT. BY PLTF. |
| 03/15/2007 | 004 | SUMMONS |
| 03/29/2007 | 005 | NOTICE OF APPEARANCE BY JAMES PETERSON, BRADY WILLIAMSON, GASPARE BONO AND TYLER GOODWYN FOR DEFTS. |
| 03/29/2007 | 006 | MOTION TO DISMISS BY DEFTS. |
| 03/29/2007 | 007 | BRIEF IN SUPPORT OF DEFTS. MOTION TO DISMISS. |
| 03/29/2007 | 008 | AFFIDAVIT OF DONG HOON HAN. |
| 03/29/2007 | 009 | MOTION TO ADMIT GASPARE J. BONO PRO HAC VICE. |
| 03/29/2007 | 010 | MOTION TO ADMIT TYLER GOODWYN PRO HAC VICE. |
| 03/29/2007 | 011 | AFFIDAVIT OF JAMES D. PETERSON IN SUPPORT OF MOTION TO ADMIT GASPARE J. BONO PRO HAC VICE. |
| 03/29/2007 | 012 | AFFIDAVIT OF JAMES D. PETERSON IN SUPPORT OF MOTION TO ADMIT TYLER GOODWYN PRO HAC VICE. |
| 04/02/2007 | 013 | ORDER ADMITTING GASPARE BONO PRO HAC VICE. |
| 04/02/2007 | 014 | ORDER ADMITTING R. TYLER GOODWYN PRO HAC VICE. |
| 04/03/2007 | 015 | MOTION TO ADMIT ATTYS. M.TYLER, B.RANGE, B.DIETZEL, J.CHEN, R.SHULMAN AND S.BAIK PRO HAC VICE. |
| 04/03/2007 | 016 | AFFIDAVIT OF JAMES R. TROUPIS. |
| 04/03/2007 | 017 | DISCLOSURE OF CORP. AFFIL. & FINAN. INT. BY DEFT. LG.PHILIPS LTD. |
| 04/03/2007 | 018 | DISCLOSURE OF CORP. AFFIL. & FINAN. INT. BY DEFT. LG.PHILIPS AMERICA. |
| 04/04/2007 | 019 | ORDER ADMITTING M.TYLER, B.RANGE, B.DIETZEL, J.CHEN, R.SHULMAN AND S.BAIK PRO HAC VICE. |
| 04/16/2007 | 020 | PPTC REPORT BY PLTF. |
| 04/16/2007 | 021 | PPTC REPORT BY DEFTS. |
| 04/16/2007 | 022 | MOTION BY DEFTS. TO TRANSFER TO DISTRICT OF DELAWARE. |
| 04/16/2007 | 023 | BRIEF IN SUPPORT OF DEFTS. MOTION TO TRANSFER TO DISTRICT OF DELAWARE. |
| 04/16/2007 | 024 | AFFIDAVIT OF R.TYLER GOODWYN. |
| 04/17/2007 | 025 | EXHIBIT 1 TO AFFIDAVIT OF DONG HOON HAN FILED 3/29/07. |
| 04/17/2007 | 026 | WAIVER OF SERVICE OF SUMMONS BY DEFT. LG.PHILIPS LTD. |
| 04/18/2007 | 027 | BRIEF IN OPPOSITION BY PLTF. TO DEFTS. MOTION TO DISMISS. |
| 04/18/2007 | 028 | AFFIDAVIT OF DAVID W. PANNECK. |
| 04/18/2007 | 029 | AFFIDAVIT OF MICHAEL LESTINA. |
| 04/19/2007 | 030 | PTC ORDER - AMENDMENTS TO PLEADINGS DUE 5/15/07; DISPOSITIVE MOTIONS DUE 7/30/07. |
| 04/30/2007 | 031 | BRIEF IN REPLY IN SUPPORT OF DEFTS. MOTION TO DISMISS. |
| 04/30/2007 | 032 | AFFIDAVIT OF DONG HOON HAN (SUPPLEMENTAL). |
| 05/02/2007 | 033 | MOTION BY PLTF. TO ADMIT JAMES C. YOON AND JULIE HOLLOWAY PRO HAC VICE. |
| 05/02/2007 | 034 | AFFIDAVIT OF JAMES R. TROUPIS. |
| 05/03/2007 | 035 | ORDER ADMITTING JAMES YOON AND JULIE HOLLOWAY PRO HAC VICE. |
| 05/03/2007 | 036 | BRIEF IN REPLY (CORRECTED) IN SUPPORT OF DEFT. LG PHILIPS LCD AMERICA MOTION TO DISMISS. |

(Continued on next page...)

| DATE | NR. | PROCEEDINGS |
|------|-----|-------------|
| 05/07/2007 | 037 | BRIEF IN OPPOSITION BY PLTF. TO DEFTS. MOTION TO TRANSFER TO DISTRICT OF DELAWARE. |
| 05/07/2007 | 038 | AFFIDAVIT OF PAUL BARBATO. |
| 05/07/2007 | 039 | AFFIDAVIT OF ARIS K. SILZARS. |
| 05/17/2007 | 040 | BRIEF IN REPLY IN SUPPORT OF DEFTS. MOTION TO TRANSFER TO DISTRICT OF DELAWARE. |
| 05/18/2007 | 041 | MOTION BY PLTF. TO COMPEL DEFT. LG PHILIPS LCD AMERICA TO RESPOND TO REQ. FOR PROD. OF INTERROGS. |
| 05/18/2007 | 042 | BRIEF IN SUPPORT OF PLTF. MOTION TO COMPEL. |
| 05/18/2007 | 043 | AFFIDAVIT OF JAMES R. TROUPIS. |
| 05/18/2007 | 044 | AFFIDAVIT (2ND) OF DAVID W. PANNECK. |
| 05/22/2007 | 045 | BRIEF IN OPPOSITION BY DEFTS. TO PLTF. MOTION TO COMPEL. |
| 05/22/2007 | 046 | AFFIDAVIT OF NICOLE TALBOTT SETTLE. |
| 05/23/2007 |  | TELE. MOTION HEARING SET ON #41 FOR 5/30/07, 8:30 AM. |
| 05/24/2007 |  | RECD. PROPOSED PROTECTIVE ORDER; FORWARDED TO CHAMBERS. |
| 05/29/2007 | 047 | JOINT RULE 26 REPORT. |
| 05/30/2007 | 048 | PROTECTIVE ORDER |
| 05/30/2007 | 049 | ORDER TRANSFERRING CASE TO DISTRICT OF DELAWARE. |

JS 44 (Rev. 11/04)
NW4 12/06)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)                    REC'D/FILED

## I. (a) PLAINTIFFS
**AU Optronics Corporation**

**(b)** County of Residence of First Listed Plaintiff  Harris County, Texas
(EXCEPT IN U.S. PLAINTIFF CASE)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
See Attachment

## DEFENDANTS
LG.Philips LCD Co., Ltd.
And
LG.Philips LCD America

2007 MAR -8 PM 1:24

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Attorneys (If Known)

07 C 0137 S

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Does this case challenge the constitutionality of a state statute (nature of suit 950) or a federal statute pursuant to Fed. R. Civ. P. 5.1?  ☐ Yes  ☐ No
Note: If the filing party is responsible for serving notice of a constitutional question on the State Attorney General if a state statute is challenged, or on the U.S. Attorney General if a federal statute is challenged, either by certified or registered mail or by sending it to an electronic address designated by the attorney general for that purpose.

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting and Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS–Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Under Equal Access to Justice |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. 271, 284, 285

Brief description of cause:
Patent infringement action concerning U.S. Patent Nos. 6,689,629; 6,976,781; and 6,778,160

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Preliminary and permanent injunction, damages trebled and attorneys' fees.

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):  JUDGE _____  DOCKET NUMBER _____

DATE
March 8 2007

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Ste. 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

WILSON SONSINI GOODRICH & ROSATI
M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759-8497
Telephone: (512) 338-5400

Q:\CLIENT\022628\0001\B0999736.1

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

2007 MAR -8 PM 1: 27

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

| | |
|---|---|
| AU Optronics Corporation<br>No. 1, Li-Hsin Road 2<br>Hsinchu Science Park<br>Hsinchu, Taiwan, R.O.C., | )<br>)<br>)<br>) |

07 C 0137

Civil Action No..: _____

*Plaintiff,*

vs.

**JURY TRIAL DEMANDED**

LG.Philips LCD Co., Ltd.
17th Fl., West Tower
LG Twin Towers
20 Yoido-dong
Youngdungpo-gu, Seoul, 150721, South Korea

and

LG.Philips LCD America
150 East Brokaw Road
San Jose, CA 95112,

*Defendants.*

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

AU Optronics Corporation, for its Complaint, avers as follows:

1.    AU Optronics Corporation is a Taiwanese corporation with its principal place of business at No. 1, Li-Hsin Road 2, Hsinchu Science Park, Hsinchu, Taiwan, R.O.C.

2.    Upon information and belief, LG.Philips LCD Co., Ltd. ("LPL") is a corporation organized under the laws of the Republic of Korea, with its principal place of business in Seoul, South Korea.

3.    Upon information and belief, LG.Philips LCD America ("LPLA") is a corporation organized under the laws of the State of California, with its principal place of business in San Jose, California.

4.      This is an action arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338(a). Venue is based on 28 U.S.C. §§ 1391 and 1400(b).

5.      The Court has personal jurisdiction over LPL and LPLA.

6.      AU Optronics Corporation is the owner by assignment of United States Patent No. 6,689,629 ("the '629 patent"), which was duly and legally issued by the United States Patent and Trademark Office on February 10, 2004. A copy of the '629 patent is attached to this Complaint as Exhibit A.

7.      AU Optronics Corporation is the owner by assignment of United States Patent No. 6,976,781 ("the '781 patent"), which was duly and legally issued by the United States Patent and Trademark Office on December 20, 2005. A copy of the '781 patent is attached to this Complaint as Exhibit B.

8.      AU Optronics Corporation is the owner by assignment of United States Patent No. 6,778,160 ("the '160 patent"), which was duly and legally issued by the United States Patent and Trademark Office on August 17, 2004. A copy of the '160 patent is attached to this Complaint as Exhibit C.

## COUNT ONE – INFRINGEMENT OF THE '629 PATENT

9.      LPL and LPLA have each infringed and are continuing to infringe one or more claims of the '629 patent, directly, contributorily, and/or by inducement, by making, using, selling and/or offering to sell in this country, and/or importing into this country liquid crystal display devices in violation of 35 U.S.C. § 271.

10.     On information and belief, LPL and LPLA's infringement of the '629 patent is willful and deliberate, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285.

11.     AU Optronics Corporation has been damaged by LPL and LPLA's infringing activities and will be irreparably injured unless such infringing activities are enjoined by this Court.

## COUNT TWO – INFRINGEMENT OF THE '781 PATENT

12.     LPL and LPLA have each infringed and are continuing to infringe one or more claims of the '781 patent, directly, contributorily, and/or by inducement, by making, using, selling and/or offering to sell in this country, and/or importing into this country liquid crystal display devices in violation of 35 U.S.C. § 271.

13.     On information and belief, LPL and LPLA's infringement of the '781 patent is willful and deliberate, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285.

14.     AU Optronics Corporation has been damaged by LPL and LPLA's infringing activities and will be irreparably injured unless such infringing activities are enjoined by this Court.

## COUNT THREE – INFRINGEMENT OF THE '160 PATENT

15.     LPL and LPLA have each infringed and are continuing to infringe one or more claims of the '160 patent, directly, contributorily, and/or by inducement, by making, using, selling and/or offering to sell in this country, and/or importing into this country liquid crystal display devices in violation of 35 U.S.C. § 271.

16.    On information and belief, LPL and LPLA's infringement of the '160 patent is willful and deliberate, thereby rendering this an exceptional case pursuant to 35 U.S.C. §§ 284 and 285.

17.    AU Optronics Corporation has been damaged by LPL and LPLA's infringing activities and will be irreparably injured unless such infringing activities are enjoined by this Court.

## PRAYER FOR RELIEF

Wherefore, AU Optronics Corporation prays for judgment that:

1.    LPL and LPLA have directly and willfully infringed, willfully contributed to the infringement of, and willfully induced infringement of the '629, '781 and '160 patents;

2.    Preliminary and permanently enjoins LPL and LPLA, its officers, agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with any one of them, from infringing the '629, '781 and '160 patents;

3.    Awards AU Optronics Corporation damages adequate to compensate for LPL's and LPLA's infringement of the '629, '781 and '160 patents together with interest and costs;

4.    Trebles the damages assessed pursuant to 35 U.S.C. § 284;

5.    Awards AU Optronics Corporation's its attorneys' fees pursuant to 35 U.S.C. § 285; and

6.    Awards such other and further relief as this Court may deem proper.

4

## REQUEST FOR JURY TRIAL

Plaintiff AU Optronics Corporation hereby demands a trial by jury.

DATED this 8th day of March, 2007.

RESPECTFULLY SUBMITTED BY

MICHAEL BEST & FRIEDRICH LLP

By: _____

James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI  53701-1806
Telephone:  (608) 257-3501
Facsimile:  (608) 283-2275

Of Counsel:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone:  (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX  78759-8497
Telephone: (512) 338-5400

Attorneys for Plaintiff
AU Optronics Corporation

Q:\CLIENT\022628\0001\B1008588.1

FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5





(a)

EXPOSURE / DEVELOPMENT



(b)

ETCHING / STRIPPING



(c)

FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11



FIG. 12



(a)

ETCHANT



(b)

**1**

# ARRAY SUBSTRATE FOR DISPLAY, METHOD OF MANUFACTURING ARRAY SUBSTRATE FOR DISPLAY AND DISPLAY DEVICE USING THE ARRAY SUBSTRATE

## BACKGROUND OF THE INVENTION

The present invention relates to an array substrate for display, a method of manufacturing the array substrate for display and a display device using the array substrate for display.

A display device using a thin film transistor (TFT) array has been frequently used owing to low power consumption and capability of downsizing the display device. The thin film transistor array is manufactured by forming thin film transistors, each being composed of electrodes such as a gate electrode, a source electrode and a drain electrode, wirings such as scan lines and signal lines connected with the above-mentioned electrodes, and pixel electrodes on an insulating substrate.

In recent years, a higher operating speed, a higher resolution and a larger size have been required for the display device described above in many cases. A high speed and a high density have been required for each constituent component of the array for display, which forms a display device. Particularly, in order to operate the thin film transistor array at a high speed, it is preferable to use low-resistance aluminum (Al) for the wirings such as the scan lines and the signal lines since delay in gate pulses can be reduced and a writing speed to the thin film transistor can be increased.

Incidentally, aluminum tends to be easily oxidized in spite of its low resistance. Therefore, in many cases, wiring using aluminum is constituted as a two-layer structure, in which aluminum is used as a lower conductive material, and a material harder to be oxidized than aluminum such as chromium, tantalum, titanium or molybdenum is used as an upper conductive material. FIG. 11 is a view schematically showing a state where wiring 2 is deposited on an insulating substrate 1. A lower conductive material film 2*a* is deposited on an insulating substrate 1 made of such as glass, and an upper conductive material film 2*b* is deposited on the lower conductive material film 2*a*. Each of these films 2*a* and 2*b* is patterned by, for example, a proper etching process so as to have tapered ends.

In order to form a tapered shape shown in FIG. 11, an etching rate for the upper conductive material is required to be increased. In order to form the tapered shape shown in FIG. 11, various methods have been proposed up to now. For example, in the gazette of Japanese Patent Laid-Open No. Hei 10 (1998)-90706, a method has been proposed, in which dummy connection pads are provided on sides opposite to scan line connection pads and signal line connection pads, respectively. According to this method, over etching due to an etchant that will be relatively increased by lowering wiring density at ends of the substrate is prevented. Thus, undercut of a lower conductive material 3 is prevented, and an interlayer short circuit is prevented by imparting a proper tapered shape to the wiring 2.

However, though this method enables evenness of etching at the ends of the thin film transistor array substrate to be improved, the method cannot effectively prevent the under-cut of the signal lines in a region where the wiring density is apt to be lowered from ends of the pixel electrodes to the connection pads, for example, in a portion where drawing wiring is formed.

**2**

Moreover, in the gazette of Japanese Patent Laid-Open No. Hei 10 (1998)-240150, disclosed is a method of forming a tapered shape at an angle ranging from 20 degrees to 70 degrees on wiring constituted of two layers, in which a pad formed of aluminum and metal such as molybdenum formed on the aluminum is subjected to wet etching. According to this method, a specified tapered shape can be imparted to the wiring formed of a conductive film of a two-layer structure by the wet etching. However, the method never discloses a method of evenly etching a substrate region while maintaining a selection ratio thereof even in the substrate region where the wiring density is lowered.

FIGS. 12A and 12B are enlarged schematic views for explaining a patterning process using a conventionally used wet process in order to impart the above-described tapered shape to the wiring. As shown in FIG. 12A, the lower conductive material 3 and an upper conductive material 4 are deposited on the insulating substrate 1 by a method such as physical vapor deposition. FIG. 12A shows that a photoresist film 5 is coated on a film of the upper conductive material 4 and is patterned in a desired shape. The respective films are etched by an etchant such as a solution of phosphoric acid, nitric acid, acetic acid or mixtures thereof, and desired tapered shapes are formed thereon.

FIG. 12B is a view for explaining an electrochemical process generated as each film is being etched when the wiring constituted of the upper conductive material 4 and the lower conductive material 3 is subjected to wet etching. In FIG. 12B, an internal layer portion of the upper conductive material 4 coated with the photoresist film 5 is not dissolved. However, at the end of the photoresist film 5, the upper conductive material 4 is dissolved by the etchant. When the wiring is formed by the wet etching, the upper conductive material 4 protected by the photoresist film 5 is further dissolved in a lateral direction from the end of the photoresist film 5 to turn into positive ions, and electrons emitted as a result are supplied to the lower conductive material 3. Thus, the upper conductive material 4 serves as an anode. In this connection, the lower conductive material 3 comes to serve as a cathode. Accordingly, an electrochemical cell is formed. Here, when the etching rate for the upper conductive material 4 is increased to form a required tapered shape, the density of the electrons generated by dissolving the upper conductive material 4 and flowing to the lower conductive material 3 is increased accompanied with an increase of a dissolution rate of the upper conductive material 4. FIG. 12B schematically shows currents I flowing from the upper conductive material 4 to the lower conductive material 3.

As the etching rate is increased, the density of the current flowing to an area of the upper conductive material 4, which is exposed to the etchant, exceeds a current density causing passivity of the upper conductive material 4. In such a case, the upper conductive material 4 is passivated not to be dissolved by the etchant, and only the lower conductive material 3 is dissolved accompanied with the progress of the etching, resulting in the occurrence of the undercut. When such undercut occurs, the wiring, for example, the gate wiring cannot be sufficiently coated with an insulating film in some cases, thus causing inconvenience such as an interlayer short circuit, resulting in lowering a yield of the display device.

## SUMMARY OF THE INVENTION

The present invention was made with the foregoing problems in mind. An object of the present invention is to

3

provide an array substrate for display, a method of manufacturing an array substrate for display and a display device using the array substrate for display, which are capable of being etched at a sufficiently high etching rate and a sufficient selection ratio, eliminating undercut, and providing a large-sized and high-resolution display device.

The foregoing object of the present invention is achieved by providing the array substrate for display, the method of manufacturing an array substrate for display and the display device using the array substrate for display of the present invention.

Specifically, according to the present invention, provided is an array substrate for display, comprising: a thin film transistor array formed on an insulating substrate; a plurality of wirings arranged on the insulating substrate; connection pads arranged on unilateral ends of the wirings and respectively connected with the wirings; pixel electrodes, and dummy conductive patterns arranged between the ends of the connection pads and ends of the pixel electrodes. The dummy conductive patterns can occupy 30 area % or more. In the present invention, the dummy conductive patterns can be formed as any of land patterns and line-and-space patterns. In the present invention, the wirings are constituted of a lower conductive material and an upper conductive material, and the lower conductive material can be any one of aluminum and an aluminum alloy. In the present invention, the upper conductive material has a passivating potential. The upper conductive material can be any one of molybdenum and a molybdenum alloy.

According to the present invention, provided is a method of manufacturing an array substrate for display, the method comprising the steps of: forming a thin film transistor array including: a plurality of wirings arranged on an insulating substrate; and connection pads arranged on unilateral ends of the wirings and respectively connected with the wirings; forming pixel electrodes; and forming dummy conductive patterns between ends of the connection pads and ends of the pixel electrodes. In the present invention, it is preferable that the dummy conductive patterns be formed so as to occupy 30 area % or more. In the present invention, the dummy conductive patterns can be formed as any of land patterns and line-and-space patterns. In the present invention, the wirings are constituted of a lower conductive material and an upper conductive material, the lower conductive material can be any one of aluminum and an aluminum alloy, and the upper conductive material can be any one of molybdenum and a molybdenum alloy. In the present invention, the wirings are formed by wet etching.

Moreover, in the present invention, provided is a display device, comprising the array substrate for display mentioned above.

In the present invention, the display device used as a liquid crystal display device or an electroluminescence display device can be provided.

BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the present invention and the advantages thereof, reference is now made to the following description taken in conjunction with the accompanying drawings.

FIG. 1 is a view showing an embodiment of a liquid crystal display device using an array substrate for display of the present invention.

FIG. 2 is a top plan view of the array substrate for display of the present invention.

FIG. 3 is an enlarged view showing a dummy conductive pattern in the present invention.

4

FIG. 4 is an enlarged view showing another dummy conductive pattern in the present invention.

FIGS. 5A to 5C are views illustrating a method of manufacturing the array substrate for display of the present invention.

FIG. 6 is an electron microscope photograph showing a pattern shape of wiring in the case of using the dummy conductive pattern shown in FIG. 3.

FIG. 7 is an electron microscope photograph showing a pattern shape of wiring in the case of using the dummy conductive pattern shown in FIG. 4.

FIG. 8 is a graph showing a relation between a taper angle of the wiring and a pattern density of the wiring.

FIG. 9 is an electron microscope photograph showing a wiring shape in the case of performing etching without using the dummy conductive pattern.

FIG. 10 is an electron microscope photograph showing a sectional shape of the wiring shape shown in FIG. 9.

FIG. 11 is a schematic view showing a tapered shape of the wiring.

FIGS. 12A and 12B are views showing currents formed by a cell formed during an etching process.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Hereinbelow, description will be made in detail for the present invention with reference to embodiments shown in the accompanying drawings. However, the present invention is not limited to the embodiments shown in the drawings.

FIG. 1 is a partially cutaway perspective view showing an embodiment of a display device using an array substrate for display of the present invention. As shown in FIG. 1, the display device of the present invention is constituted by sequentially laminating a liquid crystal layer 11, a transparent electrode 12 and a glass substrate 13 on an array substrate 10 for display, which is formed on an insulating substrate. Wiring 14 formed on the insulating substrate 10 is extended to an end (not shown) of the array substrate for display, and is connected with a driving system (not shown) through a connection pad (not shown).

FIG. 2 is a top plan view of the display device using the array substrate 10 for display of the present invention, which is shown in FIG. 1. In the array substrate 10 for display of the present invention, a plurality of thin film transistors 21 constitute an array. A pixel electrode 22 is connected with each thin film transistor 21 that controls a potential of the pixel electrode. In the array substrate 10 for display shown in FIG. 2, what is further shown is that a scan line 23 and a signal line 24 are connected with each thin film transistor 21.

The respective scan lines 23 are connected with a driver 26 through scan line connection pads 25, and the respective signal lines 24 are connected with a driver 28 through signal line connection pads 27. These scan lines 23 and the signal lines 24 are formed so as to have the same constitution. As shown in FIG. 11, each of these lines is constituted of the lower conductive material 3 and the upper conductive material 4.

In the present invention, aluminum can be used for the lower conductive material 3 usable as wiring from a viewpoint of lowering resistance thereof. Moreover, it is preferable to use molybdenum (Mo) for the upper conductive material 4 usable in the present invention from a viewpoint of protecting the aluminum. However in the present invention, besides the aluminum, an aluminum alloy can be used for the lower conductive material 3. Moreover, for the

**5**

upper conductive material **4**, alloys of chromium, tantalum, titanium and molybdenum can be used. Film thickness of the lower conductive material **3** is not particularly limited, but film thickness of the upper conductive material **4** is preferably thick since a current tends to be concentrated thereto as the film thickness becomes thinner. However, a problem regarding stress occurs as the thickness becomes thicker. Therefore, in the present invention, it is preferable to set the film thickness of the upper conductive material **4** in a range of 30 to 100 nm.

The present invention makes it possible to prevent undercut of the lower conductive material **3**, which occurs due to passivity of the upper conductive material **4**. In the present invention, the term "passivity" is referred to as a phenomenon that metal such as molybdenum or a metal alloy such as a molybdenum alloy becomes insoluble in an acid or alkaline etchant. For example, the term "passivity" is referred to as a phenomenon that metal serving as an anode becomes insoluble in such etchant. In the present invention, specifically as for such passivated metal or a metal alloy, metal or a metal alloy with a passivating potential, that is, a Flade potential can be mentioned. Note that, in the present invention, the Flade potential is referred to as a potential which causes a current density for passivating metal, which is described in the Encyclopedia Chimica (miniature edition 32nd printing, issued by Kyoritsu Shuppan Co., Ltd., edited by editorial committee of the Encyclopedia Chimica), vol. 7, p. 911.

Furthermore, in the embodiment shown in FIG. 2, dummy conductive patterns **29** are disposed between the pixel electrodes **22** and each scan line connection pad **25** and between the pixel electrodes **22** and each signal line connection pad **27**. Thus, the wiring density is increased. Therefore, it is made possible to form good wiring over the entire surface of the array substrate for display without causing defects such as undercut and a mouse hole of the lower conductive material **3** during etching for the scan lines **23** and the signal lines **24**. Each of these dummy conductive patterns **29** can be formed as a two-layers structure with the same materials as those of the scan lines **23** and the signal lines **24** at the same time when the patterning is performed therefor.

FIG. 3 is an enlarged view showing a portion where the dummy conductive pattern **29** is formed in the embodiment of the array substrate **10** for display of the present invention shown in FIG. 2. FIG. 3 shows the dummy conductive pattern **29** formed as a line-and-space pattern between the connection pad **25** and an end **30** of the pixel electrode. In the present invention, the dummy conductive pattern **29** can be formed as the line-and-space pattern shown in FIG. 3. Alternatively, the dummy conductive pattern **29** can be formed as a land pattern completely coating a region where the dummy conductive pattern **29** is formed.

In any case of the patterns, in the present invention, it is preferable that the wiring density of the dummy conductive patterns **29** themselves be 30% or more on an area of a specified surface from a viewpoint of forming a properly tapered shape on the lower conductive material **3** without forming the undercut thereto while dissolving the upper conductive material **4** at a required rate.

Moreover, when the dummy conductive patterns **29** are arranged in the present invention, it is more preferable that the dummy conductive patterns **29** be formed between the end **30** of the pixel electrode **22** and each connection pads **25** and **27** so that the wiring density including the dummy conductive patterns **29** can be 30% or more on the area of a

**6**

specified surface. In the present invention, the term "wiring density" refers to an area ratio of an area of portions where the signal lines, the scan lines, the drawing lines, and the dummy conductive patterns are formed on an area of a specified region where the dummy conductive patterns are formed.

FIG. 4 is a view showing another embodiment of the dummy conductive patterns **29** of the present invention. In the embodiment shown in FIG. 4, the dummy conductive pattern **29** is disposed so that the wiring density thereof, which is specified at 30% or more, is further increased, thus reducing concentration of electric current to exposed portions of the upper conductive material to the etchant during the etching. As shown in FIG. 4, the dummy conductive pattern **29** may have any shapes and any patterns. Moreover, any combination of a plural type of the dummy conductive patterns **29** can be used.

FIGS. 5A, 5B and 5C are views showing an embodiment of a method of manufacturing the array substrate **10** for display of the present invention. With reference to FIG. 5, description will be made for the method of manufacturing the array substrate **10** for display of the present invention, exemplifying a case where the thin film transistor **21** of a reverse stagger type is formed. First, as shown in FIG. 5A, the lower conductive material **3** using aluminum and the upper conductive material **4** using molybdenum are deposited on the transparent or untransparent insulating substrate **1**, thus forming a film.

Next, as shown in FIG. 5B, photoresist **31** is coated on the film. The photoresist is exposed and developed by use of a photo mask **32** provided with patterns for forming the dummy conductive patterns **29** in portions where the wiring density is lowered between the pixel electrodes and the connection pads, which are not particularly shown.

Subsequently, etching is performed by use of an etchant such as a solution of phosphoric acid, nitric acid, acetic acid and mixtures thereof, thus forming the wiring **2** and the dummy conductive patterns **29**. The dummy conductive patterns **29** are arranged in the portions where the wiring density is low. Thus, it is made possible to form wirings having good tapered shape as shown in FIG. 5C even in regions where the conductive material such as molybdenum tends to be passivated. A taper angle can be set in a range of 20 degrees to 70 degrees by adjusting a composition of the etchant and etching conditions. It is more preferable to set the taper angle in a range of about 20 degrees to about 60 degrees.

Thereafter, in the present invention, gate insulating films, the gate electrodes, the source electrodes, the drain electrodes, the pixel electrodes and the like are formed, thus the array substrate **10** for display of the present invention is manufactured. In the present invention, the dummy conductive patterns **29** may be removed if necessary. Alternatively, the dummy conductive patterns **29** may be left as they are without being eliminated.

FIG. 6 is an electron microscope photograph showing a shape of the wiring **33** shown in FIG. 3, which was obtained when the dummy conductive pattern **29** shown in FIG. 3 was provided and the etching was performed. In this case, molybdenum was used for the upper conductive material **4**, and aluminum was used for the lower conductive material **3**. The film thickness of molybdenum is about 50 nm, and wet etching is performed by use of an etchant of a mixed solution of phosphoric acid, nitric acid and acetic acid. As shown in FIG. 6, a good tapered shape is formed even in a wiring portion where the undercut is formerly apt to occur by forming the dummy conductive pattern **29**.

7

FIG. 7 is a photograph showing a shape of the wiring 34 shown in FIG. 4, which was obtained when the dummy conductive pattern 29 shown in FIG. 4 was formed and the etching was performed under the same conditions as those in FIG. 6. As shown in FIG. 7, even when the density of the dummy conductive pattern 29 is increased, a good tapered shape is obtained.

FIG. 8 is a graph plotting values of the taper angle of the formed wiring relative to values of the pattern density (area %) of the wiring including the portions of the dummy conductive patterns 29 on the substrate when the dummy conductive patterns 29 are arranged. As shown in FIG. 8, the taper angle of the wiring obtained by the etching is reduced as the pattern density of the wiring is increased, and a more gentle taper is formed. Therefore, it is understood that the upper conductive material 4 can impart a sufficient selective ratio to the etching of the lower conductive material 3 by arranging the dummy conductive patterns 29.

FIG. 9 is an electron microscope photograph showing, for comparison, a shape of wiring obtained when etching is performed by use of the array substrate 10 for display, which has the same pattern as those shown in FIGS. 3 and 4, but without forming the dummy conductive patterns 29 at all. As shown in FIG. 9, large undercut occurs in the wiring since the molybdenum used for the upper conductive material 4 is passivated, and only the etching for the aluminum as the lower conductive material 3 progresses.

FIG. 10 is an electron microscope photograph showing a cross section taken along a cutting plane line A—A of the wiring shown in FIG. 9. As shown in FIG. 10, the etching for the aluminum used for the lower conductive material 3 progresses more than that for the molybdenum used for the upper conductive material 4, resulting in the occurrence of the great undercut.

The present invention can be applied not only to the thin film transistor of a reverse stagger type as described above but also to a thin film transistor of a top gate type including wiring formed of aluminum and any metal other than the aluminum, of which passivating current density is known.

Moreover, although the array device for display of the present invention can be applied to a liquid crystal display device using a transparent insulating substrate made of such as glass, the array device for display of the present invention can be also used as an organic or inorganic electrolumines-cence device, wherein an untransparent insulating substrate is used and an array for display is formed on the insulating substrate.

As described above, according to the present invention, it is made possible to provide an array substrate for display, a method of manufacturing an array substrate for display and a display device using the array substrate for display, which are capable of being etched at a sufficiently high etching rate and a sufficient selection ratio, and eliminating the under cut and the lowering of a yield in manufacturing due to the inconvenience such as an interlayer short circuit. Moreover, according to the present invention, it is made possible to provide an array substrate for display, a method of manu-facturing an array substrate for display and a display device using the array substrate for display, which are capable of providing a large-sized and high-resolution display device.

Although the preferred embodiments of the present invention have been described in detail, it should be understood that various changes, substitutions and alternations can be made therein without departing from spirit and scope of the inventions as defined by the appended claims.

8

What is claimed is:

1. An array substrate for display, comprising:
a layer of an insulating substrate, having an area;
a thin film transistor array formed on the insulating substrate;
a plurality of wiring arranged on the insulating substrate, each wiring having a first end, the wiring in commu-nication with at least one of the transistors in the thin film array;
connections pads, each connection pad contacting the first end of at most one of the plurality of wirings;
pixel electrodes, and
dummy conductive patterns, the dummy patterns com-prising at least about 30% of the area of the insulating substrate, the dummy conductive patterns situated between the connection pads and the pixel electrodes such that the dummy patters are not in contact with any of the wiring.

2. The array substrate for display according to claim 1 wherein at least one of the wirings comprises at least an upper layer and a lower layer of conductive materials.

3. The array substrate for display according to claim 2 wherein the lower layer wiring material is selected from the group consisting of aluminum and aluminum alloys.

4. The array substrate for display according to claim 2 wherein the upper layer wiring material is selected from the group consisting of molybdenum, chromium, tantalum, tita-nium and alloys thereof.

5. The array substrate for display according to claim 3 wherein the upper layer wiring material is selected from the group consisting of molybdenum, chromium, tantalum, tita-nium and alloys thereof.

6. The array substrate for display according to claim 5 wherein the upper wiring material is selected from the group consisting of molybdenum and alloys thereof.

7. The array substrate for display according to claim 4 wherein the upper layer wiring material is selected such that the upper layer wiring material does not become insoluble in an acid or alkaline etchant.

8. The array substrate for display according to claim 5 wherein the upper layer wiring material is selected such that the upper layer wiring material does not become insoluble in an acid or alkaline etchant.

9. A meted for forming an array substrate for display, comprising:
forming a layer of an insulating substrate, having an area;
forming a thin film transistor array formed on the insu-lating substrate, each wiring having a first end, the wiring in communication with at least on of the tran-sistors in the thin film array;
forming connections pads, each connection pad contact-ing the first end of at most one of the plurality of wirings;
forming pixel electrodes, and
forming dummy conductive patterns, the dummy conduc-tive patterns comprising at least about 30% of the area of the insulating substrate, the dummy patterns situated between the connection pads and the pixel electrodes such that the dummy patters are not in contact with any of the wiring.

10. The method for forming an array substrate for display according to claim 9 wherein at least one of the wirings comprises at least an upper layer and a lower layer of conductive materials.

**9**

**10**

11. The method for forming an array substrate for display according to claim **10** wherein the lower layer wiring materials is selected from the group consisting of aluminum and aluminum alloys.

12. The method for forming an array substrate for display according to claim **10** wherein the upper layer wiring material is selected from the group consisting of molybdenum, chromium, tantalum, titanium and alloys thereof.

13. The method for forming an array substrate for display according to claim **11** wherein the upper layer wiring material is selected from the group consisting of molybdenum, chromium, tantalum, titanium and allays thereof.

14. The method for forming an array substrate for display according to claim **13** wherein the upper wiring material is selected from the group consisting of molybdenum and alloys thereof.

15. The method for forming an array substrate for display according to claim **12** wherein the upper layer wiring material is selected such that the upper layer wiring material does not become insoluble in an acid or alkaline etchant.

16. The method for forming an array substrate for display according to claim **13** wherein the upper layer wiring material is selected such that the upper layer wiring material does not become insoluble in an acid or alkaline etchant.

\* \* \* \* \*

(12) **United States Patent**
Chu et al.

(10) Patent No.: **US 6,976,781 B2**
(45) Date of Patent: **Dec. 20, 2005**

(54) **FRAME AND BEZEL STRUCTURE FOR BACKLIGHT UNIT**

(75) Inventors: **Chi-Chih Chu**, Yung Ho (TW); **Wen-Yuan Cheng**, Taoyuan Hsien (TW); **Hui-Kai Chou**, Taipei (TW)

(73) Assignee: **AU Optronics Corp.**, Hsinchu (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 31 days.

(21) Appl. No.: **10/446,103**

(22) Filed: **May 28, 2003**

(65) **Prior Publication Data**

US 2004/0080952 A1    Apr. 29, 2004

(30) **Foreign Application Priority Data**

Oct. 25, 2002    (TW) .............................. 91125324 A

(51) **Int. Cl.**$^7$ ................................................. **F21V 7/04**
(52) **U.S. Cl.** ........................ **362/633**; 349/58; 40/209; 40/781
(58) **Field of Search** .............................. 362/23, 26, 28, 362/31, 551, 559, 560, 561, 362, 367, 368, 362/374, 382, 396, 433, 444, 600, 632, 633, 362/634; 349/58, 60, 56; 385/129; 40/204, 40/209, 124.02, 661.02, 541, 549, 700, 714, 40/781

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,570,267 A * | 10/1996 | Ma ............................. | 361/681 |
| 6,170,956 B1 * | 1/2001 | Rumsey et al. ............. | 359/839 |
| 6,386,722 B2 * | 5/2002 | Okumura ..................... | 362/31 |
| 6,502,945 B2 * | 1/2003 | Kim et al. ................... | 362/27 |
| 6,507,377 B1 * | 1/2003 | Jung ........................... | 349/60 |
| 6,507,484 B2 * | 1/2003 | Fukuyoshi .................. | 361/681 |
| 6,762,806 B1 * | 7/2004 | Matsuo et al. ............... | 349/58 |

* cited by examiner

*Primary Examiner*—Thomas M. Sember
*Assistant Examiner*—Ismael Negron
(74) *Attorney, Agent, or Firm*—Troxell Law Office, PLLC

(57) **ABSTRACT**

A frame including a first edge and a second edge, wherein on outer surfaces of the first edge, first hooks are formed to protrude outwardly, and on outer surfaces of the second edge, first holes are formed. A bezel has a first sidewall and a second sidewall, wherein on the first sidewall, second holes are formed, and on outer surfaces of the second sidewall, second hooks are formed to protrude outwardly. When the frame is mounted onto the bezel, the first edge is disposed onto inside surfaces of the first sidewall, and the first hooks are inserted and engaged in the second holes for fastening the frame and bezel, simultaneously the second edge is disposed onto the outside surfaces of the second sidewall, and the second hooks are inserted and engaged in the first holes for fastening the frame and the bezel.

**13 Claims, 5 Drawing Sheets**





Figure 1
(Prior Art)



Figure 2
(Prior Art)



Figure 3
(Prior Art)



Figure 4



Figure 5

**1**

## FRAME AND BEZEL STRUCTURE FOR BACKLIGHT UNIT

### FIELD OF THE INVENTION

The present invention relates to a backlight unit of a liquid crystal display, and more specifically, to a new assembling manner for mounting a frame onto a bezel to provide the assembling structure the reinforced supporting strength and to provide the convenience of disassembling the frame from the bezel.

### BACKGROUND OF THE INVENTION

With the advance of techniques for manufacturing thin-film transistors, the liquid crystal displays (LCD) are widely applied in electrical products, such as PDAs, laptops, digital cameras, cell phones, high resolution television sets, etc. due to advantages as portability, non-radiation and saving electricity. Especially when the manufactures devote themselves to further research and improve the materials, processes and equipments for producing LCD devices, the qualities of the LCDs are promoted and prime costs are reduced substantially. It is required to introduce backlight units into the LCDs for illumination because the liquid crystal molecules are non-illumination materials. Therefore the backlight unit is the most importance element for manufacturing the LCD devices, and the performance thereof is closely related to the displaying effect of the LCD.

Refer to FIG. 1, the typical backlight unit 10 applied to the LCDs comprises a lightguide plate 100, optical films 102, a reflector sheet 104, a tubular lamp 106, a frame 108 and a backbezel 110. The frame 108 and the bezel 110 are assembled together to contain and fabricate above components. When the backlight unit 10 is assembled, the reflector sheet 104 is disposed on the bezel 110, and then the lightguide plate 100 and the optical films 102 are disposed in sequence on the reflector sheet 104. Next, the frame 108 is mounted and fastened onto the bezel 110. And the tubular lamp 106 is inserted into the backlight unit 10 through an opening at the corner of the frame 108. The tubular lamp 106 is inserted into the slot between the lightguide plate 100 and one edge of bezel 110.

It is noted that for the purpose of fastening the frame 108 onto the bezel 110 as shown in FIG. 1, some hooks 110a are formed to protrude outwardly from the outside of the sidewalls of the bezel 110, and correspondingly on the sidewalls of the frame 108 some holes 108a are formed. Thus, when the frame 108 is mounted on the bezel 110, the hooks 110a of the bezel 110 are inserted and engaged in the holes 108a of the frame 108 for fastening the frame 108 and the bezel 110. Please refer to FIG. 2, the assembling structure of the frame 108 and the bezel 110 is illustrated.

Except the aforementioned assembling manner, in some backlight unit, as shown in FIG. 3, on the sidewalls of the bezel 111 are formed some holes 111b, and correspondingly on edges of the frame 109 some hooks 109b are fabricated. Therefore, when the frame 109 is disposed onto the bezel 111, the outside surfaces of the edges of the frame 109 are enclosed and attached by the inside surfaces of the sidewalls of the bezel 111, and the hooks 109b of the frame 109 are inserted and engaged in the respective holes 111b of the bezel 111 for fastening the frame 108 and the bezel 111.

In general, when the assembling manner shown in FIG. 2 is introduced, the edges of the frame 108 are mounted on the outside of the sidewalls of the bezel 110. It is noted that because the frame 108 made of resin material is flexible and

**2**

elastic, the operator can disassemble the frame 108 from the bezel 110 easily just by pressing back slightly the hooks 110a of the bezel 110 and simultaneously pulling the edges of the frame 108. Even though such assembling manner has the advantage of easy disassembling, however, the structure strength of the backlight unit is worse due to the resin frame 108 is pliable.

Besides, when the assembling manner shown in FIG. 3 is used, the edges of the frame 109 are enclosed and attached by the inside surfaces of the sidewalls of the bezel 111. Because the edge of the frame 109 is wedged between the bezel 111 and the lightguide plate 100, the structure strength of such backlight unit is reinforced. However, due to the bezel 111 made of metal material is too hard, it is difficult to disassemble the frame 109 from the bezel 111. The operators have to exert themselves to reject the hooks back and extract the frame 109 from the bezel 111. Apparently, such assembling design will increase the degree of difficulty in reassembling procedures. Under these conditions, the manufacturers usually have to trade off between structure strength and disassembling convenience. And apparently there is a requirement to figure out a new mounting manner for obtaining above two advantages both.

### SUMMARY OF THE INVENTION

The prime objective of the present invention is to provide a new assembling manner of the backlight unit for obtaining the both advantages of disassembling convenience and increasing structure strength.

The present invention discloses an assembling structure of a backlight module. The assembling structure comprises following components. A rectangular frame has a long edge and a short edge, wherein first hooks are formed and protruding outwardly on outside surfaces of said long edge, and first holes are formed on said short edge. A rectangular bezel has a long sidewall and a short sidewall, wherein second holes are formed on said long sidewall and second hooks are formed and protruding outwardly on outside surfaces of said short sidewall. When said rectangular frame is mounted onto said rectangular bezel, said long edge is attached to inside surfaces of said long sidewall and said first hooks are inserted and engaged in said second holes for fastening said rectangular frame and said rectangular bezel, and simultaneously said short edge is attached to said outside surfaces of said short sidewall and said second hooks are inserted and engaged in said first holes for fastening said rectangular frame and said rectangular bezel.

### BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing aspects and many of the attendant advantages of this invention will become more readily appreciated as the same becomes better understood by reference to the following detailed description, when taken in conjunction with the accompanying drawings, wherein:

FIG. 1 illustrates the assembling manner of the components of the backlight unit;

FIGS. 2 & 3 illustrates the conventional assembling manner of the backlight unit;

FIG. 4 illustrates the frame and the bezel fabricated according to the present invention; and

FIG. 5 illustrates the mounting manner of the frame and the bezel according to the present invention.

**3**

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

As aforementioned, the assembling structure 20 is introduced to contain and fabricate various components of the backlight unit, such as a lightguide plate 302, optical films 300, a reflector sheet 304, a tubular lamp 306 and etc. The assembling structure 20 comprises a frame 200 and a bezel 210. The frame 200 has a rectangular shape composed of two long edges 202 and two short edges 204. On each long edge 202 a plurality of holes 206 are formed. And on outer surfaces of each short edge 204 a plurality of hooks 208 are fabricated.

Correspondingly, the bezel 210 also has a rectangular shape. As shown in the FIGURE, the bezel 210 has a rectangular board 212, two long sidewalls 214 and two short sidewalls 216 which are erect from the edges of the rectangular board 212 respectively. On outer surfaces of each long sidewall 214 a plurality of hooks 218 are formed and protruding outwardly. And on each short sidewall 216 a plurality of holes 220 are formed.

As aforementioned, when the components of the backlight unit are assembled, the reflector sheet 304, the lightguide plate 302 and optical films 300 are disposed in sequence onto the rectangular board 212 of the bezel 210. As shown in FIG. 4, the reflector sheet 304 is disposed on the rectangular board 212 of the bezel 210, the lightguide plate 302 is disposed on the reflector sheet 304, and the optical films 300 are disposed on the lightguide plate 302. Then, the frame 200 is mounted onto the bezel 210 to contain those components. The long edges 202 of the frame 200 are disposed and attached onto the outside surfaces of the long sidewalls 214 of the bezel 210. Namely, the long sidewall 214 is covered by the edge 202. And the hooks 218 on the outer surfaces of the long sidewall 214 are inserted and engaged in the holes 206 of the long edge 202 to fasten the frame 200 onto the bezel 210. In the mean time, the short edge 204 is disposed and attached onto the inside surfaces of the short sidewall 216 of the bezel 210, and the hooks 208 on the outside surfaces of the short edge 204 are inserted and engaged in the holes 220 of the short sidewall 216 to fasten the frame 200 and the bezel 210, as shown in FIG. 5.

It is noted that in most applications of the backlight module the frame 200 is made of flexible materials such as resin, and the bezel 210 is made of metal materials such as aluminum. Therefore, the short sidewalls 216 of the bezel 210 covering the outside of the short edge 200 of the short sidewall 216 can reinforce the structure strength of the backlight unit. AT the same time, because the long edges 202 of the frame 200 are attached to the outside of the long sidewalls 214 of the bezel 210, the frame 200 can be disassembled from the bezel 210 very easily by pressing slightly the hooks 218 of the bezel 210 and pulling the long edges 202 of the frame 200.

it is noted that in the above embodiment, the long edges 202 of the frame 200 are formed with the holes 206, and the short edges 204 are formed with hooks 218. However, in another embodiment, other mounting manners can be chosen according to the requirements of designing backlight units. For example, the short edges of the frame can be defined with holes, and the long edges of the frame can be fabricated with protruding hooks. Correspondingly, the short sidewalls of the bezel are fabricated with hooks and the long sidewalls thereof are drilled to have holes thereon. Thus, the assembling structure with the frame mounted onto the bezel can have both the advantages of enhancing structure strength and easy disassembling.

**4**

Besides, in a further embodiment, only one edge of the rectangular frame is fabricated with holes and the others (the three edges) are fabricated with protruding hooks. Certainly, in this design, only one sidewall of the bezel is fabricated with hooks, and the others are fabricated with holes for fastening the frame and the bezel.

It is noted that in most backlight units the tubular lamp of the backlight unit is disposed on the inside of one long sidewall of the bezel. So in a preferred embodiment the long edges of the frame are disposed to attach the outside surfaces of the long sidewalls of the bezel. Therefore, the long sidewall of the bezel is more closely to the tubular lamp and can have efficient heat dissipations due to the metal material of the bezel. And that can prevent the overheat issues of the tubular lamp in the prior art. In other words, the long sidewall adjacent to the tubular lamp is fabricated with hooks that are protruding outwardly from the outside surfaces of the long sidewall. And on the corresponding long edges of the frame the holes are formed for receiving and wedging the hooks of the bezel, in order to fasten the frame and the bezel and to let the sidewall of the metal bezel more closely to the tubular lamp.

Except the design of assembling the frame and the bezel as illustrated in the above embodiment, the fastening manner can also be applied to the assembling structure of two frames. For example, some first hooks are fabricated on the outside of the first edge of an upper frame, and on the second edges of the upper frame some first holes are formed. In the mean time, on the third edges of a lower frame some second holes are formed to receive and wedge the first hooks, and outside the fourth edges of the lower frame some second hooks are fabricated to insert and engage the first holes for fastening the upper and lower frames.

The assembling structures provided in the present invention have many advantages. Because the two long edges of the frame are disposed to mount and cover the two long sidewalls of the bezel, and the two short edges of the frame are disposed inside the two short sidewalls of the bezel. So the assembling structures can obtain both the reinforced structure strengths and the disassembling convenience.

As is understood by a person skilled in the art, the foregoing preferred embodiment of the present invention is illustrated of the present invention rather than limiting of the present invention. It is intended to cover various modifications and similar arrangements included within the spirit and scope of the appended claims, the scope of which should be accorded the broadest interpretation so as to encompass all such modifications and similar design.

What is claimed is:

1. An assembling structure of a backlight module for containing and fabricating components of said backlight module, said assembling structure comprising:

a frame, having a first edge and a second edge, wherein on outer surfaces of said first edge a plurality of first hooks are formed to protrude outwardly, and on outer surfaces of said second edge a plurality of first holes are formed;

a bezel, made of metal material, having a first sidewall and a second sidewall, wherein on said first sidewall a plurality of second holes are formed, and on outer surfaces of said second sidewall a plurality of second hooks are formed to protrude outwardly;

wherein said first edge is disposed onto inside surfaces of said first sidewall, said first hooks are inserted and engaged in said second holes, said second edge is disposed onto outside surfaces of said second sidewall, and said second hooks are inserted and engaged in said first holes as said frame is mounted onto said bezel.

5

2. The assembling structure of claim 1, wherein said frame is made of resin material.

3. The assembling structure of claim 1, wherein a tubular lamp of said backlight module is disposed inside and adjacent to said second sidewall of said bezel.

4. The assembling structure of claim 1, wherein said frame has a rectangular shape, and said first edge of said frame is a short edge, and said second edge of said frame is a long edge.

5. The assembling structure of claim 1, wherein said bezel has a rectangular board, and said first sidewall and said second sidewall are erect from edges of said rectangular board, said first sidewall is a short sidewall of said bezel and said second sidewall is a long sidewall thereof.

6. An assembling structure of a backlight module for containing and assembling components of said backlight module, said assembling structure comprising:

an upper frame, made of resin material, having a first edge and a second edge, wherein on outside surfaces of said first edge first hooks are formed to protrude outwardly, and on said second edge first holes are formed; and

a lower frame, made of metal material, having a third edge and a fourth edge, wherein on said third edge second holes are formed, and on outside surfaces of said forth edge second hooks are formed to protrude outwardly;

wherein said first edge is disposed inside said third edge and said first hooks are inserted and engaged in said second holes, said second edge is attached to the outside surfaces of said fourth edge, and said second hooks are inserted and engaged in said first holes as the upper frame is mounted onto the lower frame.

7. The assembling structure of claim 6, wherein a tubular lamp of said backlight module is disposed inside said fourth edge of said lower frame.

8. A backlight unit comprising:

a bezel made of metal material, having a first sidewall and a second sidewall, wherein on said first sidewall a plurality of first holes are formed, and on outer surfaces

6

of said second sidewall a plurality of first hooks are formed to protrude outwardly;

a lightguide plate, disposed above said bezel;

a frame, disposed above said lightguide plate and mounted onto said bezel, having a first edge and a second edge, wherein on outer surfaces of said first edge a plurality of second hooks are formed to protrude outwardly, and on outer surfaces of said second edge a plurality of second holes are formed, wherein said first edge is disposed onto inside surfaces of said first sidewall, and said second hooks are inserted and engaged in said first holes for fastening said frame and said bezel, simultaneously said second edge is disposed onto outside surfaces of said second sidewall, and said first hooks are inserted and engaged in said second holes for fastening said frame and said bezel; and

a tubular lamp, disposed on said bezel, beside said lightguide plate, and adjacent to inside surfaces of said second sidewall of said bezel.

9. The backlight unit of claim 8, wherein said frame is made of resin material.

10. The backlight unit of claim 8, further comprising a reflector sheet, disposed on said bezel and beneath said lightguide plate.

11. The backlight unit of claim 8, further comprising optical films, disposed on said lightguide plate and under said frame.

12. The backlight unit of claim 8, wherein said frame has a rectangular shape, and said first edge of said frame is a short edge, and said second edge of said frame is a long edge.

13. The backlight unit of claim 12, wherein said bezel has a rectangular board, and said first sidewall and said second sidewall are erect from edges of said rectangular board, said first sidewall is a short sidewall of said bezel and said second sidewall is a long sidewall thereof.

* * * * *

(12) **United States Patent**
Kubota et al.

(10) **Patent No.:** US 6,778,160 B2
(45) **Date of Patent:** Aug. 17, 2004

(54) **LIQUID-CRYSTAL DISPLAY, LIQUID-CRYSTAL CONTROL CIRCUIT, FLICKER INHIBITION METHOD, AND LIQUID-CRYSTAL DRIVING METHOD**

(75) Inventors: **Tetsu Kubota**, Fujisawa (JP); **Akihiro Funakoshi**, Kamakura (JP); **Takuya Ishikawa**, Hino (JP)

(73) Assignee: **International Business Machines Corporation**, Armonk, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 218 days.

(21) Appl. No.: **09/760,131**

(22) Filed: **Jan. 12, 2001**

(65) **Prior Publication Data**

US 2001/0024181 A1 Sep. 27, 2001

(30) **Foreign Application Priority Data**

Jan. 17, 2000 (JP) ........................................ 2000-007816

(51) Int. Cl.[7] ................................................ G09G 3/36
(52) U.S. Cl. .............................. **345/89**; 345/98; 345/77; 345/88; 345/690
(58) Field of Search .............................. 345/88, 63, 89, 345/77, 90, 87, 611, 690, 147, 148, 211, 102, 212

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,347,294 A * 9/1994 Usui et al. .................... 345/89

| | | | | |
|---|---|---|---|---|
| 5,483,634 A | * | 1/1996 | Hasegawa | 359/162 |
| 5,956,014 A | * | 9/1999 | Kuriyama et al. | 345/147 |
| 6,064,359 A | * | 5/2000 | Lin et al. | 345/89 |
| 6,075,514 A | * | 6/2000 | Ryan | 345/601 |
| 6,326,938 B1 | * | 12/2001 | Ishida et al. | 345/63 |
| 6,333,727 B2 | * | 12/2001 | Mizumaki | 345/89 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 4-365094 | 12/1992 |
| JP | 06-062355 | 3/1994 |
| JP | 07-056532 | 3/1995 |
| JP | 8-8671 | 1/1996 |

* cited by examiner

*Primary Examiner*--Regina Liang
*Assistant Examiner*—Jennifer T. Nguyen
(74) *Attorney, Agent, or Firm*—Derek S. Jennings; David Aker

(57) **ABSTRACT**

A liquid crystal display comprises an input for inputting a video signal from a host and a storage medium for storing the previous brightness level of the video signal input through the input. A determinator is provided for determining an output brightness level based on the previous brightness level stored in the storage medium and the next brightness level of the next video signal input to the input, so as to make the time integration quantity of a brightness change substantially equal to an ideal quantity of light in a stationary state with respect to the next brightness level. Further included are drivers for driving an image displaying liquid crystal cell based on the output brightness level determined by the determinator.

**14 Claims, 11 Drawing Sheets**



[Figure 1]



[Figure 2]



[Figure 4]



[Figure 5]



(a)



(b)

[Figure 6]



[Figure 7]

26 (Graph base table)

| Previous brightness \ Next brightness | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 28 | 48 | 63 | 74 | 83 | 88 | 93 | 96 | 98 | 100 |
| 10 | 0 | 10 | 30 | 45 | 56 | 65 | 70 | 75 | 80 | 90 | 100 |
| 20 | 0 | 10 | 20 | 35 | 46 | 55 | 60 | 70 | 80 | 90 | 100 |
| 30 | 0 | 10 | 20 | 30 | 41 | 50 | 60 | 70 | 80 | 90 | 100 |
| 40 | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
| 50 | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
| 60 | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
| 70 | 0 | 10 | 20 | 30 | 40 | 50 | 59 | 70 | 80 | 90 | 100 |
| 80 | 0 | 10 | 20 | 30 | 40 | 45 | 54 | 65 | 80 | 90 | 100 |
| 90 | 0 | 10 | 20 | 25 | 30 | 35 | 44 | 55 | 70 | 90 | 100 |
| 100 | 0 | 2 | 4 | 7 | 12 | 17 | 26 | 38 | 52 | 72 | 100 |

[Figure 8]



[Figure 9]     PRIOR ART



[Figure 10]              PRIOR ART



[Figure 11]    PRIOR ART



US 6,778,160 B2

**1**

# LIQUID-CRYSTAL DISPLAY, LIQUID-CRYSTAL CONTROL CIRCUIT, FLICKER INHIBITION METHOD, AND LIQUID-CRYSTAL DRIVING METHOD

## FIELD OF THE INVENTION

The present invention relates to a method for compensating poor response time, and in particular, to a method and an apparatus for inhibiting flicker resulting from the poor response time of a liquid crystal display.

## BACKGROUND OF THE INVENTION

In recent years, besides cathode ray tubes (CRTs), liquid crystal displays (LCDs) have come into widespread use as display devices for various types of image displays and monitors for units such as personal computers (PCs) and television sets. The LCDs can be made significantly smaller and lighter than CRTs. In addition, many improvements in the display performance of LCDs, including low geometric distortion as well as considerably high picture quality, have been achieved. For these reasons, the LCDs have gained the spotlight as a mainstream display device used in video equipment of the future.

However, because of the poor response characteristic of the liquid crystal itself, the LCDs has the potential problem of poor response time. That is, in a typical display device used in the industry, the display is refreshed at a frame rate of 60 frames per minute, or every (1÷60=) 16.7 ms. On the other hand, the response time of liquid crystals used in many current LCDs required to change from black to white is 10 to 50 ms, typically 20 to 30 ms. This means that one frame time in the display is shorter than the response time of most liquid crystals. As a result, problems, such as the visual persistence of moving images and inability to keep up with fast-moving images, caused by the response delay of the LCDs have become obvious.

The term "response time" used in the industry refers to the sum of (1) time required to reverse color by applying a voltage to a liquid crystal cell and (2) time required to restore the original color by the removal of the applied voltage. The term "frame" used in the industry represents the scanning of all the images (picture elements) that should form one complete picture on the display.

Some solutions to poor response time problems with the LCD are disclosed in, for example, Published Unexamined Japanese Patent Applications Nos. 2-153687, 4-365094, 6-62355, and 7-56532.

In Published Unexamined Japanese Patent Application No. 2-153687, a LCD is provided which is configured to discriminate between a static image area having less motion and a fast-moving area and apply a signal process only to the moving area to emphasize time-based changes in an image, thereby improving response time in the image area where better response time is required to reduce visual persistence and noise.

In Published Unexamined Japanese Patent Application No. 4-365094, a LCD is provided which is configured to be driven by reading pre-stored optimum image data according to the direction and degree of a change when the image data changes, thereby allowing the LCD to rapidly follow the fast-changing image.

In Published Unexamined Japanese Patent Application No. 6-62355, a technology is disclosed which superposes a difference component between fields or frames on a video

**2**

signal to provide pulse stepping drive when the video signal changes between the fields or frames, thereby improving the response of display elements in an LCD.

In Published Unexamined Japanese Patent Application No. 7-56532, a technology is disclosed which provides table memory containing a table of image increase/decrease values and drive a liquid crystal panel (liquid crystal cell) by performing an addition/subtraction in order to improve response changes due to changes in the gray scale in the liquid crystal panel. However, the amount to be added or subtracted is expressed only by the word "optimum" and no specific amount is disclosed.

One problem associated with picture quality in LCDs which does not arise in a CRT display is flicker. When, for example, a wire-frame model in a CAD application is displayed on the LCD and the operator (user) moves it continuously at a relatively low speed, about several tens pixels per minute, the entire wire-frame model appears to blink in a cycle of several to several tens Hz. This effect is called flicker. While this effect does not occur in CRT displays, it occurs in most existing types of LCDs and many customers have requested minimization of the flicker urgingly. The flicker herein differs in symptom and cause from that in CRT displays which is caused by infrequent refresh.

In CAD applications, a wire-frame model is typically displayed using many thin lines in white or other colors against a black background. Assuming that the wire-model is white (all of the colors R (read)/G (green)/B (blue) are "ON") as an example, no problem arises when the model stay stationary on the screen because only a few frames are required to achieve an proper brightness. However, if the operator move the model on the screen, the proper brightness cannot completely be achieved. That is, if a pixel is made light up only in one frame, the brightness of the pixel may not reach the predetermined brightness because the response of the LCD itself is slow as mentioned above. This situation will be described below with reference to the drawings.

FIG. 9 shows the movement of lines when a wire-frame model is moved on the screen. FIG. 10 shows on/off states of the pixels on line (i) in each frame at the time point in FIG. 9. FIG. 11 shows a change in the brightness of pixel (j).

Herein, as shown in FIG. 9, in the case where attention is paid to a particular pixel, assuming that a line of the wire frame **200** moves through frames (n−1) **201** to (n) **202** to (n+1) **203** in sequence. That is, the pixel lights up in a time period equivalent to the frames in which the line passes over the pixel and goes off immediately after that.

Focusing attention on line (i) **205** represented by a dashed line, in particular, on the particular pixel, each frame is driven from OFF to ON by the movement of pixel (j) **206**, then one frame after goes back from ON to OFF, as shown in FIG. 10. However, because the response time of commonly-used liquid crystals is longer than 16.7 ms, pixel (j) **206** changes back to black before completely returning from black to white. That is, as shown in FIG. 11, pixel (j) **206** is OFF in frame (n−1) **201**, goes ON in frame (n) **202**, then goes OFF in frame (n+1) **203**. However, the target brightness of pixel (j) **206** is not reached even though it is turned on in order to achieve 100% brightness in frame (n) **202**. As a result, the brightness of the line drawing during movement will be low. The inventors have found that when a wire-frame model is continuously moved in a CAD application, the wire-frame model in fact repeatedly alternates between moving and stationary states every several frames and blinks due to a difference in display brightness

**3**

between the moving and stationary states, and this difference causes "flicker."

Many manufacturers have actively sought after a method for improving the response of LCD panels by improving a liquid crystal material itself or narrowing the gap between glass plates in order to reduce flicker of LCDs. Some state-of-the-art products on the market have an improved response time of about 25 ms including rising and falling time. Another LCD technologies for reducing response time to several ms have been disclosed in some academic conferences. However, these approaches to improve an LCD panel itself can hardly to provide mass-production products because of their low reliability, and there are many other problems to be solved to put them into practical use.

In view of these technical problems, it is a primal object of the present invention to inhibit the flicker effect as visual perception by the panel driving circuitry which drives an LCD.

It is another object of the present invention to drive the LCD by applying an offset to a moving model without globally determining whether the model is moving or stationary.

## SUMMARY OF THE INVENTION

To achieve above-mentioned objects, a feature of the present invention includes a liquid crystal display comprises an input for inputting a video signal from a host and a storage medium for storing the previous brightness level of the video signal input through the input. A determinator is provided for determining an output brightness level based on the previous brightness level stored in the storage medium and the next brightness level of the next video signal input to the input, so as to make the time integration quantity of a brightness change substantially equal to an ideal quantity of light in a stationary state with respect to the next brightness level. Further included are drivers for driving an image displaying liquid crystal cell based on the output brightness level determined by the determinator.

Another feature of the present invention includes a liquid crystal display characterized by comprising a driver for driving each of the pixels forming an image for each frame to a liquid crystal cell displaying the image, an input for inputting an moving-state video signal which changes from the off state to the on state on transition to a particular frame in the frames and returns to the off state after the particular frame is completed, and elements for setting an offset for making the quantity of light closer to the quantity of light in a stationary state in which the moving-state video signal is continuously turned on for the particular frame. The liquid crystal display further includes a generator for applying the offset set by the setting elements to the moving-state video signal input through the input means to generate an output video signal, and an output for outputting the output video signal generated by the generation means to the drive means. By configuring the apparatus in this way, a difference in brightness between a stationary state and a moving state which can be considered as the principal cause of flicker can be reduced to inhibit visually perceptible flicker.

Yet another feature of the present invention is further characterized by a liquid crystal control circuit having a function for inhibiting flicker caused by a difference in brightness when an input wire-frame model is displayed by liquid crystal cells. The liquid crystal control circuit includes a storage portion for storing an offset in brightness in a moving state in which the wire-frame model having a predetermined gray scale changes from frame to frame with

**4**

respect to a particular pixel. This is with relation to brightness output in a stationary state in which the wire-frame model having the predetermined gray scale is displayed on the particular pixel across a plurality of frames. Further included is a correction portion for applying the offset stored in the storage portion to the gray scale of the wire-frame model if the input wire-frame model is in a moving state.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram for showing the overall configuration of a liquid crystal display (LCD) apparatus according to one embodiment of the present invention.

FIG. 2 is a graph showing an example of brightness of a wire-frame image in a moving state on the LCD used with the embodiment.

FIG. 3 is a table showing the measurements of response time at the maximum brightness of a liquid crystal used in five LCD models (model A to E).

FIG. 4 shows the response characteristic of an ideal liquid crystal.

FIGS. 5 (a) and (b) are graph showing the response characteristics of models A and B shown in FIG. 3 by brightness versus time when a pixel is turned on for only one frame.

FIG. 6 shows an effect when brightness is set by taking a required offset into consideration.

FIG. 7 shows a relation between brightness L1 and brightness L2 in table form;

FIG. 8 is a graph showing desired brightness versus brightness actually provided when brightness falls.

FIG. 9 shows the movement of a line on the screen when a wire-frame model is moved on the screen.

FIG. 10 shows the ON/OFF states of a pixel on line (i) in each frame.

FIG. 11 shows changes in brightness of pixel (i).

## DETAILED DESCRIPTION OF THE INVENTION

The "ideal quantity of light" herein is, to take an example, the quantity of light based on a response characteristic which provides a target brightness level at a time point at which the frame is turned on and provides a brightness level of zero at the time point at which the frame is turned off on a display device in which each pixel is driven for each frame. The brightness level can be represented as a target brightness value by a gray scale and considered as an indication of the characteristic of human visual sensation to brightness. In addition, a brightness change can be considered as a response characteristic depending on the types of liquid crystal cells (liquid crystal panels). Quantity of light is considered as a time integration quantity of a brightness change and can be expressed as brightness_time, if the brightness is constant. The representation "substantially equal level" refers to a level which is not completely the same but can be accepted as a substantially equivalent level, and includes a level which is closer to an ideal quantity of light than no preventive measures are taken.

The determinator is characterized by comprising a table for storing a brightness level determined by the characteristic of a liquid crystal cell according to a relation between the previous brightness level and the next brightness level, and determining an output brightness level by modifying the next brightness level based on the brightness level read from the table. With this configuration, flicker due to changes in

5

the quantity of light during the movement of the model can be inhibited without globally determining whether a model is in a moving or stationary states. In addition, a correction for a "halftone" can be made, thereby allowing a decrease in brightness level, which is remarkable in halftones, to be addressed properly.

The video signal input through the input consists of a plurality of color signals and the table in the determinator is provided for each of the color signals so that a brightness level correction for each color can be made with respect to flicker perception of the human eye to reduce a difference in brightness, thereby an easy-on-the-eye liquid crystal display can be provided to the user. While the color signals may be R (read), G (green), B (blue) signals used in displays, other display systems can also be used.

The offset set by the setting elements can be determined based on a time integration quantity, which is a change in brightness in the moving-state vide signal integrated with respect to time, and the quantity of light in stationary state, thus a difference in brightness can be preferably reduced in consideration of the human visual perception characteristic to inhibit flicker appropriately.

The moving-state video signal passed through the input consists of a plurality of color signals, the offset set by the setting elements is determined for each of the color signals, and the generator generates the output video signal for each color signal based on the offset determined for each color signal. Thus a difference in brightness between moving and stationary states can be corrected for each color signal to inhibit flicker on a color image display.

The apparatus further comprises a frame buffer for storing the brightness information of the input wire-frame model as the previous brightness, and characterized by that the storage portion stores the offset as table information based on a relation between the previous brightness stored in the frame buffer and the brightness of the next input wire-frame model, thus, flicker in a moving state can be advantageously inhibited without providing separate determining units for moving and stationary states.

Because the wire-frame model in the present invention is a model consisting of a large number of thin lines in white or other colors in a CAD application, for example, in which flicker is especially troublesome, the flicker inhibition by correcting gray scale of such a wire-frame model in a moving state is highly effective.

The liquid crystal control circuit may be implemented as an interface board provided in a liquid crystal display monitor. The liquid crystal display monitor may be one used with a desktop personal computer or a CAD computer as well as one integrated with a host, like a notebook computer.

In another category, the present invention is a flicker inhibition method for inhibiting flicker caused by a difference in brightness when an input wire-frame model is displayed by a liquid crystal cell. The method is characterized by storing a relation between brightness in a stationary state in which a wire-frame model having a predetermined gray scale is displayed on a particular pixel across a plurality of frames and brightness in a moving state in which the wire-frame model having the predetermined gray scale changes from frame with respect to the particular pixel, applying an offset based on the stored relation to the gray scale of the wire-frame model if the input wire-frame model is in a moving state, and driving the liquid crystal cell based on the gray scale to which the offset is applied to display the wire-frame model.

The moving state brightness used for storing the relation is the brightness when the particular pixel changes back to

6

the off state one frame after it is driven from the off state to the on state during the passage of the wire-frame model over the particular pixel.

Furthermore, the brightness in the moving state which is used when the relation is stored is the quantity of light equal to the brightness change integrated with respect to time.

With this configuration, a difference in the brightness of the wire-frame model between its moving state and stationary state can be reduced to inhibit flicker which would otherwise noticeably occur.

Viewing the present invention as a liquid crystal driving method, the liquid crystal driving method of the present invention is characterized by the steps of storing first brightness information for an input pixel in a frame buffer, and applying, based on second brightness information for the next input pixel and the first brightness information stored in the frame buffer, an offset for making the time integration quantity of a brightness change substantially equal to an ideal light quantity which is brightness in a stationary state to the second brightness information. The steps further include the outputting of the second brightness information to which the offset is applied to a driving circuit for driving an liquid crystal cell, and storing the second brightness information for the input pixel in a frame buffer. This liquid crystal driving method allows the inhibition of flicker by using a simple apparatus without globally determining whether a model is moving or stationary.

The present invention is still further characterized in that the input pixel consists of a plurality of color signals and includes the step of storing the first brightness information in the frame buffer stores the first brightness information for each of the color signals, and the step of applying the offset applies the offset to each of the color signals, thus the brightness of each color of a color image consisting of a plurality of color signals can be corrected individually, allowing more adequate flicker inhibition.

The offset applying step is characterized by the step of reading a pre-stored offset based on the relation between the first and second brightness information and applying the read offset to the second brightness information.

The brightness information at a moving time that is used in a storage operation based on the relation is the quantity of light equal to a brightness change for each color signal integrated with respect to time, therefore correction according to the human visual perception characteristics can be made to address the problems resulting from human visual perception of flicker more properly.

The present invention will be described below with respect to the embodiments shown in the accompanying drawings.

FIG. 1 is a drawing for showing the overall configuration of a liquid crystal display according to an embodiment of the present invention. Reference number 10 denotes a liquid crystal display monitor (LCD monitor) as a liquid crystal display panel, which comprises, for example, a liquid crystal module 30 having a thin-film transistor (TFT) structure and an interface (I/F) board 20 connected to a digital or analog interface to a personal computer (PC) or a workstation (WS) system for supplying a video signal to the liquid crystal module 30. If a notebook PC is used, a system unit (not shown) is integrated with the liquid crystal display monitor 10. If a monitor having a display device separated from its system unit is configured, a system unit (not shown) is attached to the LCD monitor 10 to form a liquid crystal display.

The I/F board 20 comprises a input unit 27 for inputting video data from a host such as a PC/WS system, a com-

7

parison logic 24 for comparing the previous brightness with the next brightness for an input video signal, and an Application-Specific Integrate Circuit (ASIC) 21 including a logic having units such as a supplementary correction portion 25 for performing a supplementary correction. The I/F board 20 also comprises a frame buffer 22 for temporarily storing the input video signal and read-only memory (ROM) 23 containing information needed for the operation of the ASIC 21. The frame buffer 22 stores input video signal value input previously and provides it to the ASIC 21. The ROM 23 includes a graph base table 26 which is required for the supplementary correction in the ASIC 21 and is set for each of R/G/B input color signals. The graph base table 26 contains a brightness level to be output based on a relation between the previous brightness and the next brightness in a table form which will be described later.

The liquid crystal module 30 consists of three main blocks a liquid cell control circuit 31, liquid crystal cell 32, and a backlight 33. The liquid cell control circuit 31 consists of panel drivers such as an LCD controller LSI 34, a source driver (X driver) 35, and a gate driver (Y driver) 36. The LCD controller LSI 34 processes signals received from the I/F board 20 via a video interface and outputs appropriate signals to each ICs of the source driver 35 and gate driver 36 with an appropriate timing. The liquid crystal cell 32 outputs an image using a TFT array arranged in a matrix through the application of a voltage from the source driver 35 and the gate driver 36. The backlight 33 has a fluorescent tube (not shown) located on the back or side of the LC cell 32 for illuminating the cells from the back.

FIG. 2 is a graph showing an example of the brightness of a wire-frame model moving on the LCD panel used in this embodiment. The horizontal scale indicates brightness (%) desired to be provided and the vertical scale indicates brightness (%) actually provided in the Figure. The dashed line 51 indicates the relationship between the desired brightness and actual brightness of the model in a stationary state. The solid line 50 indicates the relationship between the desired brightness and actual brightness of the model in a moving state for an R (red) signal. The alternate long and short two dashes line indicates a G (green) signal in the moving state and the alternate long and short one dash line indicates a B (blue) signal in the moving state. The characteristics in the moving state vary from LCD panel to LCD panel.

Consider the case where a wire-frame model of a halftone, which is 50% brightness, is displayed on the LCD having the characteristics shown in FIG. 2. In the stationary state 51, there is no problem because the 50% brightness of a pixel can be achieved with some frames by driving the liquid crystal with a voltage providing the 50% brightness. On the other hand, in the moving state, as apparent from the line 50 indicating the brightness for the R signal in moving state, actually only 21% brightness can be obtained on the display even by driving the liquid crystal with a voltage equivalent to 50% brightness. To achieve an actual brightness of 50%, the LC must be driven with an voltage equivalent to 83% brightness. That is, an offset of 33% is required to be applied to the input voltage equivalent to 50% brightness. For the B signal, more offset is required. Though the brightness for G signal is somewhat closer to that in the stationary state 51, an offset is still required to be applied.

The relationship between the response characteristic of liquid crystal and flicker will be further discussed below.

FIG. 3 is a table showing the measurements of the response time of liquid crystal at the maximum brightness in

8

five LCD models (models A to E). In a model 61 shown in the first column, the symbol in parentheses indicates the magnitude of flicker at the maximum brightness. Symbol "○" indicates that almost no flicker is visually perceived, symbol "Δ" indicates that flicker level is quite acceptable, and symbol "X" indicates that intensive flicker is perceived. Response rising time 62 is shown in the second column and response falling time 63 is shown in the third column. The light quantity ratio 64 in the forth column represents the ratio of the light quantity of each model to that of an ideal LC. The ratio of the brightness of the drawing in a moving state to that in a stationary state 65 is indicated in the fifth column. The brightness ratio of the drawing in moving state to that in stationary state 65 represents to what degree the brightness of the wire-frame model in the moving state is darkened compared to the brightness of that in the stationary state. It can be seen that while there is almost no reduction in brightness in model A (1.0:1), brightness is reduced in models B (0.8:1), D (0.7:1), and E (0.3:1), on which flicker is perceived.

In terms of whether the response at the maximum brightness is adequately fast, both of the response rising time 62 and the falling time 63 of model A is poor compared to model B. However, when a wire-frame model in an actual CAD application is displayed and moved on these LCD models, flicker in model A is less than in model B. The reason can be explained by considering the characteristics of human visual perception. It is known that the human visual perception is subject to a time integration effect ("Handbook of information technology for television image", 1st edition, pp.39–40, Institute of Television Engineers of Japan, 1990). Brightness of a pixel to the human eye cannot be considered in terms of time required to reach a specified brightness, instead, it should be considered in terms of the quantity of light, that is, a brightness change integrated with respect to time.

FIG. 4 shows the response characteristic of an ideal liquid crystal and indicates the state in which a particular pixel is kept lit up at a brightness of L1, that is in a stationary state. Here, the quantity of light (S) emitted in one frame time (T) is equal to $L1 \times T$ (i.e. brightness×time) as shown in the shaded area in FIG. 4.

FIGS. 5A and 5B show the response characteristic represented by brightness versus time when a pixel stays lit up for one frame time (On→Off) in models A, B shown in FIG. 3. Both of the rising and falling of the response of model A shown in FIG. 5A are gradually. As a result, the quantity of light $(S_A')$ which is almost the same as that in the ideal LC shown in FIG. 4 can be obtained $(S_A'≈S)$. On the other hand, even though the response rising of model B is rapid, the falling is also rapid and steep as shown in FIG. 5B. Accordingly, quantity of light $S_B'$ is only 81% of that of the ideal LC as shown the column "Light quantity ratio" 64 in FIG. 3. Therefore, even though the response time of model B is better than that shown in FIG. 5A, there is a difference in brightness (the brightness in model B is less than model A) due to the difference in light quantity $(S_B'<S_A')$ in stationary/moving states, causing flicker when the wire-frame model is moved on model B. As can be seen from the results for models C, D, E in FIG. 3, displays providing a smaller light quantity ratio 64 provide a smaller brightness ratio 65 of a drawing in a moving state to that in a stationary state, resulting in more flicker.

Although the ultimate solution to these problems is to develop an LC device having an ideal response characteristic as shown in FIG. 4, it will be some time before such a device comes into use. Thus, another solution is required for inhibiting flicker even in LC devices having moderate response time.

**9**

One of the effective solutions may be a method that uses the measurement of a brightness difference between the stationary state **51** and moving state **50** as shown in FIG. 2. That is, a wire-frame model is drawn with an adequate gray scale by taking account of a required offset, which can be read from the graph shown in FIG. 2, during the movement of the wire-frame model.

FIG. 6 shows an effect when brightness is set by taking a required offset into account. If the liquid crystal is driven trying to achieve desired brightness L1 as target, only the quantity of light (S') indicated by reference number **71** can be obtained due to the response time of the liquid crystal described above. The quantity of light (S') **71** is much smaller than the quantity of light (S) provided by the ideal response characteristic shown in FIG. 4. On the other hand, if the liquid crystal is driven with the aim of achieving brightness L2 which is larger than the desired brightness of L1, the quantity of light (S") indicated by reference number **72** can be obtained. By overdriving the LC to brightness L2, the LC reaches L1 in a short response time and the quantity of light (S") **72** can be obtained which is approximately the same as the quantity of light (S), which would be provided with the ideal response characteristic (S"≈S). Here, optimum brightness L2 with respect to L1 can be obtained from the data shown in FIG. 2.

FIG. 7 is a table showing a relation between brightness L1 and L2 and represents the content of the graph base table **26** stored in the ROM **23** shown in FIG. 1. The content of the graph base table **26** shown in FIG. 7 represents a relation between the previous brightness and the next brightness for the LC cell **32** having the characteristic shown in FIG. 2, by taking the effect shown in FIG. 6 into consideration. The previous brightness can be obtained from a video signal input through the ASIC21 shown in FIG. 1 and stored in the frame buffer **22**. The next brightness can be obtained from the next video signal input to the ASIC 21. The graph base table **26** is constructed for each of the R, G, B color signals and the values in the table vary depending on the characteristic of the LC cell **32**.

The first row of the graph base table **26** shown in FIG. 7 indicates brightness output for the next brightness when the previous brightness is 0 and match the readings of the R signal in the moving state line **50** in the graph shown in FIG. 2. For example, if the next brightness is "10", find a value of 10% on the vertical scale and follow the horizontal line from that point to the point at which the line intersects the moving state line **50**, and a value 28%, which is the desired brightness, can be read. When brightness rises from a certain halftone to another halftone, the offset difference is added to the previous brightness. For example, if the previous brightness is 10 and the next brightness is 20, then (48−28)+10= 30. If the next brightness is 30, then (63−28)+10 =45. Similarly, if the previous brightness is 20 and the next brightness is 30, then (63−48)+20=35. If the previous brightness is 30 and the next brightness is 40, then (74−63)+30= 41. In this embodiment, if a difference between the previous brightness and the next brightness is greater than an offset, the next brightness is output without change. For example, if the previous brightness is 10 and the next brightness is 80, then the offset is (96−28)=68. If the previous brightness value, 10, is added to this offset, the result would be 78. In this case, the brightness of 80 is output in order to ensure the next brightness.

On the other hand, when brightness falls from a certain halftone to another halftone, the offset is subtracted from the previous brightness. The example in FIG. 7 shows a case where the characteristic of the LC cell **32** when brightness

**10**

rises (the cell is turned on) is the same as that when the brightness falls (the cell is turned off). In this example, if the previous brightness is 100 and the next brightness is 10, the output value will be 100−98=2. The value "98" is equal to the value when the previous brightness is 0 and the next brightness is 90 in FIG. 7. Similarly, if the previous brightness is 100 and the next brightness is 20, then 100−96=4. If the previous brightness is 90 and the next brightness is 30, then 100−75=25. The value "75" is equal to the value when the previous brightness is 10 and the next brightness is 70 in FIG. 7. Similarly, if the previous brightness is 90 and the next brightness is 40, then 100−70=30. The value "70" is equal to the value when the previous brightness is 10 and the next brightness is 60 in FIG. 7.

While in the table in FIG. 7 the values of previous and next brightness are indicated in increments of 10 for clarity, the table in practice is constructed to store all the combinations which can be read from measurements as shown in FIG. 2. For example, brightness values in increments of 1 may be stored, and any other degree of precision may be chosen according to a given device. While brightness is expressed in percent figures in FIG. 7, the expression of addresses and value stored in the table is not limited to percentage, instead, any appropriate quantized values manageable in a given circuit may be used.

FIG. 8 is a graph showing brightness desired to be provided versus brightness provided actually when brightness falls. The liquid crystal in the example in FIG. 8 has brightness which falls with exhibiting a characteristic similar to the rising characteristic shown in FIG. 2. Accordingly, the line **80** indicating a moving state shown in FIG. 8 is the vertically-flipped curve of the line **50** in a moving state shown in FIG. 2. Tick mark labels on the horizontal scale are also inverted. As can be seen from the graph, when the brightness actually provided is 50%, the brightness desired to be provided is 17%. This matches the value when the previous brightness is 100 and the next brightness is 50 in the table in FIG. 7. That is, the moving state line **80** in FIG. 8 exactly indicates the fall of the previous brightness from 100% in FIG. 7.

While the embodiment has been described with respect to the example which exhibits the same rising (from OFF to ON) and falling (from ON to Off) characteristics, these characteristics may vary depending on the types of liquid crystals. Therefore, the embodiment is configured to accommodate the variation of characteristics by modifying the values in FIG. 7 according to the characteristics of a given liquid crystal.

As described above, the embodiment is configured to store offsets in table form based on the relation between a brightness level in a stationary state and that in a moving state in order to obtain an ideal quantity of light. Thus, even during the movement of a display image on the LCD screen, the image can be displayed virtually the same brightness to the eye as in its stationary state, thereby inhibiting flicker on the screen.

In addition, the embodiment is configured to store the previous brightness level (gray scale value) in the frame buffer **22** and a supplementary correction is made by the ASIC 21 using the data in the graph base table **26** based on the relation between the brightness level of the next video data and the previous brightness level. Thus, whether a wire-frame model is moving or stationary is not required to be determined. Instead, the movement of the model can be determined from a difference between the determined brightness and the previous brightness. As a result, flicker can be inhibited by a simple circuit configuration.

**11**

Furthermore, the embodiment addresses the flicker problem resulting from the response time of the LC panel in recognition of the importance of the quantity of light (brightness×time) to visual perception. As a result, slow response of any types of liquid crystals (such as TN, IPS, and MVA) can be compensated by constructing a look-up table adapted to the characteristics of each liquid crystal. Thus, a flexible liquid crystal control circuit and liquid crystal display which can be widely used can be provided.

As described above, according to the invention, flicker of LCDs which poses a considerable problem in applications such as the display of wire-frame model can be made unperceivable to the user's eye by a simple configuration.

While this invention has been described in terms of certain embodiment thereof, it is not intended that it be limited to the above description, but rather only to the extent set forth in the following claims. The embodiments of the invention in which an exclusive property or privilege is claimed are defined in the appended claims.

We claim:

1. A liquid crystal display, comprising:

an input logic for inputting a video signal from a host;

a storage for storing the previous brightness level of the video signal input through said input logic;

a determinator for determining an output brightness level based on the previous brightness level stored in said storage and the next brightness level of the next video signal input to said input logic so as to make a time integration quantity of a brightness change substantially equal to an ideal quantity of light in a stationary state with respect to the next brightness level; and

a driver for driving an image displaying liquid crystal cell based on said output brightness level determined by said determination logic.

2. The liquid crystal display according to claim 1, wherein said determinator comprising a table for storing a brightness level determined by the characteristic of a liquid crystal cell according to a relation between the previous brightness level and the next brightness level, and determining the output brightness level by modifying said next brightness level based on the brightness level read from said table.

3. The liquid crystal display according to claim 2, wherein:

said video signal input through said input logic comprises a plurality of color signals; and

said table in said determinator is provided for each of said color signals.

4. A liquid crystal display, comprising:

a driver for driving each of the pixels forming an image for each frame to a liquid crystal cell displaying said image;

an input logic for inputting a moving-state video signal which changes from the on state to the off state on transition to a particular frame in said frames and returns to the off state after said particular frame is completed;

a setting logic for setting an offset for making the quantity of light closer to the quantity of light in a stationary state in which said moving-state video signal is continuously turned on for said particular frame;

a generator for applying said offset set by said setting logic to said moving-state video signal input through said input logic to generate an output video signal; and

an output logic for outputting said output video signal generated by said generator to said driver.

**12**

5. The liquid crystal display according to claim 4, wherein said offset set by said setting logic can be determined based on a time integration quantity and the quantity of light in said stationary state, said time integration quantity being a change in brightness in said moving-state vide signal integrated with respect to time.

6. The liquid crystal display according to claim 4, wherein:

said moving-state video signal input through said input logic comprises a plurality of color signals;

said offset set by said setting logic is determined for each of said color signals; and

said generator generates the output video signal for each color signal based on said offset determined for each color signal.

7. A liquid crystal control circuit, having a function for inhibiting flicker caused by a difference in brightness when an input wire-frame model is displayed by liquid crystal cells, comprising:

a storage portion for storing an offset in brightness in a moving state in which said wire-frame model having a predetermined gray scale changes from frame to frame with respect to a particular pixel, with relation to brightness output in a stationary state in which the wire-frame model having the predetermined gray scale is displayed on the particular pixel across a plurality of frames; and

a correction portion for applying said offset stored in said storage portion to the gray scale of the wire-frame model if said input wire-frame model is in a moving state.

8. The liquid crystal control circuit according to claim 7, further comprising a frame buffer for storing the brightness information of said input wire-frame model as the previous brightness,

wherein said storage portion stores said offset as table information based on a relation between said previous brightness stored in said frame buffer and the brightness of the next input wire-frame model.

9. A flicker inhibition method for inhibiting flicker caused by a difference in brightness when an input wire-frame model is displayed by a liquid crystal cell, comprising the steps of:

storing a relation between brightness in a stationary state in which a wire-frame model having a predetermined gray scale is displayed on a particular pixel and a plurality of frames and brightness in a moving state in which the wire-frame model having the predetermined gray scale changes frame to frame with respect to the particular pixel;

applying an offset based on said stored relation to the gray scale of said wire-frame model if said input wire-frame model is in a moving state; and

driving said liquid crystal cell based on said gray scale to which said offset is applied to display said wire-frame model.

10. The flicker inhibition method according to claim 9, wherein said storing step said moving state brightness used for storing said relation is the brightness when said particular pixel changes back to the off state one frame after said particular pixel is driven from the off state to the on state during the passage of the wire-model frame over the particular pixel.

11. The flicker inhibition method according to claim 9, wherein said storing step said brightness in the moving state which is used when said relation is stored is the quantity of light equal to a brightness change integrated with respect to time.

US 6,778,160 B2

13

**12**. A liquid crystal driving method, comprising the steps of:

    storing first brightness information for an input pixel in a frame buffer;

    applying based on second brightness information for the next input pixel and said first brightness information stored in said frame buffer an offset for making the time integration quantity of a brightness change substantially equal to an ideal light quantity which is the brightness in a stationary state to said second brightness information;

    outputting said second brightness information to which said offset is applied to a driving circuit for driving an liquid crystal cell; and

    storing said second brightness information for the input pixel in a frame buffer.

14

**13**. The liquid crystal driving method according to claim 12, wherein:

    said step of storing said first brightness information in the frame buffer stores said first brightness information for each of said color signals and said input pixel comprises a plurality of color signals; and

    said step of applying the offset applies said offset to each of said color signals.

**14**. The liquid crystal driving method according to claim 12, wherein said offset applying step comprises the steps of reading a pre-stored offset based on a relation between said first and second brightness information and applying said read offset to said second brightness information.

\* \* \* \* \*

[Figure 3]

| Model (Magnitude of flicker) | Response rising time | Response falling time | Light quantity ratio (to ideal LC) | Brightness ratio of drawing in moving state to that in stationary state |
|---|---|---|---|---|
| 61 | 62 | 63 | 64 | 65 |
| Model A  (○) | 20. 3ms | 21. 6ms | 1. 02 : 1 | 1. 0 : 1 |
| Model B  (×) | 18. 5ms | 10. 0ms | 0. 81 : 1 | 0. 8 : 1 |
| Model C  (△) | 10. 0ms | 4. 5ms | 0. 85 : 1 | 0. 9 : 1 |
| Model D  (×) | 19. 9ms | 7. 9ms | 0. 73 : 1 | 0. 7 : 1 |
| Model E  (×) | 43. 2ms | 34. 3ms | 0. 53 : 1 | 0. 3 : 1 |

3

DOC NO
REC'D/FILED

**NOTICE TO COUNSEL:**
To enable judges of the court to evaluate possible disqualification or recusal, a nongovernmental corporate party shall file with its first appearance, pleading, petition, motion response, or other request this disclosure statement. Promptly file a supplemental statement upon any change in the information.

CLERK US DIST COUR
WD OF WI

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

AU Optronics Corporation
No. 1, Li-Hsin Road 2
Hsinchu Science Park
Hsinchu, Taiwan, R.O.C.,

Plaintiff,

Case No.

v.

LG.Philips LCD Co., Ltd.
17th Fl., West Tower
LG Twin Towers
20 Yoido-dong
Youngdungpo-gu, Seoul, 150721, South Korea

$$07 \text{ C } 0137 \text{ S}$$

And

LG.Philips LCD America
150 East Brokaw Road
San Jose, CA 95112,

Defendants.

DISCLOSURE STATEMENT

AU Optronics Corporation____makes the following disclosure in compliance with Federal Rule of Civil Procedure 7.1:

1. Does the named party have a parent corporation?

YES _____                                         NO __X__

If the answer is YES, identify below the parent corporation.

2. Is 10% or more of the named party's stock owned by a publicly owned corporation?

YES _____                                         NO __X__

If the answer is YES, identify below the owners:

(Signature of Counsel)                              3/8/07
Rev 7/25/03                                         (Date)

AO440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT'D/FILED

DOC NO

2007 MAR 15 AM 10: 59

_____WESTERN_____  District of _____WISCONSIN_____
THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

**SUMMONS IN A CIVIL ACTION**

AU Optronics Corporation
No. 1, Li-Hsin Road 2
Hsinchu Science Park
Hsinchu, Taiwan, R.O.C.,

       Plaintiff,

         CASE NUMBER:

     v.

LG.Philips LCD Co., Ltd.
17th Fl., West Tower
LG Twin Towers
20 Yoido-dong
Youngdungpo-gu, Seoul, 150721, South Korea
And
LG.Philips LCD America
150 East Brokaw Road
San Jose, CA 95112,

**07 C 0137 S**

       Defendants.

    TO:   LG.Philips LCD America
          150 East Brokaw Road
          San Jose, CA 95112

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

| | | |
|---|---|---|
| MICHAEL BEST & FRIEDRICH LLP | WILSON SONSINI GOODRICH & | WILSON SONSINI GOODRICH & |
| James R. Troupis | ROSATI | ROSATI |
| Michael A. Hughes | Ron E. Shulman | M. Craig Tyler |
| One S. Pinckney Street, Ste. 700 | Steven Baik | Brian D. Range |
| P.O. Box 1806 | 650 Page Mill Road | 8911 Capital of Texas Highway North |
| Madison, WI 53701-1806 | Palo Alto, CA 94304-1050 | Westech 360, Suite 3350 |
| | | Austin, TX 78759-8497 |

an answer to the complaint which is herewith served upon you, within ___20___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**THERESA M. OWENS**

**MAR - 8 2007**

CLERK        Theresa M. Owens        DATE

**MICHELLE C BRIGGS**

(By) DEPUTY CLERK

| ATTORNEY OR PARTY WITHOUT ATTORNEY    (Name and Address) | TELEPHONE NUMBER | FOR COURT USE ONLY |
|---|---|---|
| WILSON, SONISNI, ET AL<br>8911 CAPITAL OF TEXAS HWY<br>NORTH, WESTECH 360, #3350<br>AUSTIN TX 78759<br>ATTORNEY FOR | 512-238-5490<br><br>Ref. No. or File No. | |

| Insert name of court and name of judicial district and branch if any. | |
|---|---|
| | |

| SHORT TITLE OF CASE: | | | |
|---|---|---|---|
| AU OPTRONICS VS LG.PHILIPS LCD CO. LTD | | | |

| INVOICE NO.    DATE: | TIME: | DEP./DIV. | CASE NUMBER: |
|---|---|---|---|
| 060705 | | | 07-C 0137 S |

PROOF OF SERVICE

1.  AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY
    TO THIS ACTION, AND I SERVED COPIES OF THE:

    UNITED STATES DISTRICT COURT SUMMONS & COMPLAINT
    CIVIL CASE COVER SHEET & DISCLOSURE STATEMENT

2.  PARTY SERVED: LG.PHILIPS LCD AMERICA

    ADDRESS: 150 BROKAW RD
             SAN JOSE CA 95112

3.  I SERVED THE PARTY NAMED IN ITEM 2:  LG.PHILIPS LCD AMERICA
    BY LEAVING THE COPIES WITH OR IN THE PRESENCE OF:
    DAVID HAHN
    WHOSE RELATIONSHIP IS: AUTHORIZED TO ACCEPT SERVICE/ACCOUNTS MGR
    (BUSINESS) A PERSON AT LEAST 18 YEARS OF AGE APPARENTLY IN CHARGE AT
    THE OFFICE OR USUAL PLACE OF BUSINESS OF THE PERSON SERVED.
    I INFORMED HIM OR HER OF THE GENERAL NATURE OF THE PAPERS.

    ON: 03/09/07              AT: 12:05PM

    A DECLARATION OF MAILING IS ATTACHED IN COMPLIANCE WITH CCP: 415.20
    TO BE MAILED: A DECLARATION OF MAILING IS ATTACHED.

4.  THE "NOTICE TO THE PERSON SERVED" ON THE SUMMONS WAS COMPLETED AS FOLLOWS:
                ON BEHALF OF: LG.PHILIPS LCD AMERICA
    UNDER: 415.20 CORPORATION

5.  PERSON SERVING: EDWARD F. CAMILLERI              FEE FOR SERVICE:    135.00

| Legal Pursuit, Inc. | d.  Registered California process server |
|---|---|
| 22 West St. John Street | (1) [   ] Employee or [ X ] Independent Contractor |
| San Jose, CA 95113 | (2) Registration No. 922 |
| 408/288-4105 FAX 408-885-9577 | (3) County: SANTA CLARA |
| | (4) Expiration:  02-19-08 |

I declare under penalty of perjury, under the laws of the of California, and of the United States of America that the foregoing is true and correct.

DATE: 03/12/07                          > CONTINUED ON THE NEXT PAGE

                                        SIGNATURE

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | | TELEPHONE NUMBER | | FOR COURT USE ONLY |
|---|---|---|---|---|
| WILSON, SONISNI, ET AL<br>8911 CAPITAL OF TEXAS HWY<br>NORTH, WESTECH 360, #3350<br>AUSTIN TX 78759<br>ATTORNEY FOR | | 512-238-5490<br><br>Ref. No. or File No. | | |
| Insert name of court and name of judicial district and branch if any. | | | | |
| SHORT TITLE OF CASE:<br>AU OPTRONICS VS LG.PHILIPS LCD CO. LTD | | | | |
| INVOICE NO. | DATE: | TIME: | DEP./DIV. | CASE NUMBER: |
| 060705 | | | | 07-C 0137 S |

CONFORMS WITH JUDICIAL COUNCIL FORM #982 (a) (23)

Legal Pursuit, Inc.                    d.  Registered California process server
22 West St. John Street               (1) [  ] Employee or [ X ] Independent Contractor
San Jose, CA 95113                    (2) Registration No. 922
408/288-4105 FAX 408-885-9577         (3) County: SANTA CLARA
                                      (4) Expiration:  02-19-08

I declare under penalty of perjury, under the laws of the of California, and of the United States of America that the foregoing is true and correct.

DATE: 03/12/07                              >
                                         SIGNATURE

**5**

DOC NO
REC'D/FILED

2007 MAR 29 PM 4: 18

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

v.

Case No. 07 C 0137 S

LG. PHILIPS LCD CO., LTD., and

LG. PHILIPS LCD AMERICA,

Defendants.

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that attorneys James D. Peterson and Brady J. Williamson of

Godfrey & Kahn, S.C. and Gaspare J. Bono and R. Tyler Goodwyn, IV of McKenna, Long &

Aldridge LLP, have been retained by and hereby appear on behalf of defendants LG. Philips

LCD Co., Ltd. and LG. Philips LCD America and request that all papers, pleadings,

correspondence and other documents associated with this action be served on them at their

respective offices listed below.

Motions for admission *pro hac vice* of attorneys Gaspare J. Bono and R. Tyler Goodwyn

are filed herewith.

Date: March 29, 2007                Respectfully submitted,

                                    GODFREY & KAHN, S.C.

                          By: _____

                                    James D. Peterson
                                    Brady C. Williamson
                                    One East Main Street, Suite 500
                                    P.O. Box 2719
                                    Madison, WI 53701-2719
                                    Tel: (608) 257-3911
                                    Fax: (608) 257-0609

                                    *of counsel*

                                    Gaspare J. Bono
                                    R. Tyler Goodwyn, IV
                                    McKENNA, LONG & ALDRIDGE LLP
                                    1900 K Street NW
                                    Washington, DC 20006-1108
                                    Tel: (202)  496-7500
                                    Fax: (202)  496-7756

                          *Attorneys for Defendants LG. Philips LCD Co., Ltd. and*
                          *LG. Philips LCD America*

mn310590_1

DOC NO
REC'D/FILED

2007 MAR 29  PM 4: 17
THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2007, true and correct copies of the attached:

- NOTICE OF APPEARANCE;

- LG. PHILIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;

- LG. PHILIPS LCD AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE;

- DECLARATION OF DONG HOON HAN;

- MOTION FOR ADMISSION *PRO HAC VICE* OF ATTORNEY GASPARE J. BONO, DECLARATION OF JAMES D. PETERSON and proposed ORDER; and

- MOTION FOR ADMISSION *PRO HAC VICE* OF ATTORNEY R. TYLER GOODWYN, IV, DECLARATION OF JAMES D. PETERSON and proposed ORDER.

were caused to be served upon the attorney(s) of record at the following addresses by

U.S. Mail:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

Ronda Griser
Ronda Griser

mn310822_1

-14-

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

DOC NO
REC'D/FILED

2007 MAR 29 PM 4: 18

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU OPTRONICS CORPORATION,

Plaintiff,

v.                                          Civil Action No. 07-C-0137-S

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

Defendants.

## LG.PHILIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), Defendant LG.Philips LCD America ("LPLA"), by its attorneys, respectfully moves to dismiss all claims against it for lack of personal jurisdiction and improper venue.

The reason for this motion, as explained more fully in LG.Philips LCD America's Memorandum In Support Of Its Motion To Dismiss For Lack Of Personal Jurisdiction And Improper Venue, is that LPLA does not have sufficient contacts with this forum for personal jurisdiction and venue under Rule 12. LPLA does not have any offices, facilities, or employees in Wisconsin. Further, LPLA is not registered to do business in Wisconsin, nor does it manufacture, use, sell or offer to sell products in Wisconsin. In fact, Plaintiff AU Optronics Corporation ("AUO") does not allege that LPLA has carried out any activities in Wisconsin or assert any basis for personal jurisdiction under the Wisconsin long-arm statute. Accordingly, all claims against LPLA should be dismissed.

Dated:  March 29, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel:  (608) 257-3911
Fax:  (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
Tel:  (202) 496-7500
Fax:  (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

mn310826_1

2

DOC NO
RECD/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN** 2007 MAR 29  PM 4: 18

AU OPTRONICS CORPORATION,

THERESA H. OWENS
CLERK US DIST COURT
WD OF WI

Plaintiff,

v.

Civil Action No. 07-C-0137-S

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

Defendants.

## LG.PHILIPS LCD AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), defendant LG.Philips LCD America

("LPLA") respectfully submits this memorandum in support of its motion to dismiss for lack of

personal jurisdiction and improper venue.[1]

## I.     INTRODUCTION

This case is an outgrowth of pending litigation between the parties. In December 2006,

LG.Philips LCD Co., Ltd. ("LPL") filed a complaint alleging patent infringement against AU

Optronics Corporation ("AUO") and other defendants in the United States District Court for the

District of Delaware. *See* LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corporation et

al., Civ. No. 1:06-cv-726-JJF, filed December 1, 2006. LPL's patents asserted in Delaware are

directed to the design and manufacture of liquid crystal display ("LCD") modules such as are

---

[1] The present motion to dismiss for lack of personal jurisdiction and improper venue is filed on behalf of LPLA. With respect to LPL, pursuant to Fed. R. Civ. P. 4(d), Plaintiff requested waiver of service. In accordance with that rule, LPL waived service. Pursuant to Fed. R. Civ. P. 4(d)(3), LPL's response is due on or before June 11, 2007.

used in portable computers, computer monitors and televisions. AUO requested additional time to answer the Delaware Complaint, and LPL agreed to AUO's requested extension. Only after obtaining LPL's consent to extend its time to respond to the complaint in Delaware did AUO file the present action in Wisconsin against LPL and LPLA. The patents asserted by AUO are also directed to LCD modules.

By instituting a new case instead of filing counterclaims in Delaware, AUO is forum shopping. In its haste to gain a tactical advantage, rather than deal with the merits of its claim in an appropriate forum, AUO overlooked the fact that its filing in Wisconsin is fundamentally flawed because this Court lacks personal jurisdiction over LPLA and venue in Wisconsin is improper. Indeed, tellingly, AUO does not allege that LPLA has carried out activities in Wisconsin or caused injuries in this state. In short, other than a bald assertion of jurisdiction, AUO's complaint fails to identify any basis for personal jurisdiction under the Wisconsin long-arm statute. LPLA does not have sufficient contacts with this forum for personal jurisdiction and venue under Rule 12.

The defect is not merely a matter of pleading. Even were AUO to amend its complaint, this Court would still lack personal jurisdiction over LPLA, and venue would remain improper in this Court. LPLA does not have any offices, facilities, employees, management or registration to do business in Wisconsin. Nor does LPLA manufacture, use, sell or offer to sell any products in Wisconsin. Thus, as a matter of fact as well as pleading, this Court lacks personal jurisdiction over LPLA. Similarly, venue is improper. Accordingly, LPLA respectfully requests that all claims against it be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(3).

## II.    STATEMENT OF FACTS

Defendant LPLA is a U.S. Corporation organized under the laws of the State of California, with its principal place of business in San Jose, California. (Han Declaration,

-2-

attached.) LPLA has offices in California, Texas, North Carolina and Illinois, but does not have an office or employees in Wisconsin. (Han Declaration, ¶¶ 3, 10, 12.) LPLA does not manufacture LCD modules, but instead sells to customers located in states other than Wisconsin. (Han Declaration, ¶ 4.)

LPLA has no business connections or other presence within Wisconsin. (Han Declaration, ¶¶ 5-15.) LPLA is not registered to do business in Wisconsin, nor does LPLA advertise, make, use, sell or offer to sell any products or services in Wisconsin. (Han Declaration, ¶ 5, 8, 9.)

Since January 1, 2004, LPLA has made shipments of LCD modules and parts to various locations in the United States. (Han Declaration, ¶ 18.) LPLA made no shipments whatsoever to Wisconsin in 2004, 2005 or 2007. *Id.* LPLA made a single shipment, in 2006, to Wisconsin. *Id.* The value of this single shipment was $2,100, which equates to only 0.0004% of LPLA's total U.S. shipments since January 1, 2004. *Id.*

LPLA's single shipment to Wisconsin in 2006 was a "drop shipment" of 15 LCD modules sold to its customer All American Semiconductor, Inc. ("All American") in Fremont, California. (Han Declaration, ¶ 19.) The drop shipment was made, at the direction of All American, to a third party in Hartford, Wisconsin. *Id.* Because the shipment was made F.O.B. San Jose, California, All American took title to the LCD modules in California before they were shipped to Wisconsin. *Id.* Consequently, the complete transaction, *i.e.*, sale and delivery, between LPLA and All American occurred in California. *Id.* LPLA sent the final invoice to All American at its Miami corporate headquarters. *Id.*

The other Defendant in this matter is LPL. Defendant LPL is a corporation organized under the laws of the Republic of Korea, having its principal place of business in Seoul, Korea.

LPL designs, develops, manufactures and produces LCD modules, which are a type of flat panel display that are incorporated into portable computers, computer monitors and flat panel televisions. On December 1, 2006, LPL filed in United States District Court for the District of Delaware a suit against AUO and five other defendants seeking injunctive and monetary relief for infringement of three LPL patents. The technology at issue in that case involves the design and manufacture of LCD modules.

AUO is a Taiwanese corporation, having its principal place of business at 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu Taiwan, ROC. (Complaint ¶ 1.) AUO manufactures LCD products in Taiwan and China. AUO filed the present action against LPL and LPLA alleging infringement of three patents. (Complaint ¶¶ 9, 12, 15.) The technology at issue in the asserted patents also involves the design and manufacture of LCD modules.

## III.    ARGUMENT

### A.    There is No Personal Jurisdiction Over LPLA in Wisconsin.

As this Court just explained in another case, personal jurisdiction over a nonresident defendant in a patent infringement suit may be asserted only if the plaintiff can show (1) that the defendant is amenable to jurisdiction under the Wisconsin long-arm statute and (2) that the assertion of jurisdiction will not offend the minimum contacts requirement of the Due Process Clause. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 U.S. Dist. LEXIS 19477 at *7 (W.D. Wis., Mar. 16, 2007) (Shabaz, J.) (citing *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)).

The establishment of personal jurisdiction under Wisconsin's long-arm statute is required before proceeding to a due process analysis. *Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F. Supp. 2d 1098, 1101 (E.D. Wis. 2003). Even though this case will be decided under federal patent law, a federal court in a patent case must determine whether an applicable state "long-

-4-

arm" statute provides for personal jurisdiction. *Graphic Controls Corp. v. Utah Medial Products, Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998).

The due process clause of the U.S. Constitution requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotes omitted). With respect to patent disputes in federal district courts, due process considerations in the personal jurisdiction analysis are controlled by Federal Circuit precedent. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1306 (Fed. Cir. 1999).

### 1.    AUO Cannot Establish Jurisdiction Over LPLA Pursuant to the Wisconsin Long-Arm Statute.

AUO has the burden of demonstrating the existence of personal jurisdiction under Wisconsin's long-arm statute. *See Versatile Plastics*, 247 F. Supp. 2d at 1101. AUO, however, has not made even a *prima facia* showing, and in fact has failed to assert any basis for personal jurisdiction over LPLA under Wisconsin's long-arm statute. (*See* Compl. ¶ 5.) Like the plaintiff's silence in *Versatile Plastics* as to "what, if any, provision of Wisconsin's long-arm statute permits the assertion of jurisdiction," AUO's silence on this issue is fatal for jurisdiction. Indeed, the facts do not support the assertion of jurisdiction over LPLA under *any* provision of Wisconsin's jurisdictional statute. *Cf. Versatile Plastics at* 1101.

Jurisdiction is plainly not appropriate under the "Local Presence or Status" provision of Wisconsin's jurisdictional statute. Under that provision, a non-resident defendant has a sufficient presence within Wisconsin for personal jurisdiction purposes only if that defendant is "engaged in substantial and not isolated activities within the state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d) (emphasis added). LPLA does not meet these requirements. It is incorporated in California and has offices in states other

than Wisconsin. (Han Declaration, ¶¶ 2-3.) In fact, LPLA has no facilities or employees in Wisconsin. (Han Declaration, ¶¶ 10, 12.) It is not registered to do business in Wisconsin and has not advertised in Wisconsin. (Han Declaration, ¶ 8-9.) AUO cannot meet its jurisdictional burden because LPLA has not engaged in activities within Wisconsin, let alone "substantial and not isolated activities." As such, LPLA has no Wisconsin presence on which the plaintiff can base its assertion of personal jurisdiction.

Nor can AUO establish jurisdiction under the "Local Injury; Foreign Act" provision of the Wisconsin jurisdictional statute. That provision permits the exercise of personal jurisdiction only if the defendant either (a) conducts solicitation or service activities in Wisconsin, or (b) goods "processed, serviced or manufactured" by the defendant are used or consumed in Wisconsin. Wis. Stat. § 801.05(4). Neither condition pertains here. Both federal and state courts have held that this provision requires more than an isolated shipment to Wisconsin. *McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779, 782-83 (W.D. Wis. 1969) (holding that this provision of the long-arm statute requires that at the time of the injury more than one item processed, serviced or manufactured by the defendant, was used or consumed within Wisconsin); *Schmitz v. Hunter Mach. Co.*, 89 Wis.2d 388, 399-400, 279 N.W.2d 172, 177 (Wis. 1979) (noting that the Supreme Court of Wisconsin has approved the construction of the venue statute given by the federal district court in *McPhee*).

Here, AUO fails to allege any injury to any person or thing in Wisconsin from an LPLA act in or out of Wisconsin. (See Compl.) Without any operations or employees in Wisconsin (Han Declaration, ¶¶ 3, 7-10, 12), LPLA's limited connection to Wisconsin is a single drop shipment that represents an inconsequential four ten-thousandths of one percent (0.0004%) of the products LPLA shipped within the United States since January 1, 2004. (Han Declaration, ¶18.)

Further, that sales transaction was completed in California and shipped, at the request of LPLA's customer, All American, to a third party in the Eastern District of Wisconsin, after title to the goods had passed from LPLA to All American in California.

This lone shipment to the Eastern District of Wisconsin is insufficient for purposes of asserting personal jurisdiction over LPLA in the Western District of Wisconsin under § 801.05(4). *C.f. McPhee*, 294 F. Supp. at 782-83. In any case, the shipment is not relevant to a proper analysis under section 801.05(4) because the sale was actually made in California and not Wisconsin. *C.f. Zipher* at \*7-8. And it bears repeating that the requirement of a local presence under section 801.05(1)(d) cannot be satisfied by this isolated and insubstantial shipment.

In sum, Plaintiff cannot carry its burden of establishing jurisdiction over LPLA under the Wisconsin long-arm statute.

## 2. AUO Cannot Establish Jurisdiction Over LPLA Consistent with the Requirements of Due Process.

LPLA also lacks the necessary "minimum contacts" with Wisconsin to satisfy the requirements of the Due Process Clause. Due process requires that a defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (internal quotes omitted). Under the minimum contacts test, a defendant may be subject to either general or specific jurisdiction. General jurisdiction may be exercised when the plaintiff can establish that the defendant maintained "continuous and systemic" business contacts in the forum state at the time of injury. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1994). Specific jurisdiction exists only "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8.

-7-

### a. There is No Basis for the Exercise of General Jurisdiction.

AUO has not alleged that LPLA has engaged in the "continuous and systemic" contacts with Wisconsin necessary to establish general jurisdiction, nor do the facts permit AUO to make such an allegation. Recognizing the steep standard for proving general jurisdiction, one district court recently explained in a patent case that:

> it is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.

*Reynolds v. Reynolds Holdings, Inc. et. al. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004). In *Reynolds*, the Court found general jurisdiction did not exist over the defendant that was registered to do business in the forum state, made 0.4% of its sales in the forum state, and had continuing relationships with dealerships in the forum state. *Id.* at 552. LPLA's contacts with Wisconsin are even more insignificant than those held insufficient to support personal jurisdiction over the defendant in *Reynolds*.

Similarly, this Court found it "doubtful" that having three employees within Wisconsin, at least one Wisconsin customer that makes repeat product purchases, and a website accessible from Wisconsin would be sufficient to satisfy Due Process requirements. *Zipher* at *9-10. Here, LPLA has no employees or any operation at all in Wisconsin. (Han Declaration, ¶¶ 4, 12.) In addition, unlike the fifty printers shipped to five Wisconsin customers in the *Zipher* case, here LPLA merely drop shipped to Wisconsin a single shipment in which LPLA sold and transferred title in California. (Han Declaration, ¶ 19.)

On these facts, LPLA should not be found to have engaged in "continuous and systemic" contacts in Wisconsin to support general jurisdiction.

**b.    There is No Basis for the Exercise of Specific Jurisdiction.**

AUO has also failed to allege that its claims against LPLA arise out of any contact LPLA had with Wisconsin. The Federal Circuit has recognized a three-part test for determining when specific jurisdiction exists: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *HollyAnne*, 199 F.3d at 1307-08.

All of these elements weigh decisively against the plaintiff's attempt to assert jurisdiction over LPLA. The first prong cannot be satisfied because AUO has not alleged that LPLA has purposely directed any activities toward Wisconsin residents, nor would the facts allow AUO to make such an argument. Again, LPLA has no business operations or other presence in Wisconsin, nor does it advertise its products in Wisconsin. (Han Declaration, ¶ 8-12.) The single shipment of LPLA products to Wisconsin is not enough to satisfy due process requirements. LPLA shipped the product F.O.B. San Jose, California. Consequently, LPLA's customer took title to the product before it left California and entered Wisconsin. Therefore, LPLA did not avail itself of the privilege of selling its product in Wisconsin. *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509, *6 (E.D. Wis. July 17, 1996) (holding that when a manufacturer ships a product F.O.B. warehouse with title transferring to a distributor before the product entered Wisconsin, the manufacturer does not avail itself of the privilege of selling in Wisconsin for personal jurisdiction purposes).

To satisfy the second prong in a patent infringement case, AUO would have to allege that LPLA, "'without authority makes, uses, offers to sell or sells any patented invention'" in Wisconsin. *HollyAnne*, 199 F.3d at 1308 (quoting 35 U.S.C. 271(a) (1994)). AUO fails to make

such an allegation and the facts cannot support such an allegation. LPLA simply has not made, used, offered to sell or sold any products in Wisconsin. (Han Declaration, ¶¶ 5, 8.)

Third, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus would violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. As this Court has explained, the most important factors to consider under this standard are the "(1) interests of the state involved; and (2) the relative convenience of litigating in that forum." *Consumer Prods. Research & Design, Inc. v. Jensen*, No. 06-C-625-S, 2007 WL 765237, *5 (W.D. Wis. March 9, 2007) (Shabaz J.). Here, Wisconsin has no interest in this litigation. Neither party is from Wisconsin and there is already a case, filed prior to this action, pending in Delaware where all of these issues concerning infringement may be effectively resolved in one forum. This Court's reputation for speed and efficiency could be eroded if it began using its resources for cases such as this where no nexus with Wisconsin exists.

Furthermore, this forum is not convenient to any party. LPLA is a California based company with no offices, employees or agents in Wisconsin. (Han Declaration, ¶¶ 2, 3, 12.) The inventors of the asserted patents are believed to reside in Japan or Taiwan but certainly not in Wisconsin. The Plaintiff, AUO, and Co-Defendant, LPL, are both foreign corporations with no presence in Wisconsin. AUO's decision to file new claims in a district with no nexus to the claims at issue and where none of the parties resides or has any presence at all is nothing but forum shopping.

In sum, specific jurisdiction in Wisconsin consistent with the Constitutional requirements of due process should not be asserted over LPLA and the action against LPLA should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## B.    Venue Is Improper In Wisconsin For LPLA.

This Court has recently advised that the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher* at \*6-7 (emphasis added). Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)). As discussed above, LPLA does not have a regular and established place of business in Wisconsin, nor has LPLA made any infringing sales in Wisconsin. (Han Declaration, ¶ 5, 10.) Therefore, venue is proper only if LPLA "is 'deemed' to reside in the Western District." *Zipher* at \*6.

As this Court further explained, "'[r]esidence for purposes of venue is governed by 28 U.S.C. § 1391(c)," which provides:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

*Zipher* at \*6 (citing 28 U.S.C. § 1391(c)). Therefore, "venue could only be proper in the Western District if [LPLA's] contacts with the Western District are such that, if the district itself were a state, personal jurisdiction would be satisfied." *Id.* at \*7; *see also Van's Supply & Equip., Inc. v. Echo, Inc.*, 711 F. Supp. 497, 500 (W.D. Wis. 1989) (explaining that "a corporation doing business in one district but not incorporated or licensed to do business in the state is suable only in the district in which it does business").

Here, LPLA's single drop shipment to a third party for the benefit of LPLA's customer as described earlier, was to Hartford, Wisconsin, a city that lies in the Eastern, not Western District

-11-

of Wisconsin. Plaintiff has not and cannot allege any connection between LPLA and the

Western District of Wisconsin. Because LPLA has no contacts whatsoever with the Western

District, personal jurisdiction over LPLA would not be available if the Western District were

itself a state. For the same reason, venue is improper under § 1391(b)(1), which also requires

"residence" in the forum district.

Section 1391(b)(2), which provides that personal jurisdiction may be in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred,"

is inapplicable for similar reasons. LPLA has not committed any "events or omissions [in the

Western District of Wisconsin] giving rise to" the claim asserted by AUO, let alone a

"substantial part" of such events. As noted earlier, the single, isolated shipment by LPLA into

Wisconsin occurred in the Eastern, not Western District of Wisconsin.

Finally, because this action could have been brought in another judicial district where

LPLA resides, § 1391(b)(3), which provides for venue if there is no other district where the

action may have been brought, is also inapplicable.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should

also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against

Defendant LG.Philips LCD America.

Dated: March 29, 2007                    Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

DOC NO
REC'D/FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

2007 MAR 29  PM 4: 18

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU OPTRONICS CORPORATION,

　　　　　Plaintiff,

v.

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

　　　　　Defendants.

Civil Action No. 07-C-0137-S

## DECLARATION OF DONG HOON HAN

I, Dong Hoon Han, hereby declare and state:

1.　　I am over the age of 18 and have personal knowledge about the facts described below.

2.　　I am the Accounting Manager for LG.Philips LCD America, Inc. ("LPLA").
LPLA is a corporation organized under the laws of the State of California, with its principal place of business located in San Jose, California. I have examined the records of LPLA from January 1, 2004 to the present. The declarations herein are made based upon my personal knowledge and review of these records.

3.　　LPLA has six offices in the United States. Two of LPLA's offices are located in California, two are in Texas, one is in North Carolina and one is in Illinois. LPLA does not have any offices or employees in Wisconsin.

4.　　LPLA sells Liquid Crystal Display ("LCD") modules, which are a type of flat panel display incorporated into products such as portable computers, computer monitors and televisions. LPLA sells its LCD modules to customers located in states other than Wisconsin. Except for the one shipment detailed below, LPLA does not ship products into Wisconsin.

5. LPLA has not sold products in Wisconsin.

6. LPLA has not entered into any contracts in Wisconsin.

7. LPLA has not done or transacted business in Wisconsin.

8. LPLA has not advertised in Wisconsin.

9. LPLA is not registered to do business in Wisconsin.

10. LPLA does not maintain an office or other business facility in Wisconsin.

11. LPLA does not have a mailing address or telephone number in Wisconsin.

12. LPLA does not have personnel or agents in Wisconsin.

13. LPLA does not have subsidiaries or affiliates in Wisconsin.

14. LPLA does not maintain a bank account in Wisconsin.

15. LPLA does not own, use or possess any real property situated in Wisconsin nor

has LPLA acquired possession of or control over any asset or thing of value in Wisconsin.

16. LPLA has not engaged in any persistent course of conduct in Wisconsin.

17. LPLA has not committed any torts in Wisconsin.

18. Since January 1, 2004, LPLA has made product shipments to various locations in

the United States. In 2004, 2005 and 2007, LPLA did not make any shipments to Wisconsin. In

2006, LPLA made only one shipment to Wisconsin. The value of this single shipment was

$2,100 which equates to 0.0004% of LPLA's total U.S. shipments since January 1, 2004.

19. The one shipment in 2006 to Wisconsin was a drop shipment of 15 LCD modules

sold for $2,100 total to LPLA's customer, All American Semiconductor, Inc. ("All American"),

in Fremont California. At the request of All American, LPLA had the modules shipped to a third

party in Hartford, Wisconsin. The shipment was made F.O.B. Shipping Point in San Jose

2

California. Consequently, All American took title to the products in California before they were shipped to Wisconsin; and the sales transaction took place and was completed between LPLA and All American in California. The invoice for $2,100 was sent to All American Semiconductor at its Miami corporate office. This drop shipment was LPLA's only shipment to Wisconsin since January 1, 2004. Attached as Exhibit 1 is a true and correct copy of LPLA's invoice, dated October 31, 2006, to All American Semiconductor, Inc. for this shipment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2007.

Dong Hoon Han

3

**9**

DOC NO
REC'D/FILED
2007 MAR 29  PM 4: 18

THERESA H. OWENS
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

        Plaintiff,

      v.                      Civil Action No. 07-C-0137-S

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

        Defendants.

---

## MOTION FOR ADMISSION *PRO HAC VICE* OF
## ATTORNEY GASPARE J. BONO

---

Godfrey & Kahn, S.C., counsel for defendant Markem Corporation, requests that this

Court enter an order allowing its co-counsel, Gaspare J. Bono of McKenna, Long & Aldridge

LLP, to be admitted *pro hac vice* in the above-captioned action.

This motion is based upon the Declaration of James D. Peterson submitted herewith.

Dated:  March 29, 2007                   GODFREY & KAHN, S.C.

                                            _____

                                              James D. Peterson
                                            Godfrey & Kahn, S.C.
                                            One East Main Street
                                            P.O. Box 2719
                                            Madison, WI 53701-2719
                                            Phone:  608.257.3911
                                            Fax:     608.257.0609

                                            **Attorneys for Defendants LG. Philips LCD**
                                            **Co., Ltd and LG. Philips LCD America**

**10**

DOC NO
REC'D/FILED
2007 MAR 29  PM 4: 18
THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

v.                                              Civil Action No. 07-C-0137-S

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

Defendants.

---

### MOTION FOR ADMISSION *PRO HAC VICE* OF
### ATTORNEY R. TYLER GOODWYN, IV

---

Godfrey & Kahn, S.C., counsel for defendants LG. Philips LCD Co., Ltd. and LG.

Philips LCD America, requests that this Court enter an order allowing its co-counsel, R. Tyler

Goodwyn, IV, of McKenna, Long & Aldridge LLP, to be admitted *pro hac vice* in the above-

captioned action.

This motion is based upon the Declaration of James D. Peterson submitted herewith.

Dated:  March 29, 2007                 GODFREY & KAHN, S.C.

James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
P.O. Box 2719
Madison, WI 53701-2719
Phone:  608.257.3911
Fax:     608.257.0609

**Attorneys for Defendants LG. Philips LCD
Co., Ltd and LG. Philips LCD America**

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

2007 MAR 29  PM 4: 18

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU OPTRONICS CORPORATION,

Plaintiff,

Case No. 07 C 0137 S

v.

LG. PHILIPS LCD CO., LTD., and
LG. PHILIPS LCD AMERICA,

Defendants.

---

## DECLARATION OF JAMES D. PETERSON

---

James D. Peterson, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am an attorney with Godfrey & Kahn, S.C., and am co-counsel for defendants

LG. Philips LCD Co., Ltd. and LG. Philips LCD America.

2.    The defendants are also represented by attorney Gaspare J. Bono of McKenna,

Long & Aldridge, 1900 K Street NW, Washington, D.C. 20006-1108.

3.    Based upon personal knowledge and information, Attorney Gaspare J. Bono was

first admitted to the practice of law in Washington, D.C. on November 6, 1978.  He is currently

admitted to practice before the highest court in Washington, D.C.  He is also admitted to practice

before the U.S. Supreme Court, District of Columbia Court of Appeals, U.S. District Court for

the District of Maryland, U.S. District Court for the District of Columbia and New York Court of

Appeals.  His law license has never been suspended or revoked by any jurisdiction.

4.    This Affidavit is made in support of the Motion for Admission *Pro Hac Vice* to

allow Attorney Gaspare J. Bono to appear in this matter.

I declare under the penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Dated: March 29, 2007

James D. Peterson

*12*

DOC NO
REC'D/FILED

2007 MAR 29 PM 4: 18

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

v.

Case No. 07 C 0137 S

LG. PHILIPS LCD CO., LTD., and
LG. PHILIPS LCD AMERICA,

Defendants.

---

## DECLARATION OF JAMES D. PETERSON

---

James D. Peterson, pursuant to 28 U.S.C. § 1746, declares as follows:

1.     I am an attorney with Godfrey & Kahn, S.C., and am co-counsel for defendants

LG. Philips LCD Co., Ltd. and LG. Philips LCD America.

2.     The defendants are also represented by attorney R. Tyler Goodwyn, IV, of

McKenna, Long & Aldridge, 1900 K Street NW, Washington, D.C. 20006-1108.

3.     Based upon personal knowledge and information, Attorney R. Tyler Goodwyn,

IV, was first admitted to the practice of law in Washington, D.C. on October 2, 2004. He is

currently admitted to practice before the highest court in Washington, D.C. He is also admitted

to practice before the U.S. Supreme Court, U.S. Court of Appeals for the Federal Circuit and

Virginia Supreme Court. His law license has never been suspended or revoked by any

jurisdiction.

4.     This Affidavit is made in support of the Motion for Admission *Pro Hac Vice* to

allow Attorney R. Tyler Goodwyn, IV, to appear in this matter.

I declare under the penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Dated: March 29, 2007

James D. Peterson

DOCKET #

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

APR - 2 2007

FILED
THERESA M. OWENS CLERK

CASE#

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

Case No. 07 C 0137 S

v.

LG. PHILIPS LCD CO., LTD., and
LG. PHILIPS LCD AMERICA,

Defendants.

## ORDER

Upon consideration of the Motion for Admission *Pro Hac Vice* of Attorney Gaspare J.

Bono to represent defendants, LG. Philips LCD Co., Ltd. and LG. Philips LCD America in this

action,

IT IS HEREBY ORDERED, that the request is granted.

Date: 3/30/07

_____
United States District Judge

Copy of this document has been
provided to:
this _____ day of _____ 20__
by _____
M. Hardin, Secretary to
Judge John C. Shabaz

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

DOCKET # 14

AU OPTRONICS CORPORATION,

      Plaintiff,

v.

LG. PHILIPS LCD CO., LTD., and
LG. PHILIPS LCD AMERICA,

      Defendants.

Case No. 07 C 0137 S

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

APR - 2 2007

FILED
THERESA M. OWENS CLERK

CASE#

---

## ORDER

---

Upon consideration of the Motion for Admission *Pro Hac Vice* of Attorney R. Tyler

Goodwyn, IV, to represent defendants, LG. Philips LCD Co., Ltd. and LG. Philips LCD America

in this action,

IT IS HEREBY ORDERED, that the request is granted.

Date: 3/30/07

_____
United States District Judge

Copy of this document has been
provided to: Hills Godwyn,
Reinhart ...
this ___ day of May 20 ...
by ...
M. Hardin, Secretary to
Judge John C. Shabaz

15

DOC NO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

2007 APR -3 AM 9: 47

THERESA M. OWENS
CLERK US DIST COURT

| | |
|---|---|
| AU Optronics Corporation, | ) |
| | ) |
| *Plaintiff,* | ) Civil Action No. 07-C-0137-S |
| | ) |
| vs. | ) |
| | ) |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

---

## PLAINTIFF'S MOTION FOR ADMISSION PRO HAC VICE

---

Plaintiff, AU Optronics Corporation, hereby moves for an order permitting the following

attorneys to appear as counsel *pro hac vice* in the above-captioned matter:

M. Craig Tyler
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759-8497

Brian D. Range
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759-8497

Brian A. Dietzel
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759-8497

Jerry Chen
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050

Ron E. Shulman
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050

Steven S. Baik
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050

In support of this motion Plaintiff submits the Declaration of James R. Troupis in Support

of Plaintiff's Motion for Admission Pro Hac Vice.

Dated:  April 3, 2007                          Respectfully submitted,

                                               James R. Troupis
                                               Michael A. Hughes
                                               MICHAEL BEST & FRIEDRICH LLP
                                               One South Pinckney Street, Suite 700
                                               P.O. Box 1806
                                               Madison, WI  53701-1806
                                               Ph:  (608) 257-3501
                                               Fax:  (608) 283-2275

DOC NO
**IN THE UNITED STATES DISTRICT COURT** REC'D/FILED
**FOR THE WESTERN DISTRICT OF WISCONSIN** 2007 APR -3  AM 9: 47

AU Optronics Corporation,                    )
                                             )        THERESA M. OWENS
        *Plaintiff*,                         )        CLERK US DIST COURT
                                             )            WD OF WI
                                             )   Civil Action No..: 07-C-0137
        vs.                                  )
                                             )
LG.Philips LCD Co., Ltd.                     )
and                                          )
LG.Philips LCD America,                      )
                                             )
        *Defendants*.                        )
                                             )
                                             )

## CERTIFICATE OF SERVICE

I, Jennifer A. Sornson, hereby certify that true and accurate copies of the following:

1.  Plaintiff's Motion for Admission Pro Hac Vice
2.  Declaration of James R. Troupis in Support of Plaintiff's Motion for Admission Pro Hac Vice
3.  (Proposed) Order Granting Plaintiff's Motion for Admission Pro Hac Vice
4.  Certificate of Service

were delivered this 3rd day of April, 2007, via first class mail to:

Honorable John C. Shabaz                James D. Peterson
U.S. District Court, Western District   Bradley C. Williamson
U.S. Courthouse                         Godfrey & Kahn, S.C.
120 North Henry Street                  One East Main Street, Suite 500
Madison, WI 53703                       P.O. Box 2719
                                        Madison, WI 53701-2719

Gaspare J. Bono                         Ron E. Shulman
R. Tyler Goodwyn, IV                    Steven Biak
McKenna, Long & Aldridge LLP            Wilson Sonsini Goodrich & Rosati
1900 K Street NW                        650 Page Mill Road
Washington, DC 20006-1108               Palo Alto, CA 94304-1050

1

M. Craig Tyler
Brian D. Range
Brian A. Dietzel
8911 Capital of Texas Highway North
Austin, TX 78759-8497

Jennifer A. Bornson

Q:\CLIENT\022628\0001\B1025604.0

2

DOCKET #

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

APR - 3 2007

AU Optronics Corporation,

       *Plaintiff*,

    vs.

LG.Philips LCD Co., Ltd.
and
LG.Philips LCD America,

       *Defendants*.

Civil Action No. _____THERESA M OWENS CLERK_____
CASE#

## DECLARATION OF JAMES R. TROUPIS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR ADMISSION PRO HAC VICE

    I, James R. Troupis, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

    1.    I am an attorney with the law firm of Michael Best & Friedrich LLP, duly licensed to practice in the United States District Court for the Western District of Wisconsin and I am one of the attorneys representing the Plaintiff in this action.

    2.    I make this declaration in support of the admission *pro hac vice* of M. Craig Tyler to appear on behalf of Plaintiff, AU Optronics Corporation, in the above-captioned action before this Court, pursuant to Local Rule 1(C) of the United States District Court for the Western District of Wisconsin.

    3.    The following is information about each of the persons noted:

    A.    <u>M. Craig Tyler</u> is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Austin, Texas. Mr. Tyler is admitted, practicing, and in good standing as a member of the State Bar of Texas, U.S. District Court for the Eastern District of Texas, U.S. District Court for the

Northern District of Texas, U.S. District Court for the Southern District of Texas, U.S. District Court for the Western District of Texas, U.S. Court of Appeals for the Federal Circuit, and U.S. Patent and Trademark Office. Mr. Tyler received his law degree from the University of Texas School of Law. I believe Attorney Tyler is qualified to be admitted to practice before this Court.

B.    Brian D. Range is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Austin, Texas. Mr. Range is admitted, practicing, and in good standing as a member of the State Bar of Texas, U.S. District Court for the Eastern District of Texas, U.S. District Court for the Northern District of Texas, U.S. District Court for the Southern District of Texas, U.S. District Court for the Western District of Texas, and U.S. Patent and Trademark Office. Mr. Range received his law degree from the Harvard Law School. I believe Attorney Range is qualified to be admitted to practice before this Court.

C.    Brian A. Dietzel is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Austin, Texas. Mr. Dietzel is admitted, practicing, and in good standing as a member of the State Bar of Texas, U.S. District Court for the Eastern District of Texas, and U.S. Patent and Trademark Office. Mr. Dietzel received his law degree from the University of Houston Law Center. I believe Attorney Dietzel is qualified to be admitted to practice before this Court.

D.    Jerry Chen is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Palo Alto, California. Mr. Chen is admitted, practicing, and in good standing as a member of the State Bar of California, U.S. District Court for the Central District of California, U.S. District Court for the Northern District of California. Mr. Chen received his law degree from the Georgetown University Law Center. I believe Attorney Chen is qualified to be admitted to practice before this Court.

2

E.      Ron E. Shulman is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Palo Alto, California. Mr. Shulman is admitted, practicing, and in good standing as a member of the State Bar of California, the State Bar of New York, U.S. District Court for the Northern District of California, U.S. District Court for the Southern District of California, U.S. District Court for the Southern District of New York, U.S. District Court for the Eastern District of New York, U.S. Court of Appeals for the Federal Circuit, U.S. Court of Appeals for the Second Circuit, and the United States Supreme Court. Mr. Shulman received his law degree from Rutgers Law School. I believe Attorney Shulman is qualified to be admitted to practice before this Court.

F.      Steven S. Baik is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Palo Alto, California. Mr. Baik is admitted, practicing, and in good standing as a member of the State Bar of California, U.S. District Court for the Central District of California, U.S. District Court for the Northern District of California, U.S. District Court for the Southern District of California, U.S. Court of Appeals for the Federal Circuit, U.S. Court of Appeals for the Ninth Circuit, and U.S. Patent and Trademark Office. Mr. Baik received his law degree from the University of California, Hastings College of Law. I believe Attorney Baik is qualified to be admitted to practice before this Court.

Dated this 3rd day of April, 2007.

James R. Troupis

3

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

2007 APR -3  PM 3: 31

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU OPTRONICS CORPORATION,

      Plaintiff,

v.

                              Civil Action No. 07 C 0137 S

LG.PHILIPS LCD CO., LTD., and,
LG.PHILIPS LCD AMERICA, INC.,

      Defendants.

---

## CORPORATE DISCLOSURE STATEMENT
## OF LG.PHILIPS LCD CO., LTD.

---

Pursuant to Fed. R. Civ. P. 7.1, Defendant LG.Philips LCD Co., Ltd. provides the

following information:

    1.    Does the named party have a parent corporation?

        YES ☐    NO ☑

        If the answer is YES, identify below the parent corporation:

    2.    Is 10% or more of the named party's stock owned by a publicly owned

corporation?

        Yes ☑    No ☐

        If the answer is YES, identify below the owners:

            LG Electronics, Inc.
            Koninklijke Philips Electronics N.V.

Date: April 3, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

By: _____

James D. Peterson
Brady C. Williamson
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Tel: (608) 257-3911
Fax: (608) 257-0609

Gaspare J. Bono
R. Tyler Goodwyn, IV
McKENNA, LONG & ALDRIDGE LLP
1900 K Street NW
Washington, DC 20006-1108
Tel: (202)  496-7500
Fax: (202)  496-7756

*Attorneys for Defendant LG.Philips LCD Co.,
Ltd.*

mn311254_1

2

DOC NO
REC'D/FILED

## **CERTIFICATE OF SERVICE**

2007 APR -3 PM 3:31

I hereby certify that on April 3, 2007, true and correct copies of the attached:

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

- CORPORATE DISCLOSURE STATEMENT OF LG.PHILIPS LCD CO., LTD.; and

- CORPORATE DISCLOSURE STATEMENT OF LG.PHILIPS LCD AMERICA, INC.

were caused to be served upon the attorney(s) of record at the following addresses by U.S. Mail:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

*Ronda Griser*

Ronda Griser

mn311254_1

4

18

DOC NO
REC'D/FILED
2007 APR -3  PM 3: 31
THERESA H. OWENS
CLERK US DIST COURT
WD OF WI

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

AU OPTRONICS CORPORATION,

       Plaintiff,

v.                                                    Civil Action No. 07 C 0137 S

LG.PHILIPS LCD CO., LTD., and,
LG.PHILIPS LCD AMERICA, INC.,

       Defendants.

---

## CORPORATE DISCLOSURE STATEMENT
## OF LG.PHILIPS LCD AMERICA, INC.

---

Pursuant to Fed. R. Civ. P. 7.1, Defendant LG.Philips LCD America, Inc. provides the

following information:

1.     Does the named party have a parent corporation?

     YES ☑     NO ☐

     If the answer is YES, identify below the parent corporation:

     LG.Philips LCD Co., Ltd.

2.     Is 10% or more of the named party's stock owned by a publicly owned

corporation?

     Yes ☑     No ☐

     If the answer is YES, identify below the owners:

     LG.Philips LCD Co., Ltd.

1

Date: April 3, 2007                    Respectfully submitted,

GODFREY & KAHN, S.C.

By: _____

James D. Peterson
Brady C. Williamson
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Tel: (608) 257-3911
Fax: (608) 257-0609

Gaspare J. Bono
R. Tyler Goodwyn, IV
McKENNA, LONG & ALDRIDGE LLP
1900 K Street NW
Washington, DC 20006-1108
Tel: (202)   496-7500
Fax: (202)   496-7756

*Attorneys for Defendant LG.Philips LCD
America, Inc.*

mn311292_1

2

DOCKET #
U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

APR - 4 2007

THERESA M. OWENS CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AU Optronics Corporation, | ) |
| | ) |
| *Plaintiff,* | ) Civil Action No..: 07-C-0137-S |
| | ) |
| vs. | ) |
| | ) |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## (PROPOSED)
## ORDER GRANTING PLAINTIFF'S
## MOTION FOR ADMISSION PRO HAC VICE

The Motion by Plaintiff, AU Optronics Corporation, for the admission *pro hac vice* of

Attorneys M. Craig Tyler, Brian D. Range and Brian A. Dietzel, Jerry Chen, Ron E. Shulman,

and Steven S. Baik is hereby GRANTED.

Dated this 3RD day of March, 2007.

JOHN C. SHABAZ
United States District Judge

Q:\CLIENT\022628\0001\B1025984.1

Copy of this document has been
provided to:
this 3 day of APR, 20 07
by
**M. Hardin, Secretary to**
**Judge John C. Shabaz**

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN** 16  PM 3: 59

AU Optronics Corporation,                    )    Civil Action No. 07 C 0137 SLNS
                                             )         CLERK US DIST COURT
            *Plaintiff,*                     )    Judge John C. Shabaz OF WI
                                             )
vs.                                          )
                                             )
LG.Philips LCD Co., Ltd. and                 )
LG.Philips LCD America,                      )
                                             )
            *Defendants.*                    )
                                             )

---

## PLAINTIFF AU OPTRONICS' PRELIMINARY PRETRIAL CONFERENCE REPORT

NOW COMES Plaintiff AU Optronics Corporation ("AUO"), by its counsel

James R. Troupis of Michael Best & Friedrich LLP, and Wilson, Sonsini, Goodrich &

Rosati, and submits the following Preliminary Pretrial Report for the Telephone

Preliminary Pretrial Conference set for 8:30 a.m. on April 19, 2007:

1.    Nature of the Case:

AUO is headquartered in Taiwan, and manufactures and sells liquid crystal

display (LCD) modules for use in televisions, computer monitors, cellular telephones and

many other devices. As a leading manufacturer of LCDs, AUO holds a large number

patents in this area of technology in many countries, including many patents in the United

States. AUO competes with Korean-based LG. Philips LCD Co., Ltd ("LPL") and its

United States sales and distribution subsidiary, LG. Philips LCD American ("LPLA").

AUO filed this case on March 8, 2007. Its complaint alleges that LCD devices

made, used, and sold by LPL and LPLA infringe three AUO patents. AUO's Patent No.

6,689,629 ("the '629 patent" or the "dummy patterns" patent) is directed at the use of

"dummy" wiring patterns in the LCD to reduce certain LCD manufacturing problems.

AUO's Patent No. 6,778,160 ("the '160 patent" or the "overdrive" patent) is directed at a LCD devices using an "overdrive" technique to enhance image quality for moving objects and other visual changes in video. Finally, AUO's Patent No. 6,976,781 ("the '781 patent" or the "hooks and holes" pattern) is directed at a novel connection configuration of "hooks and holes" for use in assembling LCD devices.

2.    Issues of Jurisdiction or Venue

**LPL:**  On March 12, 2007, AUO attempted to serve LPL – a company publicly traded on the New York Stock Exchange – at the address designated for "Service of Process" in LPL's U. S. Securities and Exchange Commission filings; this is also LPLA's address. The personnel at this address refused service, and literally threw the complaint back at the process server. Meanwhile, LPL's United States counsel (the same counsel has already appeared for LPLA) asserted that service of LPL was not proper at this address. Rather than burden the Court with this dispute or proceeding through the slow and cumbersome Hague Convention procedures, AUO asked LPL to agree to waive service of process pursuant to Fed. R. Civ. P. 4(a), and LPL accepted the offer. Based on the timing provided in Fed. R. Civ. P. 4(d)(2)(G)(3), LPL has until June 11, 2007 to respond to AUO's complaint. LPL has not informed AUO whether it will participate in the case earlier than this June 11th answer date or whether it will file any type of motion to dismiss or transfer when it does appear.

**LPLA**: AUO served LPLA on March 9, 2007. LPLA filed a motion to dismiss on March 29, 2007. AUO will file its opposition to LPLA's motion on April 18, 2007.

3.    Amendments to Pleadings: During a Rule 26 conference among the parties, LPL's counsel have indicated they may add three or more patents to this case as

counterclaims when LPL appears in the case. If LPL does so, AUO will answer LPL's counterclaims and may also amend its causes of action to include declaratory judgment claims of non-infringement, invalidity, and/or unenforceability.

4.    Pending or Contemplated Motions: AUO may file motions for summary judgment of infringement and/or validity with respect to its three patents. If LPL adds patent counterclaims, AUO may file motions for summary judgment of non-infringement and/or invalidity.

Due to the nature of AUO's '160 "overdrive" patent invention, AUO may seek the Court's permission to present video evidence at trial in order to demonstrate the utility and value of the patented invention.

AUO has provided LPLA with a proposed Protective Order and will ask that the Court enter that order once it is finalized.

If necessary, AUO is likely to request letters rogatory from the Court in order to seek international discovery from third parties.

5.    Date for Completion of Discovery: The parties jointly propose that fact and expert discovery close on December 7, 2007. The parties continue to confer with regard to appropriate limits on discovery and an appropriate discovery plan. If an agreement as to appropriate discovery limits cannot be reached and, if necessary, AUO may seek leave from the Court to exceed some of the discovery limitations set by the Federal Rules of Civil Procedure (such as number of depositions).

7.    Date for Final Pretrial Conference and Trial: The parties jointly propose a final pre-trial conference on December 18, 2007 and trial commencing on January 7,

2008. If LPL brings three or more patent counterclaims, the parties expect that trial will require eight days.

8.    Other Dates:  The parties jointly propose that summary judgment motions be filed no later than November 8, 2007. The parties propose that opening expert reports for issues on which a party has a burden of proof be due October 9, 2007 and rebuttal expert reports be due November 8, 2007.

DATED this 16th day of April, 2007

Respectfully submitted,

MICHAEL BEST & FRIEDRICH LLP

By: 
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

ATTORNEYS FOR PLAINTIFF
AU OPTRONICS CORPORATION

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and accurate copies of the

foregoing Plaintiff's Preliminary Pretrial Conference Report was served on the

following parties to this action on this the 16th day of April, 2007:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

Q:\CLIENT\022628\0001\B1038261.1

DOC NO
REC'D/FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN 16  PM 3: 59

AU Optronics Corporation, )  Civil Action No.: 07 C 0137 SENS
CLERK US DIST COURT
*Plaintiff,* )  Judge John C. Shabaz OF WI

)

vs. )

)

LG.Philips LCD Co., Ltd. and )
LG.Philips LCD America, )

)

*Defendants.* )

)

## PLAINTIFF AU OPTRONICS' PRELIMINARY PRETRIAL CONFERENCE REPORT

NOW COMES Plaintiff AU Optronics Corporation ("AUO"), by its counsel

James R. Troupis of Michael Best & Friedrich LLP, and Wilson, Sonsini, Goodrich &

Rosati, and submits the following Preliminary Pretrial Report for the Telephone

Preliminary Pretrial Conference set for 8:30 a.m. on April 19, 2007:

1.    Nature of the Case:

AUO is headquartered in Taiwan, and manufactures and sells liquid crystal

display (LCD) modules for use in televisions, computer monitors, cellular telephones and

many other devices. As a leading manufacturer of LCDs, AUO holds a large number

patents in this area of technology in many countries, including many patents in the United

States. AUO competes with Korean-based LG. Philips LCD Co., Ltd ("LPL") and its

United States sales and distribution subsidiary, LG. Philips LCD American ("LPLA").

AUO filed this case on March 8, 2007. Its complaint alleges that LCD devices

made, used, and sold by LPL and LPLA infringe three AUO patents. AUO's Patent No.

6,689,629 ("the '629 patent" or the "dummy patterns" patent) is directed at the use of

"dummy" wiring patterns in the LCD to reduce certain LCD manufacturing problems.

PLAINTIFF'S PRELIMINARY PRETRIAL          -1-
CONFERENCE REPORT

AUO's Patent No. 6,778,160 ("the '160 patent" or the "overdrive" patent) is directed at a LCD devices using an "overdrive" technique to enhance image quality for moving objects and other visual changes in video. Finally, AUO's Patent No. 6,976,781 ("the '781 patent" or the "hooks and holes" pattern) is directed at a novel connection configuration of "hooks and holes" for use in assembling LCD devices.

2.    Issues of Jurisdiction or Venue

**LPL:** On March 12, 2007, AUO attempted to serve LPL – a company publicly traded on the New York Stock Exchange – at the address designated for "Service of Process" in LPL's U. S. Securities and Exchange Commission filings; this is also LPLA's address. The personnel at this address refused service, and literally threw the complaint back at the process server. Meanwhile, LPL's United States counsel (the same counsel has already appeared for LPLA) asserted that service of LPL was not proper at this address. Rather than burden the Court with this dispute or proceeding through the slow and cumbersome Hague Convention procedures, AUO asked LPL to agree to waive service of process pursuant to Fed. R. Civ. P. 4(a), and LPL accepted the offer. Based on the timing provided in Fed. R. Civ. P. 4(d)(2)(G)(3), LPL has until June 11, 2007 to respond to AUO's complaint. LPL has not informed AUO whether it will participate in the case earlier than this June 11th answer date or whether it will file any type of motion to dismiss or transfer when it does appear.

**LPLA**: AUO served LPLA on March 9, 2007. LPLA filed a motion to dismiss on March 29, 2007. AUO will file its opposition to LPLA's motion on April 18, 2007.

3.    Amendments to Pleadings: During a Rule 26 conference among the parties, LPL's counsel have indicated they may add three or more patents to this case as

counterclaims when LPL appears in the case. If LPL does so, AUO will answer LPL's counterclaims and may also amend its causes of action to include declaratory judgment claims of non-infringement, invalidity, and/or unenforceability.

4.    Pending or Contemplated Motions:  AUO may file motions for summary judgment of infringement and/or validity with respect to its three patents. If LPL adds patent counterclaims, AUO may file motions for summary judgment of non-infringement and/or invalidity.

Due to the nature of AUO's '160 "overdrive" patent invention, AUO may seek the Court's permission to present video evidence at trial in order to demonstrate the utility and value of the patented invention.

AUO has provided LPLA with a proposed Protective Order and will ask that the Court enter that order once it is finalized.

If necessary, AUO is likely to request letters rogatory from the Court in order to seek international discovery from third parties.

5.    Date for Completion of Discovery:  The parties jointly propose that fact and expert discovery close on December 7, 2007. The parties continue to confer with regard to appropriate limits on discovery and an appropriate discovery plan. If an agreement as to appropriate discovery limits cannot be reached and, if necessary, AUO may seek leave from the Court to exceed some of the discovery limitations set by the Federal Rules of Civil Procedure (such as number of depositions).

7.    Date for Final Pretrial Conference and Trial:  The parties jointly propose a final pre-trial conference on December 18, 2007 and trial commencing on January 7,

2008. If LPL brings three or more patent counterclaims, the parties expect that trial will require eight days.

8.    Other Dates: The parties jointly propose that summary judgment motions be filed no later than November 8, 2007. The parties propose that opening expert reports for issues on which a party has a burden of proof be due October 9, 2007 and rebuttal expert reports be due November 8, 2007.

DATED this 16th day of April, 2007

Respectfully submitted,

MICHAEL BEST & FRIEDRICH LLP

By: _____
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

ATTORNEYS FOR PLAINTIFF
AU OPTRONICS CORPORATION

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and accurate copies of the

foregoing Plaintiff's Preliminary Pretrial Conference Report was served on the

following parties to this action on this the 16th day of April, 2007:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

Q:\CLIENT\022628\0001\B1038261.1

21

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DOC NO
REC'D/FILED

2007 APR 16  PM 4: 03

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

```
AU OPTRONICS CORPORATION,          )
                                   )
              Plaintiff,           )
                                   )
       v.                          )    Civil Action No. 07-C-0137-S
                                   )
LG.PHILIPS LCD CO., LTD. and       )
LG.PHILIPS LCD AMERICA,            )
                                   )
              Defendants.          )
                                   )
```

## LG.PHILIPS LCD CO., LTD'S AND
## LG.PHILIPS LCD AMERICA'S
## PRELIMINARY PRETRIAL REPORT

Pursuant to this Court's Order Scheduling Preliminary Pre-Trial Conference and Fed. R.

Civ. P. 26(a)(1) and 26(f), counsel for defendants LG.Philips LCD Co., Ltd. ("LPL") and

LG.Philips LCD America ("LPLA") hereby submit defendants' Preliminary Pretrial Report.

## I.    NATURE OF CASE

LPL is a leader in advancing flat panel display technology. For years, LPL has

significantly invested in research and development to improve product performance, increase

display size and reduce costs. LPL also seeks to protect its technology investments and has

obtained more than a thousand patents, including U.S. patents directed to various aspects of

liquid crystal displays ("LCD"). LPL has learned that other manufacturers have been and

continue to improperly use its technology; one of those competing manufacturers is AUO.

In an effort to enforce its intellectual property rights, LPL filed a complaint on

December 1, 2006 in the District Court for the District of Delaware against AU Optronics

Corporation ("AUO") and other defendants alleging infringement of three LPL patents directed

to LCD technology. After receipt of the Delaware complaint, AUO, apparently to slow down that proceeding, requested an additional 90 days to respond. Only after obtaining LPL's consent to extend time, did AUO file the present action. The patents asserted by AUO are also directed to LCD technology. Instead of resolving the patent disputes between the parties in a single forum, AUO sought a second forum, in which Defendants have no direct connections, to file the present action in a blatant attempt at forum-shopping. Issues of invalidity and non-infringement of AUO's patents, however, are already at issue in the Delaware action. On April 11, 2007, LPL filed its first amended complaint against AUO seeking a declaratory judgment of invalidity and non-infringement against the AUO patents.

This case is simply an outgrowth of other litigation between the parties already pending in Delaware—a forum AUO seeks to avoid. AUO's forum shopping, however, should not be countenanced as it is ill-advised and contrary to the interests of justice and the convenience of the parties. In view of these flaws, LPLA filed, on March 29, 2007, its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. Similarly, LPL filed, on April 16, 2007, its Motion to Transfer to the District of Delaware, where the disputes between LPL and AUO are already pending in LPL's first filed action.

## II.    JURISDICTION OR VENUE ISSUES

Defendants contest AUO's obvious efforts at forum shopping. Defendant LPLA believes that this Court lacks personal jurisdiction over LPLA and that venue in Wisconsin is improper. Consequently, LPLA filed on March 29, 2007, its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. AUO's Opposition to LPLA's motion is due Wednesday, April 18, 2007.

-2-

Similarly, Defendant LPL contests the Wisconsin forum for the resolution of pending patent disputes between LPL and AUO. Accordingly, LPL filed on April 16, 2007 its Motion to Transfer to the District of Delaware.

## III.    PLEADINGS TO BE AMENDED

Defendants do not anticipate, at this time, that they will file any amended pleadings. As LPL agreed to waive service of the complaint per Fed. R. Civ. P. 4(d), its response is not due until June 11, 2007. LPL may file counterclaims in conjunction with its answer to the complaint.

## IV.    PENDING OR CONTEMPLATED MOTIONS

As noted above, Defendants filed the following motions:

A.    LPLA filed on March 29, 2007 its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

B.    LPL filed on April 16, 2007 its Motion to Transfer to the District of Delaware.

Defendants also contemplate filing motions for summary judgment of, *inter alia*, invalidity and non-infringement of AUO's patents.

## V.    PROPOSED DISCOVERY DATES

The parties have conferred and jointly propose the following discovery dates.

| A. | Rule 26(a)(1) initial disclosures | May 11, 2007 |
|----|-----------------------------------|--------------|
| B. | Opening Expert Reports | October 9, 2007 |
| C. | Rebuttal Expert Reports | November 8, 2007 |
| D. | Last Day to File Dispositive Motions | November 8, 2007 |
| E. | Complete All Discovery | December 7, 2007 |

## VI.    RECOMMENDED FINAL PRE-TRIAL CONFERENCE AND TRIAL DATES

The parties have conferred and jointly recommend the following dates for the final pretrial conference and beginning of trial:

**A.**    Pre-trial Conference                          December 18, 2007

**B.**    Start of Trial                                January 7, 2008.

These dates were recommended, at least in part, to account for previously scheduled trial dates

for other pending cases. Lead counsel for Defendants has separate trials currently scheduled

from November 27 through December 7, 2007; and January 21 through February 1, 2008. In

addition, should LPL bring counterclaims, Defendants believe the parties will require 8 days to

address all issues at trial. If LPL does not assert counterclaims, Defendants believe 4 to 5 days

will be required for trial.

Dated:  April 16, 2007                    Respectfully submitted,

                                          GODFREY & KAHN, S.C.

                                          Brady C. Williamson
                                          James D. Peterson
                                          Godfrey & Kahn, S.C.
                                          One East Main Street
                                          Madison, Wisconsin 53701
                                          Tel: (608) 257-3911
                                          Fax: (608) 257-0609

                                          Gaspare J. Bono
                                          R. Tyler Goodwyn
                                          McKenna Long & Aldridge LLP
                                          1900 K Street, N.W.
                                          Washington, D.C. 20006
                                          Tel: (202) 496-7500
                                          Fax: (202) 496-7756

                                          *Counsel for Defendants LG.Philips LCD Co., Ltd.,
                                          and LG.Philips LCD America*

mn312435_1

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2007, a true and correct copy of the attached:

- LG.PHILIPS LCD CO., LTD.'S AND LG.PHILIPS LCD AMERICA'S PRELIMINARY PRETRIAL REPORT

was caused to be served upon the attorney(s) of record at the following addresses in the following manner:

By hand delivery:

> MICHAEL BEST & FRIEDRICH LLP
> James R. Troupis
> Michael A. Hughes
> One South Pinckney Street, Suite 700
> P.O. Box 1806
> Madison, WI 53701-1806

By email and overnight delivery:

> WILSON SONSINI GOODRICH & ROSATI
> Ron E. Shulman
> Steven Baik
> 650 Page Mill Road
> Palo Alto, CA 94304-1050

> M. Craig Tyler
> Brian D. Range
> 8911 Capital of Texas Highway North
> Westech 360, suite 3350
> Austin, TX 78759-8497

Nicole Talbott Settle

22

DOC NO
REC'D/FILED

2007 APR 16   PM 4:04

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-C-0137-S |
| | ) | |
| LG.PHILIPS LCD CO., LTD. and | ) | |
| LG.PHILIPS LCD AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## LG.PHILIPS LCD CO., LTD.'S MOTION TO
## TRANSFER TO THE DISTRICT OF DELAWARE

Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), defendant LG.Philips LCD Co., Ltd.

("LPL"), by its attorneys, respectfully moves to transfer plaintiff AU Optronics Corporation's

("AUO") Complaint to the U.S. District Court for the District of Delaware, the more appropriate

forum for this action.

The reasons for this motion, as explained more fully in LPL's Memorandum In Support

of Its Motion to Transfer to the District of Delaware, are that the issues of invalidity and non-

infringement of AUO's patents asserted in the present action are already pending in LPL's first

filed action in Delaware. Furthermore, transferring the present case to Delaware will promote

the interests of justice and the convenience of the parties and witnesses. Accordingly, this case

should be transferred to the District of Delaware.

Dated: April 16, 2007    Respectfully submitted,

         GODFREY & KAHN, S.C.

         Brady C. Williamson
         James D. Peterson
         Godfrey & Kahn, S.C.
         One East Main Street
         Madison, Wisconsin 53701
         Tel: (608) 257-3911
         Fax: (608) 257-0609

         Gaspare J. Bono
         R. Tyler Goodwyn
         McKenna Long & Aldridge LLP
         1900 K Street, N.W.
         Washington, D.C. 20006
         Tel: (202) 496-7500
         Fax: (202) 496-7756

         *Counsel for Defendant LG.Philips LCD Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2007, a true and correct copies of the attached:

- LG.PHILIPS LCD CO., LTD.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

- MEMORANDUM IN SUPPORT OF LG.PHILIPS LCD CO., LTD.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

- DECLARATION OF R. TYLER GOODWYN IN SUPPORT OF LG.PHILIPS LCD CO., LTD.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

were caused to be served upon the attorney(s) of record at the following addresses in the

following manner:

By hand delivery:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

By email and overnight delivery:

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

Nicole Talbott Settle

mn312440_1

23

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
### 2007 APR 16  PM 4:04

|  |  |
|---|---|
| AU OPTRONICS CORPORATION, | ) ) ) |
|  | THERESA L. OWENS CLERK US DIST COURT WD OF WI |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. 07-C-0137-S |
| LG.PHILIPS LCD CO., LTD. and | ) |
| LG.PHILIPS LCD AMERICA, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## MEMORANDUM IN SUPPORT OF LG.PHILIPS LCD CO., LTD.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), defendant LG.Philips LCD Co., Ltd.

("LPL") respectfully submits this memorandum in support of its motion to transfer plaintiff AU

Optronics Corporation's ("AUO") Complaint to the U.S. District Court for the District of

Delaware, the more appropriate forum for this action.

## I.    INTRODUCTION

LPL is a leader in advancing flat panel display technology. For years, LPL has

significantly invested in research and development to improve product performance, increase

display size and reduce costs. LPL also seeks to protect its technology investments and has

obtained more than a thousand patents, including U.S. patents directed to various aspects of

liquid crystal displays ("LCD"). LPL has learned that other manufacturers have been and

continue to improperly use its technology; one of those competing manufacturers is AUO.

In an effort to enforce its intellectual property rights, LPL filed a complaint on

December 1, 2006 in the District Court for the District of Delaware ("Delaware complaint")

against AUO and other defendants alleging infringement of three LPL patents.[1] (*See* LPL's
Complaint for Patent Infringement in the United States District Court for the District of
Delaware, Exh. A.[2]) After receipt of the Delaware complaint, AUO, apparently to slow down
that proceeding, requested an additional 90 days to respond. But after obtaining LPL's consent
to extend time AUO filed the present action in this Court. The patents asserted by AUO here are,
like those in the Delaware action, directed to LCD technology.[3] Instead of resolving the patent
disputes between the parties related to LCD products in a single forum, AUO sought a second
forum to file the present action in a blatant attempt at forum-shopping. This case is simply an
outgrowth of the other litigation between the parties already pending in Delaware, and it should
be joined with that dispute.

AUO's forum shopping should not be countenanced as it is directly contrary to the
interests of justice and the convenience of the parties.[4] Pursuing a second action on related
technology between the same parties may result in inconsistent rulings, will burden multiple
jurisdictions with related pre-trial and trial obligations including empanelling multiple juries, and

---

[1] LPL's asserted patents are directed to the design and manufacture of LCD modules.
The patents are U.S. Patent Nos. 5,019,002 ("the '002 patent"), 5,825,449 ("the '449 patent"),
and 4,624,737 ("the '737 patent"). Each of these patents have been previously litigated and
found by a jury to be (a) infringed by another manufacturer's products and/or methods of
manufacture, and (b) not invalid.

[2] All exhibits referenced in this memorandum are exhibits to the declaration of R. Tyler
Goodwyn submitted in support of this motion to transfer.

[3] The patents asserted by AUO in the present case are U.S. Patent Nos. 6,976,781 ("the
'781 patent"), 6,778,160 ("the '160 patent"), and 6,689,629 ("the '629 patent").

[4] AUO's complaint is fundamentally flawed as this Court lacks personal jurisdiction over
co-defendant LG.Philips LCD America ("LPLA"). To address AUO's error, LPLA filed its
Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue on March 29, 2007.
To the extent its motion is not granted, LPLA joins in the present motion to transfer the action to
Delaware.

-2-

will necessitate multiple international trips for the same witnesses – whether for depositions or trials. Further, in its haste to seek a tactical advantage, rather than deal with the merits of its claim in an appropriate forum, AUO has failed to identify any LPL products that purportedly infringe the AUO patents, which of the claims of the three patents at issue are purportedly infringed, or any connection this dispute has with the Western District of Wisconsin. Accordingly, AUO's tactical choice of forum in this action deserves no deference.

Moreover, transferring the case to Delaware does not prejudice AUO as the issues of non-infringement and invalidity of AUO's patents are already pending in Delaware. On April 11, 2007, LPL amended its complaint to assert claims for declaratory judgment of invalidity and non-infringement of AUO's patents. (*See* LPL's First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation, Exh. B.) Consequently, this action includes the same issues as those in the first-filed Delaware action. The Delaware action was the first to bring AUO and LPL into court over LCD technology patents and it is the only suit that addresses *all* of the related issues between the parties, including the issues presented in this case. In addition, there is no dispute regarding jurisdiction over AUO in Delaware. (*See* Stipulation and Agreement not to Contest Personal Jurisdiction or Sufficiency of Process or Sufficiency of Service of Process and to Extend Time to Respond to the Complaint, Exh. C.)

Further, the District of Delaware is already intimately familiar with the LCD technology behind the patents at issue here, having recently presided over a trial involving such technology and Defendant LPL. AUO's later filed, duplicative action has no connection to the state of Wisconsin. Thus, permitting this case to proceed in this forum would be a significant waste of the Court's resources. Accordingly, the first-filed rule, interests of justice, and convenience of

the parties all demand this action be transferred to the District of Delaware pursuant to 28 U.S.C.

§§ 1404(a) and 1406(a).

## II.    STATEMENT OF FACTS

Defendant LPL is a corporation organized under the laws of the Republic of Korea,

having its principal place of business in Seoul, Korea.  LPL is an industry leader in the design,

development, and manufacture of LCD modules.  These modules are included in a multitude of

products with flat panel displays, such as portable computers, computer monitors, televisions,

DVD players, cell phones, cameras, and PDAs.  LPL does not have any direct connection with

the Western District of Wisconsin – it does not reside in Wisconsin, nor does it have any offices

or other places of business in Wisconsin.  In fact, LPL's product design and manufacturing

operations take place in Korea.

As an industry leader in flat panel technology, LPL has obtained well over one-thousand

patents to protect its research, development and manufacturing investments.  To enforce its

intellectual property rights, LPL filed suit, on December 1, 2006, in the United States District

Court for the District of Delaware.  The Delaware suit seeks injunctive and monetary relief

against AUO and other defendants for infringement of three LPL patents directed to LCD

technology.  (Exh. A.)  AUO waived service of the complaint and agreed to jurisdiction in

Delaware.  (Exh. C.)  LPL amended its Delaware complaint as of right to add claims for

declaratory judgment of invalidity and non-infringement of each of the three AUO patents also

directed to LCD technology at issue in this action.  (Exh. B.)

The technology at issue in both the Delaware and present case involves the design and

manufacture of LCD modules.  The Judge before whom the Delaware case is pending in the

District of Delaware is intimately familiar with the underlying LCD technology at issue having

presided over a claim construction hearing and trial last year in another LPL patent infringement

case involving LCD technology.  LG.Philips LCD Co., Ltd. v. Tatung Company et al., Civ. 05-292 (JJF).

The other Defendant in the Wisconsin case is LPLA.  Defendant LPLA is a U.S. Corporation organized under the laws of the State of California, with its principal place of business in San Jose, California.  LPLA has offices in California, Texas, North Carolina and Illinois, but does not have an office or employees in Wisconsin.  LPLA does not manufacture LCD modules, but instead sells to customers located in states other than Wisconsin.  On March 29, 2007, LPLA filed a motion to dismiss based on lack of personal jurisdiction and improper venue.  (Docket No. 006)

AUO is a Taiwanese corporation, having its principal place of business at 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu Taiwan, ROC.  (Docket No. 002, ¶ 1.)  AUO manufactures LCD products in Taiwan and China.  AUO filed the present action against LPL and LPLA alleging infringement of three patents, the '160 patent, the '629 patent, and the '781 patent. (Docket No. 002, ¶¶ 9, 12, 15.)  The technology at issue in the asserted patents also involves the design and manufacture of LCD modules.

## III.    ARGUMENT

### A.    This Case Should Be Transferred To Delaware Where Invalidity and Non-Infringement Issues of AUO's Patents Are Already Pending In LPL's First-Filed Action.

This Court should transfer the present Wisconsin action to the District of Delaware.  The patent invalidity and non-infringement issues in the present action are already pending in the Delaware action.  Further, the Delaware action was filed first; and the present case is simply an outgrowth of the earlier filed suit.  A transfer to Delaware accords with prevailing patent law that favors the forum of the first-filed action between a declaratory judgment action and an affirmative patent infringement action, regardless of whether the first-filed suit is the declaratory

action. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Although LPL's amended Delaware complaint was filed after AUO's complaint, "[t]he first to file rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment to the pleading." 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] n. 13. Transfer of the second action is warranted unless the interests of justice favor maintaining the action in the second forum. *Trafficast, Inc. v. Pritchard*, No. 05-C-557-S, 2005 WL 30022687, at \*1 (W.D. Wis. Nov. 7 2005) (J. Shabaz). Here, AUO's suit involves patent claims that are also at issue in a suit earlier filed by LPL in the District of Delaware. The interests of justice do not warrant contravening the first-filed rule here and in fact weigh in favor of transferring this action to the District of Delaware.

### 1. AUO's Suit Includes The Same Parties, Patents, And Technology As LPL's First-Filed Delaware Suit.

LPL's Delaware suit and the present action include duplicative issues. A case is considered duplicative if the claims, parties and available relief do not significantly differ between the two parties. *Trafficast*, 2005 WL 30022687, at \*1. Here, LPL's Delaware suit and this suit include LPL and AUO as opposing parties. Similarly, both actions involve invalidity and non-infringement determinations of the '781 patent, the '160 patent, and the '629 patent. Because LPL's Delaware suit was the first to bring LPL and AUO into court on LCD technology patent issues and, as amended, will address the issues between the parties raised in both actions, the Delaware suit takes priority over this action. *See Versus Tech. v. Hillenbrand Industries, Inc.*, No. 1:04-CV-1682004 WL 3457629 (W.D. Mich. Nov. 23, 2004) (finding in a patent case that a subsequently filed amendment related back to an earlier complaint for purposes of the first-filed rule because it allows the first court in which *all* issues between the parties are raised

to decide how the cases should proceed); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965) (explaining that for purposes of the first-filed rule, it is immaterial that the issues raised in a second suit are not included in the first suit until a subsequent amendment to the first suit; the first suit is still the only suit where *all* issues between the parties were raised). Accordingly, this action should be transferred to the District of Delaware.

## 2. The Interests Of Justice Do Not Warrant Departure From the First-Filed Rule But Instead Favor A Transfer To The District Of Delaware.

The interests of justice analysis relates to the efficient functioning of the courts and involves consideration of the following factors when contemplating a deviation from the first-filed rule: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of witnesses; (3) the cost of obtaining additional witnesses; (4) the possibility of a view of the premises; and (5) the state of the court calendars. *Trafficast*, 2005 WL 30022687, at *1 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1996) and *L.B. Sales Corp. v. Dial Mfg., Inc.*, 593 F. Supp. 290, 296 (E.D. Wis. 1984)). None of these factors warrant departing from the first-filed rule in this case. Instead, the interests of justice also favor a transfer.

Factors (1), (2), and (4) that involve access to proof and witnesses have no significance here. None of the parties in this suit reside or have a place of business in Wisconsin so there are no documents and other evidence or witnesses in Wisconsin. In fact, LPL and AUO are both foreign corporations with principal places of business thousands of miles away in Asia. None of the design or manufacturing of the LCD products at issue take place in this forum. The fourth factor, the ability to view a particular piece of property or equipment, is also a non-factor here - no relevant property or equipment exists in Wisconsin.

-7-

The factor (3) costs related to obtaining witnesses strongly dictates a transfer to Delaware. Many of the witnesses required to testify about the various LCD modules and technology in the Delaware suit will overlap with those in the present case. Consequently, if the issues must be addressed in suits pending in two separate forums, witness testimony, whether by deposition or trial, will necessarily be conducted multiple times. Further, most witnesses likely reside in Asia, which will result in duplicative, expensive international travel.

Finally, the relative speed with which an action may be resolved is a consideration under factor (5) *unless* the second suit can be transferred to a forum where consolidation is feasible. *See Trafficast,* 2005 WL 30022687, at *3 (citing *Coffey,* 796 F.2d 217 at 221). In that event, as is the case here, the interests of justice demand transfer. *Id.* Litigation between AUO and LPL, related to LCD technology and including the identical patents at issue here, is currently pending in District Court for the District of Delaware. That case is still in the initial stages with AUO having yet to answer the complaint after requesting an extension. Consolidation in Delaware is therefore feasible and a transfer to the District of Delaware will appropriately give that court the opportunity to consolidate these related, in fact duplicative, cases. *See Symbol Techs., Inc. v. Intermec Techs. Corp.*, No. 05-C-256-C, 2005 WL 1657091, at *3 (W.D. Wis. July 14, 2005) (J. Crabb).

Moreover, this Court recently recognized that speed is not everything, even if the Western District of Wisconsin has a much faster average time to trial relative to other jurisdictions. *See Trafficast,* 2005 WL 30022687, at *3 ("[t]he relative speed factor is not in an of itself dispositive of the matter."). In *Trafficast,* the relative difference in the courts' median times to trial was 21.2 months, yet this Court still granted the motion to transfer from the Western District of Wisconsin to Massachusetts. *Id.* The average difference in median times to

-8-

trial between this Court and the District of Delaware is only 12.6 months, substantially less than the disparity in the *Trafficast* case. (*See* 2006 U.S. District – Judicial Caseload Profiles for the District of Delaware and the Western District of Wisconsin, Exh. D.) Furthermore, the total number of cases per judge in the Western District of Wisconsin (490/year) is substantially greater than the total number of cases per judge in the District of Delaware (270/year). (*Id.*) Of course, one of those cases in the District of Delaware is a related patent suit between LPL and AUO that involves the *very same* LCD technology and the *identical patents* at issue here. (Exhs. A and B.) The interests of justice simply do not warrant deviating from the first to file rule and in fact, independently weigh significantly in favor of a transfer.

Furthermore, AUO should not benefit by its forum gamesmanship to avoid the District of Delaware. It is AUO that sought to slow the Delaware action and artificially create a schedule difference between it and the present case. Other defendants in the Delaware action sought only a 30 day extension in which to respond to the complaint. Only AUO insisted upon a 90-day extension of time. Now, because it agreed to AUO's request, LPL is being penalized by any claim AUO makes on relative speed of the actions.

Likewise, AUO's forum shopping should not be rewarded. With a similar issue before it, the Eastern District of Virginia admonished litigants for precisely AUO's attempt at tactical forum shopping, stating:

> This Court cannot stand as a willing repository for cases which have no real nexus to this district. The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.

*Cognitronics Imaging Sys. v. Recognition Research, Inc.* 83 F. Supp. 2d 689, 699 (E.D. Va. 2000, (*quoting Schlegel U.K. Holdings Ltd. v. Cooper Tire & Rubber Co., Inc.*, No. 970522-A, slip op. at 18 (E.D. Va. June 10, 1997)).

**B.    This Case Should Be Transferred To Delaware To Promote The Interests of Justice And For The Convenience Of The Parties And Witnesses.**

In addition to the first-filed issues discussed above, this Court should transfer the present Wisconsin action to the District of Delaware in the interests of justice and convenience. Considering these issues and relevant circumstances favor adjudication of this matter in Delaware under 28 U.S.C. § 1404(a). An inquiry into the convenience of parties and witnesses and the interest of justice as it relates to a motion to transfer should consider all relevant circumstances of the case. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840514, *4 (W.D. Wis. Mar. 16, 2007) (Shabaz, J.) (citing *Coffey*, 769 F.2d 217 at 219). Here, these factors all favor transfer of this case to the District of Delaware.

**1.    AUO Could and Should Have Brought This Case In The District of Delaware.**

The threshold consideration in determining whether to transfer a case under § 1404(a) is whether the case could have been brought in the proposed transferee district. *See Zipher*, 2007 WL 840514, *4 (addressing whether the transferee district is proper before moving on to the convenience and interest of justice analysis). The transferee court must have personal jurisdiction over the defendant, subject matter jurisdiction over the claim, and proper venue. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

Unquestionably, the present case could have been brought in the District of Delaware. The District of Delaware has jurisdiction over the parties and the subject matter of this suit. LPL filed a complaint alleging patent infringement against AUO in the District of Delaware and AUO agreed not to challenge service of the complaint or jurisdiction in Delaware. (Exh. C.) The District of Delaware would also have subject matter jurisdiction over the present patent case under 28 U.S.C. §§ 1331 and 1338. Moreover, as discussed in detail below, this case *should* have been brought in Delaware.

-10-

## 2. The Interests Of Justice Demand A Transfer To The District Of Delaware.

The interests of justice analysis relates to the "efficient administration of the court system" and is often "determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d 217 at 221. The interests of justice concerns issues such as: trying related cases together, *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989), avoiding the waste of time, energy and money due to having two cases involving precisely the same issues pending in two different District Courts, *Connexus Credit Union v. Connex Credit Union*, 219 F.R.D. 456, 467 (W.D. Wis.) (J. Shabaz); and having a Court familiar with the parties and general technology behind the patents at issue hear the dispute, *Matsushita Electric Industrial Co., Ltd. v. Silocnix Inc.*, No. 05-C-732-S, 2006 WL 517628, \*5 (W.D. Wis. March 2, 2006) (J. Shabaz). All of these considerations demand this case be transferred to the District of Delaware.

The interests of trying related cases together, avoiding the waste of resources and having a Court familiar with the technology hear the dispute dictate transfer of the present case to Delaware because related litigation involving the same parties, LCD technology, and patents is currently pending before the District of Delaware. This Court has said, "[r]elated litigation should be transferred to a forum where consolidation is feasible." *McCraw v. Mensch*, No. 06-C-0086-S, 2006 WL 740897, \*4 (W.D. Wis. March 17, 2006) (J. Shabaz) (citing *Coffey*, 796 F.2d at 221). As this Court has further explained, "permitting two cases involving the same issues to continue in separate districts leads to the 'wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Id.* (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960)). The interests of justice would be undermined by permitting this case to go forward in Wisconsin along with the Delaware suit that includes the

-11-

same issues. *Zipher*, 2007 WL 840514, *4-5. The suit in Delaware is still in its early stages. AUO has yet to answer the complaint after requesting an extension. Consolidation in the District of Delaware is therefore feasible and appropriate.

In addition, a forum's familiarity with the parties involved and the technology at issue in a patent case is also an important consideration on a transfer motion. *See Matsushita*, 2006 WL 517628, *5 (transferring a patent case to the Northern District of California in part because even though the pending litigation in the two forums involved different patents, both cases involved the same parties and general area of technology); *Broadcom Corp. v. Agere Systems, Inc.*, No. 04-C-066-C, 2004 WL 1176168, *3 (W.D. Wis. May 20, 2004) (J. Crabb) (transferring a patent case to the Eastern District of Pennsylvania in part because of that forum's "familiarity with the general technology behind the patents at issue.") Here, the District of Delaware is well versed in the general LCD technology behind the patents at issue in this case having just presided over another LCD patent case brought by LPL. *See* LG.Philips LCD Co., Ltd. v. Tatung Company et al., Civ. 05-292 (JJF). Further, the same Delaware Judge has been assigned to the first filed action by LPL against AUO, and His Honor is extremely familiar with the complex technology at issue having presided over numerous discovery disputes and an almost two week trial in LPL's earlier case.

Finally, Plaintiff's hasty and unfounded suit undermines their choice of forum. "A plaintiff's choice of forum cannot be motivated by any improper purpose such as a desire to vex, harass, or oppress defendant." *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.), Inc.*, 392 F. Supp. 2d 1062, 1065 (W.D. Wis. 2005) (J. Shabaz). In its claim, AUO failed to identify any LPL products that purportedly infringe the AUO patents or even which of the claims of the three

-12-

patents at issue are purportedly infringed. Nor has AUO identified any basis for venue in this forum or for this Court's exercise of personal jurisdiction over either defendant.

In sum, the interests of justice demand a transfer to the District of Delaware.

### 3.    The District Of Delaware Is The More Convenient Forum For Both Parties and Witnesses.

None of the parties to this action reside or have their principal place of business in Wisconsin. In fact, both LPL and AUO reside and have their principal places of business outside the United States, thousands of miles away in Asia. There is no basis for AUO to claim that Wisconsin is a convenient forum for any of the parties involved. Furthermore, LPL and AUO are presently engaged in litigation in the District of Delaware over the identical patents at issue in this case and three LPL patents. The patents at issue in both cases concern LCD technology. Thus, the relevant witnesses and documents will already be engaged in the Delaware litigation, clearly making that forum the more convenient choice for both parties.

While a plaintiff's choice of forum is considered in assessing the convenience to the parties, AUO's election to bring this action in the Western District of Wisconsin should be given little, if any, weight. *See Symbol Techs.,* 2005 WL 1657091, at *3 ("courts have held that if plaintiff's chosen forum is not the situs of material events, a plaintiff's choice has weight equal to other factors and will not receive deference."). No events of any real significance to this matters have occurred anywhere in Wisconsin – no development or manufacturing of the accused products nor any of the research that led to the alleged invention have occurred in Wisconsin. Accordingly, AUO's decision to bring suit in the Western District of Wisconsin deserves no deference.

## IV.    CONCLUSION

For the foregoing reasons, the Court should transfer Plaintiff's claims against Defendant

LG.Philips LCD Co., Ltd. to the U.S. District Court for the District of Delaware pursuant to 28

U.S.C. §§ 1404(a) and 1406(a).

Dated: April 16, 2007                              Respectfully submitted,

                                                   GODFREY & KAHN, S.C.


                                                   Brady C. Williamson
                                                   James D. Peterson
                                                   Godfrey & Kahn, S.C.
                                                   One East Main Street
                                                   Madison, Wisconsin 53701
                                                   Tel:  (608) 257-3911
                                                   Fax:  (608) 257-0609

                                                   Gaspare J. Bono
                                                   R. Tyler Goodwyn
                                                   McKenna Long & Aldridge LLP
                                                   1900 K Street, N.W.
                                                   Washington, D.C.  20006
                                                   Tel:  (202) 496-7500
                                                   Fax:  (202) 496-7756

                                                   *Counsel for Defendant LG.Philips LCD Co., Ltd.*

mn312441_1

-14-

# SEALED

# DOCUMENT

25


**GODFREY**
**&KAHN**s.c.
ATTORNEYS AT LAW

DOC NO
REC'D/FILED

2007 APR 17 PM 1:29

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

ONE EAST MAIN STREET
POST OFFICE BOX 2719
MADISON, WI 53701-2719
TEL 608-257-3911
FAX 608-257-0609
www.gklaw.com

Direct: 608-284-2652
ntalbottsettle@gklaw.com

April 17, 2007

## BY HAND DELIVERY

Theresa M. Owens
Clerk of the court
US District Court Western District
US Court House
120 N Henry St., Room 320
Madison, WI 53703

> RE:   *AU Optronics Corporation v. LG.Philips LCD Co., Ltd. and
> LG.Philips LCD America,* USDC WD Case No. 07-C-0137-S

Dear Ms. Owens:

It has come to our attention that Exhibit 1 was inadvertently not attached to the March 29, 2007 Declaration of Dong Hoon Han filed in Support of LG. Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Docket No. 8).

We are enclosing a copy of Exhibit 1 and request that it be attached to the above Declaration (Docket No. 8).

We appreciate your assistance and apologize for any inconvenience. Please call either myself or Jim Peterson with any questions.

Sincerely,

GODFREY & KAHN, S.C.

Nicole E. Talbott Settle
Paralegal

NET:nts
Encl.
cc:    Ron E. Shulman (electronically and by U.S. mail)
       Steven Baik (electronically and by U.S. mail)
       James R. Troupis (hand delivered)
       Michael A. Hughes (hand delivered)
       M. Craig Tyler (electronically and by U.S. mail)
       Brain D. Range (electronically and by U.S. mail)
mn312514_1

DOC NO
REC'D/FILED

2007 APR 17  PM 1:30

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

# EXHIBIT 1

# MARCH 29, 2007 DECLARATION OF DONG HOON HAN

# INVOICE

 **LG.PHILIPS** LCD

LG.PHILIPS LCD AMERICA, INC.
150 East Brokaw Rd.
San Jose, CA 95112

Tel.(408) 350-7700 Fax.(408) 350-7724

Invoice No: **HJ353**
Date: **31-OCT-2006**

REMIT TO
P.O.BOX 49123 SAN JOSE, CA 95161-9123

| BILL TO | SHIP TO |
|---|---|
| ALL AMERICAN SEMICONDUCTOR, INC. | API SOFTWARE, INC. |
| MIAMI-CORPORATE | 1500 INNOVATION WAY |
| 16175 N.W 52ND AVE | HARTFORD, WI 53027 |
| MIAMI, FL 33014 | |

| Payment Term | NET 45 Days | Due Date | 15-DEC-2006 |
|---|---|---|---|
| Customer Po# | 1024783 | Pull No | |
| Price Term | FOBSP | Ship Via | FED-Air |
| Ship Date | 31-OCT-2006 | Order No | 57766 |

| SEQ | ITEM CODE | ORDER QTY | SHIP QTY | BACK QTY | U/P(USD) | AMT(USD) |
|---|---|---|---|---|---|---|
| 001 | LB121S03 | 15 | 15 | | 140.00 | 2,100.00 |
| | TL01 A | | | | | |

C/Part:

| | |
|---|---|
| Sub Total | 2,100.00 |
| Tax | 0.00 |
| Freight | 0.00 |
| Service Charge | 0.00 |
| **Total** | **2,100.00** |

Tracking No 5882969
Remark

WIRE      Comerica Bank California&
          Acct : 1891 - 208447
          Bank ABA(ROUTING)# 121137522

10/31/06

Page - 1

Order Number     1024783  OP
Branch/Plant     362400

ped From   LG PHILLIPS LCD
           150 EAST BROKAW ROAD
           SAN JOSE CA 95112

Ship To   ALL AMERICAN SEMICONDUCTOR
          48376 Milmont Drive
          FREMONT CA 94538

Ordered   10/10/06        Freight    OC  Order/Freight Collect
                ATTN:      Gina Park                          Currency Code   USD                          Base Currency   USD

Delivery

| Line | Rev | Item | Ordered | UOM | Unit Price | PU UM | Extended Price | Request Date |
|------|-----|------|---------|-----|-----------|-------|----------------|--------------|
| 3.000 | 7 LGPLB121S03-TL01 | | 15 | EA | 140.0000 | EA | 2,100.00 | 10/10/06 |

Please ship this line to:
API Software, Inc.
1550 Innovation Way
Hartford, WI 53027
FedEx overnight using acct#20467403-5

| | Total Order | 2,100.00 |
|---|---|---|
| | Sales Tax | Total Order |

Term    Net 45                      Tax Rate                                      0.00                     2,100.00

                    Purchasing Agent:      10017    JACQUELINE CHAPMAN



NOTICE :   1) PLEASE CONFIRM DELIVERY AND RECEIPT BY FAX    (510)623-3666
           2) Mark each Invoice, Packing Slip, Bill of Lading and Package with our Order No.
           3) Mail all Invoices & Original Bill of Lading immediately upon shipment.



AO 399 (Rev. 10/95)

DOC NO
REC'D/FILED

## WAIVER OF SERVICE OF SUMMONS

2007 APR 17 PM 3: 02

TO:    M. Craig Tyler, Attorney for Plaintiff AU Optronics Corporation
    _____
    (NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

I, LG.Philips LCD Co., Ltd.
    _____, acknowledge receipt of your request
    (DEFENDANT NAME)

that I waive service of summons in the action of  AU Optronics Corp. v. LG.Philips LCD Co., Ltd., et al.   ,
                                                        (CAPTION OF ACTION)

which is case number  07-C-0137-S                                 in the United States District Court
                          (DOCKET NUMBER)

for the               Western              District of               Wisconsin               .

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an

answer or motion under Rule 12 is not served upon you within 60 days after          3/13/2007          ,
                                                                          (DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

March 28, 2007                              Wanjun Choi
    (DATE)                                       (SIGNATURE)

                      Printed/Typed Name:     Won Jun Choi

                      As  Senior Manager        of     LG.Philips LCD Co., Ltd.
                              (TITLE)                      (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AU Optronics Corporation, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) Civil Action No..: 07-C-0137-S |
| vs. | ) |
| | ) Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1. Waiver of Service of Summons

were served upon all parties to this action as indicated below on this 17th day of April, 2007 to:

Via U.S. Mail & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via U.S. Mail & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

27

DOC NO
REC'D/FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN 2: 00

THERESA H. OWENS
CLERK US DIST COURT
WD OF WI

| | | |
|---|---|---|
| AU Optronics Corporation, | ) | |
| | ) | |
| *Plaintiff*, | ) | Civil Action No.: 07-C-0137-S |
| | ) | |
| vs. | ) | |
| | ) | Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. | ) | |
| and | ) | |
| LG.Philips LCD America, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO LG.PHILIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................... 2

    A.    The Accused Liquid Crystal Display Modules. ....................................................... 2

    B.    LPLA Is LPL's Wholly Owned Subsidiary Responsible For Sales In The
         United States. ......................................................................................................... 3

    C.    LPL And LPLA Regularly Sell Infringing Modules Through Wisconsin
         Retailers. ................................................................................................................ 3

    D.    LPL And LPLA Sell Infringing LCD Modules In Wisconsin Through Their
         Authorized Wisconsin Distributor, Synergistic. ..................................................... 4

    E.    LPLA Admits To Directly Selling Into Wisconsin Through All-American........... 5

III. ARGUMENT ........................................................................................................................ 6

    A.    Standard. ................................................................................................................. 6

    B.    This Court Has Personal Jurisdiction Over LPLA. ................................................. 6

         1.    LPLA Satisfies The Requirements Of The Wisconsin Long Arm
              Statute. ......................................................................................................... 6

         2.    LPLA Satisfies The Requirements Of The Due Process Clause, And
              The Court Has Specific Jurisdiction Over LPLA. ..................................... 10

             a.    LPLA Purposefully Directed Its Activities At This Forum By
                 Placing Accused Modules Into The Stream Of Commerce With
                 Intent And Knowledge That They Would Be Sold In The
                 Forum. ........................................................................................... 11

             b.    LPLA's Infringement "Arises Out Of Or Is Related To" Its
                 Activities Directed At The Forum. ................................................ 12

         3.    Exercise Of Jurisdiction Does Not Offend Fair Play Or Substantial
              Justice. ....................................................................................................... 13

    C.    The Fact That The Accused LCD Modules Are Sold As Components For
         Larger Systems Is Irrelevant .................................................................................. 13

    D.    Venue Is Proper In This District. ........................................................................... 15

    E.    AUO's Complaint Meets The Fed. R. Civ. P. 8 Standards.................................... 16

    F.    In The Alternative, AUO Requests An Opportunity For Jurisdictional
         Discovery And An Evidentiary Hearing................................................................. 17

IV. CONCLUSION.................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ...............6, 9, 11, 12, 13

*Burger King Corp. v. Holder*, 844 F.Supp. 1528 (S.D. Fla. 1993).................................................17

*Commissariat L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005)............................................................................................14, 15, 18

*Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124 (D.Colo. 2005 July 21, 2005)..............................................................................8

*Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.*, 189 F.Supp.2d 696 (W.D. Mich. 2002)..............................................................................................................14

*Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344 (Fed. Cir. 2003) ..........................................6

*HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999) ......................................................11

*Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 2, 2005)..............................................................14

*K.W. Muth Co., Inc. v. Gentex Corp.*, No. 06-C-378-C, 2006 WL 2772828 (W.D.Wis. Sep. 22, 2006).......................................................................................................7

*Kernius v. International Electronics, Inc.*, 433 F.Supp.2d 621 (D. Md. 2006) ..............................11

*McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779 (W.D. Wis. 1969).......................8, 9, 10

*Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349 (D. Del. 1999) ....................................................14

*Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir. 1983) ....................................6, 9, 10

*North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994).................................................................................................................8, 12

*Stickland v. Trion Group, Inc.*, 463 F.Supp.2d 921 (E.D. Wis. 2006)............................................17

*Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87 (2d Cir. 1971) ..............................................16

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990)....................15

*Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F.Supp.2d 1098 (E.D. Wis. 2003) .....................17

*Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424 (Fed. Cir. 1996) ...........................12

*Walker v. Concoby*, 79 F.Supp.2d 827 (N.D. Ohio 1999) ..............................................................17

*Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840514 (W.D. Wis. Mar. 16, 2007).................................................................................................................15

## STATUTES

28 U.S.C. § 1391.....................................................................................................................15, 16

28 U.S.C. § 1400.....................................................................................................................15, 16

35 U.S.C. § 271........................................................................................................................7, 16

Wis. Stat. § 801.05(1) .....................................................................................................7, 8, 9, 10

## RULES

FED. R. CIV. P. 8........................................................................................................................17

FED. R. CIV. P. 15......................................................................................................................17

NOW COMES the Plaintiff, AU Optronics Corporation ("AUO") by and through its counsel, James R. Troupis of Michael Best & Friedrich, LLP and Wilson Sonsini, Goodrich and Rosati, and respectfully submits this Opposition.[1]

## I.    INTRODUCTION

LG.Philips LCD America ("LPLA") argues that this case should be dismissed because supposedly, it "lacks sufficient contacts" with this district for the exercise of personal jurisdiction, and venue is improper. Neither argument is sound.

Under the Wisconsin long arm statute and applicable federal law, LPLA clearly has "sufficient contacts" with this district for the exercise of personal jurisdiction. As explained in detail below, LPLA has directly sold and shipped Liquid Crystal Display ("LCD") modules into Wisconsin. AUO accuses these same modules of infringement. LPLA has representatives who are charged with the responsibility of distributing accused modules in Wisconsin. On its website, LPLA promotes these representatives and advertises the availability of the accused modules in Wisconsin. The LPLA website also tells every citizen of Wisconsin where and how they can buy the accused modules in Wisconsin.

Additionally, the accused modules are incorporated into finished LCD products (such as LCD TVs and computer monitors) that are sold throughout this district at major retail stores such as Best Buy and Circuit City. LPLA knew, or at the very least should have known, that its many actions directed to Wisconsin would subject it to personal jurisdiction in this district.

LPLA's arguments seeking dismissal based on venue fare no better. Venue is proper if either (1) LPLA's contacts with this district are sufficient to meet the personal jurisdiction requirements of Wisconsin, or (2) a substantial part of the events giving rise

---

[1]    AUO has filed with this Opposition a Declaration of David Panneck ("Panneck") and a Declaration of Michael Lestina ("Lestina"). Each of those Declarations is hereby incorporated in full, along with all other matters of record.

1

to an AUO infringement claim, or a substantial part of the property affected by the infringement claim, reside in this district. Both of these tests are satisfied here.

First, as discussed above, personal jurisdiction is proper because of LPLA's distribution of the accused modules in this district. Second, substantial events relating to LPLA's infringement, as well as substantial property affected by the infringement, reside in this district. For example, through its website, LPLA has offered for sale the accused LCD modules in this district, and an offer to sell is an act of infringement. In addition, the accused modules are incorporated into LCD products that are widely sold by retailers throughout this district. Thus, the outcome of this case could have a substantial affect on property in this district because retailers in this district have inventories of products containing the accused LCD modules.

Accordingly, AUO respectfully requests that the Court deny LPLA's motion to dismiss.

## II.     STATEMENT OF FACTS

### A.     The Accused Liquid Crystal Display Modules.

The "LCD module" is a critical part of LCD display devices such as LCD TVs, computer monitors and cell phone screens. Panneck Ex. B. The module contains the liquid crystal material and associated circuitry for creating the image on an LCD display screen. Panneck Ex. C. Companies like LG Electronics, Apple, Dell, and Hewlett Packard buy LCD modules from suppliers like LPLA and have those modules incorporated into their finished, branded products such as TVs and computer monitors. Panneck Ex. D.

The accused LCD modules in this case are manufactured by defendant LG.Philips LCD Co., Ltd. ("LPL"), and are sold both by LPL and LPLA. Complaint at ¶¶ 9-17. These accused modules are included in a variety of TV and other LCD display

2

products sold by a number of different companies. Panneck Ex. D. For example, prior to filing this case, AUO determined that accused modules are incorporated into 19" and 20" computer monitors and in a 32" TV, all of which are branded by LG Electronics.[2] LG Electronics owns 38% of LPL and LPLA. Panneck Ex. E.

### B.    LPLA Is LPL's Wholly Owned Subsidiary Responsible For Sales In The United States.

LPL has set up several wholly owned subsidiaries, each of which is responsible for selling LCD modules into a certain geographic region. Panneck Ex. E. LPLA was incorporated in the United States "to sell the TFT-LCD products" of LPL. *Id.* LPLA admits shipping "LCD modules and parts to various locations in the United States." LPLA's Memorandum in Support of Its Motion to Dismiss ("LPLA Brief") at 3.

### C.    LPL And LPLA Regularly Sell Infringing Modules Through Wisconsin Retailers.

Computer monitors and televisions containing the accused modules are sold throughout Wisconsin and, specifically, in this district through major retail outlets such as Circuit City and Best Buy. Prior to filing suit, AUO purchased a 32" TV and a 20" computer monitor from Circuit City and Best Buy in Madison, Wisconsin. Lestina, ¶¶ 2-3, 5-6. Each of these products included an accused LCD module. In addition, prior to filing suit, AUO ordered a 19" LCD computer monitor from www.radioshack.com for delivery to Madison. Lestina, ¶ 4. This monitor also has an accused LCD module.

In addition to Circuit City and Best Buy, many other retail outlets throughout this district stock products for sale that incorporate the accused LCD modules.

---

[2]    These LG Electronics products are model numbers LG L1952TX, LG204WT, and LG 32LCD2DU. The corresponding model numbers for the accused LCD modules contained in the foregoing products are LM190E08, LM201WE4, and LC320W01.

3

Panneck, ¶¶ 2-7 . A chart setting forth some of the outlets in this district carrying the accused LCD modules is attached as Exhibit A to the Panneck Declaration.

Given LPLA's incorporated purpose is "to sell LCD products" in the United States, the fact that there are past and ongoing sales of numerous products containing LPLA's infringing modules at retail outlets in this Wisconsin district is certainly known to LPLA. Moreover, many of the locally sold products containing accused LCD modules are branded in the name of LG Electronics, which owns 38% of LPLA. Panneck Ex. E. Indeed, the LG Electronics website contains a "Where to Buy" feature which informs consumers that TVs and monitors incorporating the accused LCD modules can be purchased at seven retailers within five miles of this Court's zip code and at more than 100 Wisconsin retailers within 100 miles of the Court's zip code. Panneck Ex. F.

## D. LPL And LPLA Sell Infringing LCD Modules In Wisconsin Through Their Authorized Wisconsin Distributor, Synergistic.

Although claiming to have "no business connections" with Wisconsin (LPLA Brief at 3), LPLA failed to inform this Court that it has an authorized agent who is assigned the task of distributing the accused modules for LPLA in Wisconsin. This undeniable fact is fatal to LPLA's motion.

More specifically, LPL and LPLA share a web site that advertises and offers customer support and advice for LCD modules, including those that are accused in this case.[3] Panneck Exs. G-J. The web site confirms that LPLA's sales territory is "USA,

---

[3]     The web site is found at www.lgphilips-lcd.com. The opening page bears the LPL logo and attributes the web site's copyright to "LG.Philips LCD CO., Ltd." (i.e., LPL). Upon clicking the links for "Sales Network" and "America," the web site shows that LG.Philips LCD America, Inc. (i.e., LPLA) is responsible for the "Central Zone" of "USA, Canada, and Mexico." The contact information for LPLA indicates that LPLA's

Canada and Mexico." Panneck Ex. G. The web site then explicitly informs potential customers that LPL and LPLA have a "Representative" named "Synergistic" responsible for the "Illinois, Wisconsin, and Minnesota" territories. Panneck Ex. L.

The web site of Synergistic Sales, Inc., in turn, confirms the statements on LPLA's own web site, namely that Synergistic serves "Illinois, Wisconsin, and Minnesota" on behalf of LPL and LPLA. Panneck Ex. M. Indeed, the Synergistic web site even provides a link to the LPL/LPLA web site under its list of manufacturers that Synergistic represents. Panneck Ex. N. Synergistic also has an office in Wisconsin[4] and employs sales people in Wisconsin. Panneck Ex. O, P.

## E.    LPLA Admits To Directly Selling Into Wisconsin Through All-American.

In its brief, LPLA admits that it has shipped LCD modules, model number LB121S03, directly to Wisconsin for its customer, All-American Semiconductor, Inc. LPLA Brief at 3; Han Declaration, Ex. 1. This module infringes one or more of AUO's patents. For example, AUO believes that the LB121S03 module infringes at least claim one of AUO's U.S. Patent No. 6,689,629.

Although LPLA tries to downplay the significance of this direct shipment, LPLA is conspicuously silent regarding how many additional LCD modules it has *indirectly* sold in Wisconsin through All-American (or others). According to All-American's web site, it offers for sale many additional LCD modules accused of

---

web site address, the "URL," is www.lgphilips-lcd.com. Thus, LPLA's web site address is identical to LPL's web site address.

[4]    Synergistic also has offices in Glendale Heights, Illinois and Maple Plain, Minnesota. Panneck Ex. O. LPLA's motion is silent as to how many modules it shipped to these offices with the intent or expectation that Synergistic distribute the modules to Wisconsin customers.

infringement, including for example, model number LC320W01. Panneck Ex. Q. All-American has a sales office in Milwaukee, Wisconsin. Panneck Ex. R.

## III.   ARGUMENT

### A.   Standard.

To prevail on this motion to dismiss, AUO only has the burden of making a prima facie case for personal jurisdiction. *See, e.g., Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (reversing dismissal based on jurisdiction). "[T]he party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (personal jurisdiction under Wisconsin long arm statute was proper where Hong Kong entities placed tortious shirts into stream of commerce so shirts reached Wisconsin).

The Court should consider facts arising both before and after the date of the complaint because patent infringement is a continuous tort. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994).

### B.   This Court Has Personal Jurisdiction Over LPLA.

LPLA argues that this Court does not have personal jurisdiction over LPLA because (1) it is not amenable to jurisdiction under the Wisconsin long arm statute, and (2) the exercise of jurisdiction would offend the "minimum contacts" requirement of the Due Process Clause. LPLA Brief at 4-10. These arguments are meritless.

#### 1.   LPLA Satisfies The Requirements Of The Wisconsin Long Arm Statute.

LPLA satisfies the Wisconsin long arm statute[5] for at least three reasons: (1) LPLA promotes, advertises, and offers to sell the accused LCD modules in Wisconsin;

---

[5]     The Wisconsin long arm statute states jurisdiction is proper:

(2) LPLA admittedly has made direct sales of accused LCD Modules to at least one customer in Wisconsin; and (3) LPLA's sales of the accused LCD modules have caused and will cause injury in Wisconsin.

As explained above, LPLA's web site informs every citizen of Wisconsin that its accused LCD modules are available for purchase in Wisconsin through its authorized Wisconsin distributor, Synergistic. Indeed, the LPLA web site explicitly identifies Synergistic as a distributor for LPLA in the Wisconsin territory, and the Synergistic web site confirms that Synergistic sells LPLA products, including the accused LCD modules, throughout Wisconsin. Lest there be any doubt about the close working relationship between Synergistic and LPLA, the Synergistic web site has a link back to the LPLA web site and identifies LPLA as the supplier of products that it sells. Panneck Ex. N.

Plainly, through its own web site and that of its authorized distributor, LPLA advertises, promotes and offers to sell the accused LCD modules in Wisconsin, and offers to sell the accused modules are acts of infringement. 35 U.S.C. § 271(a). These substantial, continuous and ongoing activities are not "isolated activities" within the meaning of Wis. Stat. § 801.05(1)(d), and therefore, are more than sufficient to subject LPLA to personal jurisdiction under Wis. Stat. § 801.05(1)(d). *See, e.g., K.W. Muth*

---

"against a defendant who . . . [i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise" (Wis. Stat. § 801.05(1)(d)); "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant" (Wis. Stat. § 801.05(3)); and "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, . . . [p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade" (Wis. Stat. § 801.05(4)-(4)(b)).

7

*Co., Inc. v. Gentex Corp.*, No. 06-C-378-C, 2006 WL 2772828, \*2-4 (W.D.Wis. Sep. 22, 2006) (holding that Wis. Stat. § 801.05(1)(d) provided jurisdiction over defendant who appointed third party distributors to sell infringing components to manufacturers in Wisconsin).

In addition, LPLA's admitted shipment into Wisconsin of 15 accused LCD modules in 2006 is also sufficient to confer personal jurisdiction. There is no requirement under the law that the allegedly infringing activity be rampant or widespread before personal jurisdiction attaches. "A single sale and shipment of the infringing product to a customer in the forum state is enough to establish personal jurisdiction." *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124, \*6 (D.Colo. 2005 July 21, 2005)) (citations omitted); *see also* Wis. Stat. § 801.05(3) (requiring only injury arising out of "*an* act" of defendant). Here, LPLA admits to having sold not just one, but 15 accused LCD modules in Wisconsin.

Citing to the *McPhee v. Simonds Saw and Steel* decision, LPLA attempts to distance itself from these Wisconsin sales by asserting that they do not establish jurisdiction under the "Local Injury; Foreign Act" provision of the Wisconsin statute. LPLA Brief at 6. LPLA's attempt misses the point. The "Local Injury; Foreign Act" provision assumes that the offending act **took place outside of Wisconsin** but caused injury in Wisconsin. That is not the situation in this case. Here, the offending act – LPLA's sales of the accused LCD modules – **took place in Wisconsin**,[6] and the injury

---

[6] LPLA lamely attempts to argue that the sales in Wisconsin actually were made in California because the shipment was made "F.O.B. California." This is sheer sophistry as the Federal Circuit held in *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (holding that "to sell an infringing article to a buyer in Illinois is to commit a tort there" despite the fact that the sale was F.O.B. elsewhere).

8

also occurred in Wisconsin. *Beverly Hills Fan*, 21 F.3d at 1571 ("economic loss occurs to the patent holder at the place where the infringing sale is made"). Wis. Stat. § 801.05(3) addressing injury caused by a local act is thus satisfied. LPLA's reliance on the "Local Injury; Foreign Act" provision with respect to these sales is entirely misplaced.

Finally, personal jurisdiction can be exercised under the Wisconsin long arm statute when a non-resident of Wisconsin, such as LPLA claims to be, manufactures or distributes products that cause injury in Wisconsin. *See, Nelson by Carson*, 717 F.2d at 1123 (holding Wis. Stat. § 801.05(4)(b) applies to Hong Kong manufacturer who sold shirts to Hong Kong exporter who, in turn, sold shirts to Woolworth because shirt was purchased by a consumer in Wisconsin and injured plaintiff when shirt caught fire). That is the situation here.

As explained above, it is undeniable that LPLA has sold 15 accused LCD modules to All-American and shipped them to Wisconsin. Thus even if, as LPLA erroneously claims, these sales are deemed to have occurred in California, the injury they cause to AUO – infringement of the patents – occurs in Wisconsin when they are resold by All American. Because more than one LCD module was shipped to Wisconsin, the long arm statutes requirement of "products, materials or things" is satisfied. Wis. Stat. § 801.05(4)(b) (emphases added); *compare with McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779, 782-783 (W.D. Wis. 1969) ("use of the plural ('products, materials or things') . . . indicates . . . more than one item . . .").

Similarly, LPLA cannot deny that even when it sells the accused LCD modules outside of Wisconsin, it knows that those modules will be incorporated into finished

9

LCD display products (the modules have no other use) that are, or are likely to be, sold and/or used in Wisconsin. AUO has observed past and ongoing availability at major retail outlets in the district, and has even purchased those infringing products from retailers in the district. Lestina, ¶¶ 2-3, 5-6; Panneck ¶¶ 4-7. LPLA's contribution to retail sales of accused LCD modules in retail outlets throughout this district is plainly more akin to *Nelson* which found jurisdiction (sales to distributor in Hong Kong lead to retail Wisconsin sales) than it is to *McPhee* (purchase of a single tortious saw in Mississippi). Thus, the use and/or sale of the end products incorporating the LCD modules is an act of infringement causing injury in Wisconsin to AUO and giving rise to jurisdiction under Wis. Stat. § 801.05(4)(b).

For the foregoing reasons, personal jurisdiction over LPLA exists in this case, and LPLA's motion should be denied.

### 2. LPLA Satisfies The Requirements Of The Due Process Clause, And The Court Has Specific Jurisdiction Over LPLA.

LPLA argues that, under the Due Process Clause, this Court cannot exercise specific jurisdiction over it because supposedly, "LPLA simply has not made, used, offered to sell or sold any products in Wisconsin" and "Wisconsin has no interest in this litigation." LPLA Brief at 10. As demonstrated above, these contentions are without merit. LPLA has sold at least 15 accused LCD modules in Wisconsin. LPLA and its authorized distributor, Synergistic, openly and continuously, solicit sales of accused modules from Wisconsin customers. Plainly, Wisconsin has an interest in preventing harm within it borders.

The Federal Circuit has articulated a three-part test to determine whether specific jurisdiction may be exercised: "(1) whether the defendant purposefully directed

10

its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." LPLA Brief at 9 (quoting *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-8 (Fed. Cir. 1999)). All three criteria are met here.

        **a.    LPLA Purposefully Directed Its Activities At This Forum By Placing Accused Modules Into The Stream Of Commerce With Intent And Knowledge That They Would Be Sold In The Forum.**

The Federal Circuit has repeatedly held that "purposeful direction" giving rise to jurisdiction can be found where an accused infringer places an accused device into the stream of commerce while knowing the device will reach a forum. For example, in *Beverly Hills Fan Co.*, Virginia jurisdiction was proper over a Chinese manufacturer and New Jersey importer despite the facts that neither entity (1) owned assets in Virginia, (2) had employees in Virginia, (3) was licensed to do business in Virginia, or (4) sold anything in Virginia. 21 F.3d at 1560. The Federal Circuit ruled that jurisdiction exists because "the distribution channel formed by defendants and [the retail outlets in the district] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564; *see also, e.g., Kernius v. International Electronics, Inc.*, 433 F.Supp.2d 621, 624-26 (D. Md. 2006) (exercising jurisdiction where Washington state defendant sold infringing device in Maryland through national chains like Best Buy and RadioShack).

Here, the facts supporting specific jurisdiction are much stronger than in *Beverly Hills Fan Co.*. LPLA has directly shipped and sold accused LCD modules in Wisconsin. LPLA Brief at 3. LPLA promotes and sells the accused products in Wisconsin, both directly through its web site, and indirectly through its distributor,

11

Synergistic, and its Wisconsin resale customer, All-American. Panneck Ex. G-R.
Moreover, LPLA knows that the accused LCD modules are intended to be used in
finished LCD products that are routinely sold by national retail chains, such as Circuit
City and Best Buy, throughout the country, including Madison, Wisconsin. Panneck ¶¶
2-7. Therefore, consistent with Federal Circuit precedent, it is clear that LPLA has
established a distribution channel leading LPLA's accused modules to this district. It
also is clear that LPLA "knew or reasonably could foresee that the articles would be
resold in [the jurisdiction], whereupon a distinct liability for contributory infringement
would arise to them." *North American Philips Corp. v. American Vending*, 35 F.3d at
1580 (reversing dismissal); *see also Viam Corp. v. Iowa Export-Import Trading Co.*, 84
F.3d 424, 429-30 (Fed. Cir. 1996) (reversing dismissal of declaratory judgment action
because jurisdiction over Italian patentee was proper where patentee exploited
California market through United States distributors).

Accordingly, LPLA fully satisfies the "purposeful direction" prong of the
specific jurisdiction test.

> **b.    LPLA's Infringement "Arises Out Of Or Is Related To" Its Activities Directed At The Forum.**

The second prong for specific jurisdiction – that AUO's claim arises out of or is
related to LPLA's activities directed at the forum – is met here as well. In *Beverly Hills
Fan*, this requirement existed where the allegation was that "defendants purposefully
shipped the accused fan into [the forum] through an established distribution channel.
The cause of action for patent infringement is alleged to arise out of these activities. No
more is usually required to establish specific jurisdiction." *Beverly Hills Fan,* 21 F.3d
at 1565.

Here, as explained above, LPLA has purposely directed efforts to sell and distribute its products in Wisconsin. Among those products are the accused LCD modules. No more is required.

### 3. Exercise Of Jurisdiction Does Not Offend Fair Play Or Substantial Justice.

The final prong of the specific jurisdiction test requires that the exercise of jurisdiction be fair and reasonable. As the *Beverly Hills Fan* court acknowledged, it is the "rare situation" where a plaintiff's interest and the state's interest in adjudicating a dispute may be outweighed by the burden placed on defendant. *Beverly Hills Fan*, 21 F.3d at 1568. This is not one of those rare cases.

Here, AUO has a strong interest in preventing infringement of its patents, and Wisconsin likewise has a strong interest in preventing acts of infringement by companies who direct their activities towards its citizens.

There is no countervailing burden imposed on LPLA by it being required to defend its actions in a Wisconsin federal court. LPLA is a United States corporation that advertises its willingness to do business in Wisconsin. It has shipped accused products into Wisconsin, and it has an agent specifically hired to sell its products in Wisconsin. LPLA thus reasonably could foresee and expect to be subject to suit in Wisconsin.

### C. The Fact That The Accused LCD Modules Are Sold As Components For Larger Systems Is Irrelevant

Although not addressed in its opening brief, LPLA may argue that the legal precedents discussed above do not apply to LPLA because LPLA typically sells the accused LCD modules as components which are then assembled into televisions or

13

monitors by third parties like LG Electronics. This argument is without merit for two reasons.

First, as explained above, LPLA is subject to jurisdiction in Wisconsin because of LPLA's direct sales of accused modules in Wisconsin, appointment of a Wisconsin sales representative, and other Wisconsin activities.

Second, LPLA is also subject to jurisdiction in Wisconsin under a stream of commerce theory. Courts have held that sellers of infringing components benefiting from the stream of commerce may be subject to personal jurisdiction where that stream terminates with the end product. *See, e.g., Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718, *9 (E.D. Tex. Dec. 2, 2005) (exercising jurisdiction over Chinese supplier of drill chucks used by California company to manufacture Home Depot products); *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.*, 189 F.Supp.2d 696, 714 (W.D. Mich. 2002) (exercising jurisdiction over German mirror manufacturer who sold to Mercedes in Germany because Mercedes sold cars with those mirrors throughout United States); *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp.2d 349, 355 (D. Del. 1999) (exercising jurisdiction over software licensor where third parties integrated licensed software into their own devices and then placed devices into distribution chain).

Indeed, the Federal Circuit has acknowledged stream of commerce may give rise to personal jurisdiction under facts remarkably similar to the present case. *Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1317 (Fed. Cir. 2005). In *Chi Mei Optoelectronics*, the accused modules were shipped by a Taiwanese defendant to brand name manufacturers outside of the forum

14

(Delaware). *Id.* The manufacturers included the modules in end products, such as computer monitors. *Id.* Then, the manufacturers shipped the end products to retailers who sold the end product to consumers in Delaware. *Id.* On appeal, the Federal Circuit rejected the notion that the defendants' lack of direct sales into Delaware foreclosed jurisdiction by remanding for jurisdictional discovery as to whether defendant ever advertised in the forum, provided advice to customers in the forum, ***or had a distributor in the forum.*** *Id*. at 1322 (emphasis added).

In the present case, it is clear that jurisdiction is proper under a "stream of commerce" analysis because, in addition to a fact scenario closely analogous to *Chi Mei Optoelectronics*, (1) LPLA has a distributor in Wisconsin, (2) LPLA advertises in Wisconsin and (3) LPLA provides advice to customers in Wisconsin through its website. Panneck Exs. G-L.

### D.    Venue Is Proper In This District.

LPLA suggests that venue is improper and argues that this lack of venue is an additional basis for dismissal. However, venue is proper in this Court for at least two reasons. First, under 28 U.S.C. § 1400(b), a patent action may be brought wherever the defendant resides. Residency is defined in 28 U.S.C. § 1391(c) as any district where a corporate defendant is subject to personal jurisdiction. *See also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) (applying the definition of "resides" in 28 U.S.C. § 1391(c) to 28 U.S.C. § 1400(b)). Therefore, under 28 U.S.C. § 1400(b), venue is proper here if LPLA's contacts with this district "are such that, if the district were itself a state, personal jurisdiction would be satisfied." *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840514, *3 (W.D. Wis. Mar.

15

16, 2007). As explained above, personal jurisdiction is proper in this district.

Therefore, venue is proper under 28 U.S.C. § 1400(b).

Second, under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ". As discussed above, LPLA directly and/or *indirectly* infringes AUO's patents by shipping, selling and offering for sale the accused LCD modules in Wisconsin. The directly infringing sales within this district by, for example, Circuit City and Best Buy, give rise to AUO's claims of contributory infringement and inducement against LPLA. 35 U.S.C. § 271(b)-(c). Thus, substantial events relating to the claim of infringement take place in the Western District of Wisconsin.

Further, the outcome of this case could have a substantial impact on property in this district. Multiple retailers in this district, including Circuit City and Best Buy, have inventories of televisions and monitors incorporating accused LCD modules. This inventory property could be affected by an injunction against further infringement of the AUO patents.

Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

## E.    AUO's Complaint Meets The Fed. R. Civ. P. 8 Standards.

LPLA's brief criticizes AUO for failing to allege jurisdictional and venue facts in its Complaint. LPLA Brief at 2, 5. LPLA's criticism is misplaced and irrelevant. Courts have long held that there is no need to plead the factual basis for alleging personal jurisdiction in a complaint. *See, e.g., Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971) (holding plaintiff's complaint need not state basis for

16

personal jurisdiction); *Walker v. Concoby*, 79 F.Supp.2d 827, 835 (N.D. Ohio 1999) (Fed. R. Civ. 8(a)(1) requires an explanation of the grounds for "subject-matter jurisdiction and not personal jurisdiction"); *Burger King Corp. v. Holder*, 844 F.Supp. 1528, 1531 (S.D. Fla. 1993) ("Federal Rule of Civil Procedure 8(a) does not require a plaintiff to plead the basis for personal jurisdiction over a defendant."). Nor does Fed. R. Civ. P. 8 require any pleading with respect to venue. *See also Stickland v. Trion Group, Inc.*, 463 F.Supp.2d 921, 924 (E.D. Wis. 2006) ("A plaintiff need not allege the basis for filing in a particular district court because, unlike subject matter jurisdiction, venue is not a matter that must be raised by the proponent of the forum.").

LPLA's criticism is based on a misreading of *Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F.Supp.2d 1098 (E.D. Wis. 2003). *Versatile Plastics* did not hold that the alleged basis for personal jurisdiction must be set forth in an original complaint as suggested in LPLA's brief. LPLA Brief at 5. Rather, "*[o]nce the issue of jurisdiction is raised*, the plaintiff has the burden of demonstrating the existence of personal jurisdiction . . . ." *Id*. at 1101 (emphasis added). As demonstrated in this opposition, AUO has fully met its burden of establishing jurisdiction. No amendment to AUO's complaint is necessary.[7]

### F.    In The Alternative, AUO Requests An Opportunity For Jurisdictional Discovery And An Evidentiary Hearing.

The jurisdictional evidence set forth in this opposition is more than sufficient for this Court to deny LPLA's motion outright. Nonetheless, if the Court has any doubts, AUO requests a fair opportunity to bolster its position with jurisdictional discovery from LPLA, LPLA representatives such as Synergistic and LPLA distributors. *See*

---

[7]    In the alternative, AUO requests leave to amend its Complaint. Leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

*Commissariat A Le'Energie Atomique*, 395 F.3d at 1324 (reversing dismissal where

plaintiff was denied opportunity for jurisdictional discovery).[8]

## IV.    CONCLUSION

For the foregoing reasons, LPLA's Motion to Dismiss should be denied.

DATED this 18th day of April, 2007

RESPECTFULLY SUBMITTED BY

MICHAEL BEST & FRIEDRICH LLP

By:
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

Attorneys for Plaintiff
AU Optronics Corporation

---

[8]    On April 11, 2007, AUO provided LPLA with discovery requests relating to jurisdictional issues and asked LPLA to provide responsive information with its initial disclosures. Panneck Exs. S-T. As of the date of this opposition, LPLA has not agreed to provide such discovery.

18

DOC NO
REC'D/FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN PM 2: 01

| | |
|---|---|
| AU Optronics Corporation, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) |
| | ) |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

THERESA H. OWENS
CLERK US DIST COURT
WD OF WI

Civil Action No..: 07-C-0137-S

Judge John C. Shabaz

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1.    Plaintiff's Opposition to LG.Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue;

2.    Declaration of David W. Panneck; and

3.    Declaration of Michael Lestina

were served upon all parties to this action as indicated below on this 18th day of April, 2007 to:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU Optronics Corporation,                    )
                                              )                                   APR 18 2007
    *Plaintiff,*                              )          Civil Action No.: 07-C-0137-S
                                              )
    vs.                                       )
                                              )          Judge John C. Shabaz
LG.Philips LCD Co., Ltd.                      )
and                                           )
LG.Philips LCD America,                       )
                                              )
    *Defendants.*                             )
                                              )
                                              )

## DECLARATION OF DAVID W. PANNECK

I, David W. Panneck, declare as follows:

1.    I work as a paralegal for Michael Best & Friedrich LLP. I make this declaration in support of AU Optronics Corporation's Opposition to LG Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

2.    On April 11 and 12, 2007, I placed telephone calls to several electronics retail stores located in the Western District of Wisconsin in order to determine whether those stores had in stock and offered for sale LG television models LG 32LC2D and LG 32LC2DU and computer monitor model LG L204WT.

3.    Of the stores that I contacted on April 11 and 12, 2007 within the Western District of Wisconsin, eighteen (18) stores informed me that they had in stock and offered for sale LG television models LG 32LC2D or LG 32LC2DU or computer monitor model LG L204WT. A true and correct copy of the list of those stores and their locations and the specific products each store carries is attached as Exhibit A.

4. On April 13 and 16, 2007, I physically visited five (5) electronics retail stores in

the Madison, Wisconsin area to personally observe that those stores offered for sale LG

television models LG 32LC2D and LG 32LC2DU and computer monitor model LG L204WT.

5. On April 13, 2007, I visited the following stores and observed that they offered

for sale the LG television model LG 32LC2D:

> American TV and Appliance
> 2404 West Beltline Hwy.
> Madison, WI 53713
>
> Chase TV
> 950 N. Main St.
> Sun Prairie, WI 53590
>
> Radioshack
> 46 East Town Mall
> Madison, WI 53704

6. On April 13, 2007, I visited the following store and observed that it offered for

sale the LG television model LG 32LC2DU:

> Circuit City
> 2301 East Springs Drive
> Madison, WI 53704

7. On April 16, 2007, I visited the following stores and observed that they offered

for sale the LG computer monitor model LG L204WT:

> Circuit City
> 2301 East Springs Drive
> Madison, WI 53704
>
> Circuit City
> 450 Commerce Drive
> Madison, WI 53719

2

8.      Attached as Exhibit B is a true and correct copy of a printout dated April 10, 2007

from LG.Philips LCD America's website, obtained from http://www.lgphilips-

lcd.com/homeContain/jsp/eng/tech/tech210_02_j_e.jsp.

9.      Attached as Exhibit C is a true and correct copy of a printout dated April 10, 2007

from LG.Philips LCD America's website, obtained from http://www.lgphilips-

lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp.

10.     Attached as Exhibit D is a true and correct copy of LPL's Form 20-K as filed with

the Securities and Exchange Commission, available at

http://www.sec.gov/Archives/edgar/data/1290109/000119312507078363/d20f.htm. The filing

states ". . . our display panels were included in products sold by LG Electronics, Philips

Electronics, Dell, Hewlett-Packard, Toshiba, Apple and Acer, among others.".

11.     Attached as Exhibit E is a true and correct copy of excerpts from LG.Philips LCD

Co., Ltd.'s Form 6-K, filed March 2007, as filed with the SEC, available at

http://www.sec.gov/Archives/edgar/data/1290109/000119312507069398/d6k.htm. The filing

states that LG.Philips LCD America, Inc. (LPLA) "was incorporated in California, U.S.A., in

September 1999, to sell the TFT-LCD products of LG.Philips LCD Co., Ltd," and lists several

other similar subsidiaries established around the world, such as LG.Philips LCD Japan Co., Ltd.,

LG.Philips LCD Germany GmbH, LG.Philips LCD Hong Kong Co., Ltd., and LG.Philips LCD

Poland Sp.z.o.o..

12.     Exhibit E shows that as of December 31, 2006 and 2005, LPLA's capital stock

amounted to US $5 million and is wholly owned by LG.Philips LCD Co., Ltd..

3

13.     Exhibit E indicates under the heading "Largest shareholder and related parties as of December 31, 2006" that LG Electronics owns 135,625,000 (37.90%) shares.

14.     Attached as Exhibit F is a true and correct copy of a printout dated April 10, 2007, from LG Electronics' website, obtained from http://us.lge.com/support/wheretobuy.jhtml, which lists retailers of its "TV / Audio / Video" products that are located within 100 miles of the 53701 zip code.

15.     Attached as Exhibit G is a true and correct copy of a printout dated April 10, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/com/com700_j_e.jsp, titled "Sales Network" and identifies LPLA's "URL" as www.lgphilips-lcd.com, and their "territory" as "USA, Canada and Mexico."

16.     Attached as Exhibit H is a true and correct copy of a printout dated March 27, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/prd/prd101_j_e.jsp, titled "Televisions" and provides the specifications for the LC320W01 module.

17.     Attached as Exhibit I is a true and correct copy of a printout dated March 27, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/prd/prd201_j_e.jsp, titled "Monitors" and provides the specifications for the LM190E08 module.

18.     Attached as Exhibit J is a true and correct copy of a printout dated March 27, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/prd/prd201_j_e.jsp, titled "Monitors" and identifies the LM201WE3(TN) module.

19.     Attached as Exhibit K are true and correct copies of printouts dated April 17, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/custom/cs200_j_e.jsp

4

and http://www.lgphilips-lcd.com/homeContain/jsp/eng/custom/cs000_j_e.jsp, which show a contact form and support page.

20.    Attached as Exhibit L is a true and correct copy of a printout dated April 10, 2007, obtained from http://www.lgphilips-lcd.com/homeContain/jsp/eng/com/com703_j_e.jsp, titled "Sales Network" which identifies Synergistic as LPL's "Sales Representative" for "Illinois, Wisconsin and Minnesota."

21.    Attached as Exhibit M is a true and correct copy of a printout dated April 10, 2007 from Synergistic Sales' website, obtained from http://www.synergisticsales.com/, titled "Welcome to Our Website! Serving Illinois, Wisconsin & Minnesota."

22.    Attached as Exhibit N is a true and correct copy of a printout dated April 10, 2007 from Synergistic Sales' website, obtained from http://www.synergisticsales.com/lines2.htm, which says "We are proud to represent these high quality manufacturers." The page list "LG.Philips LCD Active TFT LCD Displays."

23.    Attached as Exhibit O is a true and correct copy of a printout dated April 10, 2007 from Synergistic Sales' website, obtained from http://www.synergisticsales.com/locations.htm, which identifies Synergistic's sales offices.

24.    Attached as Exhibit P is a true and correct copy of a printout dated dated April 10, 2007 from Synergistic Sales' website, obtained from http://www.synergisticsales.com/staff_WI.htm which identifies Synergistic's sales staff for the Wisconsin office.

5

25.     Attached as Exhibit Q is a true and correct copy of a printout dated April 10, 2007

from All-American LCD's website, obtained from

http://www.allamericanlcd.com/graphic_tft/index.html, which lists LPL's LC320W01 LCD

module.

26.     Attached as Exhibit R is a true and correct copy of a printout dated April 10, 2007

from All-American LCD's website, obtained from http://www.allamerican.com/locations.asp,

which lists All American's Sales Office Locations, including Milwaukee, Wisconsin.

27.     Attached as Exhibit S is a true and correct copy of Plaintiff's First Set of

Interrogatories to Defendant  LG.Philips LCD America, Inc. (Nos. 1-2), dated April 11, 2007.

28.     Attached as Exhibit T is a true and correct copy of Plaintiff's First Requests for

Production of Documents and Things to Defendant LG.Philips LCD America, Inc. (Nos. 1-24),

dated April 11, 2007.


I declare under penalty of perjury that the foregoing is true and correct.


Dated this 18th day of April, 2007

David W. Panneck

6

29

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN** 8  PM 2: 00

AU Optronics Corporation,                )          THERESA M. OWENS
                                          )          CLERK US DIST COURT
         *Plaintiff,*                     )    Civil Action No.: 07-C-0137-S
                                          )
    vs.                                   )
                                          )    Judge John C. Shabaz
LG.Philips LCD Co., Ltd.                  )
and                                       )
LG.Philips LCD America,                   )
                                          )
         *Defendants.*                    )
                                          )
                                          )

---

## DECLARATION OF MICHAEL LESTINA

---

I, Michael Lestina, declare as follows:

1.      I work for Ivize, a legal document services company, located at One East Main
St., Suite LL-5, Madison, Wisconsin 53703. The purchases I list below were made in January
and February 2007 using an Ivize company credit card in the name of another Ivize employee,
Sandra Zehner.

2.      On January 16, 2007, I purchased a 32" LG brand LCD television, model number
LG 32LC2D from BestBuy, located at 7357 West Towne Way, Madison, Wisconsin 53719. A
true and correct copy of the receipt for that purchase is attached as Exhibit A.

3.      On January 16, 2007, I purchased a 32" LG brand LCD television, model number
LG 32LC2DU from Circuit City, located at 450 Commerce Drive, Madison, Wisconsin 53719.
A true and correct copy of the receipt for that purchase is attached as Exhibit B.

4.      On January 18, 2007, I purchased a 19" LG brand computer monitor, model
number LG L1952TX from www.radioshack.com and had it shipped to the Ivize offices at One

East Main St., Suite LL-5, Madison, Wisconsin 53703. A true and correct copy of the receipt for

that purchase is attached as Exhibit C.

5.      On January 19, 2007, I purchased a 20" LG brand computer monitor, model

number LG L204WT at Circuit City, located at 450 Commerce Drive, Madison, Wisconsin

53719. A true and correct copy of the receipt for that purchase is attached as Exhibit D.

6.      On February 9, 2007, I purchased a 32" LG brand LCD television, model number

LG 32LC2DU at Circuit City, located at 450 Commerce Drive, Madison, Wisconsin 53719. A

true and correct copy of the receipt for that purchase is attached as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 12 day of April, 2007

Michael Lestina

Q:\CLIENT\022628\0001\B1033341.1

2

```
        WELCOME TO BEST BUY #208
            MADISON, WI 53713
             (608)829-1188

            Keep your receipt!
    Return policies vary by product type.
  Returns must be made with this receipt by
    01/30/07 for 14-day products or
    03/17/07 for 60-day products. See reverse
            side for more details.
```



```
Val #: 0154-4758-9880-3802

0208 060 4602 01/16/07    13:16 0731964
```

## SALE

```
7678514  32LC2D              899.99
 LG 32" LCD
7692222  L1732TQ             239.99
 L1732TQ
                        -----------
            SUBTOTAL   1,139.98
        SALES TAX 5.50 %   62.70
                        ===========
                TOTAL   1,202.68


xxxxxxxxxxx2023      AMEX  1,202.68
SJ             ZEHNER
APPROVAL 664164

*****************************************
QUALIFYING REBATES SUMMARY:
```

Exhibit
A



**Circuit City Stores, Inc.**
Store 3184
450 COMMERCE DRIVE
MADISON, WI 53719-4918
(608) 827-0450                         13:35:48  01/16/07

---

Sold to:                              Orig Date 01/16/07
MIKE LESTINA
                                      Ticket
**CUSTOMER COPY**                     318402132417

---

| Salesperson | | | | Register | Cashier |
|---|---|---|---|---|---|
| S. WADZINSKI | | | | 52 | 094614 |
| Item | Qty | Model | Description | Tax | Amount |
| 1 SL | 1 LG | 32LC2DU | 26"-32" LCD TV | Y | 899.99 |
| | | | Pick Up at Store 3185 | | |

|  |  |  |
|---|---|---|
| Total Taxable | $ | 899.99 |
| Sales Tax | $ | 49.50 |
| TOTAL PURCHASE | $ | 949.49 |
| AMX          649631 | $ | 949.49 |
| BALANCE | $ | 0.00 |

For manufacturer contact information, please refer to
your owner's manual or visit circuitcity.com

Item

** Unscheduled Pickup for your LG  32LC2DU
   at Circuit City Store #: 3185
   Please present your receipt when picking up
   your product.

Title
It is expressly agreed that transfer of title of
merchandise to customer and commencement of any
manufacturer warranty period occurs upon actual,
physical transfer of possession of goods to customer.

You may be eligible to earn Circuit City Reward Points!
Apply for a Circuit City Rewards Credit Card today. See
a store associate for details.

Shop with us online at circuitcity.com.

---

CM THANK YOU FOR SHOPPING AT CIRCUIT CITY!

---

                FOR IN-HOME INSTALLATION AND REPAIR
                SERVICE OR CONSUMER REPLACEABLE
                PARTS CALL: (888) 333-2333

**Exhibit
B**

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat          Web Search:          Go

  **Hotmail**          Today | Mail | Calendar | Contacts          Options

madisonlegal@hotmail.com    Messenger: **Online** ▾          Free N

Reply | Reply All | Forward | ✕ Delete | Junk | Put in Folder ▾ | Print View | Save Address

| | | |
|---|---|---|
| From : | <customerservice@RADIOSHACK.COM> | Inbox |
| Reply-To : | customerservice@RADIOSHACK.COM | |
| Sent : | Thursday, January 18, 2007 12:24 PM | |
| To : | madisonlegal@hotmail.com | |
| Subject : | Your Radioshack.com order confirmation | |

Dear sandra zehner:

Thanks for shopping at www.RadioShack.com. This e-mail confirms that
your order 7780644031-001 was received on 01/18/07. You will not be
charged for any item(s) until they have shipped. Once your order is
shipped, you will receive a shipping confirmation e-mail with updated
tracking information about your order.

Where's your order?
Did you know as a registered user you can view your order history
online, 24 hours a day?

If you would like to view the status of your order now, please visit
the "My Account" section of our website or view the link provided
below.  Please allow up to one (1) hour from the time you receive this
email for your order information to be updated.

http://www.Radioshack.com/checkout/index.jsp?o=7780644031&c=970935881

Shipping Address:

Action legal
1 east main st
ste 11 5
madison, WI  53703

This shipping address includes the following item(s)

Item:                  55015676
Description:           19 1280x1024 BlackLCD
Quantity:              1  @ $269.99
Shipping Method:       Overnight
Arrival dependent upon the shipping method selected.


Sub-Total:             $      269.99
Tax:                   $       16.76
----------------------------
Shipping/Handling:     $       34.65
----------------------------
Total for this address: $      321.40
----------------------------
Order Total:           $      321.40
----------------------------

Find it!
Things that go with, connect, protect, add power, and add storage.  Try
our Accessory Finder for an exact match for your brand and model at
http://www.RadioShack.com/accessoryfinder

Please note: You will not be charged for any item(s) until they have

**Exhibit
C**

shipped.

If your item(s) require multiple packages, your order will be shipped
in multiple packages and our website will provide you with information
about the status of each package. Your total shipping charges for this
order will not exceed the amount shown in the above order summary.
Please retain a copy of this e-mail for your records.

For further questions concerning shipping, order status, payment or
other website policies, visit the Help area of our website at
http://www.RadioShack.com/helpdesk/

Thanks again for shopping at www.RadioShack.com.  Please visit our
website often as we are continually adding more stuff to serve you
better.

Sincerely,

www.RadioShack.com
Customer Care

Online:  http://www.RadioShack.com
Call us anytime:  1-800-THE-SHACK
Find a store near you:  http://www.RadioShack.com/Locator

Please note: This e-mail message was sent from a notification-only
system that cannot accept incoming e-mail. Please do not reply to this
message.

---

🐢 | 🐢 | 🐢                                                    ◈ | ◈ | ✕ | 📇 Inbox

**Get the latest updates from MSN**

**MSN Home  |  My MSN  |  Hotmail  |  Search  |  Shopping  |  Money  |  People & Chat**                    Feedback

© 2007 Microsoft TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

**RadioShack**.com™

| S O L D T O | sandra zehner<br>742 windmill cr<br><br>mazomanie WI 53560 | S H I P T O | Action legal<br>1 east main st<br>ste ll 5<br>madison WI 53703 |
|---|---|---|---|

| SHIP VIA | ORDER DATE | PAGE | ORDER NO. | PO NUMBER | |
|---|---|---|---|---|---|
| FedEx | 01/18/07 | 1 of 1 | 7780644031 | 5781702 | |

| QTY. ORDERED | ITEM | DESCRIPTION | QTY. SHIPPED | VENDOR SKU |
|---|---|---|---|---|
| 1 | 002980565 | 9 1280x1024 BlackLCD<br>+ - | 1 | L1952TX |

PLEASE RETAIN THIS FORM FOR YOUR RECORDS

Thank you for your order!

**Return Instructions**

You have purchased a product that is returnable by mail only to the RadioShack Returns Warehouse.

**Your return must include a Return Authorization.**

To review all of our return policies or obtain a Return Authorization, please go to
http://www.RadioShack.com/returns



**Circuit City Stores, Inc.**
Store 3184
450 COMMERCE DRIVE
MADISON, WI 53719-4918
(608) 827-0450                                11:11:56  01/19/07

---

Sold to:                                 Orig Date 01/19/07
MIKE LESTINA
                                         Ticket
CUSTOMER COPY                            318402133643

---

| Salesperson | | | Register | Cashier |
|---|---|---|---|---|
| E.PIETRYGA | | | 52 | 276664 |
| Item | Qty Model | Description | Tax | Amount |
| 1 SL | 1 LG  L204WT | COMPUTER MONITOR | Y | 349.99 |

|  | |  |
|---|---|---|
| Total Taxable | | $ 349.99 |
| Sales Tax | | $ 19.25 |
| TOTAL PURCHASE | | $ 369.24 |
| AMX | 624193 | $ 369.24 |
| BALANCE | | $ 0.00 |

For manufacturer contact information, please refer to
your owner's manual or visit circuitcity.com

You may be eligible to earn Circuit City Reward Points!
Apply for a Circuit City Rewards Credit Card today. See
a store associate for details.

Shop with us online at circuitcity.com.

---

Item

CM THANK YOU FOR SHOPPING AT CIRCUIT CITY!

---

**Exhibit
D**



## Circuit City Stores, Inc.
Store 3184
450 COMMERCE DRIVE
MADISON, WI 53719-4918
(608) 827-0450

10:05:28   02/09/07

Sold to:
MIKE LESTINA

Orig Date 02/09/07

CUSTOMER COPY

Ticket
318402144791

| Salesperson | | | | Register | Cashier |
|---|---|---|---|---|---|
| B.LAUFENBERG | | | | 42 | 285204 |
| Item | Qty | Model | Description | Tax | Amount |
| 1 SL | 1 LG | 32LC2DU | 26"-32" LCD TV | Y | 1,199.99 |

|  |  |  |
|---|---|---|
| Total Taxable | $ | 1,199.99 |
| Sales Tax | $ | 66.00 |
| TOTAL PURCHASE | $ | 1,265.99 |
| AMX          685099 | $ | 1,265.99 |
| BALANCE | $ | 0.00 |

For manufacturer contact information, please refer to
your owner's manual or visit circuitcity.com

You may be eligible to earn Circuit City Reward Points!
Apply for a Circuit City Rewards Credit Card today. See
a store associate for details.

Shop with us online at circuitcity.com.

Item

CM THANK YOU FOR SHOPPING AT CIRCUIT CITY!

FOR IN-HOME INSTALLATION AND REPAIR
SERVICE OR CONSUMER REPLACEABLE
PARTS CALL: (888) 333-2333

Exhibit
E

DOCKET #

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN    APR 19 2007

THERESA M. OWENS CLERK
CASE#

AU OPTRONICS CORPORATION,

                    Plaintiff,              PRELIMINARY PRE-TRIAL
                                            CONFERENCE ORDER

        v.

                                            07-C-137-S

LG.PHILIPS LCD CO., LTD.
and LG.PHILIPS LCS AMERICA,

                    Defendants.

Preliminary pre-trial conference came on to be heard by telephone in the above entitled matter on April 19, 2007, the plaintiff having appeared by Michael Best & Friedrich by James R. Troupis and Wilson, Sonsini, Goodrich & Rosati by M. Craig Tyler; defendants by Godfrey & Kahn by James D. Peterson and McKenna, Long & Aldridge by Gaspare J. Bono and Tyler Goodwin.  Honorable John C. Shabaz, District Judge, presided.

ORDER

IT IS ORDERED that as determined by this Court, Rule 11, Federal Rules of Civil Procedure, requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims.  Plaintiff's counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations and provide those determinations to the defendant as initial disclosures under Rule 26(a)(1), all

Copy of this document has been
provided to
this _____ day of _____, 20__
by

pursuant to <u>Antonious v. Spalding & Evenflo Companies, Inc.</u>, 275 F.3d 1066 (Fed. Cir. 2002).

IT IS FURTHER ORDERED that pending any protective order which the parties may seek, an interim protective order is provided for "eyes only" of counsel designated to pursue this litigation.

IT IS ORDERED that pleadings may be amended and parties added not later than May 15, 2007 without further order of the Court, thereafter Rule 15, Federal Rules of Civil Procedure, to be followed.

IT IS FURTHER ORDERED that all dispositive motions to be filed during the pendency of this matter, to include motions for summary judgment, shall be accompanied by memoranda of law; opposing party being given 20 days from receipt thereof to respond; and the moving party 10 days from receipt of response to reply.

IT IS FURTHER ORDERED that all motions for summary judgment and other dispositive motions shall be served and filed not later than July 30, 2007; motions for summary judgment in accordance with local rule, a copy of which is enclosed.

IT IS FURTHER ORDERED that nondispositive motions, to include procedural motions, may be heard upon five days notice on any Wednesday morning by telephone at 8:00 A.M. or earlier, moving party to initiate the telephone conference to 608-264-5504.

IT IS FURTHER ORDERED that discovery shall be completed and all depositions taken not later than September 4, 2007.

2

AU Optronics Corporation v. LG.Philips LCD Co., Ltd. , et al.
Case No. 07-C-137-S

IT IS FURTHER ORDERED that the following discovery materials
will not be filed with the Court unless they concern a motion or
other matter under consideration by the Court: interrogatories;
responses to interrogatories; requests for documents; responses to
requests for documents; requests for admission; and responses to
requests for admission.

IT IS FURTHER ORDERED that final pre-trial conference is
scheduled for September 7, 2007 at 1:15 P.M., pursuant to the
provisions of Order Prior to Final Pre-trial Conference, a copy of
which is also enclosed.

IT IS FURTHER ORDERED that jury selection is scheduled for
September 24, 2007 at 9:00 A.M., and bifurcated trial to a seven-
person jury, where the issue of liability is to be determined prior
to the determination of any damage, is scheduled for September 26,
2007 at 9:00 A.M., counsel to meet with the Court at 8:30 A.M. on
each of said days outside the presence of the jury to resolve
issues pending trial.

Entered this 19th day of April, 2007.

BY THE COURT:

JOHN C. SHABAZ
District Judge

## IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF WISCONSIN

### PROCEDURE TO BE FOLLOWED ON MOTIONS FOR SUMMARY JUDGMENT

I.    A motion for summary judgment made pursuant to Rule 56 of the Federal Rules of Civil
procedure shall be served and filed in the following form:

A.    The motion itself together with such materials permitted by Rule 56(e) as
the movant may elect to serve and file; and

B.    Either (1) a stipulation of facts between or among all the parties to the
action, or (2) a statement of the findings of fact proposed by movant, or (3)
a combination of (1) and (2).

1.    Whether a movant elects a stipulation or a statement of proposed
findings, or both, it is movant's obligation to present no more and
no less than the set of factual propositions which movant considers
necessary to judgment in movant's favor, and as to which movant
considers there is no genuine issue.[1]

2.    Such factual propositions shall be set forth in numbered
paragraphs, the contents of each of which shall be limited as far as
practicable to the statement of a single factual proposition.

3.    At the close of each numbered paragraph shall be set forth one or
more references to the PLEADINGS, DEPOSITION
TRANSCRIPTS, ANSWERS TO INTERROGATORIES,
ADMISSIONS on file or AFFIDAVITS[2] supporting movant's
contention there is no genuine issue as to that factual proposition.

4.    References to the record shall include:

a.    in the case of a pleading, the numbered paragraph of that
pleading;

---

[1]    The factual propositions should include all of the "basic" facts necessary to a decision on
the motion, including those going to jurisdiction, to the identity of the parties, and to the
background of the dispute.

[2]    Affidavits must be made on personal knowledge setting forth such facts as would be
admissible in evidence, and showing affirmatively the affiant is competent to testify to the
matters stated therein.

      b.     in the case of a deposition transcript, the name of the witness and the page of the transcript;

      c.     in the case of an answer to an interrogatory, the number of that interrogatory and the identity of the party to whom it was directed;

      d.     in the case of an admission in response to, or resulting from a failure to respond to, a request for admission made pursuant to Rule 36, Federal Rules of Civil Procedure, the number of the requested admission and the identity of the party to whom it was directed;

      e.     in the case of an admission on file which is not in response to, or resulting from a failure to respond to, a request for admission made pursuant to Rule 36, the form such admission takes and the page or paragraph of the document in which that admission is made. Admissions made solely for the purpose of the motion for summary judgment should be so designated.

   C.     A statement of the conclusions of law proposed by movant, in numbered paragraphs.

   D.     A motion for summary judgment in the form required by I., above, shall be served and filed together with a <u>supporting brief</u>.

II.    When a motion and supporting brief have been served and filed in compliance with I., above, the court shall issue a schedule for the procedures described in III. and IV., below, unless a briefing schedule has already been established by the court.

III.   RESPONSE: On or before the date specified in the schedule issued by the court, any party who elects to oppose the motion for summary judgment shall serve and file the following:

   A.     Such materials permitted by Rule 56(e) which said party may elect to serve and file in opposition to said motion.

   B.     A response to the movant's statement of proposed findings of fact.

      1.     With respect to each numbered paragraph of the movant's proposed findings of fact, the said response shall state clearly whether there is a genuine issue as to the whole or a part of the said factual proposition; if it is contended that there is a genuine issue only as to a part of the said factual proposition, the response shall identify precisely the said part of the numbered paragraph.

2.      With respect to any paragraph or part of a paragraph of the
        movant's proposed findings of fact as to which it is contended that
        a genuine issue exists, the response shall refer to the PLEADINGS,
        DEPOSITION TRANSCRIPTS, ANSWERS TO
        INTERROGATORIES, ADMISSIONS on file, or AFFIDAVITS
        complying with Rule 56(e), which respondent believes give rise to
        said genuine issue.

3.      The said references to the record shall be made with that specificity
        required by I.B.4., above.

4.      If an opposing party believes the motion for summary judgment
        must fail because of material facts not stated by the movant and as
        to which it is considered there is no genuine issued, the said
        opposing party may present such other factual propositions either
        by means of:

        a.      a stipulation of facts between or among all of the parties to
                the action; or

        b.      a statement of the findings of fact proposed by said
                opposing party; or

        c.      a combination of "a" and "b."

5.      With respect to such presentation of factual propositions not stated
        by the movant, the said opposing party shall comply with the
        requirements set forth in I.B., above.

C.      A response to the movant's statement of proposed conclusions of law.

1.      With respect to each such numbered proposed conclusions, the said
        response shall state clearly whether the said conclusion is agreed to
        or disputed in whole or in part; if the dispute is partial, the
        response shall state precisely which portion of the proposed
        conclusion is disputed.

2.      If an opposing party believes the motion for summary judgment
        must fail because of conclusions of law not stated by movant, that
        party may state such other conclusions of law.

D.      The response in the form required by III., above, shall be served and filed
        together with a brief in opposition to the motion for summary judgment.

IV.     REPLY: On or before the date specified in the schedule issued by the court, the
        movant may, but is not required to, serve and file in rebuttal any or all of the
        following items:

A.    Such materials permitted by Rule 56(e) which movant may elect to serve and file in rebuttal.

B.    A statement in rebuttal to the response or responses to any numbered paragraph of movant's initially proposed findings of fact, and a statement in rebuttal to any numbered paragraphs of findings of fact initially proposed in the response or responses. To the extent that said statement in rebuttal requires record references not earlier made by movant, the said references shall be made with that specificity required by I.B.4., above.

C.    A statement in rebuttal to the response or responses to any numbered conclusion of law initially proposed by the movant, and a statement in rebuttal to any numbered conclusion of law initially proposed in the response or responses.

D.    With the rebuttal described in IV., above, the movant may, but is not required to, serve and file a rebuttal brief.

NOTE PARTICULARLY:

V.    In deciding the motion for summary judgment:

A.    The court will conclude that there is no genuine issue as to any proposed finding of fact initially proposed by the movant, except to the extent an opposing party's response asserts that a genuine issue exists; and

B.    The court will conclude there is no genuine issue as to any finding of fact initially proposed in a response, except to the extent that movant's rebuttal asserts a genuine issue exists.

C.    As to any finding of fact, whether initially proposed by the movant or in a response, as to which it is asserted a genuine issue exists, the court will make a determination as to the existence or non-existence of such genuine issue.

D.    The court is not required to give any weight to a piece of evidence unless it is set forth in the manner described.

E.    The court does not consider it is under any obligation to search the record for factual matters that might support either the grant or the denial of the motion. It is the duty of the parties to bring to the court's attention by specific reference to the record as outlined in paragraphs I.B., III.B., and IV.B., all factual and legal matters material to the resolution of the issues in dispute.

VI.    All motions for summary judgment shall be considered as submitted for ruling without oral argument, unless the court otherwise directs.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

JUDGE JOHN C. SHABAZ
ORDER PRIOR TO FINAL PRE-TRIAL CONFERENCE

IT IS ORDERED that in preparation for trial counsel for the parties shall:

1.  Confer not later than ten days before the date of the final pre-trial conference scheduled in the action to which this order refers.

2.  Prepare a <u>joint</u> final pre-trial report to be filed with the Court not later than <u>three days</u> before the final pre-trial conference. The principal burden for the composition of the report shall be on counsel for the plaintiff. The report must be signed by counsel for all parties and must contain the following:

> (a) Date of the pre-trial conference and appearances for the parties.
>
> (b) An agreed statement of all uncontested facts. In the absence of objection to the admissibility of any uncontested facts the statement will become part of the record. No proof will be received at trial on the matters covered by the statement.
>
> (c) An agreed statement of major factual issues.
>
> (d) The names and addresses of all prospective witnesses for each party. It is contemplated that witnesses not listed will not be permitted to be called except upon a showing of good cause.
>
> (e) The names and addresses of all prospective expert witnesses for each party, together with a narrative statement of each expert's back-

3/94

ground and experience.  If the case is to be
tried to a jury, the statement will be read to
them and no proof will be received on the
matters covered unless objection to the
narrative statement is noted in the report.

(f) An itemized statement of special damages
if such special damages are an element of a
claim.

(g) A schedule of all exhibits to be offered
at trial, designating those to which objection
will be made, with a brief statement as to the
grounds for objection.  Objections based on
relevancy need not be noted.

(h) A list of depositions, or portions there-
of, to be offered at trial.  Extensive (i.e.,
more than 5 pages) reading from depositions
will not be permitted.  Rather, the proponent
of a deposition must prepare a written
narrative summary of a deposition the party
intends to offer.  Any other parties desiring
to make use of the same deposition must also
prepare a narrative summary.  Summaries not
filed at least ten days prior to trial (seven
days for a responsive summary) may not be used
during the trial absent a showing of good
cause.

3.  Mark and number all exhibits prior to the final pre-trial

conference.  Exhibits should be numbered serially without desig-

nating the offering party; plaintiffs to begin numbering with 1,

defendants with 201.

(a)  File all formal discovery documents, to
include depositions and contested exhibits at
final pre-trial conference.

4.  If trial to Court, as follows:

Counsel for parties will submit to the Court by noon of the

Thursday before trial the following:

(a) Trial briefs on all contentions of parties
filing the brief, including references to
special evidentiary problems.

(b) Proposed findings of fact, conclusions of law and order of judgment.

**If trial by jury, as follows:**

Counsel for parties will submit to the Court not later than noon ten days before trial or as otherwise directed the following:

(a) Trial briefs on all contentions of parties filing the brief, including references to special evidentiary problems.

(b) Proposed voir dire questions.

(c) Proposed jury instructions, with citations or references of authority; instruction conference to be held the Friday prior to trial.

(d) Proposed verdict forms, special verdict forms, and proposed special interrogatories to jury, if applicable.

(e) Instruction conference to be held the Friday prior to trial.

5.    Submit separate reports or partial separate reports at time of final pre-trial conference if counsel cannot agree on the contents of a joint report, and certify that after making diligent effort agreement could not be reached on joint report.

6.    The following paragraph shall be included in each pre-trial order:

Hereafter this order will control the course of the trial and may not be amended except by consent of the parties and the Court to prevent manifest injustice. In the event of ambiguity in any provisions of this order, references may be made to the records of this conference to the extent recorded by notes and to the pleadings.

7.    Estimated trial time and other items which may be pertinent thereto.

31

DOC NO
RFC'D/FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

2007 APR 30  PM 4:09

CLERK US DIST COURT
WD OF WI

| | |
|---|---|
| AU OPTRONICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07-C-0137-S |
| | ) |
| LG.PHILIPS LCD CO., LTD. and | ) |
| LG.PHILIPS LCD AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM IN SUPPORT OF LG.PHILIPS LCD
## AMERICA'S MOTION TO DISMISS FOR LACK OF
## PERSONAL JURISDICTION AND IMPROPER VENUE

# **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE ................................................................... 1 | |
| | A. | LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin ................................. 2 |
| | B. | LPLA Does Not Have The Contacts With Wisconsin Required For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute ............................................................................... 5 |
| II. | AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS ....................................................... 8 | |
| | A. | LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin ................................................................................. 8 |
| | | 1.  Beverly Hills Fan does not support AUO's stream of commerce theory based on the facts in this case ......................................................... 8 |
| | | 2.  LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin ........................................................................... 11 |
| | B. | The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play ....................................................................... 14 |
| III. | VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER ................ 16 | |
| IV. | CONCLUSION ................................................................................................................ 17 | |

AUO misconstrues the facts and misapplies controlling authority in an attempt to find a basis for personal jurisdiction over LPLA in Wisconsin that does not exist. AUO asks this Court to allow a large Taiwanese corporation to bring a lawsuit, with no Wisconsin state law claims, in Wisconsin against a Korean based manufacturer and a California based subsidiary, neither of whom have any connection to Wisconsin. AUO claims LPLA made a sale of LCD modules in Wisconsin. That claim is wrong. Instead, the sale AUO describes was made in California by California based LPLA to a California based distributor. AUO also claims LPLA sells products over its website. That claim is also wrong. LPLA does not sell products over any website. The website AUO describes is owned and operated by LPL. Finally, AUO claims that the availability of finished LCD products in Wisconsin retail stores is a basis for asserting personal jurisdiction over LPLA. That claim is meritless. LPLA plays no role in the unilateral, independent decisions of third-party companies to manufacture or distribute finished LCD products. AUO then pins its argument for venue in this Court on the foregoing erroneous personal jurisdiction conclusions. Accordingly, AUO has failed to carry its burden of proving the existence of a ground for jurisdiction and a basis for venue, and this Court should grant LPLA's motion to dismiss.

## I.   AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE

Plaintiff asserts three bases for jurisdiction under the Wisconsin long-arm statute: (1) substantial and not isolated activities within Wisconsin; (2) an act or omission arising within Wisconsin; and (3) injury to AUO within Wisconsin based on an LPLA act outside of Wisconsin. (*See* Plaintiff's Opposition to LG.Philips LCD America's Motion to Dismiss ("AUO Opp'n") at 6-10.) AUO's arguments in support of each of these bases fail.

**A.    LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin.**

AUO's argument that LPLA is engaged in "substantial, continuous and ongoing activities" sufficient to establish jurisdiction under § 801.05(1)(d) is meritless.  This Court recently explained that contacts considered relevant under the Wisconsin long-arm statute include visits to the state; registration to do business within the state; engaging in one's own advertising within the state; soliciting business within the state; and having employees, real estate, bank accounts, registered agents, customers, or sales people in the state.  *Ricoh Co., Ltd. v. Austek Computer, Inc.*, 06-C-0462-C, *18-19 (April 3, 2007 W.D. Wis.).  As fully explained in LPLA's Memorandum In Support Of Its Motion To Dismiss ("LPLA's Memo"), none of these contacts exists here.  LPLA is not registered to do business in Wisconsin.  (LPLA's Memo, Han Declaration ¶ 9.)  LPLA does not engage in its own advertising or otherwise solicit business in Wisconsin.  (Han Declaration ¶8.)  LPLA has not participated in trade shows or other promotion events in Wisconsin.  (Han Supplemental Declaration, "Han Supplemental", attached, ¶ 3.)  LPLA has no employees, real estate, bank accounts, registered agents, customers, or sales people in Wisconsin.  (Han Declaration ¶¶ 3, 10, 12-15.)  AUO unsuccessfully attempts to counter this overwhelming evidence demonstrating no "substantial and not isolated activities" in Wisconsin with allegations concerning a separate Illinois based company, Synergistic; LPL's website, not owned or operated by LPLA; and a sale in California to a California based customer.  (*See* AUO Opp'n at 6-9.)

First, AUO misconstrues Illinois based Synergistic as an LPLA distributor.  (AUO Opp'n at 4.)  Instead, Synergistic merely had a sales representation agreement with LPLA that expired by its own terms on December 31, 2006.  (Han Supplemental ¶ 4.)  Synergistic does not ship or distribute any LPLA products within Wisconsin or any other state.  (Han Supplemental ¶ 5.)

-2-

Synergistic is not and has never been a partner, employee or agent of LPLA. (Id.) The evidence

AUO cites in support of the supposedly "close working relationship between Synergistic and

LPLA" is a link from Synergistic's website to a website owned and operated by LPLA, not by

LPLA. (AUO Opp'n at 7; Han Supplemental ¶15.) That link is one of nineteen links to various

manufacturers. (AUO Opp'n, Ex. N.) Moreover, AUO's failure to provide any information

about how much, if any, of the Illinois based Synergistic's business is done in Wisconsin and

whether or not Synergistic has even sold a single accused product in Wisconsin is fatal to its

argument. *Ricoh Co., Ltd.*, 06-C-0462-C at \*14-15.

Next, AUO falsely claims that LPLA operates a website through which it offers to sell

products to customers in Wisconsin. (AUO Opp'n at 4.) The website identified by AUO is

owned and operated by LPL, not LPLA. (Han Supplemental ¶ 15.) LPL's conduct cannot be

assigned to LPLA for AUO's benefit in a personal jurisdiction analysis. *See Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that in a personal jurisdiction analysis,

due process requires each defendant's contacts with a forum be considered individually

regardless of whether the defendants have a parent-subsidiary relationship); *Phonometrics, Inc.*

*v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (affirming dismissal of a

defendant for lack of personal jurisdiction that was in a parent-subsidiary relationship with a co-

defendant that was subject to personal jurisdiction). LPLA does not offer products for sale on

the LPL website to any of its customers, let alone residents of Wisconsin.

(Han Supplemental ¶ 15.) In fact, LPLA has no involvement whatsoever in the operation a

website.[1] (Han Supplemental ¶ 16.)

---

[1] Even if LPLA were involved or had ownership of the website, the requirement of commercial activity within Wisconsin would still not be met. *See Neomedia Technologies, Inc. v. Airclic,*

*(footnote continued on next page)*

AUO then erroneously argues that a single sale of products in *California* to a *California* based customer is sufficient to assert jurisdiction under *Wisconsin's* long-arm statute and attempts to support this claim by citing a discussion of the due process jurisdictional analysis in an unreported District of Colorado case. (AUO Opp'n at 8.) However, that discussion does not involve the application of any state's long-arm statute, let alone Wisconsin's long-arm statute and is therefore irrelevant. *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124, \*6 (D.Colo. July 21, 2005). AUO also cites to *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed Cir. 1994), but that case does not apply here. In *North American*, the Federal Circuit found that the allegedly infringing sales took place in Illinois because the customers were based in Illinois. *Id.* Furthermore, the defendants had ongoing business relationships with Illinois based customers, including regular visits and product shipments to Illinois and participation in trade shows and other promotional events in Illinois. 35 F.3d at 1577-58.

Here, the sale AUO discusses occurred in California, where both LPLA and the customer, All-American Semiconductor, are based and operate. (Han Declaration ¶¶ 2, 19.) Title to the product changed hands in California. (Han Declaration ¶ 19.) Only after title had passed to All-American Semiconductor, did LPLA, for the benefit and at the direction of its customer, ship that product to a location in the Eastern District of Wisconsin. (Id.) Moreover, LPLA does not participate in trade shows or other promotional events in Wisconsin. (Han Supplemental ¶ 3.)

---

*(footnote continued from previous page)*

*Inc.*, No. 04-C-566, 2004 WL 848181,\*4 (N.D.Ill. April 16, 2004) (finding in a patent case that a website that is not targeted toward a particular state and does not allow for commercial transactions "does not reach the level of commercial interactivity" required for asserting personal jurisdiction).

In addition, LPLA has no control over where independent distributors such as All-American Semiconductor choose to sell products. (Han Supplemental ¶ 11.) Instead, LPLA's distributors make unilateral, independent decisions about where to sell their products. The tenuous at best contact with Wisconsin is a far cry from the numerous contacts with the state in the sole case AUO relies on for its § 801.05(1)(d) argument, *K.W. Muth Co., Inc. v. Getnex Corp.*, No. 06-C-378-C, 2006 WL 2772828, *2 (W.D. Wis. Sep. 22, 2006). There, the defendant had alliances with two Wisconsin based companies and a network of *at least 21* distributors selling defendant's own product within Wisconsin. (*Id.*)

### B.    LPLA Does Not Have The Contacts Required With Wisconsin For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute

As an initial matter, AUO, in its complaint, does not properly identify any accused products and thus fails to satisfy the pleading requirements of Fed. R. Civ. 8. *See Ricoh,* 06-C-0462-C at *10 (finding that identifying accused products by referring to a product type such as "disk drives" rather than specific model numbers is not enough to satisfy pleading standards in a patent infringement case). In its opposition brief, AUO identifies only four accused LPLA products by model number, so only sales of those products could qualify as an injury under Wis. Stat. § 801.05(3) and § 801.05(4). *Id* (considering only alleged sales of products with model numbers clearly identified in the complaint).

AUO identifies only a single transaction involving an accused product that AUO itself was not involved in:  a sale in *California* between *California* based LPLA and *California* based All-American Semiconductor.[2]  Recognizing that the sale at issue occurred in California, AUO

---

[2] In its opposition brief, AUO claims it made three purchases of allegedly infringing products, none of which were manufactured or sold by LPL or LPLA, in Wisconsin. (AUO Opp'n at 3-4.) Because AUO was responsible for these purchases, the purchases can not constitute an injury

*(footnote continued on next page)*

attempts to invoke a stream of commerce type theory described in *Nelson v. Park Industries, Inc.*, 717 F.2d 1120 (7th Cir. 1983), a products liability case involving a Wisconsin minor who suffered severe burns when a shirt she wore ignited and two corporate defendants from Hong Kong who manufactured and distributed that shirt. *Id.* at 1122. The stream of commerce theory had its genesis in product liability law and is particularly applicable when a consumer with relatively little power seeks redress at the site of an injury caused by a relatively more powerful foreign corporation because there is likely no other forum available. *See World-Wide Volkswagen v. Wilson*, 444 U.S. 286 (1980) (discussing the stream of commerce theory for the first time in a product liability suit); *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 114-15 (1987) (reversing a finding of personal jurisdiction over a Japanese company in part because the suit no longer included a safety claim by a California consumer, but instead only an indemnification claim by a Taiwanese manufacturer).

In this case, however, the plaintiff is a major foreign corporation that could have filed suit against LPLA in California, where LPLA is based, or in Texas, North Carolina, or Illinois where LPLA has additional offices. (Han Declaration ¶ 2, 3.) Applying a stream of commerce theory to permit a large Taiwanese corporation to bring suit in Wisconsin against a Korean based manufacturer and a California based subsidiary with no connection to Wisconsin that involves no right or interest under Wisconsin state law should not be permitted. *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115-16 (1987) (explaining that permitting a suit by a Taiwanese Corporation against a Japanese corporation in California when it was unclear

---

*(footnote continued from previous page)*

under § 801.05(3) or § 801.05(4). *See Ricoh Co.*, 06-C-0462, at *12 (explaining that a patent holder cannot be harmed by a loss of business from a sale of a competitor's product that patent holder itself chose to make).

whether or not California law would apply simply because products made by the Japanese corporation were shipped to California was contrary to due process). If personal jurisdiction may be asserted over LPLA under the circumstances here, the Court would essentially establish universal jurisdiction.

Additionally, a single sale is not enough to trigger application of § 801.05(4)(b). Under the local injury, foreign act provision of the Wisconsin long-arm statute, the defendant must engage in additional contact with Wisconsin besides the foreign act and local injury before a Wisconsin court may assert personal jurisdiction. *Landreman v. Martin*, 530 N.W.2d 62, 66 n.3 (Wis. Ct. App. 1995). As explained above and throughout LPLA's Memorandum In Support Of Its Motion To Dismiss, such additional contact between LPLA and Wisconsin does not exist.

AUO also claims that the use or sale of finished LCD products that include parts sold by LPLA gives rise to jurisdiction under § 801.05(4)(b), again citing *Nelson* for authority. However, in *Nelson* the defendant distributor (Bunnan) acted as the retailer's (Woolworth) buying agent and bought product samples for Woolworth, placing purchase contracts for Woolworth, inspecting products for Woolworth, acting as Woolworth's representative in efforts to obtain reimbursement from a manufacturer for defective merchandise, and holding Woolworth harmless from certain claims made against Woolworth involving the merchandise purchased by Woolworth through Bunnan. *Id*. at 1123. That close business relationship is in stark contrast to the complete lack of any relationship between LPLA and retail outlets that sell finished LCD products that have LPL components inside. LPLA does not market, sell, or distribute LCD module products to American, Best Buy, BJ's TV & Appliance, Chase TV, Circuit City, or Radio Shack or any other retail store. (Han Supplemental ¶ 10.) Nor does LPLA control or participate in any retail sales by any retail store of any finished LCD product. (Id.)

-7-

Accordingly, the Wisconsin long-arm statute does not allow for jurisdiction over LPLA.

## II.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS

AUO's contention that jurisdiction over LPLA complies with due process is largely a rehash of their flawed arguments regarding the Wisconsin long-arm statute.  As explained above and in LPLA's opening brief, AUO's allegations against LPLA have no connection to Wisconsin.  The very few allegations that do relate to Wisconsin only concern unilateral and independent actions by *other* entities, not LPLA.  However, "[d]oing business with a company that does business in [a forum state], is not the same as doing business [in the forum state]." *Red Wing Shoe Co., Inc., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Accordingly, AUO can assert no contacts with a forum state "resulting from 'the unilateral activity of another party or third person'" to LPLA.  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.17 (1985)).  Consequently, none of AUO's claimed bases for jurisdiction comport with due process.

### A.    LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin.

#### 1.    *Beverly Hills Fan* does not support AUO's stream of commerce theory based on the facts in this case.

The Supreme Court explains that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. 102 at 112 (1987).  AUO clings to *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), in support of its stream of commerce theory, but that case is inapposite.  There, the defendant distributor directly shipped accused ceiling fans intended for end user consumption from a manufacturer to retail outlets in Virginia.  *Beverly Hills Fan*, 21 F.3d at 1560.  Consumers buying those ceiling fans at a retail outlet received

manuals identifying the defendant distributor as the source of the fans and a warranty that the defendant distributor honored. *Id.*

Here, however, LPLA sells component parts to LCD product manufacturers who independently and unilaterally incorporate those parts into LCD products and then independently and unilaterally sell those products to retail outlets where the products are ultimately sold to end consumers. (Han Supplemental ¶¶ 9-11.) The LCD products sold to end users in Wisconsin are not branded or otherwise identified as coming from LPLA, nor does LPLA offer warranties or service options to end consumers of those monitors. (Han Supplemental ¶ 14, 17.) Also significant in *Beverly Hills Fan* was the intentional nature of the alleged infringement, evidenced by the fact that several months before the lawsuit was filed and before accused fans were shipped into Virginia, the plaintiff notified the defendants of its charge that the fans infringed plaintiff's patent. *Id.* at 1567-86. No such notification occurred here. (Han Supplemental ¶ 18.)

Although *Beverly Hills Fan* is clearly distinguishable, the circumstances here are analogous to the long line of cases finding no purposeful availment. For example, in *Adell Corp. v. Elco Textron, Inc.*, the defendant sold components to General Motors who then independently integrated the components into pickup trucks and then shipped some of those trucks to the forum state. 51 F. Supp. 2d 752, 754 (N.D. Tex. 1999). Like LPLA, the *Adell* defendant had no input on the distribution of the finished product that incorporated the allegedly infringing component, did not warrant the finished product to forum state customers, did not advertise in the forum state and did not have any direct sales of the accused device in the forum state. *Id.* The *Adell* court explicitly distinguished that case from *Beverly Hills Fan* and explained that the defendant's "shipments of parts to General Motors, who uses them in conjunction with parts obtained from

others in its final products that are eventually shipped to Texas, are not purposeful minimum contacts with Texas" and do not warrant application of the stream of commerce theory. *Id*.

Similarly, allegations that a defendant manufactured allegedly infringing products, arranged for distribution of those products through two intermediaries, and advertised its product through an internet website to forum state residents did not permit an assertion of jurisdiction. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, No. Civ.A. 99-218-SLR, 1999 WL 615175, *5 (D. Del. Aug. 3, 1999) (distinguishing those allegations from the facts in *Beverly Hills Fan*). Significantly, and similar to the circumstances here, in *American Bio*, there was no evidence demonstrating that the defendant directed the intermediaries' sales efforts at residents of the forum state. *Id*. Like here, the record in *American Bio*, did not "demonstrate the existence of ongoing commercial relationships with retailers and customers in [the forum state]." *Id*. Furthermore, the court for the sake of argument reluctantly assumed that the defendant's website displaying product information constituted an "'offer to sell,'" but declined to find that the defendant transacted business in the forum state in the absence of evidence demonstrating that forum state residents actually accessed the website. *Id*. There is also no such evidence here. In fact, LPLA does not even operate a website. (Han Supplemental ¶ 16.)

In addition, although it is common knowledge that Frigidaire and Kenmore brand products are widely available for sale in Pennsylvania, the stream of commerce theory does not justify an assertion of personal jurisdiction in Pennsylvania over a defendant who sold component parts (oven gaskets and clips) to a manufacturer, Electrolux/Frigidaire, that makes Frigidaire and Kenmore products. *Davlyn Mfg. Co., Inc., v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 528-31 (E.D. Pa. 2005) (citing *Ashai* and *World-Wide Volkswagen* and distinguishing *Beverly Hills Fan*). The defendant in that case sold all of the oven gaskets and clips it

manufactured to Electrolux/Frigidaire, but had no control over and only a general knowledge of where the oven gaskets and clips would eventually end up. *Id*. at 528-29. Here, LPLA sells its LCD modules to various companies and has no control or involvement in the subsequent manufacturing and distribution of finished LCD monitor products those manufacturers produce. (Han Supplemental ¶ 9, 19.)

AUO also cites *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), in support of its stream of commerce theory. However, in that case, the Federal Circuit remanded for jurisdictional discovery but did not find based on the record that the District of Delaware had personal jurisdiction over the Taiwanese defendant. The Federal Circuit indicated that "additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." *Id*. at 1321-22.

> **2.    LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin.**

AUO also argues that LPLA purposely availed itself of the privilege of conducting activities within Wisconsin when it sold LCD modules to a California based customer. (AUO Opp'n at 1.) AUO erroneously asserts that LPLA shipped products directly to a customer in Wisconsin. (AUO Opp'n at 9.) Instead, *California* based LPLA sold products to a *California* based customer that took title to those products in *California*. (Han Declaration ¶ 19.) The California based customer then unilaterally and independently decided to have those products shipped to the Eastern District of Wisconsin. (Id.) This is directly analogous to the facts in *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509 (E.D. Wis. July 17, 1996). There, a Tennessee based manufacturer sold toilets to a Texas based retailer. *Id*. at *1. Placing the orders as "F.O.B. warehouse", the retailer directed the manufacturer to ship the toilets

-11-

directly from the manufacturer's Tennessee warehouse to the retailer's local stores in Wisconsin. *Id.* The Kohler court granted the motion to dismiss for lack of personal jurisdiction, holding that the presence of the toilets in Wisconsin stores "did not 'proximately result' from actions taken by [the manufacturer]," therefore no substantial connection to this forum could have been established. *Id.* at \*6. The lone shipment of product to Wisconsin that AUO identifies here, occurred after the product was sold in *California* to a *California* customer, was the result of the customer's unilateral action, and therefore can not justify exercising personal jurisdiction over LPLA.[3]

AUO offers no other evidence that any accused module distributed by LPLA has ever been *sold* in Wisconsin. Each of the accused products AUO claims can be found on the shelves of retail stores in Wisconsin are finished LCD products unilaterally and independently manufactured by third parties. Jurisdiction is not proper because LPLA in no way created, controls, or employs the distribution system for those monitors. (Han Supplemental ¶ 7, 9.); *see Asahi*, 480 U.S. at 112 (reversing a finding of personal jurisdiction under the stream of commerce theory because the defendant "did not create, control, or employ the distribution system that brought [the product] to [the forum state]"). In fact, LPLA has no control or involvement whatsoever in the subsequent sale or use of their LCD modules once they are sold to distributors or manufacturers. (Han Supplemental ¶ 7, 9.) Jurisdiction is not proper over a defendant merely because an unrelated retailer independently sells a third-party product that

---

[3] Even if LPLA had made a sale in Wisconsin, a single sale or shipment is not enough to establish the minimum contacts required under the jurisdictional due process analysis. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1317 (S.D. Fla. 2006).

happens to contain a part manufactured or distributed by that defendant.[4] *Neomedia Technologies, Inc., v. Ariclic, Inc.*, No. 04-C-566, 2004 WL 848181 (N.D. Ill. 2004 April 16, 2004) (distinguishing *Beverly Hills Fan* because there was no evidence of coordination between retailer's efforts in the forum state and the defendant).

Even a company that grants exclusive access to its wholly owned subsidiary to market and distribute a product in the forum is not subject to personal jurisdiction. *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86 (D.Conn. 2001). In *Savage*, the defendant designed a lighter product and manufactured and shipped components for that lighter to a subsidiary in Mexico that completed assembly of the lighter. *Id*. at 88-89. Then another of the defendant's subsidiary

---

[4] The cases AUO cites on page 14 of its brief are inapposite. First, in *Donnelly Corp. v. Reitter & Schefenacker*, 189 F. Supp. 2d 696 (W.D. Mich. 2002), the list of contacts with Michigan is seemingly endless. The *Donnelly* defendant moving for dismissal there was a limited partner in a Michigan limited partnership that maintained offices in Michigan and manufactured the alleged infringing products. *Id*. at 698. That defendant made at least 50 shipments of allegedly infringing product samples to the limited partnership in Michigan for use in sales presentations to General Motors and Chrysler in Michigan. *Id*. at 699. The defendant also collaborated with the limited partnership in Michigan on the design of the allegedly infringing products. *Id*. at 700. The defendant's personnel were sent to Michigan every other month to participate in sales presentations, meet with prospective customers, oversee supply contract arrangements, and attend related trade shows. *Id*. at 700-01. Some of the defendant's other employees were stationed in Michigan to provide technical assistance on the manufacturing of accused products by the Michigan limited partner. *Id*. at 700. Still more employees actively provided technical support via phone and e-mail to the Michigan partnership while that partnership was manufacturing the accused products. *Id*. This endless stream of contacts is nothing like the tenuous at best connection AUO attempts to find between LPLA and Wisconsin. In *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, the defendant manufactured only drill chucks marked with the RIDGID brand name for exclusive use in RIDGID brand drills sold exclusively at Home Depot. No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 2, 2005). Here, LPLA sells its LCD modules to various companies. (Han Supplemental ¶ 19.) In *Motorola Inc. v. PC-TEL*, unlike LPLA, the co-defendant seeking dismissal had licensing agreements incorporated under Delaware law and operated a website from which its Delaware customers ordered products and sought support. 58 F. Supp. 2d 349, 351-52 (D. Del. 1999). Furthermore, the forum state Delaware had a much more significant interest in the litigation than exists here. Both the plaintiff and a co-defendant in *Motorola* were Delaware corporations. *Id*. at 351.

corporations distributed the lighter throughout the United States, including in Connecticut where a family filed a product liability suit involving the lighter. *Id*. The defendant there had even named the president and some board members of the subsidiary corporations. *Id*. at 89-90. However, the *Savage* court held that the defendant's involvement in naming corporate directors and officers of its subsidiaries and having a direct ownership interest in subsidiaries were not enough for a Connecticut court to assert personal jurisdiction based on the subsidiaries' contact with Connecticut. *Id*. at 94-95.

The relationship in *Savage* is much closer than the relationship between LPLA and any finished LCD manufacturer, including LG Electronics. LPLA has no ownership interest in any finished LCD producer and plays no role in the distribution of any finished LCD product. (Han Supplemental ¶¶ 7, 9, 11.) Nor has LPLA designed or created a product that is marketed or distributed by any LCD manufacturer. (Id.) Instead, LPLA merely sells component parts that finished LCD manufacturers unilaterally and independently choose to integrate into LCD products that those manufacturers unilaterally and independently choose to sell and distribute. Accordingly, the facts here are "insufficient to support the constitutional exercise of jurisdiction over [LPLA]" in Wisconsin. *Savage*, 147 F. Supp. 2d at 94.

## B.    The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play.

As explained in LPLA's Memorandum In Support Of Its Motion To Dismiss, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. Instead of filing suit in an appropriate forum, AUO engaged in blatant forum shopping, seeking merely to take advantage

-14-

of this court's reputation for speed and efficiency.[5] Such forum shopping is disfavored. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877-878 (Fed. Cir. 1983) (noting that Congress created the Federal Circuit to prevent forum shopping). This Court must be particularly vigilant considering plaintiffs' particular attraction to it. *See Reynolds and Reynolds Holding, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 551-52 (E.D.Va. 2004) (recognizing that the Eastern District of Virginia's reputation as the "rocket docket" attracts plaintiffs, but that the court must guard against that attraction dulling the very expediency the court is known for).

Furthermore, as explained above, Wisconsin's connection to this suit is tenuous at best. In a case with much stronger connections between the defendant and the forum state than exist here, this Court explained that it was "doubtful" that due process would allow an assertion of personal jurisdiction. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840512 (W.D. Wis. Mar. 16, 2007) (referring to the defendant's three employees within Wisconsin, at least one Wisconsin customer that makes repeat product purchases, and a website accessible from Wisconsin). That neither party here are citizens or residents of Wisconsin erodes any potential interest Wisconsin may have had in this suit. *See Asahi*, 480 U.S. at 114 (explaining that "because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). Moreover, AUO is not attempting to vindicate a right or interest protected by Wisconsin law, but an interest under federal law. An action already filed prior to this action, pending in Delaware, and involving the same patents at issue here, gives

---

[5] On April 16, 2007, defendant LG.Philips LCD Co., Ltd., recognizing that this forum is inappropriate, filed a motion to transfer this case to the District of Delaware where another suit involving the patents at issue here is pending.

AUO that same opportunity.[6] Accordingly, Wisconsin's only interest here is to have its federal court in the Western District protect its docket from having AUO's forum shopping force that court to devote time and resources to a case that should have been filed elsewhere.

## III. VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER

AUO apparently and appropriately concedes venue is not proper under § 1391(b)(1) and § 1391(b)(3). The bases for venue in this district that AUO does assert to establish venue are tied to its erroneous personal jurisdiction conclusions. However, the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher*, 2007 WL 804512 at *3 (emphasis added). Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)). AUO recognizes that LPLA does not have a regular and established place of business in Wisconsin and accordingly makes no effort to justify venue under that clause of § 1400(b).

However, AUO goes on to conclude that jurisdiction is proper in the Western District and, thus venue is also proper. Because its premise is false, AUO's venue argument fails. As explained above, LPLA has no control or involvement in the distribution of finished product LCD monitor products manufactured by LG Electronics or any other manufacturer to retail outlets in Wisconsin, thus the availability of those products can not be a basis for personal jurisdiction over LPLA in the Western District of Wisconsin. (Han Supplemental ¶¶ 7, 9 .)

---

[6] In an effort to enforce its intellectual property rights, LPL filed a complaint in the District Court for the District of Delaware ("Delaware complaint") against AUO and other defendants alleging infringement of three LPL patents. (*See* LPL's Complaint for Patent Infringement in the United States District Court for the District of Delaware, Exh. A.) On April 11, 2007, LPL amended its Delaware complaint to assert claims for declaratory judgment of invalidity and non-infringement of the AUO patents at issue in this suit. (*See* LPL's First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation, Exh. B.)

AUO's other unfounded jurisdictional arguments also fail. LPLA makes no sales over any website to any customers, let alone customers in the Western District. (Han Supplemental ¶ 15-16.) AUO does not offer any evidence of LPLA product sales in Wisconsin by Synergistic, whose only Wisconsin office lies in the Eastern District. (AUO Opp'n, Ex. O.) Finally, the post-sale shipment of LCD modules owned by All-American Semiconductor was made to the Eastern District of Wisconsin. (Han Declaration ¶ 19.) If this Court finds the other alleged conduct satisfies personal jurisdiction in Wisconsin, it could only do so in the Eastern District of Wisconsin not the Western District.

For similar reasons AUO's argument for proper venue under § 1391(b)(2) is also erroneous. Here, once again, AUO relies on independent and unilateral conduct by unrelated retailers who sell products that are not manufactured, sold, or distributed by LPLA rather than conduct by LPLA. AUO fails to identify any relevant LPLA conduct within the Western District.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against Defendant LG.Philips LCD America.

-17-

Dated: April 30, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

mn313961_1

-18-

## CERTIFICATE OF SERVICE

I, Nicole Talbott Settle, hereby certifies that on April 30, 2007, true and correct copies of

the attached:

- **REPLY MEMORANDUM IN SUPPORT OF LG.PHILLIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; AND**

- **SUPPLEMENTAL DECLARATION OF DONG HOON HAN IN SUPPORT OF LPLA'S MOTION TO DISMISS.**

were caused to be served upon attorney(s) of record at the following addresses in the following

manner:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

**By email and overnight delivery**

**Hand Delivered**

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

**By email and overnight delivery**

on the 26th day of April 2007.

Nicole Talbott Settle

mn313966_1

**SEALED DOCUMENT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

DOC NO
REC'D/FILED

2007 MAY -2 PM 3: 37

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

| | | |
|---|---|---|
| AU Optronics Corporation, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No..: 07-C-0137-S |
| | ) | |
| vs. | ) | Judge John C. Shabaz |
| | ) | |
| LG.Philips LCD Co., Ltd. | ) | |
| and | ) | |
| LG.Philips LCD America, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

---

## PLAINTIFF'S MOTION FOR ADMISSION PRO HAC VICE

---

Plaintiff, AU Optronics Corporation, hereby moves for an order permitting the following

additional attorneys to appear as counsel *pro hac vice* in the above-captioned matter:

> James C. Yoon
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA  94304-1050

> Julie Holloway
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA  94304-1050

In support of this motion Plaintiff submits the Declaration of James R. Troupis in Support

of Plaintiff's Motion for Admission Pro Hac Vice.

Dated:  May 2, 2007

Respectfully submitted,

_____

James R. Troupis
Paul D. Barbato
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI  53701-1806
Ph:  (608) 257-3501
Fax:  (608) 283-2275

DOC NO
REC'D/FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
2007 MAY -2 PM 3: 37

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU Optronics Corporation, )
)
    *Plaintiff,* )
) Civil Action No..: 07-C-0137-S
vs. )
) Judge John C. Shabaz
LG.Philips LCD Co., Ltd. )
and )
LG.Philips LCD America, )
)
    *Defendants*. )
)
)

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1.    Plaintiff's Motion for Admission Pro Hac Vice;

2.    Declaration of James R. Troupis in Support of Plaintiff's Motion for Admission Pro Hac Vice; and

3.    (Proposed) Order Granting Plaintiff's Motion for Admission Pro Hac Vice

were served upon all parties to this action as indicated below on this ___ day of May, 2007 to:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

DOC NO
REC'D/FILED

2007 MAY -2  PM 3: 37

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

| | |
|---|---|
| AU Optronics Corporation, | ) |
| | ) |
| *Plaintiff,* | ) Civil Action No..: 07-C-0137-S |
| | ) |
| vs. | ) Judge John C. Shabaz |
| | ) |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## PLAINTIFF'S MOTION FOR ADMISSION PRO HAC VICE

Plaintiff, AU Optronics Corporation, hereby moves for an order permitting the following

additional attorneys to appear as counsel *pro hac vice* in the above-captioned matter:

James C. Yoon
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Julie Holloway
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

In support of this motion Plaintiff submits the Declaration of James R. Troupis in Support

of Plaintiff's Motion for Admission Pro Hac Vice.

Dated:  May 2, 2007

Respectfully submitted,

James R. Troupis
Paul D. Barbato
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI  53701-1806
Ph:  (608) 257-3501
Fax:  (608) 283-2275

DOC NO
REC'D/FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

2007 MAY -2  PM 3:37

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

| | |
|---|---|
| AU Optronics Corporation, | ) |
| *Plaintiff,* | ) |
| | ) Civil Action No..: 07-C-0137-S |
| vs. | ) |
| | ) Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. | ) |
| and | ) |
| LG.Philips LCD America, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |

### CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1.     Plaintiff's Motion for Admission Pro Hac Vice;

2.     Declaration of James R. Troupis in Support of Plaintiff's Motion for Admission Pro Hac Vice; and

3.     (Proposed) Order Granting Plaintiff's Motion for Admission Pro Hac Vice

were served upon all parties to this action as indicated below on this ___ day of May, 2007 to:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

34

DOC NO
REC'D/FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN MAY -2 PM 3:37

AU Optronics Corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　　THERESA M. OWENS
　　　　　　　　　　　　　　　　　　　　)　　　　CLERK US DIST COURT
　　　　　*Plaintiff*,　　　　　　　　　　)　　Civil Action No..: 07-C-0137-S   WI
　　　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　　)　　Judge John C. Shabaz
　　　　　　　　　　　　　　　　　　　　)
LG.Philips LCD Co., Ltd.　　　　　　　　)
and　　　　　　　　　　　　　　　　　　)
LG.Philips LCD America,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　*Defendants*.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
_____)

## DECLARATION OF JAMES R. TROUPIS
## IN SUPPORT OF PLAINTIFF'S MOTION FOR ADMISSION PRO HAC VICE

I, James R. Troupis, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.　　I am an attorney with the law firm of Michael Best & Friedrich LLP, duly licensed to practice in the United States District Court for the Western District of Wisconsin and I am one of the attorneys representing the Plaintiff in this action.

2.　　I make this declaration in support of the admission *pro hac vice* of James C. Yoon and Julie Holloway to appear on behalf of Plaintiff, AU Optronics Corporation, in the above-captioned action before this Court, pursuant to Local Rule 1(C) of the United States District Court for the Western District of Wisconsin.

3.　　James C. Yoon is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Palo Alto, California. Mr. Yoon is admitted, practicing, and in good standing as a member of the State Bar of California, U.S. District Court for the Northern District of California, U.S. District Court for the Southern District of California, U.S. District Court for the Central District of

California, U.S. Court of Appeals for the Federal Circuit, and the U.S. Court of Appeals for the Ninth Circuit. Mr. Yoon received his law degree from Stanford Law School.

4.      Julie Holloway is an attorney practicing at Wilson Sonsini Goodrich & Rosati, in Palo Alto, California. Ms. Holloway is admitted, practicing, and in good standing as a member of the State Bar of California, U.S. District Court for the Northern District of California, the U.S. District Court for the Central District of California, and the U.S. District Court for the Eastern District of California. Ms. Holloway received her law degree from the Boalt Hall School of Law at the University of California, Berkeley.

Dated this 2nd day of May, 2007.

James R. Troupis

2

DOCKET # 35

U.S. DISTRICT COURT
WEST DIST OF WISCONSIN

MAY – 8 2007

FILED
THERESA M. OWENS CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU Optronics Corporation,    )
                             )
            *Plaintiff,*      )    Civil Action No..: CASE#137-S
                             )
    vs.                      )    Judge John C. Shabaz
                             )
LG.Philips LCD Co., Ltd.      )
and                          )
LG.Philips LCD America,       )
                             )
            *Defendants.*     )
_____)

## (PROPOSED)
## ORDER GRANTING PLAINTIFF'S
## MOTION FOR ADMISSION PRO HAC VICE

The Motion by Plaintiff, AU Optronics Corporation, for the admission *pro hac vice* of

Attorneys James C. Yoon and Julie Holloway is hereby GRANTED.

Dated this ⟍ day of _____ May _____, 2007.

_____
JOHN C. SHABAZ
United States District Judge

Q:\CLIENT\022628\0001\B1038284.1

Copy of this document has been
provided to: Allis Twopls,
Ulen, Pitulson & Bono
this 3 day of May 24, 202
by M. Hardin
M. Hardin, Secretary to
Judge John C. Shabaz

DOC NO **36**
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**2007 MAY -3   PM 4: 34

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

|  |  |  |
|---|---|---|
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-C-0137-S |
| | ) | |
| LG.PHILIPS LCD CO., LTD. and | ) | |
| LG.PHILIPS LCD AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CORRECTED REPLY MEMORANDUM IN SUPPORT OF
## LG.PHILIPS LCD AMERICA'S MOTION TO DISMISS FOR
## LACK OF PERSONAL JURISDICTION AND
## IMPROPER VENUE

# **TABLE OF CONTENTS**

**Page**

I.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO
      THE WISCONSIN LONG-ARM STATUTE ..................................................................... 1

      A.    LPLA Does Not Have "Substantial And Not Isolated" Contacts With
            Wisconsin And In Fact Has Not Acted At All In Wisconsin ................................ 2

      B.    LPLA Does Not Have The Contacts With Wisconsin Required For
            Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The
            Wisconsin Long-Arm Statute ................................................................................ 5

II.   AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT
      WITH THE REQUIREMENTS OF DUE PROCESS ........................................................ 8

      A.    LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting
            Activities Within Wisconsin ................................................................................. 8

            1.    Beverly Hills Fan does not support AUO's stream of commerce
                  theory based on the facts in this case ........................................................ 8

            2.    LPLA's sale in California to a California based customer does not
                  rise to the level of purposeful availment of the privilege to do
                  business in Wisconsin ............................................................................... 11

      B.    The Exercise of Jurisdiction In This Forum Over LPLA Offends
            Traditional Notions Of Fair Play ........................................................................ 14

III.  VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER ................ 16

IV.   CONCLUSION .............................................................................................................. 17

AUO misconstrues the facts and misapplies controlling authority in an attempt to find a basis for personal jurisdiction over LPLA in Wisconsin that does not exist. AUO asks this Court to allow a large Taiwanese corporation to bring a lawsuit, with no Wisconsin state law claims, in Wisconsin against a Korean based manufacturer and a California based subsidiary, neither of whom have any connection to Wisconsin. AUO claims LPLA made a sale of LCD modules in Wisconsin. That claim is wrong. Instead, the sale AUO describes was made in California by California based LPLA to a California based distributor. AUO also claims LPLA sells products over its website. That claim is also wrong. LPLA does not sell products over any website. The website AUO describes is owned and operated by LPL. Finally, AUO claims that the availability of finished LCD products in Wisconsin retail stores is a basis for asserting personal jurisdiction over LPLA. That claim is meritless. LPLA plays no role in the unilateral, independent decisions of third-party companies to manufacture or distribute finished LCD products. AUO then pins its argument for venue in this Court on the foregoing erroneous personal jurisdiction conclusions. Accordingly, AUO has failed to carry its burden of proving the existence of a ground for jurisdiction and a basis for venue, and this Court should grant LPLA's motion to dismiss.

## I.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE

Plaintiff asserts three bases for jurisdiction under the Wisconsin long-arm statute: (1) substantial and not isolated activities within Wisconsin; (2) an act or omission arising within Wisconsin; and (3) injury to AUO within Wisconsin based on an LPLA act outside of Wisconsin. (*See* Plaintiff's Opposition to LG.Philips LCD America's Motion to Dismiss ("AUO Opp'n") at 6-10.) AUO's arguments in support of each of these bases fail.

**A.    LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin.**

AUO's argument that LPLA is engaged in "substantial, continuous and ongoing activities" sufficient to establish jurisdiction under § 801.05(1)(d) is meritless. This Court recently explained that contacts considered relevant under the Wisconsin long-arm statute include visits to the state; registration to do business within the state; engaging in one's own advertising within the state; soliciting business within the state; and having employees, real estate, bank accounts, registered agents, customers, or sales people in the state. *Ricoh Co., Ltd. v. Austek Computer, Inc.*, 06-C-0462-C, *18-19 (April 3, 2007 W.D. Wis.). As fully explained in LPLA's Memorandum In Support Of Its Motion To Dismiss ("LPLA's Memo"), none of these contacts exists here. LPLA is not registered to do business in Wisconsin. (LPLA's Memo, Han Declaration ¶ 9.) LPLA does not engage in its own advertising or otherwise solicit business in Wisconsin. (Han Declaration ¶8.) LPLA has not participated in trade shows or other promotion events in Wisconsin. (Han Supplemental Declaration, "Han Supplemental", attached, ¶ 3.) LPLA has no employees, real estate, bank accounts, registered agents, customers, or sales people in Wisconsin. (Han Declaration ¶¶ 3, 10, 12-15.) AUO unsuccessfully attempts to counter this overwhelming evidence demonstrating no "substantial and not isolated activities" in Wisconsin with allegations concerning a separate Illinois based company, Synergistic; LPL's website, not owned or operated by LPLA; and a sale in California to a California based customer. (*See* AUO Opp'n at 6-9.)

First, AUO misconstrues Illinois based Synergistic as an LPLA distributor. (AUO Opp'n at 4.) Instead, Synergistic merely had a sales representation agreement with LPLA that expired by its own terms on December 31, 2006. (Han Supplemental ¶ 4.) Synergistic does not ship or distribute any LPLA products within Wisconsin or any other state. (Han Supplemental ¶ 5.)

-2-

Synergistic is not and has never been a partner, employee or agent of LPLA. (Id.) The evidence AUO cites in support of the supposedly "close working relationship between Synergistic and LPLA" is a link from Synergistic's website to a website owned and operated by LPL, not by LPLA. (AUO Opp'n at 7; Han Supplemental ¶15.) That link is one of nineteen links to various manufacturers. (AUO Opp'n, Ex. N.) Moreover, AUO's failure to provide any information about how much, if any, of the Illinois based Synergistic's business is done in Wisconsin and whether or not Synergistic has even sold a single accused product in Wisconsin is fatal to its argument. *Ricoh Co., Ltd.*, 06-C-0462-C at *14-15.

Next, AUO falsely claims that LPLA operates a website through which it offers to sell products to customers in Wisconsin. (AUO Opp'n at 4.) The website identified by AUO is owned and operated by LPL, not LPLA. (Han Supplemental ¶ 15.) LPL's conduct cannot be assigned to LPLA for AUO's benefit in a personal jurisdiction analysis. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that in a personal jurisdiction analysis, due process requires each defendant's contacts with a forum be considered individually regardless of whether the defendants have a parent-subsidiary relationship); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (affirming dismissal of a defendant for lack of personal jurisdiction that was in a parent-subsidiary relationship with a co-defendant that was subject to personal jurisdiction). LPLA does not offer products for sale on the LPL website to any of its customers, let alone residents of Wisconsin.

(Han Supplemental ¶ 15.) In fact, LPLA has no involvement whatsoever in the operation a website.[1] (Han Supplemental ¶ 16.)

---

[1] Even if LPLA were involved or had ownership of the website, the requirement of commercial activity within Wisconsin would still not be met. *See Neomedia Technologies, Inc. v. Airclic,*

*(footnote continued on next page)*

AUO then erroneously argues that a single sale of products in *California* to a *California* based customer is sufficient to assert jurisdiction under *Wisconsin's* long-arm statute and attempts to support this claim by citing a discussion of the due process jurisdictional analysis in an unreported District of Colorado case. (AUO Opp'n at 8.) However, that discussion does not involve the application of any state's long-arm statute, let alone Wisconsin's long-arm statute and is therefore irrelevant. *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124, \*6 (D.Colo. July 21, 2005). AUO also cites to *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed Cir. 1994), but that case does not apply here. In *North American*, the Federal Circuit found that the allegedly infringing sales took place in Illinois because the customers were based in Illinois. *Id.* Furthermore, the defendants had ongoing business relationships with Illinois based customers, including regular visits and product shipments to Illinois and participation in trade shows and other promotional events in Illinois. 35 F.3d at 1577-58.

Here, the sale AUO discusses occurred in California, where both LPLA and the customer, All-American Semiconductor, are based and operate. (Han Declaration ¶¶ 2, 19.) Title to the product changed hands in California. (Han Declaration ¶ 19.) Only after title had passed to All-American Semiconductor, did LPLA, for the benefit and at the direction of its customer, ship that product to a location in the Eastern District of Wisconsin. (Id.) Moreover, LPLA does not participate in trade shows or other promotional events in Wisconsin. (Han Supplemental ¶ 3.)

---

*(footnote continued from previous page)*

*Inc.*, No. 04-C-566, 2004 WL 848181,\*4 (N.D.Ill. April 16, 2004) (finding in a patent case that a website that is not targeted toward a particular state and does not allow for commercial transactions "does not reach the level of commercial interactivity" required for asserting personal jurisdiction).

In addition, LPLA has no control over where independent distributors such as All-American Semiconductor choose to sell products. (Han Supplemental ¶ 11.) Instead, LPLA's distributors make unilateral, independent decisions about where to sell their products. The tenuous at best contact with Wisconsin is a far cry from the numerous contacts with the state in the sole case AUO relies on for its § 801.05(1)(d) argument, *K.W. Muth Co., Inc. v. Getnex Corp.*, No. 06-C-378-C, 2006 WL 2772828, *2 (W.D. Wis. Sep. 22, 2006). There, the defendant had alliances with two Wisconsin based companies and a network of *at least 21* distributors selling defendant's own product within Wisconsin. (*Id.*)

## B.    LPLA Does Not Have The Contacts Required With Wisconsin For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute

As an initial matter, AUO, in its complaint, does not properly identify any accused products and thus fails to satisfy the pleading requirements of Fed. R. Civ. 8. *See Ricoh,* 06-C-0462-C at *10 (finding that identifying accused products by referring to a product type such as "disk drives" rather than specific model numbers is not enough to satisfy pleading standards in a patent infringement case). In its opposition brief, AUO identifies only four accused LPLA products by model number, so only sales of those products could qualify as an injury under Wis. Stat. § 801.05(3) and § 801.05(4). *Id* (considering only alleged sales of products with model numbers clearly identified in the complaint).

AUO identifies only a single transaction involving an accused product that AUO itself was not involved in: a sale in *California* between *California* based LPLA and *California* based All-American Semiconductor.[2] Recognizing that the sale at issue occurred in California, AUO

---

[2] In its opposition brief, AUO claims it made three purchases of allegedly infringing products, none of which were manufactured or sold by LPL or LPLA, in Wisconsin. (AUO Opp'n at 3-4.) Because AUO was responsible for these purchases, the purchases can not constitute an injury

*(footnote continued on next page)*

attempts to invoke a stream of commerce type theory described in *Nelson v. Park Industries, Inc.*, 717 F.2d 1120 (7th Cir. 1983), a products liability case involving a Wisconsin minor who suffered severe burns when a shirt she wore ignited and two corporate defendants from Hong Kong who manufactured and distributed that shirt. *Id.* at 1122. The stream of commerce theory had its genesis in product liability law and is particularly applicable when a consumer with relatively little power seeks redress at the site of an injury caused by a relatively more powerful foreign corporation because there is likely no other forum available. *See World-Wide Volkswagen v. Wilson*, 444 U.S. 286 (1980) (discussing the stream of commerce theory for the first time in a product liability suit); *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 114-15 (1987) (reversing a finding of personal jurisdiction over a Japanese company in part because the suit no longer included a safety claim by a California consumer, but instead only an indemnification claim by a Taiwanese manufacturer).

In this case, however, the plaintiff is a major foreign corporation that could have filed suit against LPLA in California, where LPLA is based, or in Texas, North Carolina, or Illinois where LPLA has additional offices. (Han Declaration ¶ 2, 3.) Applying a stream of commerce theory to permit a large Taiwanese corporation to bring suit in Wisconsin against a Korean based manufacturer and a California based subsidiary with no connection to Wisconsin that involves no right or interest under Wisconsin state law should not be permitted. *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115-16 (1987) (explaining that permitting a suit by a Taiwanese Corporation against a Japanese corporation in California when it was unclear

*(footnote continued from previous page)*

under § 801.05(3) or § 801.05(4). *See Ricoh Co.*, 06-C-0462, at *12 (explaining that a patent holder cannot be harmed by a loss of business from a sale of a competitor's product that patent holder itself chose to make).

-6-

whether or not California law would apply simply because products made by the Japanese corporation were shipped to California was contrary to due process). If personal jurisdiction may be asserted over LPLA under the circumstances here, the Court would essentially establish universal jurisdiction.

Additionally, a single sale is not enough to trigger application of § 801.05(4)(b). Under the local injury, foreign act provision of the Wisconsin long-arm statute, the defendant must engage in additional contact with Wisconsin besides the foreign act and local injury before a Wisconsin court may assert personal jurisdiction. *Landreman v. Martin*, 530 N.W.2d 62, 66 n.3 (Wis. Ct. App. 1995). As explained above and throughout LPLA's Memorandum In Support Of Its Motion To Dismiss, such additional contact between LPLA and Wisconsin does not exist.

AUO also claims that the use or sale of finished LCD products that include parts sold by LPLA gives rise to jurisdiction under § 801.05(4)(b), again citing *Nelson* for authority. However, in *Nelson* the defendant distributor (Bunnan) acted as the retailer's (Woolworth) buying agent and bought product samples for Woolworth, placing purchase contracts for Woolworth, inspecting products for Woolworth, acting as Woolworth's representative in efforts to obtain reimbursement from a manufacturer for defective merchandise, and holding Woolworth harmless from certain claims made against Woolworth involving the merchandise purchased by Woolworth through Bunnan. *Id*. at 1123. That close business relationship is in stark contrast to the complete lack of any relationship between LPLA and retail outlets that sell finished LCD products that have LPL components inside. LPLA does not market, sell, or distribute LCD module products to American, Best Buy, BJ's TV & Appliance, Chase TV, Circuit City, or Radio Shack or any other retail store. (Han Supplemental ¶ 10.) Nor does LPLA control or participate in any retail sales by any retail store of any finished LCD product. (Id.)

-7-

Accordingly, the Wisconsin long-arm statute does not allow for jurisdiction over LPLA.

## II.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS

AUO's contention that jurisdiction over LPLA complies with due process is largely a rehash of their flawed arguments regarding the Wisconsin long-arm statute. As explained above and in LPLA's opening brief, AUO's allegations against LPLA have no connection to Wisconsin. The very few allegations that do relate to Wisconsin only concern unilateral and independent actions by *other* entities, not LPLA. However, "[d]oing business with a company that does business in [a forum state], is not the same as doing business [in the forum state]." *Red Wing Shoe Co., Inc., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Accordingly, AUO can assert no contacts with a forum state "resulting from 'the unilateral activity of another party or third person'" to LPLA. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.17 (1985)). Consequently, none of AUO's claimed bases for jurisdiction comport with due process.

### A.    LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin.

#### 1.    *Beverly Hills Fan* does not support AUO's stream of commerce theory based on the facts in this case.

The Supreme Court explains that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. 102 at 112 (1987). AUO clings to *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), in support of its stream of commerce theory, but that case is inapposite. There, the defendant distributor directly shipped accused ceiling fans intended for end user consumption from a manufacturer to retail outlets in Virginia. *Beverly Hills Fan*, 21 F.3d at 1560. Consumers buying those ceiling fans at a retail outlet received

manuals identifying the defendant distributor as the source of the fans and a warranty that the defendant distributor honored. *Id.*

Here, however, LPLA sells component parts to LCD product manufacturers who independently and unilaterally incorporate those parts into LCD products and then independently and unilaterally sell those products to retail outlets where the products are ultimately sold to end consumers. (Han Supplemental ¶¶ 9-11.) The LCD products sold to end users in Wisconsin are not branded or otherwise identified as coming from LPLA, nor does LPLA offer warranties or service options to end consumers of those monitors. (Han Supplemental ¶ 14, 17.) Also significant in *Beverly Hills Fan* was the intentional nature of the alleged infringement, evidenced by the fact that several months before the lawsuit was filed and before accused fans were shipped into Virginia, the plaintiff notified the defendants of its charge that the fans infringed plaintiff's patent. *Id.* at 1567-86. No such notification occurred here. (Han Supplemental ¶ 18.)

Although *Beverly Hills Fan* is clearly distinguishable, the circumstances here are analogous to the long line of cases finding no purposeful availment. For example, in *Adell Corp. v. Elco Textron, Inc.*, the defendant sold components to General Motors who then independently integrated the components into pickup trucks and then shipped some of those trucks to the forum state. 51 F. Supp. 2d 752, 754 (N.D. Tex. 1999). Like LPLA, the *Adell* defendant had no input on the distribution of the finished product that incorporated the allegedly infringing component, did not warrant the finished product to forum state customers, did not advertise in the forum state and did not have any direct sales of the accused device in the forum state. *Id.* The *Adell* court explicitly distinguished that case from *Beverly Hills Fan* and explained that the defendant's "shipments of parts to General Motors, who uses them in conjunction with parts obtained from

-9-

others in its final products that are eventually shipped to Texas, are not purposeful minimum contacts with Texas" and do not warrant application of the stream of commerce theory. *Id*.

Similarly, allegations that a defendant manufactured allegedly infringing products, arranged for distribution of those products through two intermediaries, and advertised its product through an internet website to forum state residents did not permit an assertion of jurisdiction. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, No. Civ.A. 99-218-SLR, 1999 WL 615175, \*5 (D. Del. Aug. 3, 1999) (distinguishing those allegations from the facts in *Beverly Hills Fan*). Significantly, and similar to the circumstances here, in *American Bio*, there was no evidence demonstrating that the defendant directed the intermediaries' sales efforts at residents of the forum state. *Id*. Like here, the record in *American Bio*, did not "demonstrate the existence of ongoing commercial relationships with retailers and customers in [the forum state]." *Id*. Furthermore, the court for the sake of argument reluctantly assumed that the defendant's website displaying product information constituted an "'offer to sell,'" but declined to find that the defendant transacted business in the forum state in the absence of evidence demonstrating that forum state residents actually accessed the website. *Id*. There is also no such evidence here. In fact, LPLA does not even operate a website. (Han Supplemental ¶ 16.)

In addition, although it is common knowledge that Frigidaire and Kenmore brand products are widely available for sale in Pennsylvania, the stream of commerce theory does not justify an assertion of personal jurisdiction in Pennsylvania over a defendant who sold component parts (oven gaskets and clips) to a manufacturer, Electrolux/Frigidaire, that makes Frigidaire and Kenmore products. *Davlyn Mfg. Co., Inc., v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 528-31 (E.D. Pa. 2005) (citing *Ashai* and *World-Wide Volkswagen* and distinguishing *Beverly Hills Fan*). The defendant in that case sold all of the oven gaskets and clips it

manufactured to Electrolux/Frigidaire, but had no control over and only a general knowledge of where the oven gaskets and clips would eventually end up. *Id.* at 528-29. Here, LPLA sells its LCD modules to various companies and has no control or involvement in the subsequent manufacturing and distribution of finished LCD monitor products those manufacturers produce. (Han Supplemental ¶ 9, 19.)

AUO also cites *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), in support of its stream of commerce theory. However, in that case, the Federal Circuit remanded for jurisdictional discovery but did not find based on the record that the District of Delaware had personal jurisdiction over the Taiwanese defendant. The Federal Circuit indicated that "additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." *Id.* at 1321-22.

### 2. LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin.

AUO also argues that LPLA purposely availed itself of the privilege of conducting activities within Wisconsin when it sold LCD modules to a California based customer. (AUO Opp'n at 1.) AUO erroneously asserts that LPLA shipped products directly to a customer in Wisconsin. (AUO Opp'n at 9.) Instead, *California* based LPLA sold products to a *California* based customer that took title to those products in *California*. (Han Declaration ¶ 19.) The California based customer then unilaterally and independently decided to have those products shipped to the Eastern District of Wisconsin. (Id.) This is directly analogous to the facts in *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509 (E.D. Wis. July 17, 1996). There, a Tennessee based manufacturer sold toilets to a Texas based retailer. *Id.* at *1. Placing the orders as "F.O.B. warehouse", the retailer directed the manufacturer to ship the toilets

-11-

directly from the manufacturer's Tennessee warehouse to the retailer's local stores in Wisconsin. *Id.* The Kohler court granted the motion to dismiss for lack of personal jurisdiction, holding that the presence of the toilets in Wisconsin stores "did not 'proximately result' from actions taken by [the manufacturer]," therefore no substantial connection to this forum could have been established. *Id.* at \*6. The lone shipment of product to Wisconsin that AUO identifies here, occurred after the product was sold in *California* to a *California* customer, was the result of the customer's unilateral action, and therefore can not justify exercising personal jurisdiction over LPLA.[3]

AUO offers no other evidence that any accused module distributed by LPLA has ever been *sold* in Wisconsin. Each of the accused products AUO claims can be found on the shelves of retail stores in Wisconsin are finished LCD products unilaterally and independently manufactured by third parties. Jurisdiction is not proper because LPLA in no way created, controls, or employs the distribution system for those monitors. (Han Supplemental ¶ 7, 9.); *see Asahi*, 480 U.S. at 112 (reversing a finding of personal jurisdiction under the stream of commerce theory because the defendant "did not create, control, or employ the distribution system that brought [the product] to [the forum state]"). In fact, LPLA has no control or involvement whatsoever in the subsequent sale or use of their LCD modules once they are sold to distributors or manufacturers. (Han Supplemental ¶ 7, 9.) Jurisdiction is not proper over a defendant merely because an unrelated retailer independently sells a third-party product that

---

[3] Even if LPLA had made a sale in Wisconsin, a single sale or shipment is not enough to establish the minimum contacts required under the jurisdictional due process analysis. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1317 (S.D. Fla. 2006).

happens to contain a part manufactured or distributed by that defendant.[4] *Neomedia*

*Technologies, Inc., v. Ariclic, Inc.*, No. 04-C-566, 2004 WL 848181 (N.D. Ill. 2004 April 16,

2004) (distinguishing *Beverly Hills Fan* because there was no evidence of coordination between

retailer's efforts in the forum state and the defendant).

Even a company that grants exclusive access to its wholly owned subsidiary to market

and distribute a product in the forum is not subject to personal jurisdiction. *Savage v. Scripto-

Tokai Corp.*, 147 F. Supp. 2d 86 (D.Conn. 2001). In *Savage*, the defendant designed a lighter

product and manufactured and shipped components for that lighter to a subsidiary in Mexico that

completed assembly of the lighter. *Id.* at 88-89. Then another of the defendant's subsidiary

---

[4] The cases AUO cites on page 14 of its brief are inapposite. First, in *Donnelly Corp. v. Reitter & Schefenacker*, 189 F. Supp. 2d 696 (W.D. Mich. 2002), the list of contacts with Michigan is seemingly endless. The *Donnelly* defendant moving for dismissal there was a limited partner in a Michigan limited partnership that maintained offices in Michigan and manufactured the alleged infringing products. *Id.* at 698. That defendant made at least 50 shipments of allegedly infringing product samples to the limited partnership in Michigan for use in sales presentations to General Motors and Chrysler in Michigan. *Id.* at 699. The defendant also collaborated with the limited partnership in Michigan on the design of the allegedly infringing products. *Id.* at 700. The defendant's personnel were sent to Michigan every other month to participate in sales presentations, meet with prospective customers, oversee supply contract arrangements, and attend related trade shows. *Id.* at 700-01. Some of the defendant's other employees were stationed in Michigan to provide technical assistance on the manufacturing of accused products by the Michigan limited partner. *Id.* at 700. Still more employees actively provided technical support via phone and e-mail to the Michigan partnership while that partnership was manufacturing the accused products. *Id.* This endless stream of contacts is nothing like the tenuous at best connection AUO attempts to find between LPLA and Wisconsin. In *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, the defendant manufactured only drill chucks marked with the RIDGID brand name for exclusive use in RIDGID brand drills sold exclusively at Home Depot. No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 2, 2005). Here, LPLA sells its LCD modules to various companies. (Han Supplemental ¶ 19.) In *Motorola Inc. v. PC-TEL*, unlike LPLA, the co-defendant seeking dismissal had licensing agreements incorporated under Delaware law and operated a website from which its Delaware customers ordered products and sought support. 58 F. Supp. 2d 349, 351-52 (D. Del. 1999). Furthermore, the forum state Delaware had a much more significant interest in the litigation than exists here. Both the plaintiff and a co-defendant in *Motorola* were Delaware corporations. *Id.* at 351.

-13-

corporations distributed the lighter throughout the United States, including in Connecticut where a family filed a product liability suit involving the lighter. *Id.* The defendant there had even named the president and some board members of the subsidiary corporations. *Id.* at 89-90. However, the *Savage* court held that the defendant's involvement in naming corporate directors and officers of its subsidiaries and having a direct ownership interest in subsidiaries were not enough for a Connecticut court to assert personal jurisdiction based on the subsidiaries' contact with Connecticut. *Id.* at 94-95.

The relationship in *Savage* is much closer than the relationship between LPLA and any finished LCD manufacturer, including LG Electronics. LPLA has no ownership interest in any finished LCD producer and plays no role in the distribution of any finished LCD product. (Han Supplemental ¶¶ 7, 9, 11.) Nor has LPLA designed or created a product that is marketed or distributed by any LCD manufacturer. (Id.) Instead, LPLA merely sells component parts that finished LCD manufacturers unilaterally and independently choose to integrate into LCD products that those manufacturers unilaterally and independently choose to sell and distribute. Accordingly, the facts here are "insufficient to support the constitutional exercise of jurisdiction over [LPLA]" in Wisconsin. *Savage*, 147 F. Supp. 2d at 94.

## B. The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play.

As explained in LPLA's Memorandum In Support Of Its Motion To Dismiss, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. Instead of filing suit in an appropriate forum, AUO engaged in blatant forum shopping, seeking merely to take advantage

-14-

of this court's reputation for speed and efficiency.[5] Such forum shopping is disfavored. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877-878 (Fed. Cir. 1983) (noting that Congress created the Federal Circuit to prevent forum shopping). This Court must be particularly vigilant considering plaintiffs' particular attraction to it. *See Reynolds and Reynolds Holding, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 551-52 (E.D.Va. 2004) (recognizing that the Eastern District of Virginia's reputation as the "rocket docket" attracts plaintiffs, but that the court must guard against that attraction dulling the very expediency the court is known for).

Furthermore, as explained above, Wisconsin's connection to this suit is tenuous at best. In a case with much stronger connections between the defendant and the forum state than exist here, this Court explained that it was "doubtful" that due process would allow an assertion of personal jurisdiction. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840512 (W.D. Wis. Mar. 16, 2007) (referring to the defendant's three employees within Wisconsin, at least one Wisconsin customer that makes repeat product purchases, and a website accessible from Wisconsin). That neither party here are citizens or residents of Wisconsin erodes any potential interest Wisconsin may have had in this suit. *See Asahi*, 480 U.S. at 114 (explaining that "because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). Moreover, AUO is not attempting to vindicate a right or interest protected by Wisconsin law, but an interest under federal law. An action already filed prior to this action, pending in Delaware, and involving the same patents at issue here, gives

---

[5] On April 16, 2007, defendant LG.Philips LCD Co., Ltd., recognizing that this forum is inappropriate, filed a motion to transfer this case to the District of Delaware where another suit involving the patents at issue here is pending.

AUO that same opportunity.[6] Accordingly, Wisconsin's only interest here is to have its federal court in the Western District protect its docket from having AUO's forum shopping force that court to devote time and resources to a case that should have been filed elsewhere.

## III.   VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER

AUO apparently and appropriately concedes venue is not proper under § 1391(b)(1) and § 1391(b)(3). The bases for venue in this district that AUO does assert to establish venue are tied to its erroneous personal jurisdiction conclusions. However, the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher*, 2007 WL 804512 at \*3 (emphasis added). Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)). AUO recognizes that LPLA does not have a regular and established place of business in Wisconsin and accordingly makes no effort to justify venue under that clause of § 1400(b).

However, AUO goes on to conclude that jurisdiction is proper in the Western District and, thus venue is also proper. Because its premise is false, AUO's venue argument fails. As explained above, LPLA has no control or involvement in the distribution of finished product LCD monitor products manufactured by LG Electronics or any other manufacturer to retail outlets in Wisconsin, thus the availability of those products can not be a basis for personal jurisdiction over LPLA in the Western District of Wisconsin. (Han Supplemental ¶¶ 7, 9 .)

---

[6] In an effort to enforce its intellectual property rights, LPL filed a complaint in the District Court for the District of Delaware ("Delaware complaint") against AUO and other defendants alleging infringement of three LPL patents. (*See* LPL's Complaint for Patent Infringement in the United States District Court for the District of Delaware, Exh. A.) On April 11, 2007, LPL amended its Delaware complaint to assert claims for declaratory judgment of invalidity and non-infringement of the AUO patents at issue in this suit. (*See* LPL's First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation, Exh. B.)

-16-

AUO's other unfounded jurisdictional arguments also fail. LPLA makes no sales over any website to any customers, let alone customers in the Western District. (Han Supplemental ¶ 15-16.) AUO does not offer any evidence of LPLA product sales in Wisconsin by Synergistic, whose only Wisconsin office lies in the Eastern District. (AUO Opp'n, Ex. O.) Finally, the post-sale shipment of LCD modules owned by All-American Semiconductor was made to the Eastern District of Wisconsin. (Han Declaration ¶ 19.) If this Court finds the other alleged conduct satisfies personal jurisdiction in Wisconsin, it could only do so in the Eastern District of Wisconsin not the Western District.

For similar reasons AUO's argument for proper venue under § 1391(b)(2) is also erroneous. Here, once again, AUO relies on independent and unilateral conduct by unrelated retailers who sell products that are not manufactured, sold, or distributed by LPLA rather than conduct by LPLA. AUO fails to identify any relevant LPLA conduct within the Western District.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against Defendant LG.Philips LCD America.

Dated: May 3, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

31

DOC NO
REC'D/FILED
2007 MAY -7  PM 4: 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU Optronics Corporation )    Civil Action No.: 07 C 0137 S
                                 )    CLERK US DIST COURT
                                 )    WD OF WI

*Plaintiff,* )

                                 )    Judge John C. Shabaz

vs. )

LG.Philips LCD Co., Ltd. and )
LG.Philips LCD America )

                 *Defendants.* )
                                 )

## PLAINTIFF'S OPPOSITION TO LG. PHILIPS LCD CO., LTD.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

     NOW COMES the Plaintiff, AU Optronics Corporation ("AUO"), by and

through its counsel James R. Troupis of Michael Best & Friedrich, LLP and Wilson

Sonsini, Goodrich and Rosati, and respectfully submits this Opposition to LG.Philips

LCD Co. Ltd.'s Motion to Transfer.[1]

---

[1]     AUO has filed with this Opposition a Declaration of Paul Barbato ("Barbato") and a Declaration of Dr. Aris K. Silzars ("Silzars"). These Declarations are hereby incorporated in full, along with all other matters of record.

## Table of Contents

Page

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF FACTS .................................................................................. 2

      A.    LPL's Delaware Complaint. ...................................................................... 2

      B.    AUO's Wisconsin Complaint. ................................................................... 3

      C.    LPL's Amended Delaware Complaint. ....................................................... 4

III.  ARGUMENT ..................................................................................................... 4

      A.    LPL Does Not Dispute Proper Jurisdiction Or Venue. ............................... 4

      B.    The First-Filed Rule Weighs Against Transfer Because AUO's
            Wisconsin Case Is Actually First-Filed. .................................................... 5

      C.    LPL's Original Delaware Suit Does Not Duplicate AUO's
            Wisconsin Suit. ........................................................................................ 7

      D.    The Interests of Justice Favor Maintaining This Case In Wisconsin
            Rather Than Deviating From The First-Filed Rule. .................................... 9

            1.    There Is No Substantial Witness Overlap Between The
                  Wisconsin And Delaware Cases (Factor 3). .................................... 9

            2.    The Relative Speed And Efficiency Of The Wisconsin
                  Court Weighs Heavily Against Transfer (Factor 5). ...................... 11

      E.    A Transfer Will Not Promote The Interests Of Justice Or Parties'
            Or Witnesses' Convenience. .................................................................... 12

            1.    LPL Fails To Meet The Threshold Requirement Of Proving
                  That AUO Could Have Brought Its Suit In Delaware. .................... 13

            2.    Transfer Is Not More Convenient For The Parties. ........................ 14

            3.    Transfer Is Not Convenient For Witnesses. ................................... 15

            4.    The Interests Of Justice Do Not Favor Transfer To
                  Delaware. .................................................................................... 16

                  a.    The Patents And Accused Products Do Not Overlap
                        In Any Meaningful Way That Would Promote
                        Efficiency Through Consolidation. .................................... 16

                  b.    This Court Is Capable Of Deciding This Case. ................... 18

i

|    | c. | Plaintiff AUO's Choice Of Forum Is Entitled To Deference Despite LPL's Baseless Accusation Of Bad Faith Litigation. ......................................................... 19 |
|    | d. | This Venue Will Provide Swift Adjudication Of AUO's Patent Rights, While Transfer Will Prejudice Those Rights. ..................................................... 20 |
| IV. | CONCLUSION................................................................................................... 21 |

## Table of Authorities

Page

### CASES

*Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 351 F.Supp.2d
  1188 (D. Kan. 2005) .........................................................................6, 9

*CRST Van Expedited, Inc. v. J.B. Hunt Transp., Inc.*, No. C-04-79LRR,
  2005 WL 741911 (N.D. Iowa Mar. 31, 2005) ........................................13

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) .........................12

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-
  SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001).................................16

*Gallery House, Inc. v. Yi*, 587 F.Supp. 1036 (D.C. Ill. 1984)..........................13

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ....................................................13

*Hyperphrase Techs. v. Google, Inc.*, No. 06-C-199-S, 2006 U.S. Dist.
  LEXIS 92195 (W.D. Wis. Dec. 20, 2006) ............................................18

*Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 395 F.Supp. 234
  (D.C.Ill.1974)..................................................................................6

*In re National Presto Indus., Inc.*, 347 F.3d 662 (7th Cir. 2003) ...............12, 13

*K.W. Muth Corp., Inc. v. Gentex Corp.*, No. 06-C-0378, 2006 WL
  2772828 (W.D. Wis. Sep. 22, 2006)....................................................16

*Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-C-0932-C, 2005 WL 1168360
  (W.D. Wis. May 17, 2005) ....................................................12, 19, 20

*Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d. Cir. 1965).....................8, 9

*Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V. v.
  General Electric Co.*, 858 F.Supp. 380 (S.D.N.Y. 1994) ..........................18

*Milwaukee Electric Tool Corp. v. Black and Decker (N.A.) Inc.*, 392 F.
  Supp. 2d 1062 (W.D. Wis. 2005)....................................................1, 5, 11,
                                                                                 12, 16, 19

*Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir. 1983) ................5

*New Jersey Machine Inc. v. Alford Indus. Inc.*, No. 89-1879(JCL), 1991
  WL 340196 (D.N.J. Oct. 7, 1991)...................................................14, 17

*Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.*, 138
  F.R.D. 89 (N.D. Ohio 1991) ..............................................................16

*SmithKline Beecham Corp. v. Geneva Pharm., Inc.*, No. 99-CV-2926,
2000 WL 217642 (E.D. Pa. Feb. 11, 2000) .......................................................16, 17

*Third Wave Technologies, Inc. v. Stratagene Corp.*, 405 F. Supp.2d 991
(W.D. Wis. 2005)..............................................................................................18, 19

*Trafficcast, Inc. v. Pritchard*, No. 05-C-557-S, 2005 WL 3002267 (W.D.
Wis. Nov. 7, 2005).......................................................................................7, 9, 10,
11

*Versus Tech. v. Hillenbrand Industries, Inc.*, No. 1:02-CV-168, 2004 WL
3457629 (W.D. Mich. Nov. 23, 2007).......................................................................9

*Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340 (Fed. Cir. 2000) ...............................12

## STATUTES

28 U.S.C. § 1404...........................................................................................................12, 13

## RULES

Fed. R. Civ. P. 12.................................................................................................................19

Fed. R. Civ. P. 13...............................................................................................................6, 7

Fed. R. Civ. P. 15(c) .............................................................................................................6

## MISCELLANEOUS

8 Donald S. Chisum, *Chisum on Patents,* Sec. 21.02[4][b].............................................6, 7

15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER,
FEDERAL PRACTICE AND PROCEDURE § 3845 (3d ed. 2007) ...................................13

## I.    INTRODUCTION

**". . . [P]laintiff's choice of forum is entitled to great deference and its choice should not be set aside lightly."** Milwaukee Electric Tool Corp. v. Black and Decker (N.A.) Inc., 392 F. Supp. 2d 1062, 1065 (W.D. Wis. 2005).

After a careful investigation of product sales, infringement, speed to resolution and a host of other concerns, AUO chose to file an action against two specific defendants here in Wisconsin's Western District federal court.

These defendants are seasoned litigation pros. And rather than defend against AUO's claims, defendant LG.Philips LCD Co. Ltd. ("LPL") ignored its Rule 13 obligation to plead compulsory counterclaims, and instead, after having been served here, amended its Delaware suit involving five parties and three patents not a part of this action to "create" a bizarre legal argument that its post-service amendment takes precedence and requires transfer of this case to Delaware. But LPL's misuse of the first-filed rule must fail. AUO's Wisconsin case is first-filed with respect to the claims sought to be transferred -- AUO's claims -- and, therefore, the first-filed rule weighs against transfer to Delaware.

When LPL's brief finally reaches issues not so litigation-induced, including those related to "convenience of the parties and witnesses and the interests of justice," it is obvious that Wisconsin is not only appropriate, it is strongly preferred. LPL did not and cannot meet its burden of showing that AUO could have brought its suit in Delaware or that Delaware is a "clearly more convenient" forum to litigate AUO's patents than Wisconsin. Given this Court's experience, speed, and efficiency, as well as open and notorious infringement here, the Western District of Wisconsin is unquestionably the best forum available to reach a just resolution. Transfer to Delaware, however, would prejudice AUO by relegating its claims to side-show status in LPL's campaign against multiple defendants that may take years to resolve. This

1

Court is highly capable of efficiently deciding the issues raised by AUO's patents, and there is no reason to believe that a Delaware court is better situated.

Because the first-filed rule weighs against transfer, and because neither convenience nor interests of justice favor transfer, LPL's motion should be denied.

## II.    STATEMENT OF FACTS

An examination of LPL's filings vividly illustrates LPL's use of mere tactics to try to avoid this Court's proper exercise of venue.

### A.    LPL's Delaware Complaint.

On December 1, 2006, LPL filed suit in Delaware District Court against (1) Chi Mei Optoelectronics Corporation of Taiwan, (2) Tatung Company of Taiwan, (3) Tatung Company of America, Inc. of California, (4) ViewSonic Corporation of Delaware, (5) AU Optronics Corporation America, and (6) AUO.  LG.Philips LCD America ("LPLA"), a defendant here in Wisconsin, is not a party in Delaware.  LPL's suit accuses multiple and distinct products of each of the six entities of infringing three LPL patents:

- LPL's asserted U.S. Patent No. 5,019,002 ("the '002 Patent") was filed in 1988 by alleged inventor Scott H. Homberg of San Ramon, California and issued to Honeywell, Inc. ("Honeywell") in 1991.  The '002 Patent relates to use of a "outer electrostatic discharge guard ring" during LCD manufacture.  Silzars ¶ 5.

- LPL's asserted U.S. Patent No. 5,825,449 ("the '449 Patent") was filed in 1997 by alleged inventor Woo Sup Shin of Korea and issued to LG Electronics, Inc. ("LGE") in 1998.  The method of the '449 patent allegedly increases manufacturing yields through the use of several specific film layers.  *Id*. at ¶ 7.

- LPL's asserted U.S. Patent No. 4,624,737 ("the '737 Patent") was filed in 1985 by alleged inventor Masafumi Shimbo of Japan and issued to Seiko Instruments & Electronics Ltd. ("Seiko") in 1986.  The '737 Patent is now expired.  The method of the '737 Patent allegedly avoids manufacturing impurities by forming a gate electrode on a substrate and adding insulating and semiconductor films without exposing the films to an oxidizing atmosphere.  *Id*. at ¶ 6.

All three of LPL's Delaware patents (together, the "Delaware patents") relate to specific techniques of manufacturing a Liquid Crystal Display ("LCD") thin film transistor

("TFT") backplane. Silzars ¶ 11. LPL's initial Delaware filing makes absolutely no mention of any AUO patents.

### B.    AUO's Wisconsin Complaint.

AUO chose to file this action against LPL and LPLA on March 8, 2007 in Wisconsin. Prior to filing, AUO, with the help of Wisconsin counsel, performed a thorough investigation including examination and analysis of ongoing sales, offers to sell, patent infringement, and claim construction. AUO's Wisconsin action seeks no relief with regard to LPL's Delaware patents and does not involve any parties in the LPL's Delaware action other than LPL and AUO. Rather, AUO's Complaint accuses products of only LPL and LPLA of infringing three AUO patents:

- AUO's U.S. Patent No. 6,976,781 ("the '781 Patent" or "the hooks and holes patent") was filed in 2003 by inventors Chi-Chih Chu, Wen-Yuan Cheng, and Hui-Kai Chou of Taiwan and issued to AUO in 2005. The '781 Patent describes a novel way to mount a frame onto a bezel to make it more convenient for assembly and disassembly. Silzars ¶ 10.

- AUO's U.S. Patent No. 6,778,160 ("the '160 Patent" or "the over-drive patent") was filed in 2001 by Tetsu Kubota, Akihiro Funakoshi, and Takuya Ishikawa of Japan and issued to International Business Machines Corporation ("IBM") in 2004. The '160 Patent relates to correction of visual problems by using a particular algorithm to set the brightness level of the video signal. *Id*. at ¶ 9.

- AUO's U.S. Patent No. 6,689,629 ("the '629 Patent" or "the dummy patterns patent") was filed in 2002 by Takatoshi Tsujimura, Atsuya Makita, and Toshiaki Arai of Japan and issued to IBM in 2004. The '629 Patent relates to the use of "dummy patterns" to control chemical etching rate. *Id*. at ¶ 8.

The three AUO patents (together the "Wisconsin patents") are not only facially distinct from the Delaware patents, but the U.S. Patent Office specifically designates them as distinctly different technologies. AUO's Wisconsin patents span fourteen U.S. Patent Office subclasses. None of these subclasses overlap with any of the twenty-two subclasses assigned to LPL's Delaware patents. Barbato Exs. A - F.

All of LPL's Delaware patents involve manufacture of LCD-TFT back planes. Silzars ¶ 11. In contrast, AUO's hooks and holes patent, U.S. Patent No. 6,976,781, is directed to an elegant improvement in the assembly process for LCDs that have *already*

*been manufactured. Id.* at ¶ 10. AUO's overdrive patent, U.S. Patent No. 6,778,160, is directed to a method for improving LCD *performance and operation. Id.* at ¶ 9. These two patents have no relationship to the fabrication or structure of TFT back planes, the subject of LPL's Delaware patents. *Id.* at ¶ 3. Only AUO's '629 dummy pattern patent relates to the broad category of LCD manufacturing. *Id.* at ¶ 8. However, unlike the LPL patents, the "dummy pattern" patent is directed to improving chemically etched interconnects and does not relate to details of TFT back plane manufacture. *Id.* at ¶ 12.

### C.    LPL's Amended Delaware Complaint.

More than one month after AUO's filed its Wisconsin action, and more than four months after LPL filed its Delaware complaint on the Delaware patents, LPL amended its Delaware complaint for the sole purpose of setting up the present transfer motion. LPL's amendments seek a declaratory judgment that (1) LPL does not infringe AUO's Wisconsin patents and (2) the AUO Wisconsin patents are invalid. LPL's Delaware amendment does not name any of the five other Delaware defendants and does not attempt to justify to those other five defendants the massive addition of unrelated AUO patents to the case. Indeed, LPL did not even join the second defendant named here, LPLA. And even LPL agrees that its Delaware amendment raises issues duplicative of issues *first* raised by AUO in this Court – i.e., LPL's infringement of AUO's Wisconsin patents and validity of these patents. LPL Br. at 6.

### III.    ARGUMENT

### A.    LPL Does Not Dispute Proper Jurisdiction Or Venue.

LPL's motion only requests transfer of this action to Delaware. LPL apparently concedes jurisdiction and venue is proper in this district, while nonetheless asking this Court to exercise its discretion to move the case elsewhere. Despite AUO having a legal right to bring its case here, LPL simply prefers a different forum. LPL's concession is consistent with the fact that infringing LPL LCD modules are sold in

retail outlets in this district and the *joint* LPL and LPLA web site[2] advertises LPL and LPLA's "Representative" for Wisconsin. *See* AUO's Opposition to LPLA's Motion to Dismiss at 2-6 [Docket No. 6].

### B. The First-Filed Rule Weighs Against Transfer Because AUO's Wisconsin Case Is Actually First-Filed.

Recognizing that plaintiff AUO's choice of forum is entitled to "great deference" (*Milwaukee Elec.*, 392 F. Supp. 2d at 1065), LPL attempts to shift away its burden by arguing (1) that its Delaware action is "first-filed," (2) that patent law favors transfer to the first-filed forum, and (3) that no circumstances here warrant departure from the first-filed rule. But, LPL's fundamental premise – that LPL's Delaware action is entitled to first-filed status – defies all relevant authority. AUO filed this Wisconsin action on March 8, 2007, while LPL did not file its Delaware action against AUO's Wisconsin patents until April 11, 2007.

Not surprisingly, LPL's opening brief does not cite case law from this district or this circuit to support its odd argument that its second-filed amended Delaware action should be entitled to first-filed status. Instead, LPL cites a treatise to argue that "[a]though LPL's amended Delaware complaint was filed after AUO's complaint, '[t]he first filed rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment to the pleading.'" LPL Br. at 6 (misquoting[3] 8 Donald S. Chisum, *Chisum on Patents*, Sec. 21.02[4][b] n. 13). In

---

[2]       LPLA's Corrected Reply in Support of its Motion to Dismiss states that Synergistic links to a "website owned and operated by LPL, not LPLA." LPLA Reply at 2. This assertion contradicts the LPL/LPLA web site which states to the world that LPLA's web site "URL" address is indeed "www.lgphilips-lcd.com." The "www.lgphilips-lcd.com" web site also states that Synergistic is a "Representative" having "Territory: Illinois, Wisconsin, Minnesota." Barbato Decl. Supporting AUO's Opp. to LPLA's Mot. to Dismiss at Exs. G-J. At this stage, AUO "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir. 1983). Accordingly, to the extent there is a dispute about whether this is LPLA's website, it should be resolved in AUO's favor – it is a website for both LPL and LPLA (just as is set forth on the website) and and Synergistic is LPL and LPLA's representative for Wisconsin.

[3]       The passage LPL attempts to quote appears in the treatise's text, not footnote 13. Also, the passage refers to "[t]he priority rule" rather than "[t]he first filed rule." Barbato Ex. G.

essence, LPL contends that the treatise supports "back-dating" its later-filed declaratory judgment action to the date of its original Delaware complaint even though the original complaint had nothing to do with AUO's Wisconsin patents at issue in this action and involves different parties.

However, even the treatise, in full context, undercuts LPL's argument. Prior to the text LPL quotes, *Chisum* clarifies that the passage addresses "[t]he basic principle for determining priority between multiple suits involving the *same parties and the same patent issues . . . .*" *Id.* at § 21.02[4][b] (emphasis added) (attached at Barbato Ex. G). As LPL is aware, this action does not involve the same parties or the same patent issues as LPL's original Delaware action. LPL's quotation does not apply here.

The rules of filing are, of course, rules of common application. The Federal Rules specifically address LPL's relation-back theory, and allow relation back to an earlier complaint only when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). LPL's new amendments simply do not relate back to LPL's original complaint. "An alleged infringement of one patent is not the 'same conduct, transaction or occurrence' as the alleged infringement of another patent." *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 395 F.Supp. 234, 250 -251 (D.C.Ill.1974) (holding that amended claims alleging infringement of additional patent were not entitled to original complaint date); *see also Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 351 F.Supp.2d 1188, 1194-5 (D. Kan. 2005) (denying transfer because Kansas case was first-filed as compared to earlier California case that became mirror image only after later amended complaint).

In truth, LPL's Delaware declaratory judgment claims plainly arise out of subject matter first raised by AUO in Wisconsin, and the Federal Rules operate to restrict tactics such as those used here by LPL. Fed. R. Civ. P. 13(a) requires any claim

6

arising out of the subject matter of the opposing party's claim to be pled as a
*counterclaim.* No exceptions apply here. *Id.* Thus, LPL's declaratory claims have
always been compulsory counterclaims to AUO's Wisconsin action that should have
been filed here, not in Delaware. In contrast, AUO's Wisconsin patent claims were
never compulsory counterclaims to LPL's Delaware action – they involve different
patents, different parties, different damages, and entirely unrelated claims.

Thus, LPL seeks to transfer a case involving only AUO's Wisconsin patents to a
case involving unrelated LPL's Delaware patents and unrelated parties. Until LPL's
amendment, its Delaware case had nothing to do with AUO's patents. With respect to
claims at issue in Wisconsin, AUO's filing was indisputably first, and LPL's efforts to
mischaracterize its Delaware case as the first-filed case for its transfer motion must fail.

### C.    LPL's Original Delaware Suit Does Not Duplicate AUO's Wisconsin Suit.

LPL argues that, as the first-filed case, its Delaware case should take priority
because after LPL's amendment the two cases duplicate each other. Here, LPL's
argument improperly blends its original Delaware claims and its new claims post-dating
this Wisconsin suit. LPL's original Delaware claims plainly did not support transfer.

The first-filed rule only applies to "duplicative" suits where "claims, parties, and
available relief do not significantly differ between the two actions." *Trafficcast, Inc. v.
Pritchard*, No. 05-C-557-S, 2005 WL 3002267, *1 (W.D. Wis. Nov. 7, 2005) (quotes
and citation omitted); *see also* LPL Br. at 6. LPL's *original* Delaware case is entirely
distinct from AUO's Wisconsin case. The following points are illustrative:

- In the original Delaware case, LPL accuses Chi Mei Optoelectronics
  Corporation, Tatung Company, Tatung Company of America, Inc., ViewSonic
  Corporation, AU Optronics Corporation America, and AUO of infringing three
  LPL patents. In this Wisconsin case, AUO accuses LPL and LPLA of infringing
  three AUO patents. Thus, the Delaware and Wisconsin cases involve different
  patents and different parties.

7

- Because entirely different companies are accused in the two cases, the sales and features of entirely different product lines are relevant to damages and infringement.
- LPL's Delaware patents relate to different aspects of LCD modules than AUO's patents. Silzars, ¶ 11. LPL's Delaware patents relate to specifics of manufacturing the TFT back plane. *Id.* In contrast, AUO's patents relate to holding modules together, improving display performance, and the use of "dummy patterns" with chemical etching. *Id.* at ¶¶ 12-13.
- None of LPL's Delaware patents share any U.S. Patent Office technology subclasses with any of the AUO Wisconsin patents. Barbato Ex. A – F.
- The LPL Delaware patents and AUO Wisconsin patents do not present overlapping claim construction issues.
- The Delaware court previously construed the LPL Delaware patents. No court has ever construed the AUO Wisconsin patents.
- None of the alleged inventors of the LPL Delaware patents are related to the AUO Wisconsin patents, and no inventors of AUO's Wisconsin patents are relevant in Delaware.
- Honeywell, LGE, and Seiko were the original assignees of LPL's Delaware patents. None of these entities relate to AUO's Wisconsin patents.
- AUO and IBM were the original assignees of AUO's Wisconsin patents. Neither entity relates to LPL's Delaware patents.

Tellingly, LPL's brief does not even attempt to argue that its originally-filed Delaware case duplicates AUO's Wisconsin case. Rather, LPL relies on a few plainly distinguishable cases.

For example, in *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d. Cir. 1965), Marx filed a New Jersey declaratory judgment suit alleging that its products did not infringe a Mattel trademark. *Id.* at 422. Mattel then sued Marx in New York claiming that Marx's *same* products infringed both that *same* trademark and a related patent. *Id.* at 423. Marx then amended its first-filed complaint to add a declaratory judgment claim that its same products did not infringe the Mattel patent. *Id.* The Court held that Marx's suit was first-filed. *Id.* at 424.

Thus, in *Mattel*, half of Mattel's case duplicated Marx's original suit. Mattel's case was truly the second to seek adjudication of the Mattel trademark, so it is not surprising the Court ruled that Mattel's action was not "first-filed." *Id.* at 422-23. In contrast, AUO's Wisconsin action only raises, for the first time in any court, issues

8

relating to AUO's patents. The Wisconsin action is completely distinct from LPL's original complaint. *Also distinguish Versus Tech. v. Hillenbrand Industries, Inc.*, No. 1:02-CV-168, 2004 WL 3457629, *7 (W.D. Mich. Nov. 23, 2007) (transferring based upon "substantial likelihood of overlap" between suits); *Trafficcast,* 2005 WL 3002267 at *3 ("possibility of inconsistent judgments" between two suits justified transfer).

Simply put, there is no overlap of issues and no possibility of inconsistent judgment between LPL's original Delaware case and AUO's Wisconsin case. LPL manufactured the only overlap via its Delaware declaratory judgment amendment. *Compare with Big Dog Motorcycles*, 351 F.Supp.2d at 1194-5 (D. Kan. 2005) (denying transfer where the only overlap was a later amended complaint). LPL cannot misapply the teachings of *Mattel*, *Versus Tech*, or *Trafficcast* to support transfer of this case to Delaware.

### D.   The Interests of Justice Favor Maintaining This Case In Wisconsin Rather Than Deviating From The First-Filed Rule

LPL's amended Delaware action is second-filed, so the strong presumption is against transfer. Here, the interests of justice further support that presumption.

Courts recognize five factors as relevant to determining the soundness of applying the first-to-file rule. LPL Br. at 7 (citing *Trafficcast,* 2005 WL 3002267 at *1). Of the five *Trafficcast* factors, two provide guidance here – the cost of obtaining additional witnesses (factor 3) and the state of the court calendars (factor 5). Each strongly favors this action remaining in Wisconsin.

#### 1.   There Is No Substantial Witness Overlap Between The Wisconsin And Delaware Cases (Factor 3).

LPL argues that factor 3 favors transfer because the Wisconsin and Delaware cases will require duplicative and expensive international travel for witnesses. This argument fails for a host of reasons.

9

First, LPL does not name anyone who would be a witness in both the Delaware and Wisconsin actions. *See also* Section III(E)(3), *infra*.

Second, if necessary, AUO will ask the Delaware Court to transfer LPL's declaratory claims to this Court based on (1) AUO's first-filed Wisconsin patents claims and (2) LPL's improper Delaware pleading of a Wisconsin compulsory counterclaim.[4]

Third, aside from LPL's tactical, transfer-induced amendment, there is no substantial overlap of witnesses between the Delaware and Wisconsin cases. The three alleged inventors of LPL's Delaware patents are relevant only to LPL's Delaware case. The nine inventors of AUO's Wisconsin patents are only relevant to AUO's Wisconsin case. Other developers of the patented technology are likely to be at companies to which the patents were originally assigned. The original assignees of LPL's Delaware patents, Honeywell, LGE, and Seiko, have nothing to do with this Wisconsin action. Meanwhile, AUO's Wisconsin patents were originally assigned to AUO and IBM.

Fourth, many witnesses (including most inventors of all six patents) are third parties that neither the Delaware nor Wisconsin Court can compel to come to trial. Inconvenience is not a factor for witnesses who will not appear in either venue.

And fifth, LPL completely ignores the five additional defendants it sued in Delaware. Those other defendants, with their many witnesses, have no relation to AUO's Wisconsin case, and will be massively inconvenienced if transfer is allowed, as they would then be party to an action in which they have no interest. Similarly, LPLA's witnesses have no relation to Delaware.

Thus, *Trafficcast* factor 3 does not favor transfer because transfer is unlikely to make litigation more convenient for witnesses or reduce travel costs.

---

[4]    Alternatively, AUO asks this Court to direct LPL to dismiss its duplicative Delaware amendments so that it will not be necessary for AUO to seek dismissal in Delaware. In any event, even if LPL's duplicative declaratory claims went forward in Delaware, this matter is set for trial in September and would resolve those claims well before any consideration of the merits in Delaware.

**2.    The Relative Speed And Efficiency Of The Wisconsin Court
Weighs Heavily Against Transfer (Factor 5).**

LPL admits that this District is, on average, over a year faster to trial than the

District of Delaware. LPLA Br. at 9. "Relative speed and efficiency" heavily favors

this first-filed Wisconsin Court. *See Milwaukee Elec.*, 392 F.Supp.2d at 1065 ("the

relative speed with which an action may be resolved is particularly important in a patent

infringement action where rights are time sensitive and delay can often erode the value

of the patent monopoly") (internal quotes and citations omitted). Indeed, trial has

already been set in this case for September 2007 and discovery is underway. If this case

is transferred to Delaware, it will likely be much longer before AUO's patent claims are

resolved. Recognizing the obvious speed and efficiency advantage of this Court, LPL

attempts to escape this conclusion in two ways.

First, LPL mischaracterizes this Court's *Trafficcast* decision by asserting that

"the relative speed with which an action may be resolved is a consideration under factor

(5) *unless* the second suit can be transferred to a forum where consolidation is feasible."

LPLA Br. at 8 (emphasis in original). LPL appears to argue that relative speed should

not be considered if consolidation in the transferee forum is feasible.

By LPL's reading, so long as a transferee court has jurisdiction, transfer would

take place. This reading would make speed and efficiency irrelevant, which cannot be

the law. Instead, *Trafficcast* actually states:

> While the interests of justice are served when an action is transferred to a district
> where the litigants are more likely to receive a speedy trial, the interests of
> justice are also served when related litigation is transferred to a forum where
> consolidation is feasible.

*Trafficcast*, 2005 WL 3002267 at *3. Thus, in *Trafficcast*, this Court appears to note

that *both* speed to trial and feasibility of consolidation are factors to consider and that

both factors serve the interests of justice. LPL's contrary reading is mistaken.

11

Second, LPL attempts to negate this Wisconsin Court's efficiency by emphasizing LPL and AUO's negotiated ninety-day extension for AUO to answer the Delaware complaint. How this is relevant remains unexplained. Extensions in Delaware, unlike here, are commonplace. Moreover, in exchange for LPL agreeing to the extension, AUO voluntarily conceded to Delaware personal jurisdiction and service with regard to LPL's Delaware patent claims. If LPL was confident that personal jurisdiction and service were proper, LPL could have rejected any extension agreement. LPL chose not to do so.

Thus, speed to trial and efficiency in resolution strongly and undeniably favor maintaining this case in Wisconsin.

### E.    A Transfer Will Not Promote The Interests Of Justice Or Parties' Or Witnesses' Convenience.

After making its "first-filed" argument, LPL argues that the statutory factors of 28 U.S.C. § 1404 – (1) the convenience of parties, (2) the convenience of witnesses, and (3) the interests of justice – demand transfer to Delaware. LPL Br. at 10. But as a defendant seeking transfer, LPL must establish "by reference to particular circumstances that the transferee forum is ***clearly*** more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (emphasis added) (affirming denial of transfer);[5] *Milwaukee Elec.*, 392 F.Supp.2d at 1064 (denying motion to transfer); *Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-C-0932-C, 2005 WL 1168360, *3 (W.D. Wis. May 17, 2005) (denying transfer where allegedly infringing products were sold in Wisconsin). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Presto Indus.*,

---

[5]    Seventh Circuit law governs LPL's motion to transfer. "Our review of the district court's denial of [defendant's] motion to transfer . . . is governed by the law of the regional circuit in which it sits . . . ." *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (affirming refusal to transfer to from Washington D.C. to California even though related matters were pending in California because Washington D.C. provided a more expedient forum).

12

*Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) (internal quotes and citations omitted) (affirming refusal to transfer). LPL cannot meet its very high burden.

### 1. LPL Fails To Meet The Threshold Requirement Of Proving That AUO Could Have Brought Its Suit In Delaware.

The transfer statute allows transfer "only to a district in which *all of the parties* would have been amenable to process and in which the venue would be proper for bringing an action against all of them." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3845 (3d ed. 2007) (emphasis added); *see also Gallery House, Inc. v. Yi*, 587 F.Supp. 1036, 1039-40 (D.C. Ill. 1984) (refusing transfer where transferee court lacked venue for one party); *CRST Van Expedited, Inc. v. J.B. Hunt Transp., Inc.*, No. C-04-79LRR, 2005 WL 741911, *9 (N.D. Iowa Mar. 31, 2005) (refusing transfer where transferee court lacked jurisdiction over some parties). As a threshold matter, LPL failed to submit any proof which might meet its burden of proving that Delaware jurisdiction or venue is proper over LPLA, a defendant here, and 28 U.S.C. § 1404(a) permits transfer *only* to a district where the case originally "might have been brought."

Rather, LPL's brief states, without support, that "[u]nquestionably, the present case could have been brought in the District of Delaware." LPL Br. At 10. LPL is silent about LPLA, who is not a party in the Delaware action. LPL was required to show that AUO could have also sued LPLA in Delaware, and LPL did not even attempt to meet that requirement. LPL's lack of proof concerning LPLA is fatal because, as a matter of law, LPL cannot in its reply brief rely on LPLA now consenting to Delaware jurisdiction to meet this burden. As the Supreme Court held in *Hoffman v. Blaski,* 363 U.S. 335, 342-43 (1960) , "[w]e do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean, as petitioners' theory would require, 'where it may now be rebrought, with defendants' consent.'"

13

Indeed, the proof in this Court's record would suggest that LPLA might not be amenable to Delaware jurisdiction. LPLA notes in its Motion to Dismiss that it has offices only in California, Texas, North Carolina, and Illinois, but mentions nothing about Delaware. LPL Br. at 10. Except for its litigation-induced cooperation with LPL, there is no reason to think that LPLA would have been any more agreeable to jurisdiction in Delaware than it is now in Wisconsin. Even independent from other considerations, LPL's failure to meet this threshold issue is fatal to its transfer motion.

### 2.    Transfer Is Not More Convenient For The Parties.

LPL's *only* argument that Delaware is more convenient than Wisconsin is based on LPL's existing suit against the LCD industry, including AUO, in Delaware. Again, there are numerous reasons why that argument fails.

First, the facts of this Wisconsin litigation are in no way connected to Delaware, but they are intimately connected to Wisconsin. AUO's pre-suit investigation established that retail stores throughout this district routinely sell accused LPL and LPLA products. Moreover, LPL and LPLA advertise a Wisconsin distributor. *See generally* AUO's Opposition to LPLA's Motion to Dismiss.[6]

Second, LPL's Delaware case already involves Chi Mei Optoelectronics Corporation, Tatung Company. Tatung Company of America, Inc., ViewSonic Corporation of Delaware, and AU Optronics Corporation America – none of whom are parties in Wisconsin. It certainly cannot be convenient for those parties to have to participate in AUO's patent claims against LPL, in which they would have no interest. *C.f., e.g., New Jersey Machine Inc. v. Alford Indus. Inc.*, No. 89-1879(JCL), 1991 WL

---

[6]    Moreover, transfer would greatly inconvenience AUO because, for example, AUO's Wisconsin action has been developed by James Troupis and the Michael Best & Friedrich LLP law firm along with Wilson Sonsini Goodrich & Rosati PC. Meanwhile, AUO is separately represented by different firms in the Delaware action, namely, Paul, Hastings, Janofsky & Walker LLP and Young Conaway Stargatt & Taylor, LLP.

340196 at *2 (D.N.J. Oct. 7, 1991) (refusing to consolidate multiple defendants where different machines were accused).

Third, simultaneous Wisconsin and Delaware actions present no risk of duplicative proceedings or inconsistent judgment because (1) AUO will ask the Delaware court to transfer LPL's improperly pled declaratory claims to Wisconsin and (2) even if not transferred, this Court will resolve the merits of LPL's Delaware declaratory claims in Wisconsin at least by trial in September (well before the Delaware court addresses them), and (3) by this Response AUO asks this Court to direct LPL to dismiss the Delaware amendment or otherwise enjoin the Delaware court from addressing the Wisconsin patents.

Fourth, and perhaps most importantly, LPL is an extremely litigious company involved in pending actions throughout the United States. For example, LPL is currently litigating against Tatung Company in the S.D. California, D. Delaware, and C.D. California. Similarly, LPL is litigating against Viewsonic in both D. Delaware and C.D. California. Barbato Exs. H – L. Meanwhile, LPL is a defendant in three other cases pending in the Eastern and Western districts of Wisconsin and is also litigating patent cases in E.D. New York, S.D. New York, E.D. Texas, D. Massachusetts, and D. Columbia. Barbato Exs. M - T. LPL's ability and willingness to litigate throughout the United States, including in this district, weighs against any inconvenience it alleges and strongly suggests that the Delaware amendment and this Transfer Motion are nothing more than its latest litigation tactic intended simply to avoid swift and efficient resolution of AUO's claims.

Accordingly, convenience of the parties certainly does *not* support transfer.

### 3.     Transfer Is Not Convenient For Witnesses.

LPL also argues that Delaware is more convenient for witnesses than Wisconsin because "relevant witnesses" will already be engaged in Delaware. As explained in

Section III(D)(1), *supra*, this is incorrect. Moreover, by failing to identify a single witness who would find Delaware more convenient, LPL fails to meet its burden of "establishing by reference to particular circumstances" that Delaware is "clearly more convenient." *Milwaukee Electric*, 392 F.Supp.2d at 1064 (citation omitted); *see also Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.*, 138 F.R.D. 89, 93-94 (N.D. Ohio 1991) (defendant did not justify transfer to forum of pending case involving same parties where it did not identify specific witnesses or expected testimony). Convenience of the witnesses does not weigh in favor of LPL's motion to transfer.

### 4. The Interests Of Justice Do Not Favor Transfer To Delaware.

As a final argument under Section 1404(a), LPL asserts that the interests of justice demand transfer because the Wisconsin and Delaware cases could be efficiently consolidated and because the Delaware court allegedly has special expertise with the parties and LCD technology. However, neither argument has merit. Indeed, how a court (Delaware) that will take at least a year longer than this Court to resolve the dispute could be considered more efficient, and how a court (Delaware) that has never before reviewed the three AUO Wisconsin patents could have expertise beyond this Court is a mystery.[7]

#### a. The Patents And Accused Products Do Not Overlap In Any Meaningful Way That Would Promote Efficiency Through Consolidation.

LPL's primary "interests of justice" argument is that transfer will allow efficient consolidation with the Delaware action. LPLA Br. at 11. However, mere possibility of consolidation is not a critical factor where two pending cases do not overlap. *See, e.g., K.W. Muth Corp., Inc. v. Gentex Corp.*, No. 06-C-0378, 2006 WL 2772828, *5 (W.D. Wis. Sep. 22, 2006) (no transfer where co-pending suit involved distinct patents); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001

---

[7] Even the USPTO separately categorizes the Wisconsin and Delaware Patents for purposes of analysis (§ II(B), above). Moreover, the patents have no common lineage or common inventors (§II(D)(1), above).

WL 1617186, *4 (D. Del. Nov. 28, 2001) (no transfer where co-pending suit concerned same "general area of technology" but different patents); *SmithKline Beecham Corp. v. Geneva Pharm., Inc.*, No. 99-CV-2926, 2000 WL 217642, *2 (E.D. Pa. Feb. 11, 2000) (no transfer where co-pending suit had same parties but different patents).

Here, as explained above, only LPL's tactical declaratory judgment claims overlap with this Wisconsin case. *See* Section III(C), *supra*. Those improper claims should be disregarded. Aside from this, LPL argues only two similarities between the Delaware and Wisconsin actions.

First, LPL emphasizes that AUO and LPL are parties in both the Delaware and Wisconsin cases. However, LPL ignores that Chi Mei Optoelectronics Corporation, Tatung Company, Tatung Company of America, Inc., ViewSonic Corporation, and AU Optronics Corporation America are only parties in Delaware, and LPLA is only a party in Wisconsin. Given these six additional or unnamed parties, the lack of overlapping parties weighs heavily *against* transfer, not in favor of it. *C.f. New Jersey Machine*, 1991 WL 340196 at *2 ("claims of infringement against unrelated defendants, involving different machines, should be tried separately against each defendant.").

Second, LPL notes that both cases relate to "general LCD technology." Brief at 12. However, from 1976 to present, over one-hundred thousand patents referencing either "LCDs" or "liquid crystal displays" have issued. Barbato Ex. V. Over ten-thousand patent titles include one of these terms. Barbato Ex. W. Plainly Delaware is not, and should not be, the default forum for all litigation relating to "general LCD technology." LPL Br. at 12. Moreover, as noted earlier (§ II(B)), the technology of AUO and LPL's patents do not overlap significantly. LPL's suggestion that the present case duplicates LPL's Delaware case is simply wrong.

Because the differences between the Delaware and Wisconsin actions outweigh any similarities, mere possibility of consolidation does not favor transfer.

### b.   This Court Is Capable Of Deciding This Case.

LPL's second "interest of justice" argument is that the Delaware court has gained special expertise in LCD technology by deciding one past case in LPL's favor. LPL Br. at 12.[8]   However, prior experience with certain technology or even a particular patent is irrelevant to transfer:

> To rule otherwise would be to denigrate the generalist nature of the United States district courts and permit a party with a series of cases of a given type to have the advantage of the equivalent of a specialized judiciary at the district court level to handle such cases. Creation of specialized courts is the prerogative of Congress, not assigned to the Courts themselves.

*Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V. v. General Electric Co.*, 858 F.Supp. 380, 382 (S.D.N.Y. 1994). Accordingly, LPL's second "interest of justice" argument can be completely disregarded.

Even if the law permitted LPL's argument, no other court has ever considered the three AUO Wisconsin patents before, so the Delaware court has no special expertise with respect to issues LPL seeks to transfer. And, contrary to LPL's assertions, Delaware has no special familiarity with all of the parties. LPL Br. at 12. AUO has not yet made any substantive appearance in Delaware, and LPLA has no connection to the Delaware court. Lack of familiarity with the parties and patents weighs heavily *against* transfer of AUO's claims, not in favor of it.

Indeed, the Western District of Wisconsin is one of the most respected patent dockets in the country and routinely handles technical cases of equal or greater complexity than the three AUO patents at issue here. *See, e.g., Hyperphrase Techs. v. Google, Inc.*, No. 06-C-199-S, 2006 U.S. Dist. LEXIS 92195 (W.D. Wis. Dec. 20, 2006) (computer information compatibility and hyperlinking systems at issue); *Third Wave Technologies, Inc. v. Stratagene Corp.*, 405 F. Supp.2d 991 (W.D. Wis. 2005)

---

[8] It is unlikely that LPL would be so adamant about Delaware's "special expertise" had its earlier Delaware litigation ended unfavorably. Choosing Delaware, it would seem, is more about LPL's shopping for a favorable forum than it is about the "interest of justice."

(method for cleaving nucleic acids at issue). Accordingly, LPL's argument that the Delaware Court is "well-versed" with technology does not favor transfer.

### c.    Plaintiff AUO's Choice Of Forum Is Entitled To Deference Despite LPL's Baseless Accusation Of Bad Faith Litigation.

In evaluating the interests of justice, "[a]s a general rule, plaintiff's choice of forum is entitled to great deference and its choice should not be set aside lightly." *Milwaukee Electric Tool Corp.*, 392 F.Supp.2d at 1065 (citation omitted); *see also Leggett & Platt,* 2005 WL 1168360 at *2 ("Generally, a court should give a plaintiff's choice of forum substantial weight.").

Mindful of its obligations, AUO, with its Wisconsin counsel and others, carefully investigated its claims, as well as LPL and LPLA's conduct. That investigation included examination of sales and offers to sell and careful analysis of products compared to patent claims. AUO ultimately chose to file this action in the Western District of Wisconsin based on all of that information. *See* Opposition to LPLA's Motion to Dismiss at 3. There was nothing hasty or unfounded about AUO's choice to seek relief in Wisconsin.

LPL attempts to avoid the great weight afforded the plaintiff's choice among multiple legitimate jurisdictions by raising a rather odd suggestion. LPL suggests that because AUO's complaint does not identify which LPL products infringe specific claims of the AUO patents, this demonstrates that the Complaint was filed in haste. But such detail is not required. AUO's pleading plainly meets the notice pleading requirements of Fed. R. Civ. P. 12, and LPL apparently concedes this point by bringing no motion to the contrary. Moreover, LPL must agree that that notice pleading is acceptable since its own Delaware complaint similarly does not accuse any specific AUO products of infringement and does not identify any asserted claims of LPL's patents. Barbato Ex. U. Finally, AUO's experienced counsel in this District were well

19

aware that the Court's Pretrial Order would immediately require specific designation of products and infringement analysis. (See, Pretrial Conference Order, Docket #30, entered 4/19/07).

As to LPL's "forum gamesmanship" accusations, AUO remains a defendant in Delaware and has not sought to "avoid" the District of Delaware by filing any claims duplicative of those pending in Delaware. In contrast, LPL filed duplicative declaratory claims in Delaware apparently for the sole purpose of confecting a basis for its spurious transfer motion.

AUO's Wisconsin suit seeks relief from LPL and LPLA's infringement before a patent-savvy court with a swift docket so it will not have to spend years attempting to enforce its patent rights, as would be the case in many other courts. AUO's decision cannot amount to bad faith simply because AUO chose not to assert its patents as permissive – not compulsory – counterclaims in LPL's Delaware lawsuit. AUO is not required to sue LPL in Delaware merely because LPL sued AUO and five other defendants on unrelated patents in that court. LPL chose Delaware as its preferred forum for its claims, and AUO is permitted to choose its preferred forum as well – Wisconsin.

> **d.    This Venue Will Provide Swift Adjudication Of AUO's Patent Rights, While Transfer Will Prejudice Those Rights.**

This case will be resolved long before LPL's case in the District of Delaware. "Relative docket speed in this case also weighs against transfer." *Leggett & Platt,* 2005 WL 1168360 at *2. If AUO's case is transferred to Delaware, not only will AUO be forced to wait much longer to have its claims resolved, but perhaps more importantly, its claims will become a side-show in that case as they are completely irrelevant to five of the seven parties there.

LPL's motion glosses over the fact that LPL deliberately asserted its patents against multiple unrelated entities in Delaware. Quite differently, AUO chose to sue only LPL and its subsidiary LPLA in Wisconsin. LPL's attempt to cram AUO's patent claims into its multi-defendant case will prejudice and undermine AUO's decision to file a streamlined, narrow suit against a single competitor.

Of course, this point is not lost on LPL. Indeed, it is likely LPL's intent that by transfer, LPL's multi-suit campaign against the LCD industry will engulf AUO's patent claims. Such a result would serve only LPL's interests and not the interests of justice. Rather, the interests of justice weigh heavily against LPL's motion to transfer.

## IV.    CONCLUSION

This case is properly before this Court. It was filed after careful investigation. LPL has not come close to meeting its burden of showing substantial factors favoring transfer. AUO respectfully asks that this Court deny LPL's motion and enter an appropriate order either directing LPL to dismiss its Delaware action on the Wisconsin patents or otherwise enjoining those proceedings.

DATED this 7th day of May, 2007

RESPECTFULLY SUBMITTED BY

MICHAEL BEST & FRIEDRICH LLP

By: _____
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

21

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

Attorneys for Plaintiff
AU Optronics Corporation

Q:\CLIENT\022628\0001\B1051353.1

DOC NO
REC'D/FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN   PM 4: 31

| | | |
|---|---|---|
| AU Optronics Corporation, | ) | THERESA M. OWENS |
| | ) | CLERK US DIST COURT |
| *Plaintiff,* | ) | WD OF WI |
| | ) | Civil Action No..: 07-C-0137-S |
| vs. | ) | |
| | ) | Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. | ) | |
| and | ) | |
| LG.Philips LCD America, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1.    Plaintiff's Opposition to LG.Philips LCD Co., Ltd.'s Motion to Transfer to the District of Delaware;

2.    Declaration of Paul Barbato; and

3.    Declaration of Aris K. Silzars

were served upon all parties to this action as indicated below on this 7th day of May, 2007 to:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

38

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU Optronics Corporation,             )

         *Plaintiff*,     )   Civil Action No.: 07-C-0137-S

vs.                   )

                     )   Judge John C. Shabaz

LG.Philips LCD Co., Ltd.
and
LG.Philips LCD America,

        *Defendants*.   )   MAY - 7 2007

## DECLARATION OF PAUL BARBATO

I, Paul Barbato, declare as follows:

1. I work as an attorney for Michael Best & Friedrich LLP. I make this declaration in support of AU Optronics Corporation's Opposition to LG Philips LCD America's Motion to Transfer.

2. Attached as Exhibit A is a true and correct copy of LG.Philips LCD Co., Ltd.'s ("LPL") U.S. Patent No. 5,019,002, titled "Method of Manufacturing Flat Panel Backplanes Including Electrostatic Discharge Prevention and Displays Made Thereby," issued to Holmberg and dated May 28, 1991.

3. Attached as Exhibit B is a true and correct copy of LPL's U.S. Patent No. 5,825,449, titled "Liquid Crystal Display Device and Method for Manufacturing the Same," issued to Shin and dated October 20, 1998.

4.      Attached as Exhibit C is a true and correct copy of LPL's U.S. Patent No. 4,624,737, titled "Process for Producing Thin-Film Transistor," issued to Shimbo and dated November 25, 1986.

5.      Attached as Exhibit D is a true and correct copy of AU Optronics Corp.'s ("AUO") U.S. Patent No. 6,976,781, titled "Frame and Bezel Structure for Backlight Unit", issued to Chu, *et al.* and dated December 20, 2005.

6.      Attached as Exhibit E is a true and correct copy of AUO's U.S. Patent No. 6,778,160, titled "Liquid-Crystal Display, Liquid-Crystal Control Circuit, Flicker Inhibition Method, and Liquid-Crystal Driving Method", issued to Kubota, *et al.* and dated August 17, 2004.

7.      Attached as Exhibit F is a true and correct copy of AUO's U.S. Patent No. 6,689,629, titled "Array Substrate for Display, Method for Manufacturing, Array Substrate for Display and Display Device Using the Array Substrate", issued to Tsujimura, *et al.* and dated February 10, 2004.

8.      Attached as Exhibit G is a true and correct copy of 8 Donald S. Chisum, *Chisum on Patents,* Sec. 21.02.

9.      Attached as Exhibit H is a true and correct copy of a docket sheet from the U.S. District Court, District of Delaware (Wilmington) for L.G. Philips LCD Co. Ltd. v. Tatung Company et al. (Case #: 1:05-cv-00292-JJF).

10.     Attached as Exhibit I is a true and correct copy of a docket sheet from the U.S. District Court, District of Delaware (Wilmington) for L.G. Philips LCD Co. V. Tatung Co., et al. (Case #: 1:04-cv-00343-JJF).

11.     Attached as Exhibit J is a true and correct copy of a docket sheet from the U.S. District Court, District of Delaware (Wilmington) for L.G. Philips LCD Co. LTD v. Tatung Company et al. (Case #: 1:07-cv-00186-JJF).

12.     Attached as Exhibit K is a true and correct copy of a docket sheet from the U.S. District Court, Central District of California (Western District – Los Angeles) for L.G. Philips LCD Co. v. Tatung Co. of America, et al. (Case #: 2:02-cv-06775-CBM-JTL).

14.     Attached as Exhibit L is a true and correct copy of a docket sheet from the U.S. District Court, Southern District of California (San Diego) for L.G. Philips LCD Co. LTD v. Tatung Company, et al. (Case #: 3:07-cv-00450-H-CAB).

15.     Attached as Exhibit M is a true and correct copy of a docket sheet from the U.S. District Court, Western District of Wisconsin (Madison) for Paguirigan v. AU Optronics Corp. (Case #: 07-C-0056-C).

16.     Attached as Exhibit N is a true and correct copy of a docket sheet from the U.S. District Court, Western District of Wisconsin (Madison) for Kovachevich v. L.G. Philips LCD Co. LTD (Case #: 07-C-0080-C).

17.     Attached as Exhibit O is a true and correct copy of a docket sheet from the U.S. District Court, Eastern District of Wisconsin (Milwaukee) for Mitt v. L.G. Philips LCD Co. LTD et al. (Case #: 2:07-cv-00151-JPS).

18.     Attached as Exhibit P is a true and correct copy of a docket sheet from the U.S. District Court, Eastern District of New York (Brooklyn) for Ferencski v. L.G. Philips LCD Co. et al. (Case #: 1:06-cv-06714-FB-CLP).

19.     Attached as Exhibit Q is a true and correct copy of a docket sheet from the U.S. District Court, Southern District of New York (Foley Square) for CMP Consulting Services, Inc. v. L.G. Philips LCD Co., LTD. (Case #: 1:06-cv-15417-JGK).

20.     Attached as Exhibit R is a true and correct copy of a docket sheet from the U.S. District Court, District of Columbia (Washington D.C.) for Bly v. L.G. Philips LCD Co., LTD et al. (Case #: 1:07-cv-00438-RMC).

21.     Attached as Exhibit S is a true and correct copy of a docket sheet from the U.S. District Court, District of Massachusetts (Boston) for Murphy v. L.G. Philips LCD Co., et al. (Case #: 1:07-cv-10457-RGS).

22.     Attached as Exhibit T is a true and correct copy of a docket sheet from the U.S. District Court, Eastern District of Texas (Marshall) for Chi Mei Optoelectronics Corp. v. L.G. Philips LCD (Case #: 2:07-cv-00176-TJW).

23.     Attached as Exhibit U is a true and correct copy of is a true and correct copy of the LPL's First Amended Complaint for Patent Infringement Against Defendant AU Optronics Corporation in the L.G. Philips LCD Co. LTD v. Chi Mei Optoelectronics Corp., et al. case (Case #: 06-cv-00726-JJF) filed April 11, 2007.

24.     Attached as Exhibit V is a true and correct copy of a printout dated May from the United States Patent and Trademark Office's web site, which shows 102,325 patents contain either the terms "LCD" or "Liquid Crystal Display."

4

25.    Attached as Exhibit W is a true and correct copy of a printout dated May  from the United States Patent and Trademark Office's web site, which shows 10,524 patents contain either the terms "LCD" or "Liquid Crystal Display" in the title.


I declare under penalty of perjury that the foregoing is true and correct.


Dated this 7th day of May, 2007


Paul Barbato

39

DOC NO
REC'D/FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN MAY -7   PM 4:31

AU Optronics Corporation,                    )
                                             )         THERESA M. OWENS
                                             )         CLERK US DIST COURT
            *Plaintiff*,                      )    Civil Action No.:  07-C-0137-S
                                             )              WD OF WI
      vs.                                     )
                                             )    Judge John C. Shabaz
LG.Philips LCD Co., Ltd.                      )
and                                           )
LG.Philips LCD America,                       )
                                             )
            *Defendants*.                     )
                                             )
_____)

## DECLARATION OF ARIS K. SILZARS

I, Aris K. Silzars, affirm and declare as follows:

1.      I am a resident of Washington. I am over eighteen years of age, and unless

otherwise stated, I have personal knowledge of the facts set forth herein, and if called upon to

testify, I could and would testify competently thereto.

2.      I hold a Ph.D. in Electrical Engineering, an M.A. in Physics, and a B.A. in

Physics. I have over 30 years of experience in the field of displays, display systems, electronic

devices, and electronic circuits. My CV is provided as Exhibit A.

3.      In connection with my work as an expert, I am being compensated at a rate of

$250 per hour not to exceed $2,000 per day for consulting services including time spent in

depositions or testifying at trial. I am also reimbursed for reasonable and customary expenses

associated with my work on this case. I receive no other forms of compensation related to this

case. No portion of my compensation is dependent or otherwise contingent upon the results of

this lawsuit or the specifics of my testimony.

4.      I make this declaration in support of AU Optronics Corporation's Opposition to
LG.Philips LCD Co. Ltd.'s Motion to Transfer.

**Brief Description of LG.Philips LCD Co. Ltd et. al. Patents**

5.      U.S. Patent No. 5,019,002 – <u>Method of manufacturing flat panel backplanes
including electrostatic discharge prevention and displays made thereby.</u> The objective of this
patent is to try to improve manufacturing yields of Liquid Crystal Displays (LCDs) by providing
protection from electrostatic discharges between the row and column pixel activation lines
during manufacture of the displays. The claimed improvements are accomplished by forming at
least one electrostatic discharge guard ring around the active elements of the display. This is
intended to prevent any discharges from occurring between the row and column lines through an
active element during manufacturing and thus causing a defect in the pixel at that location. This
outer guard ring is removed prior to completion of the display.

6.      U.S. Patent No. 4,624,737 – <u>Process for producing thin-film transistor.</u> Thin-film
transistors, such as are used in active-matrix LCDs, are manufactured by creating a combination
of layers using vacuum deposition techniques. The intended benefit described by this patent is to
combine several of these steps without allowing the materials to be exposed to the normal
atmosphere where natural oxides may form and where other impurities may be introduced. The
described process consists of forming a gate electrode on an insulating substrate, then adding a
gate insulating film, followed by a high resistivity semiconductor film without exposing them to
an oxidizing atmosphere.

7.      U.S. Patent No. 5,825,449 – <u>Liquid crystal display device and method of
manufacturing the same.</u> The claimed improvement described in this patent is to increase
manufacturing yields and to prevent processing errors by etching the gate insulating film after

2

the step of forming the passivation layer. After the first and second conductive layers are formed with an insulator layer separating them, a second insulator layer is added with an indium tin oxide layer formed on the second insulator layer. A contact hole is then provided through the first and second insulator layers to expose a part of the first conductive layer and a second contact hole is provided through the second insulator layer to expose a part of the second conductive layer. As a result, the indium tin oxide layer extends through the first and second contact holes to connect the first and second conductive layers.

**Brief Description of the AU Optronics Corporation Patents**

8.    U.S. Patent No. 6,689,629 – Array substrate for display, method of manufacturing array substrate for display and display device using the array substrate. Conductive patterns are formed in the fabrication of Liquid Crystal Displays in order to interconnect the various active and passive elements. Often these conductive patterns are formed by chemical etching processes to define the desired conductor interconnection paths. In order to do this efficiently, a uniform chemical etching rate is needed to prevent undercutting and undesirable variations in the line widths of the specified conductive patterns. As described in this patent, the etching rate can be controlled by the addition of dummy patterns. The dummy conductive patterns can be formed as land patterns and line-and-space patterns.

9.    U.S. Patent No. 6,778,160 – Liquid-crystal display, liquid-crystal control circuit, flicker inhibition method, and liquid-crystal driving method. When the liquid crystal materials used in an LCD cannot respond sufficiently quickly to the changing images, problems such as the visual persistence of moving images and the inability to keep up with fast-moving images become apparent. A related problem is visual flicker. This patent describes a method for correcting these performance and operation problems by the way the circuitry is configured to

3

drive the panel. For example, the input signal is compared to a previous brightness level that has been stored in a short-term memory location. The next brightness level of the next video signal is then set so as to make the time integration quantity of a brightness change substantially equal to an ideal quantity of light in a stationary state with respect to the next brightness level. All of the modifications to the video signal are accomplished by the storage and processing circuitry. No changes are made to the liquid-crystal panel itself.

10.    U.S. Patent No. 6,976,781 – <u>Frame and bezel structure for backlight unit.</u> This patent describes a way for mounting a frame onto a bezel to make it more convenient for assembly and disassembly of an LCD display with a back-light where the TFT backplane, liquid crystal, and front contact glass have already been manufactured. The assembling structure consists of a frame wherein depressions or holes are formed on two edges and hooks that protrude outward are formed on the other edges. When the frame is mounted onto the bezel, the holes and protrusions engage to complete the assembly.

**Analysis and Conclusion**

11.    The three LG.Philips patents are directed to the specifics of manufacturing the thin-film transistor back plane of an LCD. The '002 patent strives to minimize electrostatic discharge during the manufacturing process. The proposed structure is removed before completion of the product. The '737 patent teaches combining thin-film deposition processes so that natural oxidation does not occur if the partially completed panel is removed from the vacuum chamber. The '449 patent proposes a conductor-insulator configuration for the thin-film transistor array for manufacturing yield improvement.

12.    On the other hand, the three AU Optronics patents are directed to very different objectives. The '629 patent teaches a way to improve the uniformity of chemically etched

4

interconnects. The '160 patent describes an improvement in the electronic circuitry that drives

the panel. The '781 patent describes a mechanical structure for mounting the panel and its

associated back-light.

13.    The '160 patent and the '781 patent have absolutely no relationship to the

fabrication or the structure of the TFT back plane. It would be an improper conclusion that just

because all of these patents relate to LC displays that there is a commonality of purpose or

similarity of technologies. Therefore, the only patent that could be argued to have some

commonality of purpose with the LG.Philips patents is '629. However, here again the patent is

directed to the improvement of the chemically etched interconnects and has essentially nothing

to do with the details of fabricating the back plane TFT array.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this $\underline{7}$ day of May, 2007

Aris K. Silzars

5

# Aris Silzars Display Technology Consulting



| | | | |
|---|---|---|---|
| HOME/DISPLAY CONTINUUM: | Column Synopses | Display Continuum Index | Photo Page: 1, 2, 3, 4 |
| THE NEW DISPLAYS: | New Display Technology | In-House Short Courses | About Aris Silzars |
| DISPLAY CONSULTING: | Business Strategy | Resource Network | Expert Witness Work |
| TESTING AND MEASUREMENT | Equipment | Photo Tour of Lab | |

e-mail silzars@attglobal.net



ARIS K. SILZARS
**19916 NE 30th Ct.**
**Sammamish, WA 98074**
**Call 425.898.9117**
**FAX 425.898.1727**
Email

**QUALIFICATIONS SUMMARY**

Thirty years of increasingly responsible technology, marketing, general
SUMMARY management, and business development experience in meeting customer needs
with high-performance electronic products.
* Extensive experience in positioning technology-based products for competitive advantage,
including the identification of distinctive competencies and market differentiating factors.
* Proficient at creating new products and new opportunities through understanding of
technology, manufacturing, and the assessment of business and market opportunities.
* A skilled manager of complex multi-technology product developments requiring invention
and new technology introduction.
* Well-known internationally as an expert on display technologies through presentations,
publications, and technical society leadership.

**PROFESSIONAL EXPERIENCE**
**1995 – Present**

**NORTHLIGHT DISPLAYS - ISSAQUAH, WA**
**Founder and President**
Business development, technology support, and strategic consulting for established and
emerging Information Display companies.
* Relocated to the Northwest and founded a new business providing technology
development, technology forecasting, and applications support to Information Display
businesses and new ventures.
* Created an industry forum for Display Technologies and Display Manufacturers by founding
the DisplayWorks industry conference as a joint venture sponsored by SID, SEMI, and USDC.
* Developed the concept of a "virtual" corporation serving the display community with an
international support base including partnering relationships with technologists in Russia,
France, Japan, Korea, and Princeton and San Jose in the US.
* Positioned the company to become an international resource center for Information Display
technology developments and applications.

**1994 - 1995**    **SARNOFF CORPORATION - PRINCETON, NJ**

**Director of the Display Research Laboratory**

Technology leadership, development, and marketing for all display technologies -- CRTs, FEDs, Plasma, LCDs, EL, and Phosphors.

* Increased the laboratories contract revenue by more than $5 million in less than one year.

* Developed a new business strategy and repositioned the group to become the principal display representatives of the Sarnoff Corporation to government and industry.

* Created a "Center of Excellence" for Field-Emission Technology by bringing in key new contracts and by working with government and industry partners.


**1993 - 1994**    **DUPONT CO. - Advanced Composite Materials - NEWARK, DE**

**Senior Consultant for Electronics**

Business development of new materials technologies for applications in electronics.

* At the request of DuPont management, assessed the electronics business potential and technology competitiveness of: Metal-Matrix Composites, Aramids, Pitch-Carbon Fibers, Metallized Kevlar, Diamond Films and Fibers, Photopolymers, and High-Temperature Superconducting Materials.

* Applied new-technology marketing experience to provide business plans for coated fibers as electron-emitters for flat-panel displays and Thermount® (Kevlar/Nomex Aramid) as a substrate material for Multi-Chip Modules.

* Developed new patentable concepts for products using metallized Kevlar, display structures incorporating coated fibers, holographic filters for color displays, and a low-cost manufacturing process for Metal-Matrix Composites.


**1990-1993**    **LANXIDE ELECTRONIC COMPONENTS, L.P., NEWARK, DE.**

**President and CEO**

Strategic planning, business development, and operations responsibility for the start-up of an electronics business based on composite materials technology developed by the parent Lanxide Corporation.

* Developed the business plan, adapted the materials technology, established a salable product base, and achieved the first $5MM+ of orders to military and commercial customers.

* Worked with DuPont, the funding partner, to scale-up the technology to achieve volume manufacturing capability at competitive cost.

* Implemented a team oriented company culture and trained 50+ employees in the skills of new business development, manufacturing scale-up, MRP II, and TQM.


**1988 - 1990**    **INTERCHIP SOLUTIONS, INC., BEAVERTON, OR**

President/CEO and Founder

Business development and marketing responsibility for the startup of a Multi-Chip Module Company.

* Developed the Business Plan, assembled a management team, and worked with a variety of investors to successfully achieve first-round financing.

* Determined and prioritized the needs of system designers (the customers), positioned the

company to effectively respond to those needs, and accomplished the first sale of products.
* Implemented partnerships with companies supplying CAE tools, fabrication technology, and test equipment.

**1974 - 1988**          **TEKTRONIX, INC., BEAVERTON, OR.**

(1984 - 1988) General Manager, Hybrid Components Operation

Managed the transformation of this 500 employee 125,000 sq. ft. facility from an internal service organization to an independent business unit with sales to Tek divisions and outside customers.
* Developed the marketing and sales strategy that resulted in $10MM+ of new external hybrids business in less than 2 years.
* Increased sales to internal Tektronix customers from $30MM to $38MM during a period of no growth in the company.
* Improved the division's financial performance from an $8MM/year loss to profitability.
* Established and managed a sales organization, independent from Tektronix Corporate sales, to serve the hybrid and IC businesses.
* Identified new business opportunities and expanded the Hybrid and Ceramics product lines with the introduction of multi-layer ceramic packages and electro-optic components.
* Improved product delivery and quality, reduced inventories, and eliminated shortages through organization-wide use of MRP II and Just-in-Time principles.

(1980 - 1984) Director, Solid State Group

Provided the strategic leadership and management for the development, product application, and manufacturing of all semiconductor and component integration technologies including, Bipolar IC's, MOS IC's, Hybrids, and Ceramic Components. The facilities were located in two buildings (250,000 sq. ft. total) and employed over 900 people.
* Established the strategy and implementation of CAE tools for the design and layout of ICs and hybrids.
* Successfully managed the design and startup of a new 50,000 sq. ft. IC facility, the installation of a very high-speed bipolar process, and the introduction of E-beam lithography.
* Developed and initiated the manufacture of analog ASICs (Quick-Chip), CCD arrays, and high-speed signal acquisition devices (Si and GaAs).
* Identified the need and implemented the large scale use of Hybrids and Custom IC's into Tek's next generation portable oscilloscopes, the Company's highest revenue products.

(1974 - 1980) Manager, Component Development Group

Increasing responsibility for the selection, development, and implementation of new component technologies into Tektronix products. Managed the company's R&D activities in displays, hybrid circuits, monolithic IC's and electromechanical components with a staff of 350 engineers and technicians.
* Guided the technology selection and development of high-performance CRTs, micro-channel plate CRT's, and signal processing devices.
* Initiated the development of GaAs technology at Tektronix, which later resulted in the formation of TriQuint Semiconductor.

**1969 - 1974**    **WATKINS-JOHNSON CO., PALO ALTO, CA**

Section Head - Program Manager - Senior Engineer

* Developed and promoted Electron Beam Semiconductor devices for military signal processing applications including broadband microwave amplifiers, high-power bandpass RF amplifiers, and high current nanosecond risetime modulators.

**EDUCATION**

Ph.D., E.E. - University of Utah, 1969

M.A., Physics - University of Utah, 1965

B.A., Physics - Reed College, Portland, OR., 1963

**MEMBERSHIPS & PROFESSIONAL ACTIVITIES**

Society for Information Display - Past President

Chair of the Publications Committee.

Past Senior Member of the IEEE.

General Chairman of the 1985 Custom Integrated Circuits Conference.

General Chairman of the 1987 Society for Information Display Symposium.

Organizer and Chair of the First Display Manufacturing Technology Conference San Francisco, January 1994.

General Chairman of the 2004 Society for Information Display Symposium.

General Chair of the 2005 Society for Information Display Business Conference

**PATENTS ISSUED**

3,740,607; 3,749,961; 3,893,157; 3,980,919; 4,110,749; 4,207,492; 4,328,466; 5,578,901; 6,800,877; 6,801,002, 7,064,500

**PUBLICATIONS**

*Over 100 publications in major technical journals and conference proceedings (Complete listing available on request.)

*A monthly column "The Display Continuum" appeared in Information Display Magazine from 1993 to 2003 on various topics of interest to the display community.

*Invited seminar presentation at the Society for Information Display Symposium on the "Display Marketplace in the Next Decade."

*Multiple presentations of one and two day courses on current and future display technologies.

*Custom Integrated Circuits Conference keynote presentation on "Custom Integrated Circuits: The Challenge of Customer Service in a Changing High-Technology Environment."

**REFERENCES**

Available on Request.

TOP

Aris Silzars Display Technology Consulting

**19916 NE 30th Ct. Sammamish, WA 98074 Call 425.898.9117 FAX 425.898.1727**

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT** 2007 MAY 17  PH 3: 20
**FOR THE WESTERN DISTRICT OF WISCONSIN**
                                                                THERESA M. OWENS
                                                            CLERK US DIST COURT
                                                                     WD OF WI

|  |  |
|---|---|
| AU OPTRONICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-C-0137-S |
| | ) |
| LG.PHILIPS LCD CO., LTD. and | ) |
| LG.PHILIPS LCD AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM IN SUPPORT OF
## LG.PHILIPS LCD CO., LTD.'S MOTION TO
## TRANSFER TO THE DISTRICT OF DELAWARE

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

*Counsel for Defendant LG.Philips LCD Co., Ltd.*

# **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | LPL'S AMENDMENT AS OF RIGHT RELATES BACK TO ITS ORIGINAL COMPLAINT FOR PURPOSES OF THE FIRST-FILED RULE .................................... 2 | |
| II. | ALL OF AUO'S CLAIMS IN THIS SUIT ARE IDENTICAL TO ISSUES CURRENTLY PENDING IN THE DISTRICT OF DELAWARE .................................. 6 | |
| III. | INTERESTS OF JUSTICE DEMAND TRANSFER ........................................................ 7 | |
| | A. | AUO's Choice Of Forum Deserves No Deference ................................................. 7 |
| | B. | AUO's Blatant Forum Shopping Should Not Be Permitted Because The Same Types Of Documents Are Relevant To Both Cases................................... 11 |
| | C. | Common Evidence Would Be Presented At Both Trials..................................... 12 |
| | D. | While This Court Is Capable Of Hearing This Case, In Doing So It Would Duplicate An Investment Of Time And Resources The Delaware Court Has Already Made ............................................................................................... 13 |
| | E. | AUO's Tenuous Claim Of Personal Jurisdiction Over LPLA Renders Transfer Appropriate........................................................................................... 15 |
| | F. | AUO's Speed and Efficiency Argument Is Dubious ........................................... 15 |
| IV. | CONSIDERATION OF CONVENIENCE ALSO FAVORS TRANSFER.................... 17 | |
| | A. | Transfer Would Be More Convenient For Many Witnesses Who Would Otherwise Have To Testify Twice....................................................................... 17 |
| | B. | Transfer Would Be More Convenient For The Parties......................................... 18 |
| V. | CONCLUSION................................................................................................................. 19 | |

## TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Selfcare, Inc.*,
No. 98-C-7102, 1999 WL 162805 (N.D. Ill. 1999) .................................................................... 12

*Applied Vision, Inc. v. Optical Coating Laboratory, Inc.*,
No. C97-1233 MHP, 1997 WL 601425 (N.D. Cal. Sept. 23, 1997) ........................................... 4

*Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*,
351 F. Supp. 2d 1188 (D. Kan. 2005) ................................................................................... 5, 6

*Broadcom Corp. v. Agere Systems, Inc.*,
No. 04-C-066-C, 2004 WL 1176168 (W.D. Wis. May 20, 2004) ...................................... 10, 14

*Broadcom Corp. v. Microtune, Inc.*,
No. 03-C-0676-S, 2004 WL 503942 (W.D. Wis. Mar. 9, 2004) ........................................ 10, 14

*Bye, Goff, Rohde & Skow, Ltd. v. Casey, Gerry, Schenk, Francavilla*,
No. 07-C-003-S, 2007 WL 1306556 (W.D. Wis. May 2, 2007) ................................................ 9

*C.R. Bard, Inc. v. Schwartz*,
716 F.2d 874 (Fed. Cir. 1983) ............................................................................................... 11

*Castleberg v. Covenant Healthcare, LLC*,
No. 02-C-0147-C, 2002 WL 32345613 (W.D. Wis. Aug. 16, 2002) ....................................... 10

*Connexus Credit Union v. Connex Credit Union*,
219 F.R.D. 465 (W.D. Wis. 2003) ................................................................................... 10, 15

*Guardian Media Technologies, Ltd. v. Mustek Systems, Inc.*,
440 F. Supp. 2d 937 (W.D. Wis. 2006) ................................................................................. 10

*Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*,
395 F. Supp. 234 (D.C. Ill. 1974) ........................................................................................... 5

*Intel Corp. v. Amberwave Systems Corp.*,
233 F.R.D. 416 (D. Del. 2005) ................................................................................................ 4

*K.W. Muth Co., Inc. v. Gentex Corp.*,
No. 06-C-0378-C, 2006 WL 2772828, *5 (W.D. Wis. Sept. 22, 2006) ................................... 16

*Leggett & Platt, Inc. v. Lozier, Inc.*,
No. 04-C-0932-C, 2005 WL 1168360 (W.D. Wis. May 17, 2005) .......................................... 11

# TABLE OF AUTHORITIES
(continued)

*Liberty Mut. Fire Ins. Co. v. Nordic Group of Companies, Ltd.*,
No. 01-C-0207-C, 2001 WL 34382016 (W.D. Wis. Dec. 4, 2001).......................................... 10

*Marvin Lumber and Cedar Co. v. S&S Sales Corp.*,
No. 06-C-105-S, 2006 WL 1236783 (W.D. Wis. May 5, 2006) ............................................... 10

*Matsushita Elec. Indus. Co., Ltd. v. Siliconix Inc.*,
No. 05-C-732-S., 2006 WL 517628 (W.D. Wis. Mar. 2, 2006) .................................... 10, 13, 15

*McCraw v. Mensch*,
No. 06-C-0086-S, 2006 WL 740897 (W.D. Wis. Mar. 17, 2006) ............................................ 10

*McMahon v. Carroll College*,
No. 03-C-0702-C, 2004 WL 882195 (W.D. Wis. April 14, 2004)....................................... 8, 10

*Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc.*,
No. 05-C-104-S, 2005 WL 1181952 (W.D. Wis. May 18, 2005) ........................................... 10

*Milwaukee Electric Tool Corp. v. Black & Decker (N.A.) Inc.*,
392 F. Supp. 2d 1062 (W.D. Wis. 2005) ................................................................................ 11

*Nelson Design Group, LLC v. Frank Betz Associates, Inc.*,
2006 WL 2290812 ................................................................................................................. 12

*Patel v. American Tel. & Tel., Inc.*,
No. 93-C-117, 1993 WL 384569 (N.D. Ill. Sept. 27, 1993)...................................................... 6

*Pergo, Inc. v. Alloc, Inc.*
262 F. Supp. 2d 122 (S.D. N.Y. 2003)...................................................................................... 4

*Ramsey Group, Inc., v. EGS International, Inc.*,
208 F.R.D. 559 (W.D. N.C. 2002)...................................................................................... 4, 11

*Reynolds and Reynolds Holding, Inc. v. Data Supplies, Inc.*,
301 F. Supp. 2d 545 (E.D. Va. 2004) .................................................................................... 11

*Save Power Limited v. Syntek Finance Corp.*,
121 F.3d 947, 950 (5th Cir. 1997) ........................................................................................... 6

*Snyder v. Revlon, Inc.*,
No. 06-C-394-C, 2007 WL 791865 (W.D. Wis. Mar. 12, 2007)..................................... 7, 9, 10

*Symbol Technologies, Inc. v. Intermec Technologies Corp.*,
No. 05-C-256-C, 2005 WL 1657091 (W.D. Wis. July 15, 2005).......................................... 6, 10

-iii-

## TABLE OF AUTHORITIES
(continued)

**Page**

*Timebase Pty Ltd. v. Thomson Corp.,*
No. 07-C-460, 2007 WL 772946 (N.D. Ill. Mar. 9, 2007) ........................................................ 19

*Trafficast, Inc. v. Pritchard,*
No. 05-C-557-S, 2005 WL 3002267 (W.D. Wis. Nov. 7, 2005) ........................................ 10, 16

*U.S. ex rel. Gervae v. Payne and Dolan, Inc.,*
No. 01-C-0383-C, 2003 WL 23185881 (W.D. Wis. July 14, 2003) ......................................... 10

*Versus Tech., Inc. v. Hillenbrand Industries, Inc.,*
No. 1:04-CV-168, 2004 WL 3457629 (W.D. Mich. Nov. 23, 2004) ................................. 3, 6, 7

*Wausau Benefits, Inc. v. Liming,*
393 F. Supp. 2d 713 (W.D. Wis. 2005) .................................................................................. 10

*Zipher Ltd. v. Markem Corp.,*
No. 06-C-745-S, 2007 WL 840514 (W.D. Wis. Mar. 16, 2007) ........................................ 10, 15

*Z-Man Fishing Products, Inc. v. Applied Elastomerics, Inc.,*
Civ. No. 2:06-2022-CWH, 2006 WL 3813707 (D.S.C. Dec. 27, 2006) .................................. 13

## OTHER AUTHORITIES AND STATUTES

28 U.S.C. §§ 1404(a) ......................................................................................................... 2, 3, 19

8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] .................................................................. 5

AUO fails to rebut recent patent law authority that stands squarely for the application of the first-filed rule to transfer this case to the District of Delaware. LPL's amendment as of right relates back to its original complaint for purposes of the first-filed rule. Therefore LPL's suit in the District of Delaware, where the claims alleged mirror AUO's claims here, takes priority. The Delaware action was the first to bring AUO and LPL into court over LCD technology patents and is the only suit that addresses *all* of the related issues between the parties, including the issues presented in this case.

Furthermore, the interests of justice and convenience of parties and witnesses mandate a transfer to the District of Delaware. AUO's choice of forum deserves no deference because AUO is not a resident of Wisconsin and its claims have no real connection to Wisconsin, especially where AUO has engaged in blatant forum shopping and deliberately delayed the Delaware case so that it could bring its action in this district. Even if the mirror image claims in Delaware are not considered, there is significant commonality among the evidence and witnesses related to both actions. In addition, the Delaware court has already invested time and resources into learning about these parties and the LCD technology behind the patents at issue. Both the common witnesses and the parties would be inconvenienced if the related cases were heard in two separate courts sitting almost one thousand miles away from each other. Accordingly, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), this case should be transferred to the U.S. District Court for the District of Delaware, the more appropriate forum for this action.

## I.    LPL'S AMENDMENT AS OF RIGHT RELATES BACK TO ITS ORIGINAL COMPLAINT FOR PURPOSES OF THE FIRST-FILED RULE

The District of Delaware action is the first-filed suit, and accordingly, AUO's claims should be transferred to Delaware to be consolidated with the action there. In its opposition brief, AUO ignores recent patent law authority and instead relies on a stale, distinguishable case

and a completely inapposite opinion from outside this circuit. AUO remarkably characterizes the well founded relation back doctrine and the trend toward applying the first-filed rule in *all* cases where a plaintiff amends its complaint to add claims raised in a second-filed suit in another district as "odd." (*See* Plaintiff's Opposition to LG.Philips LCD Co., Ltd.'s Motion to Transfer To The District Of Delaware ("AUO Br.") at 5.)

The policies at the heart of the first-filed rule are facilitated when the first court in which *all* issues raised between the parties determines how the cases should proceed. *Versus Tech., Inc. v. Hillenbrand Industries, Inc.*, No. 1:04-CV-168, 2004 WL 3457629, \*7 (W.D. Mich. Nov. 23, 2004). In several patent cases, courts have held that a "subsequently-filed amendment is prior to an earlier complaint where the amendment is made in the first-filed action." *Id.* at \*6. The circumstances in at least one of those cases, *Versus Tech*, are strikingly similar to those in this case. There, HillRom Services, Inc. ("HRS") filed suit on December 20, 2003 in North Carolina against Versus Technology and three of its distributors alleging infringement of two patents – '656 and '035. *Id.* at \*2. Subsequently, Versus Technology filed a patent infringement claim in Michigan on March 15, 2004 against HRS; its corporate parent Hillenbrand Industries; another related company, Hill-Rom Company, Inc. ("HRC"); and two other unrelated, separate companies, Visionic, Inc. and Visionic Technologies, Ltd., alleging infringement of the '314, '195, '139, and '171 patents. *Id.* at \*3. Following the filing of the second case, HRS then amended its North Carolina complaint, adding declaratory judgment counts seeking declarations that the three Hillenbrand defendants were not infringing the Versus Technology patents at issue in the Michigan suit. *Id.* \*3. The *Versus Tech* court found that the declaratory judgment counts added in the amendment related back to HRS' initial complaint in North Carolina for purposes of the first-filed rule and accordingly transferred the case there. *Id.* at \*7.

-3-

Similarly, the case of *Pergo, Inc. v. Alloc, Inc.* directly supports LPL's position. 262 F.
Supp. 2d 122 (S.D. N.Y. 2003). In that case, defendants Alloc, Inc. ("Alloc") and Berry Finance
NV ("Berry") filed a declaratory judgment action on July 29, 2002 in the Eastern District of
Wisconsin against Pergo, Inc. ("Pergo") seeking a declaration of non-infringement of Pergo's
'547 patent. *Id.* at 126. Pergo then filed suit on August 12, 2002 in New York against Alloc and
Berry alleging infringement of Pergo's '970 patent. *Id.* Subsequently, Alloc and Berry amended
their Wisconsin action to include a declaratory judgment count with respect to the '970 patent at
issue in the New York suit. *Id.* Even though the original suit involved a different patent than the
one at issue in the second suit and the later filed amendment, the *Pergo* court found the
amendment related back to the date of the original complaint for purposes of the first-filed rule
because both claims involved the alleged manufacture and sale of infringing floor panels. *Id.* at
132.

In other recent patent cases, courts have also held that for purposes of the first-filed rule
the relevant date is the date the action between the parties was originally filed, not the date that
similar issues were added by an amendment. *See, e.g., Intel Corp. v. Amberwave Systems Corp.*,
233 F.R.D. 416, 418-19 (D. Del. 2005) (finding the relevant date for the application of the first-
filed rule was the date the similar issues were added by amendment even though the original suit
involved a different patent from the second filed suit); *Ramsey Group, Inc., v. EGS
International, Inc.*, 208 F.R.D. 559, 564-65 (W.D. N.C. 2002) (also finding the relevant date for
the application of the first-filed rule was the date the similar issues were added by amendment
even though the original suit involved different parties and patents); *Applied Vision, Inc. v.
Optical Coating Laboratory, Inc.*, No. C97-1233 MHP, 1997 WL 601425 (N.D. Cal. Sept. 23,
1997) (finding the relevant date for the application of the first-filed rule was the date the similar

-4-

issues were added by amendment even though the original suit involved a patent and parties not involved in the second filed suit). It is no wonder why the leading patent treatise is so clear on this point. 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] (declaring that "[t]he priority rule [also known as the first-filed rule] relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment to the pleadings or otherwise.")

AUO fails to even address *Versus Tech* in its attempt to deny the applicability of the first-filed rule to the LPL suit in Delaware. Instead, it attempts to dispense with the well founded relation back doctrine by citing a stale case, preceding the creation of the Federal Circuit and authority from recent patent cases, involving a different issue, that does not apply to the facts here. AUO Br. at 6. That case did not involve application of the first-filed rule, but instead considered whether the statute of limitations time-barred the recovery of damages for one of the plaintiff's claims. *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 395 F. Supp. 234, 251 (D.C. Ill. 1974).

The other case AUO looks to for support, from the District of Kansas, is also inapposite. There, an initial suit in the Central District of California included claims involving the interpretation of a trademark licensing agreement between the two parties. *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 351 F. Supp. 2d 1188, 1191 (D. Kan. 2005). After the defendant in that suit unilaterally ended the licensing agreement, the plaintiff then filed a second suit in Kansas seeking a declaratory judgment that it was not infringing any of defendant's trade or service marks. *Id.* at 1191. The defendant filed an amended counterclaim in California asserting a declaratory judgment that the plaintiff did infringe the trademark. *Id.* at 1194. The first claim, a contract suit, therefore arose from acts occurring while a license agreement had been in place, whereas the second suit, a trademark infringement claim, arose

-5-

from acts occurring after the agreement had ended. *Id.* Here, by contrast, all of the claims in both suits arise from the manufacture and sale of LCD modules.

## II.    ALL OF AUO'S CLAIMS IN THIS SUIT ARE IDENTICAL TO ISSUES CURRENTLY PENDING IN THE DISTRICT OF DELAWARE

AUO suggests that the two actions must be precisely the same in all respects for the first-filed rule to apply. AUO Br. at 7. That is not the law. "The claims in the two cases need not be identical." *Versus Tech*, 2004 WL 3457629, *3; *see also Symbol Technologies, Inc. v. Intermec Technologies Corp.*, No. 05-C-256-C, 2005 WL 1657091 (W.D. Wis. July 15, 2005) (transferring a case to the District of Delaware even though the patents in the two suits involved different technology and were used in different products because the two suits still had another common issue). The parties also need not be identical. *Versus Tech*, 2004 WL 3457629 at *3; *see also Patel v. American Tel. & Tel., Inc.*, No. 93-C-117, 1993 WL 384569, *5 (N.D. Ill. Sept. 27, 1993) (explaining that "'parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action.'") (citations omitted). The only requirement is substantial *overlap* among some of the issues in the cases. *Versus Tech,* 2004 WL 3457629 at *3; *Save Power Limited v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The [first to file] rule does not, however, require that cases be identical. The crucial inquiry is one of 'substantial overlap' . . .).

Such overlap exists here. This suit and the Delaware action include mirror image claims involving identical AUO patents. In both this action and the Delaware action, the same three AUO patents must be construed and the issue of whether those patents are infringed by products manufactured by LPL must be determined. There can be no more clear case of overlap. The fact

-6-

that there are *additional*, not different, issues and parties in the Delaware action is of no consequence.[1]

Once again *Versus Tech* provides guidance because of its striking similarity to this suit. There, HRS filed suit against Versus Technology and three of its distributors for infringement of two patents. *Versus Tech*, 2004 WL 3457629 at *2. Subsequently, Versus Technology filed suit against HRS, its corporate parent, another related company and another separate company, in a different district court for infringement of four different patents. *Id.* at *3. HRS then amended its complaint in the first-filed suit to add declaratory judgment counts involving the Versus Technology patents at issue in the second-filed suit. *Id.* Although the first-filed suit included *additional* issues and parties, and the second filed-suit included a party not involved in the first-filed suit, the court still recognized that sufficient overlap existed to warrant a transfer. *Id.* at *7.

## III.    INTERESTS OF JUSTICE DEMAND TRANSFER

### A.    AUO's Choice Of Forum Deserves No Deference.

AUO argues at length that its choice of forum should be given great deference. *See generally* AUO Br. However, a plaintiff's choice of forum becomes almost irrelevant to the transfer analysis when few operative facts have occurred in that forum. *Snyder v. Revlon, Inc.*, No. 06-C-394-C, 2007 WL 791865, *8-9 (W.D. Wis. Mar. 12, 2007) (citing *Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). A plaintiff's choice of forum is also given less weight when the forum is not the plaintiff's home district. *See McMahon v. Carroll College*, No. 03-C-0702-C, 2004 WL 882195, *2 (W.D. Wis. April 14,

---

[1] In fact, some of the additional parties involved in Delaware are original equipment manufacturers that sell infringing products that incorporate the infringing modules manufactured by AUO and therefore have a direct relationship to the LCD module patent disputes between LPL and AUO.

2004) (accepting plaintiff's concession that her choice of a forum other than her home forum is entitled to less deference and explaining that there was no authority supporting plaintiff's argument that such a choice still deserves serious consideration). Accordingly, when the only connection to the forum, as is the case here, is the sale of allegedly infringing products, the plaintiff's choice of forum receives little weight. *Snyder*, 2007 WL 791865 at \*8-9 (explaining that plaintiff's choice of forum should receive no deference because the only connection the suit had to Wisconsin was the sale of allegedly infringing products).

AUO attempts to argue that its claims are "intimately connected to Wisconsin." AUO Br. at 14. However, none of the parties reside in Wisconsin. None of the patents at issue were designed in Wisconsin. None of the allegedly infringing products were designed or manufactured in Wisconsin. No allegedly infringing products are distributed by any entity in Wisconsin.[2] In fact, in each of AUO's infringement counts in its complaint, AUO claims LPL and LPLA infringed AUO's patents through alleged activity "*in this country*." Complaint and Demand for Jury Trial ("AUO Compl.") at ¶¶ 9, 12, 15 (emphasis added) (Docket #2). There is no mention of Wisconsin in any of AUO's infringement counts. *See* AUO Compl. at ¶¶ 9-17. In fact, other than the caption identifying this Court, nowhere does AUO's complaint even mention the State of Wisconsin. Id. The only hint of an alleged connection to this forum is found in two passing references to this "Court" in AUO's bare venue and personal jurisdiction allegations. Id. at ¶¶ 4-5. Contrast this with LPL's complaint in Delaware (which AUO apparently believes is authoritative - *see* AUO Br. at 19.) that in fifteen separate paragraphs

---

[2] Just as it does in its opposition to LPLA's motion to dismiss, AUO misrepresents the facts. The alleged Wisconsin distributor is not a distributor. It does not handle or ship any LPL product. *See* LPLA's Reply Memorandum In Support Of Its Motion To Dismiss, Han Supplemental Declaration ¶¶ 4-5 (Docket #32).

specifically accuses the defendants in that case, including AUO, of infringing activity in Delaware. *See* Memorandum in Support of LG.Philips LCD Co., Ltd.'s Motion To Transfer To The District Of Delaware ("LPL Brief"), Goodwyn Decl. Exh. B. ¶¶ 6-11, 15-18, 23, 27, 34, 39, 44 (Docket #24).

The only relevant connection this suit has to Wisconsin is the sale of some allegedly infringing products through *nationwide* retailers such as Best Buy, Circuit City and Radio Shack. AUO makes no suggestion, nor could it demonstrate, that more of the allegedly infringing product was purchased in Wisconsin than in other states. *See Snyder*, 2007 WL 791865 at *9 (transferring a patent suit because the only connection the suit had to Wisconsin was the sale of allegedly infringing products and noting that there had been no showing that more products were sold in Wisconsin than elsewhere.) If Wisconsin is "intimately connected" to this suit as AUO argues, so is every state in this country. Accordingly, AUO's choice of forum deserves no deference.

AUO repeatedly describes the "very high" burden a defendant must meet to overcome a plaintiff's choice of forum, but the list of cases transferred by this Court, from just the past few years, demonstrate that transfer is regularly granted when circumstances warrant. *See, e.g., Bye, Goff, Rohde & Skow, Ltd. v. Casey, Gerry, Schenk, Francavilla*, No. 07-C-003-S, 2007 WL 1306556 (W.D. Wis. May 2, 2007) (J. Shabaz); *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840514, *4 (W.D. Wis. Mar. 16, 2007) (J. Shabaz); *Snyder*, 2007 WL 791865; *Guardian Media Technologies, Ltd. v. Mustek Systems, Inc.*, 440 F. Supp. 2d 937 (W.D. Wis. 2006) (J. Shabaz); *Marvin Lumber and Cedar Co. v. S&S Sales Corp.*, No. 06-C-105-S, 2006 WL 1236783 (W.D. Wis. May 5, 2006) (J.Shabaz); *McCraw v. Mensch*, No. 0 6-C-0086-S, 2006 WL 740897 (W.D. Wis. Mar. 17, 2006) (J.Shabaz); *Matsushita Elec. Indus. Co., Ltd. v.*

*Siliconix Inc.*, No. 05-C-732-S., 2006 WL 517628 (W.D. Wis. Mar. 2, 2006) (J. Shabaz);

*Wausau Benefits, Inc. v. Liming*, 393 F. Supp. 2d 713 (W.D. Wis. 2005) (J. Crabb); *Symbol*

*Techs.*, 2005 WL 1657091; *Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc.*, No. 05-

C-104-S, 2005 WL 1181952 (W.D. Wis. May 18, 2005) (J. Shabaz); *McMahon*, 2004 WL

882195; *Broadcom Corp. v. Agere Systems, Inc.*, No. 04-C-066-C, 2004 WL 1176168, *3 (W.D.

Wis. May 20, 2004) (J. Crabb); *Broadcom Corp. v. Microtune, Inc.*, No. 03-C-0676-S, 2004 WL

503942 (W.D. Wis. Mar. 9, 2004) (J. Shabaz); *Connexus Credit Union v. Connex Credit Union*,

219 F.R.D. 465 (W.D. Wis. 2003) (J. Shabaz); *U.S. ex rel. Gervae v. Payne and Dolan, Inc.*, No.

01-C-0383-C, 2003 WL 23185881 (W.D. Wis. July 14, 2003) (J. Crabb); *Castleberg v.*

*Covenant Healthcare, LLC*, No. 02-C-0147-C, 2002 WL 32345613 (W.D. Wis. Aug. 16, 2002)

(J. Crabb); *Liberty Mut. Fire Ins. Co. v. Nordic Group of Companies, Ltd.*, No. 01-C-0207-C,

2001 WL 34382016 (W.D. Wis. Dec. 4, 2001) (J. Crabb).

Even in a case AUO itself cites to demonstrate the deference given to a plaintiff's choice

of forum, this Court granted the defendant's transfer motion. *Trafficast, Inc. v. Pritchard*, No.

05-C-557-S, 2005 WL 3002267 (W.D. Wis. Nov. 7, 2005) (J. Shabaz). The other cases AUO

cites are distinguishable. In *Milwaukee Electric*, the plaintiff resided in Wisconsin and, unlike

here, the defendant in that case sought transfer to a district that had no connection to the suit and

where no other pending litigation of the parties existed. *Milwaukee Electric Tool Corp. v. Black*

*& Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062 (W.D. Wis. 2005) (J. Shabaz). Similarly, in *Leggett*,

the defendant sought transfer to a district where no litigation between the two parties existed.

*Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-C-0932-C, 2005 WL 1168360 (W.D. Wis. May 17,

2005) (J. Crabb).

**B.      AUO's Blatant Forum Shopping Should Not Be Permitted Because The Same Types Of Documents Are Relevant To Both Cases.**

AUO operated in bad faith by requesting a 90 day extension to answer the Delaware suit and then spending that time to perform its alleged investigation of a claim in Wisconsin. *See Ramsey Group*, 208 F.R.D. at 564-65 (W.D. N.C. 2002) (finding that the defendant's conduct, which included requesting an extension to answer the first suit and then using that time to file suit in another court, was in contravention of its argument against application of the first-filed rule). Clearly, the only basis for AUO's suit is its desire to peel off some of the issues between it and LPL in the hope it can use this Court's reputation for speed to disrupt the Delaware suit. Such forum shopping is disfavored. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877-878 (Fed. Cir. 1983) (noting that Congress created the Federal Circuit to prevent forum shopping). This Court must be particularly vigilant considering plaintiffs' particular attraction to it. *See Reynolds and Reynolds Holding, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 551-52 (E.D.Va. 2004) (recognizing that the Eastern District of Virginia's reputation as the "rocket docket" attracts plaintiffs, but that the court must guard against that attraction dulling the very expediency for which the court is known).

If AUO was truly interested in speed and efficiency, it would not have delayed the Delaware suit with its request for a 90 day extension for this diversion to Wisconsin and would have instead timely brought counterclaims in Delaware. AUO still has yet to file a responsive pleading in Delaware. In any event, AUO already concedes that the LPL patents have been previously construed, so the additional issues in that suit should be resolved much more quickly than AUO would have this Court believe. AUO Br. at 8.

-11-

## C.    Common Evidence Would Be Presented At Both Trials.

Contrary to AUO's assertions in its brief, there is extensive commonality in the evidence that will be presented in the two suits. AUO references two declarations in an attempt to demonstrate the differences between the patents they assert in this action with the patents LPL asserts in Delaware. AUO Br. at 3-4. Of course the patents are different, but the products at issue (LCD monitors and televisions) are the same. The real issue is the commonality of the evidence required to support or rebut the infringement claims in both cases and whether judicial economy will be served by having a single jury already hearing one set of issues based on that common evidence also hear a *related* set of issues involving that *same* evidence. *See Abbott Laboratories v. Selfcare, Inc.*, No. 98-C-7102, 1999 WL 162805, *3 (N.D. Ill. 1999) (transferring the case after noting that the instant action and a related action in another district would likely involve many of the same witnesses and much common documentary evidence); *Nelson Design Group, LLC v. Frank Betz Associates, Inc.*, 2006 WL 2290812, *1-2 (E.D. Ark. Aug. 9, 2006) (transferring the case after noting that permitting two cases to go forward with similar issues, parties, witnesses, and documentary evidence is a waste of judicial resources).

For example, electronic mask files depict structures included in LCD backplanes. These structures are relevant to AUO's '629 Patent and LPL's '737, '449 and '002 patents. Similarly, manufacturing process specifications show steps used in manufacturing LCD backplanes, which are relevant to AUO's '629 patent and LPL's '737 patent. Further, various engineering specifications illustrate structures, interfaces and assemblies relevant to each of the parties' patents. It makes very good sense that the same jury in Delaware review and analyze these complex engineering and manufacturing documents. In addition, common sales and distribution evidence will be relevant in both cases. Moreover, common evidence from the same third-party distributors and retailers may be relevant to the issues of inducement in both cases. In addition,

-12-

as explained in more detail in Section IV(A), *infra*, common witness testimony will be relevant in both cases, particularly testimony from employees and officers familiar with the sales, advertising and marketing of LCD module products. This commonality of evidence weighs strongly in favor of transfer. *See, e.g., Z-Man Fishing Products, Inc. v. Applied Elastomerics, Inc.*, Civ. No. 2:06-2022-CWH, 2006 WL 3813707, \*3 (D.S.C. Dec. 27, 2006) (transferring a case in part because the parties' discovery disclosures revealed that the same witnesses would need to testify in both suits).

## D.    While This Court Is Capable Of Hearing This Case, In Doing So It Would Duplicate An Investment Of Time And Resources The Delaware Court Has Already Made.

AUO mischaracterizes LPL's judicial economy argument, suggesting that LPL believes this Court is less capable than the District of Delaware to hear this suit. That is false. The point AUO fails to grasp is that while this Court is clearly capable of deciding the issues raised by AUO, the judicial resources of the United States District Courts would be most efficiently distributed by transferring this case to Delaware where the court there is already intimately familiar with the parties, the LCD technology at issue, and the types of factual technical evidence to be presented.

In its opposition, AUO ignores all of this Court's authority that is directly on point for this issue. For example, in *Matshushita Electric*, this Court transferred a patent suit to another district where a suit involving a different patent was pending in part because the other court was already familiar with the "same general . . . area of technology which [was] at issue" in the suit filed here. 2006 WL 517628 at \*5. Similarly, this Court transferred another patent case to the Eastern District of Texas and explained "[a]lthough the Eastern District has not construed the claims of the '742 patent, it is familiar with the general silicon-based tuner technology and specific accused devices at issue in the current dispute." *Broadcom Corp. v. Microtune*, 2004

-13-

WL 503942 at *4. This Court also transferred a patent case to the Eastern District of

Pennsylvania in part because of the Pennsylvania court's "familiarity with the general

technology behind the patents at issue." *Broadcom Corp. v. Agere Systems*, 2004 WL 1176168

at *3. To counter this authority, AUO cites two opinions from other circuits and another opinion

that makes no mention of any commonality of the general technology behind the two "*distinct*

patents*" at issue in the two separate cases. AUO Br. at 16-17. Here, all the patents at issue are

related to LCD module manufacturing technology.

Furthermore, although AUO claims the Delaware court lacks familiarity with it, AUO has

counsel in Delaware and is familiar with litigating there, having been sued by Commissariat A

L'Energie Atomique ("CEA") there in May 2003. *See Commissariat A L'Energie Atomique v.*

*Dell Computer Corp., et al.*, 1:03-cv-00484-MPT (D.Del. filed May 19, 2003). AUO litigated

that case until December, 2006. Id. AUO also is currently involved in at least two other patent

cases in the District of Delaware.[3] *See Guardian Industries v. Dell Inc., et al.*, 1:05-cv-00027-

SLR (D. Del. filed Jan. 19, 2005); *Honeywell Int'l Inc., et al. v. Apple Computer Inc., et al.*,

1:04-cv-01338-*** (D. Del. filed Oct. 6, 2004).

---

[3] In its opposition brief AUO calls LPL an "extremely litigious company." AUO Br. at 15.
Competing LCD module manufacturers have forced LPL to file four suits against them because
those competitors have infringed LPL's patents. Some of those manufacturers, such as AUO in
this case, have responded by filing strategic, reactionary suits in other districts rather than
submitting counterclaims in the original district. It is particularly ironic that AUO would call
any company "extremely litigious" considering it is presently litigating cases in Arizona,
California, Delaware, District of Columbia, Florida, Idaho, Iowa, Kansas, Maine, Michigan,
Mississippi, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina,
Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Virginia, West Virginia, and this
case in Wisconsin.

-14-

## E.    AUO's Tenuous Claim Of Personal Jurisdiction Over LPLA Renders Transfer Appropriate

Although in its opposition to LPLA's motion to dismiss for lack of personal jurisdiction and venue, AUO would have this Court believe there is jurisdiction everywhere in the United States over LPLA under AUO's expansive stream of commerce theory, it now appears to concede that there is no jurisdiction over LPLA in Wisconsin. AUO Br. at 14. Significantly, the existence of questions concerning whether personal jurisdiction may be had over a defendant weighs in favor of transfer. *See, e.g., Zipher*, 2007 WL 840514 at *5 (explaining that the "pending motion to dismiss for lack of personal jurisdiction or venue suggests that the interest of justice would benefit from a transfer of venue" and that the probable significant legal and judicial costs from an appeal of a finding of personal jurisdiction should be considered); *Matsushita*, 2006 WL 517628 at *5; *Connexus Credit Union*, 219 F.R.D. 465 at 467-68 (explaining that, even if the issue has already been briefed, "[c]onservation of judicial resources and avoidance of unnecessary legal expenses are advanced by a transfer from a forum in which there is a question of personal jurisdiction . . ."). Although AUO argues that the same personal jurisdiction questions concerning LPLA would exist in Delaware (thus again conceding the fallacy of its stream of commerce theory), that argument has no merit here. LPLA joined this motion in the event its motion to dismiss for lack of personal jurisdiction and venue was not granted, and thus, by doing so, LPLA obviously concedes it is subject to jurisdiction in Delaware. LPL Br. at n.4.

## F.    AUO's Speed and Efficiency Argument Is Dubious.

AUO argues the speed and efficiency of the Wisconsin Court weigh heavily against transfer and complains that the claims in Delaware involving the LPL patents would delay it from having its claims heard. AUO Br. at 20. However, AUO forgets to mention its

-15

responsibility for slowing the progress of LPL's suit in Delaware by requesting a long extension there to delay the case so it could go forum shopping with its related LCD technology claims. AUO attempts to blame LPL for AUO's own efforts at stalling the Delaware action, but as AUO concedes, such extensions are commonplace in the District of Delaware in response to what are perceived as legitimate requests and, accordingly, LPL extended this common courtesy to AUO.

Moreover, although speed and efficiency is an important consideration, when there is related litigation in a forum where consolidation is feasible, such as here, the efficiency *and* judicial economy interests of justice are both served by a transfer to that forum. *See Trafficast*, 2005 WL 3002267 at *3. AUO suggests LPL misreads *Trafficast*, but it is AUO that is mistaken. As *Trafficast* states: "[T]he relative speed with which an action may be resolved is an important consideration when selecting a venue. *However, related litigation should be transferred to a forum where consolidation is feasible*." *Id.* (citations omitted) (emphasis added). After noting that the average time to trial in the District of Massachusetts, where related litigation was pending, was 31.7 months and the average time to trial in the Western District of Wisconsin was 10.5 months, a difference of almost *2 years*, this Court still transferred the case to Massachusetts. *Id.* Here, the difference is half that. Also, in a case AUO cites as authority, this Court used the number of pending cases per judgeship as the key speed and efficiency consideration. *K.W. Muth Co., Inc. v. Gentex Corp.*, No. 06-C-0378-C, 2006 WL 2772828, *5 (W.D. Wis. Sept. 22, 2006). As noted in LPL's brief in support of its motion to transfer, the total number of cases per judge in the Western District of Wisconsin (490/year) is substantially greater than the total number of cases per judge in the District of Delaware (270/year). LPL Br. at 9. Accordingly, the heavier caseload in this forum also favors transfer to Delaware.

-16-

Furthermore, as explained above, the Delaware court is already familiar with the parties, the LCD technology, and the likely evidence. While AUO claims the additional issues involved in the Delaware case, namely the LPL patents, will slow the progress of its own claims, AUO admits that the claims of LPL's patents have already been construed in earlier litigation. AUO Br. at 8. Moreover, AUO is responsible for delaying the Delaware suit by requesting a 90 day extension that it used to go forum shopping. Considering its bad faith efforts at delaying the Delaware suit for this diversion to Wisconsin, AUO can not now benefit from any arguments involving a potentially speedier time to trial in this forum.

## IV.    CONSIDERATION OF CONVENIENCE ALSO FAVORS TRANSFER

### A.    Transfer Would Be More Convenient For Many Witnesses Who Would Otherwise Have To Testify Twice.

AUO wrongly claims that there is no witness overlap between the Delaware and Wisconsin actions and thus the convenience of the witnesses does not support transfer. However, large LCD manufacturers such as AUO and LPL typically have their sales, marketing, advertising, and manufacturing employees assigned by product line. Because sales, marketing, distribution, and licensing are issues common to both cases and because the product lines at issue in both suits are the same, many of the same witnesses would therefore be required to testify in both actions.

Furthermore, the testimony of a number of the witnesses identified in both AUO's and LPL's initial disclosures just served in this case is also relevant to the Delaware suit. For example, AUO identifies its Chief Technology Officer Fan Luo who may be knowledgeable regarding AUO's overall business operations and AUO's licensing of LCD-related technology; its Chief Financial Officer Max Weishun Cheng who may be knowledgeable regarding AUO's overall business operations, AUO's licensing of LCD-related technology, and AUO financial

-17-

information, such as revenues, costs and profits; its Head of Strategic Planning Division Richard
Bor Long Bai who may be knowledgeable regarding AUO's overall business operations, AUO's
licensing of LCD-related technology, and AUO financial information, such as revenues, costs
and profits; and its Former Associate Vice President of Finance Division Lily Yu Hsia Hsiao
who may be knowledgeable regarding AUO's overall business operations, AUO's licensing of
LCD-related technology, and AUO financial information, such as revenues, costs and profits.
*See* Initial Disclosures Of AU Optronics Corporation. All of this knowledge is directly relevant
to LPL's claims in Delaware that AUO infringed LPL patents and therefore these witnesses will
be deposed in the Delaware case. In addition, LPL has identified many of its own witnesses in
its initial disclosures who may be witnesses in the Delaware suit on LCD technology and the
LCD industry. *See* LG.Philips LCD Co., Ltd's and LG.Philips LCD America's Initial
Disclosures Pursuant To Rule 26(a)(1). All of these witnesses would have to be deposed twice if
this suit is not transferred to Delaware for consolidation with the first-filed suit between these
parties. Having to be deposed twice on these similar issues would clearly inconvenience these
individuals, especially where all of these individuals reside in Korea or Taiwan and for many, if
not all, English is not their first language.

## B.    Transfer Would Be More Convenient For The Parties.

AUO's argument that Wisconsin is more convenient than Delaware are meritless. First,
AUO argues its claims are "intimately connected" to Wisconsin. However, as explained above,
none of AUO's patents were designed in Wisconsin. None of the products that allegedly infringe
AUO's patents were designed or manufactured in Wisconsin. None of the parties reside in
Delaware. None of the relevant witnesses or evidence exists in Delaware. Any alleged
connection to Wisconsin is relevant only to the issue of LPLA's personal jurisdiction and venue.
AUO even apparently admits that there is no jurisdiction over LPLA in Wisconsin. AUO Br. at

-18-

14. All of AUO's substantive patent claims will rely on evidence of events that occurred outside of Wisconsin. AUO also claims that it would not be convenient for the other parties involved in Delaware to participate in AUO's claims against LPL. However, two of those parties are involved in the LPL litigation, in part, because they sell products that incorporate infringing LCD modules manufactured by AUO.

AUO suggests it would be further inconvenienced because its Wisconsin action has been developed by a different law firm than the firm retained by AUO for the Delaware action. AUO Br. at 14 n.6. Of course, the convenience of counsel is not an appropriate consideration. *Timebase Pty Ltd. v. Thomson Corp.*, No. 07-C-460, 2007 WL 772946, *3 (N.D. Ill. Mar. 9, 2007) (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). Moreover, while consolidation of the two cases would be less expensive for this Court and LPL, it would obviously be economical for AUO also, which has four law firms representing it now against LPL. AUO Br. at 14 n.6.

## V.   CONCLUSION

For the foregoing reasons, the Court should transfer Plaintiff's claims against Defendant LG.Philips LCD Co., Ltd. to the U.S. District Court for the District of Delaware pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

Dated:  May 17, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel:  (608) 257-3911
Fax:  (608) 257-0609

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
Tel:  (202) 496-7500
Fax:  (202) 496-7756

*Counsel for Defendant LG.Philips LCD Co., Ltd.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

DOC NO
REC'D/FILED

2007 MAY 17  PM 3: 20

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

AU OPTRONICS CORPORATION,              )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          Civil Action No. 07-C-0137-S
                                       )
LG.PHILIPS LCD CO., LTD. and           )
LG.PHILIPS LCD AMERICA,                )
                                       )
          Defendants.                  )

## CERTIFICATE OF SERVICE

I, Nicole Talbott Settle, hereby certifies that on May 17, 2007, true and correct copies of the attached:

- **Reply Memorandum in Support of LG.Philips LCD Co., LTD.'s Motion to Transfer to the District of Delaware;**

- **Certificate of Service**

were caused to be served upon attorneys of record at the following addresses in the following manner:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
jrtroupis@michaelbest.com
mahughes@michaelbest.com
**Hand Delivered and by email.**

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
sbaik@wsgr.com
**By email and overnight delivery**

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497
ctyler@wsgr.com
brange@wsgr.com
**By email and overnight delivery**

Dated: May 17, 2007.

Nicole Talbott Settle

mn315797_1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

AU Optronics Corporation,                          )
                                                   )
            *Plaintiff*,                            )    Civil Action No.: 07-C-0137-S
                                                   )
    vs.                                             )
                                                   )    Judge John C. Shabaz
LG.Philips LCD Co., Ltd.                            )
and                                                )
LG.Philips LCD America,                             )
                                                   )
            *Defendants*.                           )
                                                   )
                                                   )

**PLAINTIFF'S MOTION TO COMPEL LG.PHILIPS LCD AMERICA**
**TO RESPOND TO REQUESTS FOR PRODUCTION AND INTERROGATORIES**
**AND FOR OTHER RELIEF**

NOW COMES the Plaintiff, AU Optronics Corporation ("AUO") by and through its

counsel, James R. Troupis of Michael Best & Friedrich LLP and Wilson, Sonsini, Goodrich &

Rosati, and respectfully moves this court to compel LG.Philips LCD America ("LPLA") to

respond to Plaintiff's First Request for Production of Documents and Things to Defendant

LG.Philips LCD America (Nos. 1-24) and Plaintiff's First Set of Interrogatories to Defendant

LG.Philips LCD America (Nos. 1-2) and for other relief, and in support of said motion states as

follows:

        1.      On April 11, 2007, AUO served Plaintiff's First Set of Interrogatories to

Defendant LG.Philips LCD America (Nos. 1-2) and Plaintiff's First Request for Production of

Documents and Things to Defendant LG.Philips LCD America (Nos. 1-24) on the Defendant

LPLA (the "Discovery Requests"). (Second Declaration of David W. Panneck ("Second

Panneck Decl.") Exs. A and B, filed herewith.))

        2.      LPLA informed AUO on Friday, May 11, 2007 that it has unilaterally decided to

refuse to comply with the Discovery Requests. LPLA has indicated it will not answer any

discovery because this Court has not decided on a pending motion to dismiss. (*See*, Second

Panneck Decl., Ex. E filed herewith (the objections state defendant will not answer any discovery because discovery is "premature."))

3.       Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, LPLA was required to provide answers to the Discovery Requests on or before May 11, 2007 (*i.e.*, 30 days from the date of service).

4.       On April 19, 2007 LPLA appeared at the Court's Preliminary Pretrial Conference. (Dkt. No. 30.) LPLA indicated nothing during that conference that suggested it would not comply with the Plaintiff's discovery requests. LPLA did not indicate that it would unilaterally refuse to answer any and all discovery unless and until this Court decided LG.Philips Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.

5.       LPLA has never requested a stay of any type in these proceedings or requested a stay or other change in its obligation to fully comply with the Federal Rules of Civil Procedure.

6.       This Court set a trial date of September 26, 2007 in this case, and explicitly warned LPLA and the other parties during the preliminary pretrial conference that deadlines would be adhered to and the parties were expected to timely meet their obligations.

7.       By letter of Monday, May 14, 2007, AUO's counsel contacted counsel for LPLA to address LPLA's refusal to provide any discovery (including to address "general" boiler-plate objections). (Second Panneck Decl., Ex. F.) LPLA's counsel did not respond timely to the request to discuss, but rather, on Thursday, May 17, 2007 sent a letter that simply reiterated the objection. (Second Panneck Decl., Ex. G.)

8.       LPLA has violated and continues in open violation of the Federal Rules of Civil Procedure.

9.       AUO hereby incorporates the Plaintiff's Memorandum in support of Plaintiff's Motion to Compel LG.Philips LCD America to Respond to Requests for Production and Interrogatories and for Other Relief, Declaration of James R. Troupis, Second Declaration of David W. Panneck as filed herewith in support of this motion, and all other matters of record.

2

WHEREFORE, Plaintiff, AUO respectfully requests,

A.       The Court order Defendant LPLA to immediately answer the Discovery

Requests.

B.       The Court order the payment by LPLA to AUO of an amount sufficient to cover

the expenses of filing this Motion; and

C.       The Court enter such other and further Orders as are appropriate.

DATED this 18th day of May, 2007                    RESPECTFULLY SUBMITTED BY

MICHAEL BEST & FRIEDRICH LLP

By:

James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI  53701-1806
Telephone:  (608) 257-3501
Facsimile:  (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Julie Holloway
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

Attorneys for Plaintiff
AU Optronics Corporation

Q:\CLIENT\022628\0001\B1058560.1

3

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN** 18  PM 4:07

AU Optronics Corporation,

    *Plaintiff,*

vs.

LG.Philips LCD Co., Ltd.
and
LG.Philips LCD America,

    *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

Civil Action No..: 07-C-0137-S

Judge John C. Shabaz

### CERTIFICATE OF SERVICE

I, Frances M. Wiley, hereby certify that true and correct copies of the following:

1. Plaintiff's Motion To Compel LG.Philips LCD America To Respond To Requests For Production And Interrogatories And For Other Relief;

2. Plaintiff's Memorandum In Support Of Plaintiff's Motion To Compel LG.Philips LCD America To Respond To Requests For Production And Interrogatories And For Other Relief;

3. Declaration of James R. Troupis;

4. Second Declaration of David W. Panneck; and

5. (Proposed) Order Granting Plaintiff's Motion To Compel

were served upon all parties to this action as indicated below on this 18th day of May, 2007 to:

Via Hand Delivery & E-mail:
jpeterson@gklaw.com
bwilliam@gklaw.com

James D. Peterson
Bradley C. Williamson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719

Via Federal Express & E-mail:
gbono@mckennalong.com
tgoodwyn@mckennalong.com
lbrzezynski@mckennalong.com

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna, Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006-1108

Frances M. Wiley

Q:\CLIENT\022628\0001\B1058450.0

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AU Optronics Corporation, | ) |
| *Plaintiff,* | )  Civil Action No.: 07-C-0137-S |
| vs. | ) |
| | )  Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. and | ) |
| LG.Philips LCD America, | ) |
| *Defendants.* | ) |

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO COMPEL LG.PHILIPS LCD AMERICA
TO RESPOND TO REQUESTS FOR PRODUCTION AND
INTERROGATORIES AND FOR OTHER RELIEF**

---

## I.    INTRODUCTION

Plaintiff, AU Optronics Corporation ("AUO"), served straightforward discovery requests on Defendant LG.Philips LCD America ("LPLA") seeking information relating to jurisdiction. LPLA has unilaterally determined it will refuse to answer any discovery unless and until this Court rules on LG.Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (*See* Dkt. No. 6.) In other words, LPLA believes it can ignore Fed. R. Civ. P. 33 and 34 – in effect, granting itself an unlimited stay of any discovery – so long as there is a pending motion to dismiss.

LPLA is wrong. The Federal Rules of Civil Procedure certainly do not allow any party to ignore its obligation to respond to discovery simply because it has filed a motion related to venue and jurisdiction. Indeed, the Seventh Circuit has expressly held that a motion to dismiss for lack of jurisdiction does not stay discovery. *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir. 1990).If a party does not wish to engage in discovery while the motion is pending, "[t]he proper course of action is to request that the district court enter a stay of discovery." *Id.* Thus, regardless of LPLA's

pending motion, LPLA should provide timely answers to interrogatories and the requested documents.

Furthermore, as a threshold matter, AUO's requested discovery is proper: "a trial court should permit discovery on the question of jurisdiction unless the plaintiff's claim is clearly frivolous." *Nehemiah v. Athletics Congress of U.S.A.*, 765 F.2d 42, 48 (3d Cir. 1985) (internal quotations and citation omitted). No one has or could suggest that AUO's claim is frivolous. Indeed, as demonstrated in AUO's opposition to LPLA's motion to dismiss (Dkt. No. 27), AUO's claim has extraordinary merit: AUO has proffered substantial evidence that this Court has jurisdiction over LPLA.

Moreover, LPLA did not raise with this Court its intention to refuse to comply with then-pending discovery during the Preliminary Pretrial Conference held on April 19, 2007. This was a willful failure that has caused AUO to incur the expense of this Motion. Accordingly, LPLA should be ordered to pay AUO's reasonable costs in bringing this matter to the Court.

## II.     STATEMENT OF FACTS

AUO filed this case on March 8, 2007 and served LPLA with the complaint on March 9. (Complaint, Dkt. No. 02.) LPLA filed a motion to dismiss alleging lack of personal jurisdiction on March 29. (*See*, LG.Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Dkt. No. 06.) On April 10 and April 12, the parties conducted a Fed. R. Civ. P. 26(f) conference.[1] (Troupis Decl., ¶ 2.) During that conference, AUO asked LPLA to provide any relevant jurisdictional items as part of its initial disclosures. (Troupis Decl., ¶ 4.) LPLA would not clearly agree to provide jurisdictional items as part of its initial disclosures, so to avoid any misunderstanding, AUO immediately served discovery on April 11, 2007. (Second

---

[1] The parties are still negotiating a final 26(f) conference report. The parties have reached agreement on most points concerning a discovery plan but disagree on some points including, for example, the number of deposition hours that should be allowed.

2

Panneck Decl., Ex. A and B; Troupis Decl., ¶ 5.) By serving those narrow requests, AUO hoped to receive as an initial disclosure the factual information in LPLA's possession concerning jurisdiction, or failing that, at least receive full compliance as simple discovery within the 30 days provided by the Federal Rules.

AUO's discovery requests are directed to issues relevant to this Court's jurisdiction over LPLA. The requests are straightforward and narrow:

- Interrogatory 1: an explanation of LPLA's knowledge of LPLA liquid crystal display ("LCD") modules made, used, sold, and/or offered for sale in Wisconsin;

- Interrogatory 2: an explanation of LPLA's knowledge of LPLA LCD modules made, used, sold, incorporated into other devices, and/or offered for sale by retail outlets prominently doing business in Wisconsin such as Best Buy, Circuit City, Wal-Mart, Radio Shack, etc.;

- Request for Production Nos. 1-5: documents concerning LPLA's United States customers, distributors, and representatives including documents concerning LPLA's relationship with its Wisconsin representatives and distributors, Synergistic Sales and All American Semiconductor, Inc.;

- Request for Production No. 6: documents concerning LPLA's process for selecting Synergistic Sales and All American Semiconductor, Inc. as its representatives for Wisconsin;

- Request for Production Nos. 7-10: documents concerning LPLA's promotional activities including activities in Wisconsin;

- Request for Production No. 11: LPLA communications with Wisconsin customers;

- Request for Production Nos. 12-16: documents concerning LPLA's knowledge of consumer end-products incorporating its LCD Modules and LPLA's knowledge and communications with retail outlets doing business in Wisconsin (such as Best Buy, etc.) and manufacturers whose products are routinely sold in Wisconsin (such as LG Electronics, Inc., Dell, Apple, etc.);

- Request for Production Nos. 17-18: documents concerning LPLA's admitted shipment of accused modules to Wisconsin;

- Request for Production Nos. 19-23: documents concerning LPLA web pages referencing Wisconsin, reflecting accused infringing acts in Wisconsin, analyzing the Wisconsin LCD market, or mentioning Wisconsin; and

- Request for Production No. 24: documents referenced in responding to AUO's interrogatories.

(Second Panneck Decl. Exhs. A and B.)

On Friday, May 11, 2007, the parties exchanged initial disclosures. Not surprisingly, given that Co-Defendant LG.Philips LCD Co., Ltd. ("LPL") and LPLA have acted together in the marketplace and have openly sold and distributed products in Wisconsin, LPLA and LPL filed a joint Rule 26(a)(1) disclosure. (Second Panneck Decl., Ex. C (LG.Philips LCD Co., Ltd's and LG.Philips LCD America's Initial Disclosure Pursuant to Rule 26(a)(1).)) LPLA failed in the initial disclosure to provide any information to support its previously filed jurisdictional motion. *Id.*

On that same day, Friday, May 11, 2007, LPLA refused to substantively respond to AUO's two narrowly tailored interrogatories, and twenty-four specific requests for production. (Second Panneck Decl., Ex. D and E.) LPLA provided no interrogatory answers and no document production whatsoever. Citing no law, rule, or order, LPLA created its own mythical objection – the discovery request "is premature." (In addition, LPLA also made some typical boiler-plate objections.) LPLA explains that the discovery requests are "premature" because the Court has not granted any request for jurisdictional discovery and because AUO "failed to demonstrate that it is entitled to jurisdictional discovery." *Id.*

On Monday, May 14, 2007, Attorney James Troupis, counsel for AUO, sent a letter asking LPLA to provide the requested discovery no later than May 17, 2007. (Second Panneck Decl., Ex. F.) Mr. Troupis's letter also requested a telephone conference to address LPLA's objections at any time convenient for LPLA on either Tuesday or Wednesday, May 15-16, 2007. *Id.* LPLA did not timely respond either in writing or by phone to Mr. Troupis's request. Instead, on Thursday, May 17, 2007,

4

Attorney Gaspare Bono, counsel for LPLA, responded to Mr. Troupis's letter by refusing

to reconsider LPLA's withholding of discovery and by offering four excuses (discussed

below) why LPLA's pending motion to dismiss justifies LPLA's complete refusal to

provide discovery. (Second Panneck Decl., Ex. G.) Given LPLA's position, AUO had

no choice but to file this motion to compel.

## III.    ARGUMENT

### A.    LPLA's Pending Motion To Dismiss Does Not Excuse LPLA From Its Discovery Obligations.

LPLA has offered four excuses for refusing to provide timely and complete

discovery responses. (Second Panneck Decl., Ex. G.) All four excuses are based on

LPLA's pending motion to dismiss. None of the excuses have any merit.

First, without legal citation, LPLA states there is no "reason to expend time and

money on jurisdictional discovery" because LPLA's motion is already pending before the

Court. (Second Panneck Decl., Ex. G, p. 1.) That position is obviously contrary to law.

Federal Rules 33 and 34 require a party to respond to requests for production and

interrogatories within 30 days. (Fed. R. Civ. P. 33 and 34.) There is no exception for

discovery served while there is a pending motion to dismiss.

In fact, when parties have unilaterally refused to provide discovery because of a

pending jurisdictional motion, the Seventh Circuit has been quite emphatic in punishing

that behavior.

> Kanner deliberately chose not to engage in discovery during the pendency
> of his motion to dismiss. However, Kanner did not file a request to stay
> discovery during the time the court was considering his motion to dismiss.
> Kanner stated in his brief that "it is a federal practice based on efficiency
> and economy to not proceed with discovery when there is a dispositive
> issue such as jurisdiction that has not been resolved." Not surprisingly,
> Kanner failed to cite any authority for this proposition. **We know of no
> statute, case law, local rule or custom in the Seventh Circuit that
> condones such a practice.** The proper course of action is to request that
> the district court enter a stay of discovery until all jurisdictional issues are
> decided; it is not proper to unilaterally forego discovery....

*Kanner*, 913 F.2d at 1223 (affirming denial of motion to extend discovery because party

cannot unilaterally choose whether to participate in discovery based on pending

jurisdiction motions) (emphasis added).

 In any event, even assuming LPLA had properly brought this matter to the Court

(and it most certainly did not properly raise its concerns) "a trial court should permit

discovery on the question of jurisdiction unless the plaintiff's claim is *clearly frivolous*."

*Nehemiah*, 765 F.2d at 48 (internal quote and citation omitted) (emphasis added). As

AUO has emphatically noted in its prior filings with this Court, it is LPLA's motion to

dismiss that utterly lacks merit, not AUO's response. Indeed, AUO has plainly

established a good-faith basis for alleging proper jurisdiction:

- Consumer products (such as televisions) containing the accused devices are routinely sold in quantity at major retail outlets (such as Best Buy, Circuit City, and Radio Shack) located in the Western District of Wisconsin;

- LPLA advertises Synergistic Sales as its "Representative" responsible for selling the accused devices in the state of Wisconsin; and

- LPLA shipped accused devices to Wisconsin on behalf of its Wisconsin distributor, All-American Semiconductor, Inc.

- www.lgphilips-lcd.com holds itself out as being LPLA's web site. This web site advertises a Wisconsin "Representative" for LPLA, Synergistic Sales.

(*See* Opposition to LPLA's Motion to Dismiss at 2-6, Dkt. No. 27.) Discovery,

jurisdictional or otherwise is entirely appropriate.

 LPLA also asserts that AUO's discovery requests are inconsistent with AUO's

position that publicly-available jurisdictional facts are sufficient for the Court to deny

LPLA's motion. (Second Panneck Decl., Ex. G., p. 1.) Of course, this Court can and

should deny LPLA's motion to dismiss based on AUO's evidence to date. However,

unless LPLA consents to this Court's exercise of personal jurisdiction over it, LPLA

cannot unilaterally refuse to provide discovery that would further bolster AUO's factual basis for jurisdiction. The rule is emphatic and clear: "[p]arties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party . . ." (Fed. R. Civ. P. 26(b)(1)), and jurisdiction is certainly a "defense."

Third, LPLA suggests that its lack of responsive discovery is excused because AUO asked the Court for an opportunity for jurisdictional discovery in opposing LPLA's motion to dismiss. (Second Panneck Decl., Ex. G., p. 1.) That is nonsense. AUO never waived its rights under the Federal Rules of Civil Procedure to obtain responses to its discovery requests within thirty days. AUO merely sought to ensure that, if the Court was inclined to rule on LPLA's motion *before* this thirty day deadline, AUO would not be deprived of discovery. The Court, by waiting until *after* the thirty day deadline to rule on LPLA's motion to dismiss, has given AUO the opportunity it requested. Under the Fed. R. Civ. P. 33 and 34, LPLA's responses are now overdue.[2]

Fourth, LPLA argues that its delay and stone-walling is excused because "AUO did not file a motion requesting leave to obtain jurisdictional discovery." (Second Panneck Decl., Ex. G, p. 2.) LPLA completely misunderstands the law and has it exactly backwards. AUO is not required to file such a motion. Rather, if LPLA wants a stay or a protective order to bar improper discovery, it has the burden to seek that relief. *See, e.g., Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) (rather than improper objection at deposition, issue should have been raised by application for protective order; sanctions imposed).

[2] Indeed, by the time of a hearing on this Motion, LPLA's duplicity may well be fully exposed. AUO's request in its response was limited to jurisdictional discovery. AUO said nothing about other discovery. Answers to other discovery directed to LPLA is due May 20, 2007. If LPLA actually means what its counsel said, then LPLA will fully respond to that non-jurisdictional discovery on May 20, 2007.

7

Because none of LPLA's excuses for withholding discovery have merit, LPLA

should be compelled to provide full and complete responses to AUO's Discovery

Requests.

## B.    LPLA's Other Objections Also Lack Merit.

In addition to relying on its motion to dismiss, LPLA made other objections.

However, as reflected in Attorney Bono's letter response of May 17, 2007, LPLA did not

attempt to rely on these objections to excuse its failure to respond. (Second Panneck

Decl., Ex. G.) LPLA's decision not to address those other objections is understandable.

LPLA's additional objections to AUO's interrogatories and requests for production

amount to typical boilerplate language that is either unfounded or, at most, would only

limit the scope of LPLA's discovery obligations in a typical fashion (for example, no

production of privileged material).

Although LPLA does not appear to rely on these objections, for the sake of

completeness, these objections are addressed below.

- General Objection 3: LPLA objects to the discovery to the extent it seeks privileged information. So long as LPLA has not waived privilege and LPLA provides an adequate privilege log, AUO would not dispute this objection.

- General Objection 4: LPLA objects to the requests to the extent they seek irrelevant information. However, LPLA has made no showing that the requests seek irrelevant information. To the contrary, AUO's requests are directly relevant to this Court's jurisdiction over LPLA, as well as other issues such as infringement.

- General Objection 5: LPLA objects to the requests as overbroad. However, LPLA has made no showing that any request is overbroad. There is no basis for objecting to overbreadth with respect to time or place, because (1) LPLA's activity at *any* time may give rise to jurisdiction and (2) LPLA's sales to distributors, major retail outlets, and major manufacturers even outside of Wisconsin may give rise to jurisdiction in Wisconsin. For example, LPLA is presumably well aware that entities such as Best Buy, Wal Mart, Apple, and Dell do business in Wisconsin. *C.f. North Am. Philips Corp. v. Am. Vending*

8

*Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) (jurisdiction arises where defendant "knew or reasonably could foresee that the articles would be resold in [the jurisdiction]").

- General Objection 6: LPLA objects to providing discovery outside of its possession, custody or control. AUO would not dispute this standard objection.

- General Objection 7: LPLA objects to providing third-party confidential information without first obtaining that third-party's consent. While AUO understands that third-party confidentiality is an important consideration, it does not provide an excuse for LPLA to withhold relevant discovery. LPLA was obliged to promptly inform these third parties of LPLA's discovery obligations so that the third parties could seek a protective order if necessary.

- General Objection 8: LPLA objects to discovery (a) not in LPLA's possession, (b) in AUO's possession, (c) in the public domain, or (d) more easily obtainable from other sources. Objection 8(a) is duplicative of Objection 6 addressed above. As for the other objections, the requests in question are directed at LPLA's relationship with Wisconsin and LPLA's knowledge of its many connections to Wisconsin. This information is uniquely available to LPLA. Therefore, objections 8(b)-(d) lack merit.

- General Objection 9-13: LPLA objects to various definitions provided in AUO's discovery requests to the extent they impose obligations beyond the Federal Rules of Civil Procedure, as vague and ambiguous, and as implicating privilege. AUO does not intend to impose any burdens beyond the Federal Rules. The privilege objection is duplicative of Objection 3 addressed above. AUO's definitions are not vague and ambiguous, and, indeed, they are intended to prevent any ambiguity in the interrogatories and requests themselves.

- General Objection 14: LPLA objects to various instructions provided by AUO with the requests. However, LPLA agrees to respond to the Requests "pursuant to Fed. R. Civ. P. 26 and 34." AUO's instructions are consistent with the Federal Rules of Civil Procedure, and AUO asks that LPLA fully comply with these rules.

- General Objection 15 (directed at Document Requests only): Based on the parties' ongoing negotiations of the Rule 26(f) report, the parties appear to mutually agree on a format for production of electronic documents. This objection is therefore moot.

Most of LPLA's objections to specific requests are simply repetitions of LPLA's

general objections. (*See, e.g.*, Second Panneck Ex. D at pp. 4-5, Interrogatory No. 1.)

AUO's response to each of these repeated objections is set forth above.

9

LPLA also lodges two objections to specific requests not included in its general objections. Those two objections are addressed below:

- Interrogatory No. 2: LPLA objects to AUO's interrogatory as containing "multiple separate and distinct counterparts, together representing at least 32 separate interrogatories." This objection is without merit. The interrogatory merely asks LPLA to explain all of LPLA's knowledge relating to its modules being made, used or sold by retailers. The interrogatory then lists, as examples, numerous Wisconsin retailers who sell products containing accused modules including, for example, LG Electronics, Inc. televisions and computer monitors. AUO's list of thirty-two exemplary Wisconsin retailers who sell accused LPLA modules does not transform AUO's one interrogatory into 32 interrogatories.

- Request for Production No. 18: LPLA objects to the request as "premature" to the extent "it requires the terms 'frame and bezel,' 'overdrive functionality,' and 'dummy patterns' to be construed." The objection lacks merit because the request for production does not require any "construction." Rather, the request simply asks for technical information on the products LPLA shipped to Wisconsin sufficient to completely compare those products to the asserted patents.

Because LPLA's objections either lack merit or merely narrow the scope of LPLA's response (by, for example, excluding privileged information), LPLA has no excuse for completely refusing to produce responses to AUO's requests. LPLA's substantive responses are now past due, and LPLA will continue to improperly withhold discovery unless the Court intervenes. Accordingly, AUO asks for this Court to compel LPLA to comply with its obligations under the Federal Rules.

### C. Willful Failure To Timely Raise A Proper Objection.

This Court has the power to order a party failing to comply with discovery to pay the expenses incurred in bringing a motion to compel. Fed. R. Civ. P. 37(a)(4)(A). Here, imposition of those expenses against LPLA is particularly appropriate because, even without regard to the merits of the defendant's objections (and there is no merit), LPLA willfully chose not to raise the objections during this Court's April 19, 2007,

Preliminary Pretrial Conference. By that time, the specific requests to which LPLA now objects had been served. LPLA had to have known it would refuse to provide that discovery because the LPLA's Motion to Dismiss on which it relies for its objection had been filed weeks before and was then pending. Yet, LPLA's counsel chose not to tell the Court, ask the Court for a stay, or inform the other parties and counsel.

Both the lack of merit of the objection and failure to timely raise the matter has caused unnecessary expense and delay. LPLA should be ordered to pay expenses.

## IV.    CONCLUSION

For the foregoing reasons, AUO's motion to compel should be granted. AUO respectfully asks the Court to order LPLA to substantively respond in full to Plaintiff's First Request for Production of Documents and Things to Defendant LG.Philips LCD America (Nos. 1-24) and Plaintiff's First Set of Interrogatories to Defendant LG.Philips LCD America (Nos. 1-2). Further LPLA should be ordered to pay reasonable expenses incurred by AUO in bringing this Motion.

DATED this 18th day of May, 2007

RESPECTFULLY SUBMITTED BY

MICHAEL BEST & FRIEDRICH LLP

By: _____
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Ste. 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

Attorneys for Plaintiff
AU Optronics Corporation

Q:\CLIENT\022628\0001\B1059175.2

12

DOC NO 43

IN THE UNITED STATES DISTRICT COURT FILED
FOR THE WESTERN DISTRICT OF WISCONSIN 18 PM 4:07

| | | |
|---|---|---|
| AU Optronics Corporation, | ) | |
| | ) | THERESA M. OWENS |
| *Plaintiff,* | ) | CLERK US DIST COURT |
| | ) | Civil Action No.: 07-C-0137-S |
| vs. | ) | |
| | ) | Judge John C. Shabaz |
| LG.Philips LCD Co., Ltd. | ) | |
| and | ) | |
| LG.Philips LCD America, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DECLARATION OF JAMES R. TROUPIS

I, James R. Troupis, declare as follows:

1. I am a partner at Michael Best & Friedrich LLP. I make this declaration in support of Plaintiff AU Optronics Corporation's Motion to Compel LG.Philips LCD America to Respond to Requests for Production and Interrogatories and for Other Relief.

2. On April 10 and 12, 2007, counsel for AU Optronics Corporation ("AUO") and counsel for LG.Philips LCD America ("LPLA") and LG.Philips LCD Co., Ltd. ("LPL") participated in telephonic conferences pursuant to Fed. R. Civ. P. 26(f)

3. During the April 10, 2007, telephone conference, AUO counsel requested that LPLA provide jurisdictional discovery as part of its initial disclosures.

4. AUO's counsel believed, based on the April 10, 2007 telephone conference, that LPLA's counsel either did not agree that it would provide documents or information concerning jurisdiction as an initial disclosure, or at best LPLA's counsel left the matter of jurisdictional disclosures unresolved.

5.    To avoid confusion about LPLA's obligation to provide jurisdictional information, AUO served certain discovery requests on LPLA on April 11, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of May, 2007

James R. Troupis

Q:\CLIENT\022628\0001\B1058380.1

2

DOC NO
C'D/FILED 44

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

2007 MAY 18  PM 4: 07

AU Optronics Corporation,                    )

        *Plaintiff,*                          )

THERESA H. OWENS
CLERK US DIST COURT
Civil Action No.:  07-C-0137-S

   vs.                                       )

                      Judge John C. Shabaz

LG.Philips LCD Co., Ltd.                      )
and                                          )
LG.Philips LCD America,                       )

        *Defendants.*                        )

---

### SECOND DECLARATION OF DAVID W. PANNECK

I, David W. Panneck, declare as follows:

1.      I work as a paralegal for Michael Best & Friedrich LLP.  I make this declaration in support of AU Optronics Corporation's Motion to Compel LG Philips LCD America to Respond to Requests for Production and Interrogatories and for Other Relief.

2.      Attached as Exhibit A is a true and correct copy of Plaintiff's First Set of Interrogatories to Defendant LG Philips LCD America (Nos. 1-2) dated April 11, 2007.

3.      Attached Exhibit B is a true and correct copy of Plaintiff's First Request for Production of Documents and Things to Defendant LG Philips LCD America, Nos. 1-24 dated April 11, 2007.

4.      Attached as Exhibit C is a true and correct copy of LG. Philips LCD Co., Ltd.'s and LG. Philips LCD America's Initial Disclosures Pursuant to Rule 26(a)(1) dated May 11. 2007.

5.    Attached as Exhibit D is a true and correct copy of LG. Philips LCD America's Objections to AUO Optronics Corporation's First Set of Interrogatories (Nos. 1-2) dated May 11, 2007.

6.    Attached as Exhibit E is a true and correct copy of LG. Philips LCD America's Objections to AUO Optronics Corporation's First Set of Document Requests (Nos. 1-24) dated May 11, 2007.

7.    Attached as Exhibit F is a true and correct copy of correspondence from James R. Troupis of Michael, Best, & Friedrich, LLP to Gaspare J. Bono of McKenna, Long & Aldrige, LLP, dated May 14, 2007, regarding defendant LG Philips LCD America's response to plaintiff AU Optronics Corporation's requested discovery.

8.    Attached as Exhibit G is a true and correct copy of correspondence from Gaspare J. Bono of McKenna, Long & Aldrige, LLP to James R. Troupis of Michael, Best, & Friedrich, LLP, dated May 17, 2007, responding to the May 14, 2007 correspondence from James R. Troupis regarding discovery issues.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of May, 2007

David W. Panneck

2

DOC NO  45
ELECD/FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
2007 MAY 22  PM 4: 14

THERESA M. OWENS
CLERK US DIST COURT
W D OF WI

)
AU OPTRONICS CORPORATION,                    )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )    Civil Action No. 07-C-0137-S
                                             )
LG.PHILIPS LCD CO., LTD. and                 )
LG.PHILIPS LCD AMERICA,                      )
                                             )
                Defendants.                  )
                                             )

## LG.PHILIPS LCD AMERICA'S MEMORANDUM IN
## OPPOSITION OF PLAINTIFF'S MOTION TO COMPEL
## JURISDICTIONAL DISCOVERY

## I.    INTRODUCTION

Defendant LG.Philips LCD America ("LPLA") respectfully submits this opposition to

Plaintiff's Motion to Compel LPLA to Respond to Requests for Production and Interrogatories

and for Other Relief ("AUO's Motion").[1]  AUO's Motion seeks to compel responses to what

AUO itself admits is jurisdictional discovery served without leave of this Court.  As

demonstrated below, the motion should be denied as fundamentally flawed – factually, legally,

and procedurally.

Factually, AUO's Motion is in serious error to the extent it suggests that Defendants have

imposed a "stay" on all discovery, including the merits discovery served by AUO subsequent to

its jurisdictional discovery.  In fact, both LPLA and LG.Philips LCD Co., Ltd. ("LPL") have

---

[1] LPLA has filed with this opposition a Declaration of Nicole Talbott Settle ("Settle Decl."). Reference is also made herein to the April 18, 2007 declaration submitted by David W. Panneck in support of AUO's Opposition to LPLA's Motion to Dismiss ("Panneck Decl.") (*see* Dkt. No. 28) and the May 18, 2007 declaration submitted by Mr. Panneck in support of AUO's Motion ("Second Panneck Decl.") (*see* Dkt. No. 44).

responded in a timely manner to this more recent discovery and responsive documents will begin to be produced this week. (Settle Decl, Exs. A-B.) Thus, AUO's Motion is limited to the issue of jurisdictional discovery.

Legally, AUO's Motion is deeply flawed because, while admitting jurisdictional discovery is sought, AUO ignores the different standards applicable to jurisdictional and merits discovery. As a result, AUO does not address the clear teaching of the Seventh Circuit that, **"[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."** *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) (emphasis added).

Procedurally, AUO's Motion, which seeks to compel responses to previously served jurisdictional discovery, is not the proper vehicle for the requested relief because AUO never sought leave of the Court to serve this discovery. Contrary to AUO's contention, it was not LPLA's burden to seek a protective order; rather, it was AUO's burden to seek leave of the Court before serving its jurisdictional discovery. AUO's assertion that LPLA had the burden of seeking a protective order regarding jurisdictional discovery is simply wrong and relies on case law addressing merits discovery. Indeed, in one of the cases AUO relies upon – *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) – the Court was concerned with an "insult-riddled" deposition that had nothing to do with jurisdictional discovery. [2]

---

[2] Similarly, AUO relies heavily on *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir. 1990), which addressed merits discovery issues when a defendant "waited an entire month until after the district court denied his motion to dismiss before he asked the court to postpone the trial date and extend discovery."

-2-

## II.     FACTUAL BACKGROUND

### A.     Motion to Dismiss

LPLA's Motion to Dismiss has been fully briefed by the parties and is under consideration by the Court. In support of its motion, LPLA provided the Court with declarations that enumerate LPLA's few contacts with Wisconsin and demonstrate why those limited contacts do not establish jurisdiction. In opposing this motion, AUO took the position that the existing record "is more than sufficient to deny LPLA's motion outright," but, if the Court has "doubts," then AUO should be allowed to conduct jurisdictional discovery. AUO also provided the Court with copies of the very same jurisdictional discovery (document requests and interrogatories) that is the subject of AUO's Motion. (Panneck Decl., Exs. S-T.)

### B.     Merits Discovery

On April 20, 2007, AUO served LPLA with 141 merits document requests as a "second set" of discovery in addition to the jurisdictional discovery served as the "first set" of document requests. Thus, and rather remarkably, AUO has propounded 166 requests to LPLA (and another 142 to LPL)[3] before reaching final agreement on the Rule 26(f) report.

On Monday, May 20, as noted above, LPLA and LPA served timely responses to this merits discovery and responsive documents will be produced beginning this week. (Settle Decl., Exs. A-B.) Thus, LPLA cannot fairly be said to have impeded discovery on the merits of this case.

### C.     Jurisdictional Discovery

On April 11, 2007, LPLA was served with the jurisdictional discovery that is the basis of AUO's Motion. (Panneck Second Decl., Exs. A-B.) On Friday, May 11, LPLA interposed

---

[3] Served at the same time, AUO's second set of requests to LPLA and AUO's first set of requests to LPL seek the same categories of documents. (Settle Decl. Exs. A-B.)

timely objections to these document requests and interrogatories. Each of LPLA's responses

included the following:

> LPLA objects to this [Request/Interrogatory] on the grounds that
> [it] is premature. LPLA will produce non-privileged, responsive,
> relevant documents, subject to its general and specific objections,
> and to the extent such documents exist, if and when the Court
> grants AUO's request for jurisdictional discovery, as made in Part
> III.F of AUO's "Opposition to LG.Philips LCD America's Motion
> to Dismiss for Lack of Personal Jurisdiction." D.I. 27 at 17.

(Panneck Second Decl., Exs. C-D.)

On Monday, May 14, AUO's counsel wrote LPLA demanding an immediate meet-and-

confer meeting or else AUO would to file a motion that same week. (Second Panneck Decl., Ex.

F.) On Thursday, May 17, LPLA's counsel responded to AUO's letter by raising the following

points:

> *First*, your letter ignores the fact that the motion to dismiss for lack
> of personal jurisdiction has been fully briefed by the parties and is
> now under consideration by the Court. We do not believe there is
> any reason to expend time and money on jurisdictional discovery –
> or related motions practice – in light of the fact that we expect that
> Court will shortly rule on the pending motion.

> *Second*, your demand for a meet and confer within 48 hours of
> your letter – backed by a threat to rush to the Court "this Friday" –
> is contrary to the position that AUO took in opposition to the
> motion. There, AUO informed the Court in no uncertain terms that
> jurisdictional discovery was unnecessary because "[t]he
> jurisdictional evidence set forth in this opposition is more than
> sufficient to deny LPLA's motion outright." Docket Entry No. 27
> at p. 17.

> *Third*, the subject of your letter – LPLA's responses to AUO's
> jurisdictional discovery requests – has already been placed before
> the Court for decision. In particular, AUO's opposition to the
> motion stated, in bold: "**In The Alternative, AUO Requests An
> Opportunity For Jurisdictional Discovery And An Evidentiary
> Hearing.**" *Id.* AUO further stated that "if the Court has any
> doubts, AUO requests a fair opportunity to bolster its position with
> jurisdictional discovery . . . ." *Id.* In addition, AUO informed the
> Court: "On April 11, 2007, AUO provided LPLA with discovery

-4-

> requests relating to jurisdictional issues and asked LPLA to
> provide responsive information with its initial disclosures.
> Panneck Exs. S-T. As of the date of this opposition, LPLA has not
> agreed to provide such discovery" *Id.* at p. 18, n. 8. Thus, the
> issue of jurisdictional discovery already is pending before the
> Court, and the Court will shortly decide whether or not AUO has
> any right to any jurisdictional discovery.
>
> *Fourth,* AUO did not file a motion requesting leave to obtain
> jurisdictional discovery from LPLA. Nevertheless, we expect the
> Court to decide this issue in light of AUO's alternative request in
> its opposition.
>
> In light of the above, we believe that it is reasonable for the parties
> to allow the Court an opportunity to rule on the issues that have
> already been placed before the Court, including the right to any
> jurisdictional discovery, and which the Court is now considering
> and will shortly rule on. We, of course, will comply with whatever
> the Court decides.

(Second Panneck Decl., Ex. G; footnote omitted.)

The next day, May 18, AUO filed the instant motion.

## III. **LEGAL STANDARDS**

**"As a general rule, a plaintiff must establish a prima facie case showing that personal jurisdiction is likely to exist before the plaintiff is entitled to any jurisdictional discovery."** *Birnberg v. Milk Street Residential Assocs. Ltd. P'ship*, No. 02 C 978, 2002 U.S. Dist. LEXIS 9321, at \*15-16 (N.D. Ill. May 24, 2002) (citing *Central States*, 230 F.3d at 946) (emphasis added). Thus, while it is well within this Court's discretion to allow jurisdictional discovery, it is also true that **"[p]ermitting discovery to establish jurisdiction is never automatic,** however. The plaintiff seeking jurisdictional discovery **must** have a colorable case for jurisdiction and **must** demonstrate to the district court what additional facts would be found if discovery were permitted." *Moore's Federal Practice - Civil* § 12.31[7] (emphasis added; footnotes omitted).

-5-

In *Central States*, the Seventh Circuit held that the district court did not abuse its

discretion in denying the plaintiff's request for "burdensome, wide-ranging [jurisdictional]

discovery." 230 F.3d at 947. In so holding, the Seventh Circuit relied on *Ellis v. Fortune Seas,*

*Ltd.*, 175 F.R.D. 308 (S.D. Ind. 1997), which cited several cases and observed:

> [A] plaintiff is not always entitled to discovery to respond to a
> motion to dismiss for lack of personal jurisdiction. . . . In many
> cases courts have properly limited or denied discovery on
> jurisdictional issues where the plaintiff has failed to make some
> threshold showing – sometimes called a "*prima facie*" showing,
> other times called a "colorable" showing – of a plausible basis for
> exercising jurisdiction over the defendant. . . . Requiring a
> threshold showing of a colorable basis for exercising jurisdiction is
> consistent with both the purpose of the due process requirement of
> minimum contacts and the district court's obligation to control
> discovery under Rule 26(b)(2).

*Id.* at 311 (citations omitted).

Thus, "[j]urisdictional discovery . . . is justified only if the plaintiff reasonably

demonstrates that it can supplement its jurisdictional allegations through discovery." *Kopff v.*

*Battaglia*, 425 F. Supp. 2d 76, 89 (D.D.C. 2006) (internal quotation omitted). However, when,

as here, a defendant has introduced jurisdictional evidence demonstrating limited contacts with

the forum state, a plaintiff cannot obtain discovery absent some showing of defect in that

evidence. For example, in 2003, the Fourth Circuit held that a district court acted within its

discretion in refusing to allow jurisdictional discovery where it found "a lack of any concrete

proffer by [plaintiff], no indication of fraud or intentional misconduct on the part of [defendant]

in its jurisdiction affidavits, and no reason to believe that the additional information [that

plaintiff sought] . . . would . . . alter [the] analysis of personal jurisdiction." *Carefirst of*

*Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 403 (4th Cir. 2003) (internal

quotations omitted).

## IV.  **ARGUMENT**

### A.  **AUO's Motion Is Defective**

AUO's Motion should be denied as not properly presenting the issue of jurisdictional discovery to the Court. As noted above, the issue was already presented by AUO in its opposition to LPLA's Motion to Dismiss. LPLA should not have to spend time and money responding to this discovery when a ruling by the Court may make it moot, especially when such costs are in addition to those incurred by responding to merits discovery.

Further, AUO's Motion is not the proper vehicle for the relief sought because AUO failed to obtain leave of the Court before serving its jurisdictional discovery. Although AUO's Motion denies that such leave is necessary, it does not cite any cases supporting its position. For example, while AUO correctly notes that two decades ago the Third Circuit stated in *Nehemiah v. Athletics Congress of the U.S.A.*, 765 F.2d 42, 48 (3d Cir. 1985), that jurisdictional discovery should be granted unless "the plaintiff's claim is clearly frivolous," AUO ignores that this language suggests a standard by which leave should be granted and does not stand for the proposition that jurisdictional discovery can be served without leave.

### B.  **AUO Has Not Shown that the Proposed Discovery Would Be Useful**

Notwithstanding these deficiencies, the Court should deny AUO's request for jurisdictional discovery because AUO has not made a showing that the requested discovery would bolster its arguments that personal jurisdiction is appropriate. Indeed, AUO's Motion makes little or no effort to show how its proposed discovery relates to the arguments that AUO advanced in opposition to LPLA's Motion to Dismiss. Instead, AUO's Motion spends several pages on LPLA's allegedly "boilerplate objections" when the real issue is whether AUO's requests are simply "boilerplate."

Further, AUO makes no showing that the evidence submitted by LPLA to the Court is

fraudulent or misrepresentative of the jurisdictional facts. *See, e.g.*, *Shamsuddin v. Vitamin*

*Research Prods.*, 346 F. Supp. 2d 804, 818 (D. Md. 2004) ("[Defendant] has denied, in an

affidavit, that it ever has conducted promotional advertising in print, electronic, or other media

specifically targeted toward consumers in Maryland. I am not persuaded that jurisdictional

discovery is warranted.").

## C.    AUO's Jurisdictional Discovery Requests Are Overly Broad

Even if the Court concludes that jurisdictional discovery is warranted, AUO's discovery

requests should be rejected as overly broad. Consider, for example, the following representative

requests:

> "Documents describing and/or reflecting the identity and
> geographic location of each and every LPLA customer, distributor,
> or representative that markets, sells, offers for sale, or distribute
> LCD Modules or products that incorporate LCD Modules in the
> United States." (No. 1)

> "Documents describing and/or reflecting communications between
> LPLA and its customers, distributors, or representatives related to
> the advertising, marketing, sales, distribution, or technical support
> for LCD Modules in the United States or the State of Wisconsin."
> (No. 9)

> "All documents relating to communications LPLA has had with
> any retail outlets which do business in Wisconsin including but not
> limited to Best Buy, Circuit City, CompUSA Stores LP, Wal-Mart,
> Fry's, Target, Costco, Amazon.com, Radio Shack, Buttorff's
> Hardware Inc., Guild's TV Sales & Service, American TV &
> Appliance of Madison, Inc., Audio Contractors, Chase TV,
> Fuzzy's Audio Video, Silica Appliance and Electronics, Lyle's TV
> & Appliance Inc., ACS, Dan's Audio Video, East Town TV &
> Appliance, Barthel TV, and similar retailers." (No. 14)

> "All documents in LPLA's possession that reference Wisconsin."
> (No. 21)

(Second Panneck Decl., Ex. B.)

-8-

LPLA respectfully submits that these document requests illustrate the extent to which AUO is on a fishing expedition at LPLA's expense. The proposed discovery is not narrowly tailored, and should be denied as unwarranted and unduly burdensome. *See, e.g.*, *Richards v. Duke Univ.*, No. 06-01179 (RCL), 2007 U.S. Dist. LEXIS 22864, at *13 (D.D.C. Mar. 30, 2007) ("This Court will not allow plaintiff to undertake the sort of fishing expedition that the rules of jurisdictional discovery are designed to prevent. Therefore, this court will deny plaintiff's motion for leave to take jurisdictional discovery regarding [the defendants].").

## V.    CONCLUSION

For the foregoing reasons, LPLA respectfully requests that this Court deny AUO's motion to compel jurisdictional discovery and stay such discovery until the Court has ruled on LPLA's motion to dismiss.

Dated: May 22, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Jennifer Cotner
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Tel: (608) 257-3911
Fax: (608) 257-0609

-9-

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

mn316288_1

DOC NO
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN** MAY 22 PM 4: 14

|                                                            |     |                              |
| ---------------------------------------------------------- | --- | ---------------------------- |
| AU OPTRONICS CORPORATION,                                  | )   | THERESA M. OWENS             |
|                                                            | )   | CLERK US DIST COURT          |
| Plaintiff,                                                 | )   | WD OF WI                     |
| v.                                                         | )   |                              |
|                                                            | )   | Civil Action No. 07-C-0137-S |
| LG.PHILIPS LCD CO., LTD. and                               | )   |                              |
| LG.PHILIPS LCD AMERICA,                                    | )   |                              |
|                                                            | )   |                              |
| Defendants.                                                | )   |                              |

## CERTIFICATE OF SERVICE

Nicole Talbott Settle hereby certifies that on May 22, 2007, true and correct copies of the attached:

- **LG.PHILIPS LCD AMERICA'S MEMORANDUM IN OPPOSITION OF PLAINTIFF'S MOTION TO COMPEL JURISDICTIONAL DISCOVERY;**
- **DECLARATION OF NICOLE TALBOTT SETTLE; and**
- **CERTIFICATE OF SERVICE.**

were caused to be served upon attorneys of record at the following addresses in the following manner:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
jrtroupis@michaelbest.com
mahughes@michaelbest.com
**Hand Delivered and by email.**

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
sbaik@wsgr.com
**By email and overnight delivery**

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497
ctyler@wsgr.com
brange@wsgr.com
**By email and overnight delivery**

Dated: May 22, 2007.

Nicole Talbott Settle

mn316127_1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

|  |  |  |
|---|---|---|
| AU OPTRONICS CORPORATION, | ) | MAY 22 2007 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 07-C-0137-S |
|  | ) |  |
| LG.PHILIPS LCD CO., LTD. and | ) |  |
| LG.PHILIPS LCD AMERICA, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## DECLARATION OF NICOLE TALBOTT SETTLE

Nicole Talbott Settle, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I work as a paralegal for Godfrey & Kahn, S.C. I make this declaration in support of Defendant LG.Philips LCD America's Memorandum in Opposition of Plaintiff's Motion to Compel Jurisdictional Discovery.

2. Attached as Exhibit A is a true and correct copy of LG.Philips LCD America's Objections to AUO Optronics Corporation's Second Set of Documents Requests (Nos. 25-166) dated May 21, 2007.

3. Attached as Exhibit B is a true and correct copy of LG.Philips LCD Co., Ltd.'s Objections to AUO Optronics Corporation's First Set of Documents Requests (Nos. 1-142) dated May 21, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 22, 2007.

Nicole Talbott Settle

mn316286_1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

        Plaintiff,

v.

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

        Defendants.

Civil Action No. 07-C-0137-S

## LG.PHILIPS LCD AMERICA'S OBJECTIONS TO AUO OPTRONICS CORPORATION'S SECOND SET OF DOCUMENTS REQUESTS (NOS. 25-166)

Defendant LG.Philips LCD America ("LPLA"), by counsel and pursuant to Fed. R. Civ.

P. 34, objects and responds as follows to Plaintiff AU Optronics Corporation's ("AUO's")

Second Set of Documents Requests (Nos. 25 through 166).

## PRELIMINARY STATEMENT

1.    LPLA makes the objections herein ("Responses") based solely on its current knowledge, understanding, and belief as to the facts and the information available to it as of the date of the Responses. Additional discovery and investigation may lead to additions to, changes in, or modifications of these Responses. By producing documents in response to these Requests, LPLA reserves the right to produce subsequently discovered information and to introduce such subsequently discovered information at the time of any hearing or trial in this action.

2.    In the event LPLA produces documents in response to these Requests, LPLA does not admit to their authenticity, relevance, or admissibility at trial or any other proceedings in this

DEFENDANT LPLA's RESPONSES AND    - 1 -    07-C-0137-S
OBJECTIONS TO AU OPTRONICS CORP'S
SECOND SET OF DOCUMENT REQUESTS (NOS. 25-166)

case. LPLA will provide such documents without prejudice to its right to object to the introduction of such documents at trial or any other proceeding in this case.

3.      LPLA does not waive any objection made in these Responses, nor any claim of privilege, whether expressly asserted or not, by providing any information or identifying any document or thing in response to the Requests. Any inadvertent disclosure of information or inadvertent identification or production of any document shall not constitute waiver of any applicable privilege as to the document identified or produced by LPLA.

4.      LPLA incorporates by reference the following General Objections within each individual "ANSWER" to each Request. All Responses to the Requests are made subject to each and without waiving any of such objections. LPLA's specific Objections for any Request are not intended to preclude, override, or withdraw any of the General Objections to that Request.

## GENERAL OBJECTIONS

These general objections apply to each Request and thus, for convenience, are not repeated after each Request, but rather are set forth herein and are hereby incorporated into each individual "ANSWER.".

1.      LPLA objects to each Request to the extent it seeks documents subject to the attorney-client privilege, work product doctrine, and other applicable privileges or immunities from discovery. LPLA does not by any response waive any claim of attorney client or work product privilege.

2.      LPLA objects to these Requests to the extent that they request documents or things not relevant to the subject matter of the above titled action, or not reasonably calculated to lead to the discovery of admissible evidence.

DEFENDANT LPLA's OBJECTIONS TO                                    - 2 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

3. LPLA objects to these Requests to the extent that they lack any appropriate limitation as to geographic scope, making such Requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4. LPLA objects to these Requests to the extent that they request documents other than those that are in its possession, custody, or control, as such Requests are beyond the requirements of the Federal Rules of Civil Procedure.

5. LPLA objects to each Request to the extent it seeks discovery of documents containing trade secrets or other confidential research, development, or commercial information and will only produce such documents in accordance with the Protective Order entered in this action or, prior to entry of such an order, the Court's April 19, 2007 Preliminary Pre-Trial Conference Order. To the extent that any Request calls for the production of confidential documents of third parties that are in LPL's possession, LPLA will attempt to obtain the consent of such third party prior to production. If LPLA cannot obtain such consent, LPLA will not produce the documents.

6. LPLA objects to these Requests to the extent that they request documents that are: a) not in LPLA's possession; b) already in AUO's possession; c) in the public domain; or d) more easily obtainable from other sources by the exercise of ordinary due diligence as required by any applicable rule, as unduly burdensome, oppressive, and designed to harass.

7. LPLA objects to these Requests to the extent they contain no date or time limitation to limit the request to documents that are properly discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit (the oldest of which issued in February 2004) and LPLA's defenses thereto. LPLA will respond to

this Request by producing responsive documents for LCD Modules made or sold from the relevant patent's issuance date to the filing date of the Complaint.

8.     LPLA objects to these Requests to the extent they require the production of "all" documents in a category or group, without further limitation to bring the Request within the scope of proper discovery pursuant to Fed. R. Civ. P. 26 or to limit the Request to information pertinent to the asserted claims of the Patents-in-Suit.

9.     LPLA objects to these Requests to the extent they seek documents, things, or information beyond the scope of discovery relevant to the asserted claims of the Patents-in-Suit.

10.    LPLA objects to AUO's "Definitions" and "Instructions" to the extent that they purport to impose obligations not required under the Federal Rules of Civil Procedure.

11.    LPLA objects to Definition 1 of "AUO" because it is overly broad, unduly burdensome, vague, and ambiguous.

12.    LPLA objects to Definition 2 of "LPLA" because it is overly broad, unduly burdensome, and improperly includes a variety of persons and entities over which LPLA has no control, and because it includes LPLA's "attorneys" as parties, which implicates the attorney-client privilege and work product doctrine.

13.    LPLA objects to Definition 3 of "LPL" because it is overly broad, unduly burdensome, vague, ambiguous, and because it includes LPL's "attorneys" as parties, which implicates the attorney-client privilege and work product doctrine.

14.    LPLA objects to Definition 8 of "LCD Modules" because the term "substantially the same as" is vague and ambiguous. LPLA further objects because the term is overly broad

and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

15.     LPLA objects to Definition 9 of "Connection Pad" because the term, which is defined as including any "conductive pattern. . . operable to facilitate the transmission of . . . signals from a signal source to . . . [any] structure included on the liquid crystal substrate," is vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence. LPLA further objects because the term is overly broad and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

16.     LPLA objects to Definition 10 of "Dummy Conductive Pattern" because the term is vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence.

17.     LPLA objects to Definition 11 of "communications" to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

18.     LPLA objects to Definition 13 of "document" to the extent it is inconsistent with either or both of the Federal Rules of Civil Procedure, and LPLA's obligations thereunder, or with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

19.     LPLA objects to Definition 16 of "relating to," "relate to," and "related to," which purports to cover (for example and not by way of limitation) indirect allusions and indirect

references, as vague, ambiguous, and overly broad, making its (or their) use unduly burdensome and unlikely to lead to the discovery of admissible evidence.

20.     LPLA objects to Definition 20 of "Over Driving Circuit," which incorporates by reference a brief definition of "Over Driving Circuit" from LPL's website, as vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence. LPLA further objects because the term is overly broad and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

21.     LPLA objects to Instructions 21, 22, 23, 24, and 25 because they impose unreasonable burdens not required by the Federal Rules of Civil Procedure. LPLA will respond to these Requests pursuant to Fed. R. Civ. P. 26 and 34.

22.     LPLA objects to Instruction 26, regarding the manner of production of electronic discovery, because the topic is more appropriately addressed and resolved by agreement of the Parties' Rule 26(f) Conference Report.

23.     LPLA objects these Requests on the grounds that the clear majority of them seek research, design, development, manufacturing, and related technical information that is in the possession of LPLA's parent corporation, LG.Philips LCD Co., Ltd.  LPLA does not have this information, nor is this information in LPLA's custody or control.  Consequently, while LPLA will produce any responsive documents that are in its possession, custody, or control, LPLA notes that it will be producing very few, if any, research, design, development, manufacturing, or technical information related to LCD display products.

## DOCUMENT REQUESTS

REQUEST NO. 25: Organizational charts for Defendant and other documents sufficient to show the persons at LPL and/or LPLA responsible for the following activities relating to LCD Modules:

        (a)     research;

        (b)     development;

        (c)     manufacturing;

        (d)     promotion;

        (e)     marketing;

        (f)     sales;

        (g)     technical customer support;

        (h)     quality control; and

        (i)     competitive product analysis.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all of LPLA's organizational charts on the topic of research and development of LCD Modules, without limiting the breadth or reach of the request to the scope of material relevant to the Patents-in-Suit). Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 26: With respect to sales and offers for sale by Defendant of LCD Modules in the United States, documents sufficient to ascertain for each LCD Module, the:

        (a)     order date;

        (b)     shipping and invoice date;

        (c)     identity of the LCD Module shipped;

        (d)     price charged by LPL and/or LPLA to the immediate customer or distributor of each LCD Module;

     (e)     gross and net margin realized by LPL and/or LPLA on sales of each LCD Module;

     (f)     LPLA and LPLA's fixed and variable cost for each LCD Module; and

     (g)     identity and geographical location of distributors of each LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 27: With respect to sales and offers for sale by Defendant of LCD Modules, documents sufficient to ascertain for each LCD Module, the:

     (a)     order date;

     (b)     shipping and invoice date;

     (c)     identity of the LCD Module shipped;

     (d)     price charged by LPL and/or LPLA to the immediate customer or distributor of each LCD Module;

     (e)     gross and net margin realized by LPL and/or LPLA on sales of each LCDModule;

     (f)     LPLA and LPLA's fixed and variable cost for each LCD Module; and

     (g)     identity and geographical location of distributors of each LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 28: All documents relating to research of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "research" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 29: All documents relating to design of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "design" is vague and ambiguous and that the definition of "LCD

DEFENDANT LPLA's OBJECTIONS TO                    - 9 -                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 30: All documents relating to development of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "development" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 31: All documents relating to testing of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "testing" is vague and ambiguous and that the definition of "LCD

Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 32: All documents relating to manufacture of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "manufacture" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 33: All documents relating to advertising of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to

this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 34: All documents relating to offers for sale of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 35: All documents relating to importation into the United States of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request as vague and ambiguous because the term "importation" is undefined. LPLA interprets this word to mean "importation" as defined in the case-law interpreting 35 U.S.C. § 271. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as overly broad and unduly burdensome in that purports to

DEFENDANT LPLA's OBJECTIONS TO                    - 12 -                                        07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

require the production of, *inter alia*, each and every order, invoice, and shipping log for every LCD Module ever sold by LPLA. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist. With respect to orders, invoices, shipping logs, and comparable documents, LPLA will produce representative orders, invoices, and shipping logs.

REQUEST NO. 36: All documents relating to use of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as vague and ambiguous because the term "use" is undefined. LPLA interprets this word to mean "use" as defined in the case-law interpreting 35 U.S.C. § 271. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain, such as documentation of how non-parties use LCD Modules. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 37: All documents relating to research of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

DEFENDANT LPLA's OBJECTIONS TO                    - 13 -                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "research" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 38: All documents relating to design of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "design" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are

United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 39: All documents relating to development of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "development" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 40: All documents relating to testing of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER:    LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "testing" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA requests that AUO limit and restate this document request, in a manner to cure the foregoing deficiencies, or provide explanation for the relevance of LPLA's testing of LCD modules to its claims, so as to allow LPLA to understand the request and produce relevant and properly discoverable documents.

REQUEST NO. 41: All documents relating to manufacture of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER:    LPLA objects to this Request because it is overly broad and unduly burdensome, in that the term "manufacture" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA

will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 42: All documents relating to advertising of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 43: All documents relating to offers for sale of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in

the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 44: All documents relating to use of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA further objects to this Request as vague and ambiguous because the term "use" is undefined. LPLA interprets this word to mean "use" as defined in the case-law interpreting 35 U.S.C. § 271. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ.

P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to "use of LCD Modules" in the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 45: Any documents related to agreements to indemnify, compensate, pay money or give credit to LPL and/or LPLA should it be charged with patent infringement related to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request as overly broad and unduly burdensome, in that AUO's request for indemnity or similar documents is not limited to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. Subject to the foregoing objections, and subject to any documents discovered in LPLA's continuing research, LPLA refers AUO to LPLA's Initial Disclosures, by which LPLA informed AUO that it has discovered no insurance, indemnity, or comparable documents pertinent to AUO's claims in this case.

REQUEST NO. 46: Any and all agreements which are alleged to give rise to a license to LPL and/or LPLA to manufacture, use, sell, or offer to sell any product under the '629, '781, and/or '160 patent.

ANSWER: LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. LPLA objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 47: All documents which refer or relate to any validity, enforceability or infringement search, study or opinion relating to the '629 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 48: All documents which relate to any validity, enforceability or infringement search, study or opinion relating to the '781 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 49: All documents which relate to any validity, enforceability or infringement search, study or opinion relating to the '160 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 50: All documents and things that refer or relate to the subject matter disclosed or claimed in the '629 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '629 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "Documents and things that refer to the '629 Patent."

REQUEST NO. 51: All documents that refer or relate to any meeting, discussion, or communication concerning the '629 patent or the subject matter disclosed or claimed therein.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the

subject matter of the '629 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPLA will produce "documents and things that refer to any meeting, discussion, or communication concerning the '629 Patent."

REQUEST NO. 52: To the extent not requested by another request for production, all documents that refer or relate to the '629 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 53: All documents and things that refer or relate to the subject matter disclosed or claimed in the '781 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '781 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "documents and things that refer to the '781 Patent."

REQUEST NO. 54: All documents that refer or relate to any meeting, discussion, or communication concerning the '781 patent or the subject matter disclosed or claimed therein.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '781 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPLA will produce "all documents and things that refer to any meeting, discussion, or communication concerning the '781 Patent."

REQUEST NO. 55: To the extent not requested by another request for production, all documents related to the '781 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 56: All documents and things that refer or relate to the subject matter disclosed or claimed in the '160 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '160 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPLA further

objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "documents and things that refer to the '160 Patent."

REQUEST NO. 57: All documents that refer or relate to any meeting, discussion, or communication concerning the '160 patent or the subject matter disclosed or claimed therein.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '160 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPLA will produce "documents and things that refer to any meeting, discussion, or communication concerning the '160 Patent."

REQUEST NO. 58: To the extent not requested by another request for production, all documents related to the '160 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 59: Any documents related to any prior art related to the '629 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is

overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related to" the '629 patent. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '629 patent."

REQUEST NO. 60: Any documents related to any prior art related to the '781 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related to" the '781 patent. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '781 patent."

REQUEST NO. 61: Any documents related to any prior art related to the '160 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related

DEFENDANT LPLA's OBJECTIONS TO                    - 25 -                           07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

to" the '160 patent. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '160 patent."

REQUEST NO. 62: All documents which relate to or are alleged to support any bases relied upon by LPL and/or LPLA to avoid liability in the present litigation.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because the term "avoid liability" is vague and ambiguous. LPLA objects to this Request because it is duplicative of several other Requests issued to LPLA by AUO. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 63: All documents relating to any market study or analysis on LCD Modules performed for or commissioned by LPL and/or LPLA.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because the term "market study or analysis" is vague and ambiguous. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections,

LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 64: Any and all documents and things related to the conception, development, or design of each LCD Module, where such LCD Module was ever ultimately sold or offered for sale in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the terms "conception," "development," and "design" are vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 65: All documents related to LPL and/or LPLA's plans and strategy for marketing LCD Modules in the United States.

ANSWER:

LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents alluding to, referring to, or concerning, whether directly or indirectly, LPLA's marketing plans. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are

responsive to the Request "Documents that describe LPL and/or LPLA's plans and strategy for marketing LCD Modules in the United States."

REQUEST NO. 66: All documents related to LPL and/or LPLA's plans and strategy for marketing LCD Modules.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to LPLA's marketing plans. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents that describe LPL and/or LPLA's plans and strategy for marketing LCD Modules."

REQUEST NO. 67: All LPL and/or LPLA price lists, sale brochures and advertising material related to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or

indirectly, to LPLA's price lists or sales brochures. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "LPL and/or LPLA price lists, sale brochures and advertising material for LCD Modules."

REQUEST NO. 68: All documents related to the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because a intellectual property holder does not "license" LCD Modules, making the Request vague and ambiguous. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA obtains revenues from the manufacture, sale, or use of LCD Modules. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules in the United States."

REQUEST NO. 69: All documents related to LPL and/or LPLA's market share in the manufacture and sale of LCD Modules in the United States.

ANSWER: LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA sells LCD Modules in the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing LPL and/or LPLA's market share in the manufacture and sale of LCD Modules in the United States."

REQUEST NO. 70: All documents related to the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA makes LCD Modules. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or

DEFENDANT LPLA's OBJECTIONS TO                     - 30 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules."

REQUEST NO. 71: All documents related to LPL and/or LPLA's market share in the manufacture and sale of LCD Modules.

ANSWER: LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA sells LCD Modules. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing LPL and/or LPLA's market share in the manufacture and sale of LCD Modules."

REQUEST NO. 72: At least two (2) samples of each model of LCD Module designed, manufactured, tested, used, marketed, sold, and/or offered for sale in the United States and/or imported into the United States by anyone.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to AUO's request for samples of all LCD Modules designed or tested, regardless of whether those LCD Modules were made, used, sold, or offered for sale in, or imported into, the United States. Given the foregoing deficiencies, and significant expense involved in producing the requested samples, LPLA objects and will not produce two samples of every LCD Modules it has ever designed, manufactured, tested, used, marketed, or sold. LPLA is willing to meet and confer with AUO to discuss what samples are properly discoverable and relevant to AUO's prosecution of this action.

REQUEST NO. 73: All documents that refer to or reference the present litigation.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 74: All documents and things related to the present litigation which have been made available by LPL and/or LPLA to any financial analyst, institutional investor, brokerage house, investment firm, securities firm, or banking institution.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following Request, "Documents made available by LPL and/or LPLA to any financial analyst, institutional investor,

DEFENDANT LPLA's OBJECTIONS TO                    - 32 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

brokerage house, investment firm, securities firm, or banking institution regarding the present litigation."

REQUEST NO. 75: Any insurance agreement or policy under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment, indemnify, or reimburse for payments made to satisfy a judgment that may be entered in the present litigation.

ANSWER: LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to the foregoing objections, and subject to any documents discovered in LPLA's continuing research, LPLA refers AUO to LPLA's Initial Disclosures, by which LPLA informed AUO that it has discovered no insurance, indemnity, or comparable documents pertinent to AUO's claims in this case.

REQUEST NO. 76: All documents related to licenses entered into by LPL and/or LPLA, either as a licensee or licensor, which relate to any liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will

produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Licenses entered into by LPL and/or LPLA, either as a licensee or licensor, which relate to any liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above."

REQUEST NO. 77: All patent license agreements related to any liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Patent license agreements for liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above."

REQUEST NO. 78: To the extent not produced responsive to other requests for production, all patent license agreements LPL and/or LPLA contends are relevant to the royalty

that would be reached as a result of a hypothetical negotiation between parties attempting to grant a license related to liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 79: All documents related to the subject matter of the present litigation that were prepared by persons LPL and/or LPLA will or may call as an expert witness at trial in this case.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPLA objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 80: All documents related to the subject matter of the present litigation that were reviewed by persons LPL and/or LPLA will or may call as an expert witness at trial in this case.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPLA objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the

Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 81: All communications between LPL and/or LPLA and/or their attorneys on one side and any persons LPL and/or LPLA will or may call as an expert witness at trial in this case on the other side.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPLA objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 82: All drafts of any expert reports, exhibits to expert reports, or other expert disclosures created by anyone LPL and/or LPLA will or may call as an expert witness at trial in this case on the other side.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPLA objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 83: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relate to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control.    Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 84: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relate to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent that it requests documents that are

not in LPLA's possession, custody, or control. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 85: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA to any person and/or entity that is in or does any business in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relate to" makes the Request overly broad and unduly burdensome. LPLA further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA

DEFENDANT LPLA's OBJECTIONS TO          - 38 -                                 07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States.    Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 86: All documents and things that relate to AUO, including, but not limited to (1) communications to or from Plaintiff and (2) communications about Plaintiff.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome, in that it seeks documents and things that bear no limitation in breadth tailored to this lawsuit, whether by subject matter or time limitation. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the Request, "Documents and things that relate to AUO and this lawsuit, including, but not limited to (1) communications to or from Plaintiff and (2) communications about Plaintiff."

REQUEST NO. 87: All documents and things identified by, referred to in, or relied upon to answer any of LPL and/or LPLA's responses to any of Plaintiffs interrogatories to LPL and/or LPLA.

ANSWER:

LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request to the extent it seeks documents by reference to LPLA's answers to interrogatories, and thus LPLA incorporates by reference all corresponding objections from those Interrogatories into this response. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 88: All diagrams or drawings or other documents illustrating any LPL and/or LPLA LCD Module or any component thereof.

ANSWER:

LPLA objects to this Request in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, without some limiting definition, AUO's request for "a[ll] diagrams or drawings" illustrating "any LPLA" LCD Module" is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. LPLA further objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 89: For LCD Modules that LPL and/or LPLA has sold and/or offered for sale in the United States or has sold and/or offered for sale to any person and/or entity that is in the United States or does any business in the United States, the following documents:

- (a) income statements;
- (b) balance sheets;
- (c) cash flow statements;
- (d) accounting notes;
- (e) periodic financial reports;
- (0) planning reports;
- (g) cost estimations; and
- (h) projections and forecasts.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPLA's OBJECTIONS TO      - 40 -      07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

Patents-in-Suit. LPLA further objects on the grounds that several of the categories of documents requested by AUO, including cash flow statements and cost estimations, are irrelevant to any claim, defense, or theory in this case. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 90: For LCD Modules that LPL and/or LPLA has sold and/or offered for sale, the following documents:

      (a)    income statements;

      (b)    balance sheets;

      (c)    cash flow statements;

      (d)    accounting notes;

      (e)    periodic financial reports;

      (f)    planning reports;

      (g)    cost estimations; and

      (h)    projections and forecasts.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects on the grounds that several of the categories of documents requested by AUO, including cash flow statements and cost estimations, are irrelevant to any claim, defense, or theory in this case. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will

produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 91: Documents relating to when LPL and/or LPLA first became aware of the '629 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 92: Documents relating to when LPL and/or LPLA first became aware of the '781 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 93: Documents relating to when LPL and/or LPLA first became aware of the '160 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 94: Documents related to communications from customers or clients of LPL and/or LPLA soliciting, suggesting, or confirming orders for LCD Modules.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of

AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 95: Documents related to the flow of LCD Modules from LPL and/or LPLA to end users in the United States.

ANSWER: LPLA objects to this Request because the term "flow of" is vague and ambiguous. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 96: Documents related to the flow of LCD Modules from LPL and/or LPLA to end users.

DEFENDANT LPLA's OBJECTIONS TO                    - 43 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

ANSWER: LPLA objects to this Request because the term "flow of" is vague and ambiguous. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 97: All documents not produced in response to another request for production that are identified and referred to in Defendant's initial disclosures submitted in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.

ANSWER: LPLA objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 98: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '629 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public

domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 99: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '160 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 100: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '781 patent.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 101: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '629 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 102: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '160 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 103: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '781 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 104: All documents relating to the negotiation, establishment, and operation of any relationship whatsoever (including, for example, joint venture, partnership, ownership relationship, contractual relationships) between LPL and/or LPLA and any entity concerning the manufacture, importation or sale of LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, at least in part due to AUO's overly broad definition of the term "relating to." LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents

DEFENDANT LPLA's OBJECTIONS TO
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

- 46 -

07-C-0137-S

pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Agreements including, for example, joint venture, partnership, ownership relationship, contractual relationships, between LPL and/or LPLA and any entity concerning the manufacture, importation or sale of LCD Modules for the U.S. market."

REQUEST NO. 105: All documents relating to the relationship between LPLA and LPLA.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because the term "relationship" is vague and ambiguous. For purposes of responding to this Request, LPLA interprets the term "relationship" to mean "ownership relationship." Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 106: All documents that reflect any agreement, or proposed agreement, between on [*sic*] LPL and/or LPLA and any other entity to manufacture, sell or license LCD Modules in the United States.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the terminology used is vague and ambiguous. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 107: All documents that reflect any agreement, or proposed agreement, between on [*sic*] LPL and/or LPLA and any other entity to manufacture, sell or license LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the terminology used is vague and ambiguous. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. LPLA will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 108: All documents and things relating to any document retention plan or destruction policy or program that you now have in place or had in place in the past relating to any documents or things responsive to any of AUO's requests for production.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 109: All minutes or records of meetings of your directors, officers or employees where LCD Modules were discussed.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPLA objects to this Request because it is overly broad, unduly burdensome, and harassing, in that it asks for a company whose principal business is the manufacture and sale of LCD products to produce all minutes and records of meetings regarding LCD products. LPLA further objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPLA's defenses thereto. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 110: All minutes or records of meetings of your directors, officers or employees where the '629 patent was discussed.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 111: All minutes or records of meetings of your directors, officers or employees where the '160 patent was discussed.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 112: All minutes or records of meetings of your directors, officers or employees where the '781 patent was discussed.

ANSWER: LPLA objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 113: Documents describing the components, modules, circuitry, or functionality included within any LCD Modules or used in conjunction with any LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad, unduly burdensome, and designed to harass, in that it asks for the production of all technical documents for LPLA's LCD Modules and for any technology used in conjunction with LPLA's LCD Modules. Given the foregoing, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 114: Documents describing the optical characteristics of any LCD Modules, including but not limited to brightness, luminescence, and response time.

ANSWER: Without some limitation, AUO's request for all "[d]ocuments describing the optical characteristics of any LCD Modules" is overly broad, destined to result in the production of duplicative and extraneous documents, and is harassing and unduly burdensome. LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 115: Documents describing the interface or connection between the source of a input video signal (for example, personal computer, cable box, DVD player, video game console, etc.) and the LCD Modules or circuitry within the LCD Modules.

ANSWER: LPLA objects to this Request because it is vague and ambiguous, in that there is no interface or direct connection between "the source of a input video signal" and the "circuitry within the LCD Modules." LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 116: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality that transfers the input video signal provided by a video signal source (for example, personal computer, cable box, DVD player, video game console, etc.) to the LCD Modules or circuitry within the LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 117: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality that stores video signal information, including but not limited to brightness and luminescence, related to the video signal received from the video signal source.

ANSWER: LPLA objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or

DEFENDANT LPLA's OBJECTIONS TO                    - 51 -                                      07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 118: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to process, control, modify, modulate, or adjust the video signal information, including but not limited to brightness and luminescence, related to the video signal received from video signal source.

ANSWER: LPLA objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 119: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to determine the voltage that is applied to each cell, pixel, or sub-pixel in a LCD Module.

ANSWER: LPLA objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPLA further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections,

LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 120: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to generate an output video signal, based on the video signal information received from the video signal source.

ANSWER: LPLA objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 121: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality for outputting a video signal information to the circuitry that drives the cells, pixels, or sub-pixels in a LCD Module.

ANSWER: LPLA objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPLA further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 122: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality related to driving the cells, pixels, or sub-pixels in a

LCD Module based on video signal information, including but not limited to brightness and luminescence, received from the video signal source.

ANSWER: LPLA objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPLA further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 123: Documents describing the solutions, features, components, modules, circuitry, software, algorithms, code, or functionality used to implement Over Driving Circuit, overdrive, or over-voltage functionality in the LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 124: Documents describing solutions, features, components, modules, circuitry, software, algorithms, code, or functionality in LCD Modules that are designed to reduce or improve the response time in LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPLA's OBJECTIONS TO                        - 54 -                                07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 125: Documents describing solutions, features, components, modules, circuitry, software, algorithms, code, or functionality in LCD Modules that are designed to address problems with displaying moving images associated with slow LCD Module response times.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 126: Documents describing the solutions, features, components, modules, circuitry, software, algorithms, code, or functionality related to controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 127: Documents relating to any use of lookup tables and/or databases of settings used conjunction with implementation of Over Driving Circuit, overdrive or over-voltage functionality in a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 128: Documents relating to any use of lookup tables and/or databases of settings used in conjunction with solutions, features, components, modules, circuitry, software, algorithms, code, or functionality related to controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 129: All contracts and/or purchase orders between you and Technology Leaders & Innovators, Inc.

ANSWER: LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or

control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents. With respect to purchase orders, LPLA will produce representative purchase orders between LPLA and Technology Leaders & Innovators, Inc.

REQUEST NO. 130: All communications (including, but not limited to, e-mail) between you and Technology Leaders & Innovators, Inc. relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 131: All communications (including, but not limited to, e-mail) between you and Technology Leaders & Innovators, Inc.

ANSWER: LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving

these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 132: All documents relating to or describing products and/or technology provided by Technology Leaders & Innovators, Inc. to LPL and/or LPLA.

ANSWER: LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents describing products and/or technology provided by Technology Leaders & Innovators, Inc. to LPL and/or LPLA."

REQUEST NO. 133: All contracts and/or purchase orders between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and

without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Contracts and representative purchase orders between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware used in connection with Over Driving Circuit or overdrive of a LCD Module."

REQUEST NO. 134: All communications between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Relevant communications between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit or overdrive of a LCD Module."

REQUEST NO. 135: All documents relating to or describing products and/or technology provided to LPL and/or LPLA by any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module..

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 136: All documents that refer or relate to the architecture, structure, or operation of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, without some limiting definition, AUO's request for "[a]ll documents that refer or related to the architecture, structure, or operation of" any LPLA LCD Module is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 137: All specifications or other documents having technical descriptions or writings concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. Furthermore, AUO's request for any documents that have technical descriptions of LPLA's LCD products, without some further limitation, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 138: All technical reference manuals, operations manuals, system manuals, technical specification, fabrication specifications, drawings and/or other like documents, concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, AUO's request for any documents that have technical descriptions of LPLA's LCD products, without some further limitation, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 139: All documents depicting and/or describing the frames of any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects because the term "frame" is undefined, vague, and ambiguous. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections,

DEFENDANT LPLA's OBJECTIONS TO                      - 61 -                                07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 140: All documents depicting and/or describing the bezels of any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects because the term "bezels" is undefined, vague, and ambiguous. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 141: All documents depicting and/or describing any connection of frames and bezels of any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects because the terms "frames" and "bezels" are undefined, vague, and ambiguous. LPLA objects to this Request to the extent that it requests documents that are not in LPLA's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 142: All instruction manuals, user manuals, programming manuals, data sheets, data books, specification sheets, and other like documents, concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER:    LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit.    Furthermore, AUO's request for all instruction manuals, user manuals, programming manuals, and similarly broad categories of documents, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome.  Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request.  If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 143: All documents that refer or relate to the research, design, or development, of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER:    LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit.  Furthermore, AUO's request for all documents that "relate to" any research, design, or development in the field of liquid crystal displays, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome.  Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request.  If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 144: Documents relating to or describing the manufacture, fabrication, assembly, or construction of a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER:    LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPLA's OBJECTIONS TO                    - 63 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

Patents-in-Suit. LPLA further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Furthermore, AUO's request for all documents that "relate to" the manufacture of a liquid crystal substrate, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 145: Documents relating to or describing and/or depicting the patterning, creation, or incorporation of electrically conductive patterns on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the term "electrically conductive patterns" is undefined, vague, and ambiguous. LPLA further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 146: Documents relating to or describing the patterning, creation, use, benefit of, or incorporation of a Dummy Conductive Pattern on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 147: Documents relating to or describing the manufacture, construction, or formation of an insulating structure included in the fabrication, manufacture, assembly, or construction of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects to this Request because the term "insulating structure" is undefined, vague, and ambiguous. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 148: Documents describing the patterning, formation, or deposition of one or more thin-film-transistors on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects on the grounds that the manner by which LPLA patterns, forms, or deposits thin-film transistors on a liquid crystal display substrate does not appear to be relevant to any of AUO's asserted claims. If AUO would explain how that subject matter is properly discoverable under Fed. R. Civ. P. 26, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 149: Documents relating to or describing the patterning, formation, or deposition of one or more wires or signal propagation pathways on an insulating substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because the term "signal propagation pathways" is undefined, vague, and ambiguous. LPLA further objects to this Request because the term "insulating substrate" is undefined, vague, and ambiguous. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 150: Documents relating to or describing the patterning, formation, or deposition of one or more Connection Pads on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because the term "Connection Pads," as defined by AUO, is vague and ambiguous. LPLA further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 151: Documents relating to or describing the electrical connection, or lack thereof, for each electrically conductive pattern included on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPLA objects to this Request because the term "electrically conductive patterns" is undefined, vague, and ambiguous. LPLA further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPLA objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 152: Documents relating to or describing the patterning, formation, or deposition of pixel electrodes on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA further objects on the grounds that the manner by which LPLA patterns, forms, or deposits thin-film transistors on a liquid crystal display substrate does not appear to be relevant to any of AUO's asserted claims. If AUO would explain how that subject matter is properly discoverable under Fed. R. Civ. P. 26, LPLA will consider AUO's redefined request and respond appropriately.

REQUEST NO. 153: All Verilog, VHDL, photomasks, or like material, defining or describing the structures patterned, formed, created or deposited on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

- 67 -

ANSWER: LPLA objects on the grounds that documents and information sought by this Request are highly confidential, trade secret information. LPLA further objects on the grounds that LPLA does not have this information, nor is this information in LPLA's custody or control.

REQUEST NO. 154: All communications between LPL and/or LPLA and any United States distributors of LPL and/or LPLA products.

ANSWER: LPLA objects to this Request on the grounds that the term "LPL and/or LPLA products" is undefined, vague, and ambiguous. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and these non-parties, without any focus upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 155: All agreements and/or contracts between LPL and/or LPLA and LG Electronics relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party LG Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential

DEFENDANT LPLA's OBJECTIONS TO                     - 68 -                                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 156: All communications between LPL and/or LPLA and LG Electronics relating to LCD Modules.

ANSWER:

LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party LG Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 157: All agreements and/or contracts between LPL and/or LPLA and Philips Electronics relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Philips Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case.

LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 158: All communications between LPL and/or LPLA and Philips Electronics relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Philips Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 159: All agreements and/or contracts between LPL and/or LPLA and Dell relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Dell, without any attempt to focus the discovery upon documents,

DEFENDANT LPLA's OBJECTIONS TO                    - 70 -                    07-C-0137-S
AU OPTRONICS CORP'S SECOND SET OF
DOCUMENT REQUESTS (NOS. 25-166)

information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 160: All communications between LPL and/or LPLA and Dell relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Dell, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 161: All agreements and/or contracts between LPL and/or LPLA and Hewlett-Packard relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications

between LPLA and non-party Hewlett-Packard, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 162: All communications between LPL and/or LPLA and Hewlett-Packard relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Hewlett-Packard, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 163: All agreements and/or contracts between LPL and/or LPLA and Toshiba relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Toshiba, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 164: All communications between LPL and/or LPLA and Toshiba relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Toshiba, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 165: All agreements and/or contracts between LPL and/or LPLA and Apple relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Apple, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 166: All communications between LPL and/or LPLA and Apple relating to LCD Modules.

ANSWER: LPLA objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPLA objects on the grounds that AUO seeks any and all communications between LPLA and non-party Apple, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPLA objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPLA. LPLA objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPLA will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

Dated: May 21, 2007

Respectfully submitted,

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Counsel for Defendants LG.Philips LCD Co., Ltd.
and LG.Philips LCD America*

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

    Plaintiff,

  v.

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

    Defendants.

Civil Action No.  07-C-0137-S

## LG.PHILIPS LCD CO., LTD.'s OBJECTIONS TO AUO OPTRONICS CORPORATION'S FIRST SET OF DOCUMENTS REQUESTS (NOS. 1-142)

  Defendant LG.Philips LCD Co., Ltd. ("LPL"), by counsel and pursuant to Fed. R. Civ. P.

34, objects and responds as follows to Plaintiff AU Optronics Corporation's ("AUO's") First Set

of Documents Requests (Nos. 1 through 142).

### PRELIMINARY STATEMENT

  1.  LPL makes the objections herein ("Responses") based solely on its current

knowledge, understanding, and belief as to the facts and the information available to it as of the

date of the Responses.  Additional discovery and investigation may lead to additions to, changes

in, or modifications of these Responses.  By producing documents in response to these Requests,

LPL reserves the right to produce subsequently discovered information and to introduce such

subsequently discovered information at the time of any hearing or trial in this action.

  2.  In the event LPL produces documents in response to these Requests, LPL does

not admit to their authenticity, relevance, or admissibility at trial or any other proceedings in this

case. LPL will provide such documents without prejudice to its right to object to the introduction of such documents at trial or any other proceeding in this case.

3.    LPL does not waive any objection made in these Responses, nor any claim of privilege, whether expressly asserted or not, by providing any information or identifying any document or thing in response to the Requests. Any inadvertent disclosure of information or inadvertent identification or production of any document shall not constitute waiver of any applicable privilege as to the document identified or produced by LPL.

4.    LPL incorporates by reference the following General Objections within each individual "ANSWER" to each Request. All Responses to the Requests are made subject to each and without waiving any of such objections. LPL's specific Objections for any Request are not intended to preclude, override, or withdraw any of the General Objections to that Request.

5.    Given AUO has issued identical document requests to each of LPL and LPLA, and so as to avoid duplicative document production, LPL adopts as its own the documents produced by its subsidiary LG.Philips LCD America in response to AUO's Second Set of Document Requests to LPLA.

## GENERAL OBJECTIONS

These general objections apply to each Request and thus, for convenience, are not repeated after each Request, but rather are set forth herein and are hereby incorporated into each individual "ANSWER.".

1.    LPL objects to each Request to the extent it seeks documents subject to the attorney-client privilege, work product doctrine, and other applicable privileges or immunities from discovery. LPL does not by any response waive any claim of attorney client or work product privilege.

2.      LPL objects to these Requests to the extent that they request documents or things not relevant to the subject matter of the above titled action, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      LPL objects to these Requests to the extent that they lack any appropriate limitation as to geographic scope, making such Requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

4.      LPL objects to these Requests to the extent that they request documents other than those that are in its possession, custody, or control, as such Requests are beyond the requirements of the Federal Rules of Civil Procedure.

5.      LPL objects to each Request to the extent it seeks discovery of documents containing trade secrets or other confidential research, development, or commercial information and will only produce such documents in accordance with the Protective Order entered in this action or, prior to entry of such an order, the Court's April 19, 2007 Preliminary Pre-Trial Conference Order. To the extent that any Request calls for the production of confidential documents of third parties that are in LPL's possession, LPL will attempt to obtain the consent of such third party prior to production. If LPL cannot obtain such consent, LPL will not produce the documents.

6.      LPL objects to these Requests to the extent that they request documents that are: a) not in LPL's possession; b) already in AUO's possession; c) in the public domain; or d) more easily obtainable from other sources by the exercise of ordinary due diligence as required by any applicable rule, as unduly burdensome, oppressive, and designed to harass.

7.      LPL objects to these Requests to the extent they contain no date or time limitation to limit the request to documents that are properly discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit (the oldest of which issued in February 2004) and LPL's defenses thereto. LPLA will respond to this Request by producing responsive documents for LCD Modules made or sold from the relevant patent's issuance date to the filing date of the Complaint.

8.      LPL objects to these Requests to the extent they require the production of "all" documents in a category or group, without further limitation to bring the Request within the scope of proper discovery pursuant to Fed. R. Civ. P. 26 or to limit the Request to information pertinent to the asserted claims of the Patents-in-Suit.

9.      LPL objects to these Requests to the extent they seek documents, things, or information beyond the scope of discovery relevant to the asserted claims of the Patents-in-Suit.

10.     LPL objects to AUO's "Definitions" and "Instructions" to the extent that they purport to impose obligations not required under the Federal Rules of Civil Procedure.

11.     LPL objects to Definition 1 of "AUO" because it is overly broad, unduly burdensome, vague, and ambiguous.

12.     LPL objects to Definition 2 of "LPL" because it is overly broad, unduly burdensome, and improperly includes a variety of persons and entities over which LPL has no control, and because it includes LPL's "attorneys" as parties, which implicates the attorney-client privilege and work product doctrine.

13.    LPL objects to Definition 3 of "LPLA" because it is overly broad, unduly burdensome, vague, ambiguous, and because it includes LPLA's "attorneys" as parties, which implicates the attorney-client privilege and work product doctrine.

14.    LPL objects to Definition 8 of "LCD Modules" because the term "substantially the same as" is vague and ambiguous. LPL further objects because the term is overly broad and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

15.    LPL objects to Definition 9 of "Connection Pad" because the term, which is defined as including any "conductive pattern. . . operable to facilitate the transmission of . . . signals from a signal source to . . . [any] structure included on the liquid crystal substrate," is vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence. LPL further objects because the term is overly broad and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

16.    LPL objects to Definition 10 of "Dummy Conductive Pattern" because the term is vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence.

17.    LPL objects to Definition 11 of "communications" to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

18.    LPL objects to Definition 13 of "document" to the extent it is inconsistent with either or both of the Federal Rules of Civil Procedure, and LPL's obligations thereunder, or with

the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

19.    LPL objects to Definition 16 of "relating to," "relate to," and "related to," which purports to cover (for example and not by way of limitation) indirect allusions and indirect references, as vague, ambiguous, and overly broad, making its (or their) use unduly burdensome and unlikely to lead to the discovery of admissible evidence.

20.    LPL objects to Definition 20 of "Over Driving Circuit," which incorporates by reference a brief definition of "Over Driving Circuit" from LPL's website, as vague, ambiguous, and overly broad, making its use unduly burdensome and unlikely to lead to the discovery of admissible evidence. LPL further objects because the term is overly broad and burdensome, in that it bears no limitation in breadth proportionate to or tailored to the scope of the Patents-in-Suit.

21.    LPL objects to Instructions 21, 22, 23, 24, and 25 because they impose unreasonable burdens not required by the Federal Rules of Civil Procedure. LPL will respond to these Requests pursuant to Fed. R. Civ. P. 26 and 34.

22.    LPL objects to Instruction 26, regarding the manner of production of electronic discovery, because the topic is more appropriately addressed and resolved by agreement of the Parties' Rule 26(f) Conference Report.

## DOCUMENT REQUESTS

REQUEST NO. 1. Organizational charts for Defendant and other documents sufficient to show the persons at LPL and/or LPLA responsible for the following activities relating to LCD Modules:

    (a)    research;

    (b)    development;

(c)     manufacturing;

(d)     promotion;

(e)     marketing;

(f)     sales;

(g)     technical customer support;

(h)     quality control; and

(i)     competitive product analysis.

ANSWER:     LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all of LPL's organizational charts on the topic of research and development of LCD Modules, without limiting the breadth or reach of the request to the scope of material relevant to the Patents-in-Suit). Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 2: With respect to sales and offers for sale by Defendant of LCD Modules in the United States, documents sufficient to ascertain for each LCD Module, the:

(a)     order date;

(b)     shipping and invoice date;

(c)     identity of the LCD Module shipped;

(d)     price charged by LPL and/or LPLA to the immediate customer or distributor of each LCD Module;

(e)     gross and net margin realized by LPL and/or LPLA on sales of each LCD Module;

(f)     LPL and LPLA's fixed and variable cost for each LCD Module; and

(g)     identity and geographical location of distributors of each LCD Module.

ANSWER:     LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPL's OBJECTIONS TO                          - 7 -                                          07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

Patents-in-Suit. LPL further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 3: With respect to sales and offers for sale by Defendant of LCD Modules, documents sufficient to ascertain for each LCD Module, the:

    (a)    order date;

    (b)    shipping and invoice date;

    (c)    identity of the LCD Module shipped;

    (d)    price charged by LPL and/or LPLA to the immediate customer or distributor of each LCD Module;

    (e)    gross and net margin realized by LPL and/or LPLA on sales of each LCDModule;

    (f)    LPL and LPLA's fixed and variable cost for each LCD Module; and

    (g)    identity and geographical location of distributors of each LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents

DEFENDANT LPL's OBJECTIONS TO        - 8 -        07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 4: All documents relating to research of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "research" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 5: All documents relating to design of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "design" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-

in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 6: All documents relating to development of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "development" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 7: All documents relating to testing of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "testing" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Given the foregoing deficiencies, LPL objects and will not produce documents

in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 8: All documents relating to manufacture of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "manufacture" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 9: All documents relating to advertising of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 10: All documents relating to offers for sale of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPL's OBJECTIONS TO          - 11 -                                07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

Patents-in-Suit. LPL further objects to this Request as unduly burdensome to the extent it seeks

the production of documents already in the public domain. LPL further objects to this Request

because use of AUO's definition of "relating to" makes the Request overly broad and unduly

burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents

that are subject to a confidentiality agreement with a third party or that are proprietary or

confidential information of a third party that is in the possession, custody, or control of LPL.

Subject to and without waiving these objections, LPL will produce non-privileged, responsive,

relevant documents, to the extent such documents exist.

REQUEST NO. 11: All documents relating to importation into the United States of LCD
Modules, including but not limited to LCD Modules incorporated within another device, by
anyone.

ANSWER:    LPL objects to this Request because it is overly broad and unduly

burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. LPL further objects to this Request as vague and ambiguous because the term

"importation" is undefined. LPL interprets this word to mean "importation" as defined in the

case-law interpreting 35 U.S.C. § 271. LPL further objects to this Request because use of

AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL

further objects to this Request as overly broad and unduly burdensome in that purports to require

the production of, *inter alia*, each and every order, invoice, and shipping log for every LCD

Module ever sold by LPL. LPL objects to this Request to the extent that it seeks the disclosure

of documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or

control of LPL. Subject to and without waiving these objections, LPL will produce non-

privileged, responsive, relevant documents, to the extent such documents exist. With respect to

DEFENDANT LPL's OBJECTIONS TO              - 12 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

orders, invoices, shipping logs, and comparable documents, LPL will produce representative orders, invoices, and shipping logs.

REQUEST NO. 12: All documents relating to use of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as vague and ambiguous because the term "use" is undefined. LPL interprets this word to mean "use" as defined in the case-law interpreting 35 U.S.C. § 271. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain, such as documentation of how non-parties use LCD Modules. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 13: All documents relating to research of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "research" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ.

P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 14: All documents relating to design of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "design" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 15: All documents relating to development of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

- 14 -                07-C-0137-S

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "development" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 16: All documents relating to testing of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "testing" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or

control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL requests that AUO limit and restate this document request, in a manner to cure the foregoing deficiencies, or provide explanation for the relevance of LPL's testing of LCD modules to its claims, so as to allow LPL to understand the request and produce relevant and properly discoverable documents.

REQUEST NO. 17: All documents relating to manufacture of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the term "manufacture" is vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 18: All documents relating to advertising of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

DEFENDANT LPL's OBJECTIONS TO                    - 16 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 19: All documents relating to offers for sale of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents

pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 20: All documents relating to use of LCD Modules, including but not limited to LCD Modules incorporated within another device, by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL further objects to this Request as vague and ambiguous because the term "use" is undefined. LPL interprets this word to mean "use" as defined in the case-law interpreting 35 U.S.C. § 271. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to "use of LCD Modules" in the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 21: Any documents related to agreements to indemnify, compensate, pay money or give credit to LPL and/or LPLA should it be charged with patent infringement related to LCD Modules.

DEFENDANT LPL's OBJECTIONS TO                    - 18 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

ANSWER:    LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request as overly broad and unduly burdensome, in that AUO's request for indemnity or similar documents is not limited to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. Subject to the foregoing objections, and subject to any documents discovered in LPL's continuing research, LPL refers AUO to LPL's Initial Disclosures, by which LPL informed AUO that it has discovered no insurance, indemnity, or comparable documents pertinent to AUO's claims in this case.

REQUEST NO. 22: Any and all agreements which are alleged to give rise to a license to LPL and/or LPLA to manufacture, use, sell, or offer to sell any product under the '629, '781, and/or '160 patent.

ANSWER: LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. LPL objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 23: All documents which refer or relate to any validity, enforceability or infringement search, study or opinion relating to the '629 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 24: All documents which relate to any validity, enforceability or infringement search, study or opinion relating to the '781 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 25: All documents which relate to any validity, enforceability or infringement search, study or opinion relating to the '160 patent, including all references relied upon to form the basis for such opinion, if any.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 26: All documents and things that refer or relate to the subject matter disclosed or claimed in the '629 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '629 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "Documents and things that refer to the '629 Patent."

REQUEST NO. 27: All documents that refer or relate to any meeting, discussion, or communication concerning the '629 patent or the subject matter disclosed or claimed therein.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '629 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPL will produce "documents and things that refer to any meeting, discussion, or communication concerning the '629 Patent."

REQUEST NO. 28: To the extent not requested by another request for production, all documents that refer or relate to the '629 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 29: All documents and things that refer or relate to the subject matter disclosed or claimed in the '781 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '781 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "documents and things that refer to the '781 Patent."

REQUEST NO. 30: All documents that refer or relate to any meeting, discussion, or communication concerning the '781 patent or the subject matter disclosed or claimed therein.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '781 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPL will produce "all

documents and things that refer to any meeting, discussion, or communication concerning the '781 Patent."

REQUEST NO. 31: To the extent not requested by another request for production, all documents related to the '781 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 32: All documents and things that refer or relate to the subject matter disclosed or claimed in the '160 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the subject matter of the '160 patent, which, using AUO's definition of "relate to," would capture any documents that allude (directly or indirectly) to liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following modified request, "documents and things that refer to the '160 Patent."

REQUEST NO. 33: All documents that refer or relate to any meeting, discussion, or communication concerning the '160 patent or the subject matter disclosed or claimed therein.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome (for example, AUO seeks all documents that relate to the

subject matter of the '160 patent, which, using AUO's definition of "relate to," would capture documents concerning any discussion of liquid crystal displays). LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving the foregoing objections, LPL will produce "documents and things that refer to any meeting, discussion, or communication concerning the '160 Patent."

REQUEST NO. 34: To the extent not requested by another request for production, all documents related to the '160 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or already in AUO's possession. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 35: Any documents related to any prior art related to the '629 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related to" the '629 patent. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '629 patent."

REQUEST NO. 36: Any documents related to any prior art related to the '781 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related to" the '781 patent. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '781 patent."

REQUEST NO. 37: Any documents related to any prior art related to the '160 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome, to the extent that (given the breadth of AUO's definition of "relate to") it requires the production of any documents "that relate to" any prior art "related to" the '160 patent. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Prior art related to the '160 patent."

REQUEST NO. 38: All documents which relate to or are alleged to support any bases relied upon by LPL and/or LPLA to avoid liability in the present litigation.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because the term "avoid liability" is vague and ambiguous. LPL objects to this Request because it is duplicative of several other Requests issued to LPL by AUO. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 39: All documents relating to any market study or analysis on LCD Modules performed for or commissioned by LPL and/or LPLA.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because the term "market study or analysis" is vague and ambiguous. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 40: Any and all documents and things related to the conception, development, or design of each LCD Module, where such LCD Module was ever ultimately sold or offered for sale in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the terms "conception," "development," and "design" are vague and ambiguous and that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 41: All documents related to LPL and/or LPLA's plans and strategy for marketing LCD Modules in the United States.

ANSWER:

LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents alluding to, referring to, or concerning, whether directly or indirectly, LPL's marketing plans. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents that describe LPL and/or LPLA's plans and strategy for marketing LCD Modules in the United States."

REQUEST NO. 42: All documents related to LPL and/or LPLA's plans and strategy for marketing LCD Modules.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to LPL's marketing plans. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain.

DEFENDANT LPL's OBJECTIONS TO               - 27 -                              07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents that describe LPL and/or LPLA's plans and strategy for marketing LCD Modules."

REQUEST NO. 43: All LPL and/or LPLA price lists, sale brochures and advertising material related to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to LPL's price lists or sales brochures. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such

documents exist, that are responsive to the Request "LPL and/or LPLA price lists, sale brochures and advertising material for LCD Modules."

REQUEST NO. 44: All documents related to the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because a intellectual property holder does not "license" LCD Modules, making the Request vague and ambiguous. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPL obtains revenues from the manufacture, sale, or use of LCD Modules. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules in the United States."

REQUEST NO. 45: All documents related to LPL and/or LPLA's market share in the manufacture and sale of LCD Modules in the United States.

ANSWER: LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA sells LCD Modules in the United States. Subject to and without waiving these objections, LPL will produce non-privileged,

-29-                07-C-0137-S

responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing LPL and/or LPLA's market share in the manufacture and sale of LCD Modules in the United States."

REQUEST NO. 46: All documents related to the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPL makes LCD Modules. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing the revenues LPL and/or LPLA has received from the manufacture, sale, use, or licensing of LCD Modules."

REQUEST NO. 47: All documents related to LPL and/or LPLA's market share in the manufacture and sale of LCD Modules.

ANSWER: LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request

DEFENDANT LPL's OBJECTIONS TO                      - 30 -                                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. As submitted, this Request would require production of any documents that simply allude, whether directly or indirectly, to the fact that LPLA sells LCD Modules. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents showing LPL and/or LPLA's market share in the manufacture and sale of LCD Modules."

REQUEST NO. 48: At least two (2) samples of each model of LCD Module designed, manufactured, tested, used, marketed, sold, and/or offered for sale in the United States and/or imported into the United States by anyone.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to AUO's request for samples of all LCD Modules designed or tested, regardless of whether those LCD Modules were made, used, sold, or offered for sale in, or imported into, the United States. Given the foregoing deficiencies, and significant expense involved in producing the requested samples, LPL objects and will not produce two samples of every LCD Modules it has ever designed, manufactured, tested, used, marketed, or sold. LPL is willing to meet and confer with AUO to discuss what samples are properly discoverable and relevant to AUO's prosecution of this action.

REQUEST NO. 49: All documents that refer to or reference the present litigation.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 50: All documents and things related to the present litigation which have been made available by LPL and/or LPLA to any financial analyst, institutional investor, brokerage house, investment firm, securities firm, or banking institution.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL also objects to this Request to the extent it seeks documents and things generated after the filing of this litigation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the following Request, "Documents made available by LPL and/or LPLA to any financial analyst, institutional investor, brokerage house, investment firm, securities firm, or banking institution regarding the present litigation."

REQUEST NO. 51: Any insurance agreement or policy under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment, indemnify, or reimburse for payments made to satisfy a judgment that may be entered in the present litigation.

ANSWER: LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to the foregoing objections, and subject to any documents discovered in LPL's continuing research, LPL refers AUO to LPL's Initial Disclosures, by which LPL informed AUO that it has discovered no insurance, indemnity, or comparable documents pertinent to AUO's claims in this case.

REQUEST NO. 52: All documents related to licenses entered into by LPL and/or LPLA, either as a licensee or licensor, which relate to any liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Licenses entered into by LPL and/or LPLA, either as a licensee or licensor, which relate to any liquid crystal display products. The term "liquid crystal display products" as used

DEFENDANT LPL's OBJECTIONS TO                    - 33 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above."

REQUEST NO. 53: All patent license agreements related to any liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Patent license agreements for liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above."

REQUEST NO. 54: To the extent not produced responsive to other requests for production, all patent license agreements LPL and/or LPLA contends are relevant to the royalty that would be reached as a result of a hypothetical negotiation between parties attempting to grant a license related to liquid crystal display products. The term "liquid crystal display products" as used in this request includes all products utilizing any kind of liquid crystal display technology and is not intended to be limited by the definition of LCD Modules set forth above.

ANSWER: LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 55: All documents related to the subject matter of the present litigation that were prepared by persons LPL and/or LPLA will or may call as an expert witness at trial in this case.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPL objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 56: All documents related to the subject matter of the present litigation that were reviewed by persons LPL and/or LPLA will or may call as an expert witness at trial in this case.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPL objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 57: All communications between LPL and/or LPLA and/or their attorneys on one side and any persons LPL and/or LPLA will or may call as an expert witness at trial in this case on the other side.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPL objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 58: All drafts of any expert reports, exhibits to expert reports, or other expert disclosures created by anyone LPL and/or LPLA will or may call as an expert witness at trial in this case on the other side.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPL objects to this Request to the extent it seeks documents or seeks to impose obligations inconsistent with the Federal Rules of Civil Procedure. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 59: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relate

to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control.    Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 60: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA.

ANSWER:    LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relate to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive

documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 61: All documents (including but not limited to spreadsheets and electronic data from accounting software) that relate to the selling price, manufacturing cost, selling cost, general and administrative expense, gross profit or net profit figures for each LCD Module that has been manufactured, sold or offered for sale by LPL and/or LPLA to any person and/or entity that is in or does any business in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relate to" makes the Request overly broad and unduly burdensome. LPL further objects to this Request as unduly burdensome, to the extent it seeks the production of documents already in the public domain. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States.    Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 62: All documents and things that relate to AUO, including, but not limited to (1) communications to or from Plaintiff and (2) communications about Plaintiff.

ANSWER:  LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine.  LPL objects to this Request because it is overly broad and unduly burdensome, in that it seeks documents and things that bear no limitation in breadth tailored to this lawsuit, whether by subject matter or time limitation. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, in response to the Request, "Documents and things that relate to AUO and this lawsuit, including, but not limited to (1) communications to or from Plaintiff and (2) communications about Plaintiff."

REQUEST NO. 63:  All documents and things identified by, referred to in, or relied upon to answer any of LPL and/or LPLA's responses to any of Plaintiffs interrogatories to LPL and/or LPLA.

ANSWER:

LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine.  LPL objects to this Request to the extent it seeks documents by reference to LPL's answers to interrogatories, and thus LPL incorporates by reference all corresponding objections from those Interrogatories into this response.  Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 64:  All diagrams or drawings or other documents illustrating any LPL and/or LPLA LCD Module or any component thereof.

ANSWER:

LPL objects to this Request in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit.  Furthermore, without some limiting definition, AUO's request for "a[ll] diagrams or drawings" illustrating "any LPL" LCD Module" is extraordinarily broad, destined to result in the production of duplicative and extraneous

DEFENDANT LPL's OBJECTIONS TO                    - 39 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

documents, and is accordingly harassing and unduly burdensome. LPL further objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 65: For LCD Modules that LPL and/or LPLA has sold and/or offered for sale in the United States or has sold and/or offered for sale to any person and/or entity that is in the United States or does any business in the United States, the following documents:

- (a) income statements;
- (b) balance sheets;
- (c) cash flow statements;
- (d) accounting notes;
- (e) periodic financial reports;
- (f) planning reports;
- (g) cost estimations; and
- (h) projections and forecasts.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects on the grounds that several of the categories of documents requested by AUO, including cash flow statements and cost estimations, are irrelevant to any claim, defense, or theory in this case. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 66: For LCD Modules that LPL and/or LPLA has sold and/or offered for sale, the following documents:

- (a)    income statements;

- (b)    balance sheets;

- (c)    cash flow statements;

- (d)    accounting notes;

- (e)    periodic financial reports;

- (f)    planning reports;

- (g)    cost estimations; and

- (h)    projections and forecasts.

ANSWER:    LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects on the grounds that several of the categories of documents requested by AUO, including cash flow statements and cost estimations, are irrelevant to any claim, defense, or theory in this case. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents providing summary data for the requested categories.

REQUEST NO. 67: Documents relating to when LPL and/or LPLA first became aware of the '629 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these

DEFENDANT LPL's OBJECTIONS TO                -41-                                07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 68: Documents relating to when LPL and/or LPLA first became aware of the '781 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 69: Documents relating to when LPL and/or LPLA first became aware of the '160 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 70: Documents related to communications from customers or clients of LPL and/or LPLA soliciting, suggesting, or confirming orders for LCD Modules.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 71: Documents related to the flow of LCD Modules from LPL and/or LPLA to end users in the United States.

ANSWER: LPL objects to this Request because the term "flow of" is vague and ambiguous. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL further objects to this Request because use of AUO's definition of "related to" makes the Request overly broad and unduly burdensome. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 72: Documents related to the flow of LCD Modules from LPL and/or LPLA to end users.

ANSWER: LPL objects to this Request because the term "flow of" is vague and ambiguous. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL further objects to this Request because use of AUO's definition of "related to" makes the

DEFENDANT LPL's OBJECTIONS TO            - 43 -            07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

Request overly broad and unduly burdensome. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 73: All documents not produced in response to another request for production that are identified and referred to in Defendant's initial disclosures submitted in accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.

ANSWER: LPL objects to this Request to the extent it seeks documents that are already within AUO's possession, custody, or control or which are more readily obtained from a third party. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 74: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '629 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 75: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '160 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public

domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 76: Any and all documents on which LPL and/or LPLA relies or intends to rely to support its construction of the claims of the '781 patent.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 77: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '629 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 78: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '160 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 79: Any and all patents, patent applications, and/or other documents which LPL and/or LPLA contends are "material" to the claims of the '781 patent, as that term is defined under 37 C.F.R. § 1.56.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL further objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 80: All documents relating to the negotiation, establishment, and operation of any relationship whatsoever (including, for example, joint venture, partnership, ownership relationship, contractual relationships) between LPL and/or LPLA and any entity concerning the manufacture, importation or sale of LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, at least in part due to AUO's overly broad definition of the term "relating to." LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, to the following Request, "Agreements including, for example, joint venture, partnership, ownership relationship, contractual relationships, between LPL and/or LPLA and any entity concerning the manufacture, importation or sale of LCD Modules for the U.S. market."

REQUEST NO. 81: All documents relating to the relationship between LPL and LPLA.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because the term "relationship" is vague and ambiguous. For purposes of responding to this Request, LPL interprets the term "relationship" to mean "ownership relationship." Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 82: All documents that reflect any agreement, or proposed agreement, between on [*sic*] LPL and/or LPLA and any other entity to manufacture, sell or license LCD Modules in the United States.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the terminology used is vague and ambiguous. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 83: All documents that reflect any agreement, or proposed agreement, between on [*sic*] LPL and/or LPLA and any other entity to manufacture, sell or license LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the terminology used is vague and ambiguous. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or

confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. LPL will respond to this Request by producing responsive documents pertaining to activities in or directed to the United States. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 84: All documents and things relating to any document retention plan or destruction policy or program that you now have in place or had in place in the past relating to any documents or things responsive to any of AUO's requests for production.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 85: All minutes or records of meetings of your directors, officers or employees where LCD Modules were discussed.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request because it is overly broad, unduly burdensome, and harassing, in that it asks for a company whose principal business is the manufacture and sale of LCD products to produce all minutes and records of meetings regarding LCD products. LPL further objects to this Request because it lacks any appropriate limitation as to geographic scope, so as to limit the Request to documents discoverable pursuant to Fed. R. Civ. P. 26. This suit concerns AUO's claims of infringement of AUO's Patents-in-Suit, which are United States patents, and LPL's defenses thereto. To the

extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 86: All minutes or records of meetings of your directors, officers or employees where the '629 patent was discussed.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 87: All minutes or records of meetings of your directors, officers or employees where the '160 patent was discussed.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 88: All minutes or records of meetings of your directors, officers or employees where the '781 patent was discussed.

ANSWER: LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 89: Documents describing the components, modules, circuitry, or functionality included within any LCD Modules or used in conjunction with any LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad, unduly burdensome, and designed to harass, in that it asks for the production of all technical documents for LPL's LCD Modules and for any technology used in conjunction with LPL's LCD Modules. Given the

foregoing, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 90: Documents describing the optical characteristics of any LCD Modules, including but not limited to brightness, luminescence, and response time.

ANSWER: Without some limitation, AUO's request for all "[d]ocuments describing the optical characteristics of any LCD Modules" is overly broad, destined to result in the production of duplicative and extraneous documents, and is harassing and unduly burdensome. LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 91: Documents describing the interface or connection between the source of a input video signal (for example, personal computer, cable box, DVD player, video game console, etc.) and the LCD Modules or circuitry within the LCD Modules.

ANSWER: LPL objects to this Request because it is vague and ambiguous, in that there is no interface or direct connection between "the source of a input video signal" and the "circuitry within the LCD Modules." LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 92: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality that transfers the input video signal provided by a video signal source (for example, personal computer, cable box, DVD player, video game console, etc.) to the LCD Modules or circuitry within the LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 93: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality that stores video signal information, including but not limited to brightness and luminescence, related to the video signal received from the video signal source.

ANSWER: LPL objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 94: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to process, control, modify, modulate, or adjust the video signal information, including but not limited to brightness and luminescence, related to the video signal received from video signal source.

ANSWER: LPL objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or

tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 95: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to determine the voltage that is applied to each cell, pixel, or sub-pixel in a LCD Module.

ANSWER: LPL objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPL further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 96: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality used to generate an output video signal, based on the video signal information received from the video signal source.

ANSWER: LPL objects to this Request because it is vague and ambiguous. If this Request is interpreted as applying to LCD Modules, LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 97: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality for outputting a video signal information to the circuitry that drives the cells, pixels, or sub-pixels in a LCD Module.

ANSWER: LPL objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPL further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 98: Documents describing the components, modules, circuitry, software, algorithms, code, or functionality related to driving the cells, pixels, or sub-pixels in a LCD Module based on video signal information, including but not limited to brightness and luminescence, received from the video signal source.

ANSWER: LPL objects to this Request because the term "cell" is undefined, vague, and ambiguous. LPL further objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 99: Documents describing the solutions, features, components, modules, circuitry, software, algorithms, code, or functionality used to implement Over Driving Circuit, overdrive, or over-voltage functionality in the LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the terms "overdrive" and "over-voltage

functionality" are vague and ambiguous. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 100: Documents describing solutions, features, components, modules, circuitry, software, algorithms, code, or functionality in LCD Modules that are designed to reduce or improve the response time in LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 101: Documents describing solutions, features, components, modules, circuitry, software, algorithms, code, or functionality in LCD Modules that are designed to address problems with displaying moving images associated with slow LCD Module response times.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 102: Documents describing the solutions, features, components, modules, circuitry, software, algorithms, code, or functionality related to controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 103: Documents relating to any use of lookup tables and/or databases of settings used conjunction with implementation of Over Driving Circuit, overdrive or over-voltage functionality in a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 104: Documents relating to any use of lookup tables and/or databases of settings used in conjunction with solutions, features, components, modules, circuitry, software, algorithms, code, or functionality related to controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the

asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 105: All contracts and/or purchase orders between you and Technology Leaders & Innovators, Inc.

ANSWER: LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents. With respect to purchase orders, LPL will produce representative purchase orders between LPL and Technology Leaders & Innovators, Inc.

REQUEST NO. 106: All communications (including, but not limited to, e-mail) between you and Technology Leaders & Innovators, Inc. relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 107: All communications (including, but not limited to, e-mail) between you and Technology Leaders & Innovators, Inc.

ANSWER: LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 108: All documents relating to or describing products and/or technology provided by Technology Leaders & Innovators, Inc. to LPL and/or LPLA.

ANSWER: LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Documents describing products and/or technology provided by Technology Leaders & Innovators, Inc. to LPL and/or LPLA."

REQUEST NO. 109: All contracts and/or purchase orders between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of

documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Contracts and representative purchase orders between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware used in connection with Over Driving Circuit or overdrive of a LCD Module."

REQUEST NO. 110: All communications between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request because the terms "overdrive" and "over-voltage functionality" are vague and ambiguous. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist, that are responsive to the Request "Relevant

DEFENDANT LPL's OBJECTIONS TO                    - 58 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

communications between you and any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit or overdrive of a LCD Module."

REQUEST NO. 111: All documents relating to or describing products and/or technology provided to LPL and/or LPLA by any entity that provides LPL and/or LPLA with hardware, software, and/or firmware relating to Over Driving Circuit, overdrive, controlling, modifying, modulating, or adjusting the response time of a LCD Module..

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 112: All documents that refer or relate to the architecture, structure, or operation of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, without some limiting definition, AUO's request for "[a]ll documents that refer or related to the architecture, structure, or operation of" any LPL LCD Module is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request.

If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 113: All specifications or other documents having technical descriptions or writings concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, AUO's request for any documents that have technical descriptions of LPL's LCD products, without some further limitation, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 114: All technical reference manuals, operations manuals, system manuals, technical specification, fabrication specifications, drawings and/or other like documents, concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, AUO's request for any documents that have technical descriptions of LPL's LCD products, without some further limitation, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 115: All documents depicting and/or describing the frames of any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects because the term "frame" is undefined, vague, and ambiguous. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 116: All documents depicting and/or describing the bezels of any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects because the term "bezels" is undefined, vague, and ambiguous. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 117: All documents depicting and/or describing any connection of frames and bezels of any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects because the terms "frames" and "bezels" are undefined, vague, and ambiguous. LPL objects to this Request to the extent that it requests documents that are not in LPL's possession, custody, or control. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections,

LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 118: All instruction manuals, user manuals, programming manuals, data sheets, data books, specification sheets, and other like documents, concerning any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, AUO's request for all instruction manuals, user manuals, programming manuals, and similarly broad categories of documents, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 119: All documents that refer or relate to the research, design, or development, of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. Furthermore, AUO's request for all documents that "relate to" any research, design, or development in the field of liquid crystal displays, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 120: Documents relating to or describing the manufacture, fabrication, assembly, or construction of a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Furthermore, AUO's request for all documents that "relate to" the manufacture of a liquid crystal substrate, without some further limitation tailored to the subject-matter of the Patents-in-Suit, is extraordinarily broad, destined to result in the production of duplicative and extraneous documents, and is accordingly harassing and unduly burdensome. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 121: Documents relating to or describing and/or depicting the patterning, creation, or incorporation of electrically conductive patterns on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the term "electrically conductive patterns" is undefined, vague, and ambiguous. LPL further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 122: Documents relating to or describing the patterning, creation, use, benefit of, or incorporation of a Dummy Conductive Pattern on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. To the extent they refer to the subject matter of the asserted claims of the Patents-in-Suit, and subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 123: Documents relating to or describing the manufacture, construction, or formation of an insulating structure included in the fabrication, manufacture, assembly, or construction of any LPL and/or LPLA LCD Modules or any component thereof.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects to this Request because the term "insulating structure" is undefined, vague, and ambiguous. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 124: Documents describing the patterning, formation, or deposition of one or more thin-film-transistors on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects on the grounds that the manner by which LPL patterns, forms, or deposits thin-film transistors on a liquid crystal display substrate does not appear to be relevant to any of AUO's asserted claims. If AUO would explain how that subject matter is

DEFENDANT LPL's OBJECTIONS TO                    - 64 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

properly discoverable under Fed. R. Civ. P. 26, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 125: Documents relating to or describing the patterning, formation, or deposition of one or more wires or signal propagation pathways on an insulating substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request because the term "signal propagation pathways" is undefined, vague, and ambiguous. LPL further objects to this Request because the term "insulating substrate" is undefined, vague, and ambiguous. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 126: Documents relating to or describing the patterning, formation, or deposition of one or more Connection Pads on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request because the term "Connection Pads," as defined by AUO, is vague and ambiguous. LPL further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this

DEFENDANT LPL's OBJECTIONS TO
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

- 65 -

07-C-0137-S

Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 127: Documents relating to or describing the electrical connection, or lack thereof, for each electrically conductive pattern included on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects to this Request because use of AUO's definition of "relating to" makes the Request overly broad and unduly burdensome. LPL objects to this Request because the term "electrically conductive patterns" is undefined, vague, and ambiguous. LPL further objects to this Request because the term "liquid crystal display substrate" is undefined, vague, and ambiguous, in that it may mean the color filter substrate, the TFT substrate, or both. Given the foregoing deficiencies, LPL objects and will not produce documents in response to this Request. If AUO restates and limits this request in response to the foregoing objections, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 128: Documents relating to or describing the patterning, formation, or deposition of pixel electrodes on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL further objects on the grounds that the manner by which LPL patterns, forms, or deposits thin-film transistors on a liquid crystal display substrate does not appear to be relevant to any of AUO's asserted claims. If AUO would explain how that subject matter is properly discoverable under Fed. R. Civ. P. 26, LPL will consider AUO's redefined request and respond appropriately.

REQUEST NO. 129: All Verilog, VHDL, photomasks, or like material, defining or describing the structures patterned, formed, created or deposited on a liquid crystal display substrate included in any LPL and/or LPLA LCD Modules.

ANSWER: LPL objects on the grounds that documents and information sought by this Request are highly confidential, trade secret information. LPL will only produce these documents and materials subject to special safeguards regarding the handling of and access to these documents and information. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 130: All communications between LPL and/or LPLA and any United States distributors of LPL and/or LPLA products.

ANSWER: LPL objects to this Request on the grounds that the term "LPL and/or LPLA products" is undefined, vague, and ambiguous. LPL objects on the grounds that AUO seeks any and all communications between LPL and these non-parties, without any focus upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 131: All agreements and/or contracts between LPL and/or LPLA and LG Electronics relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications

between LPL and non-party LG Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 132:  All communications between LPL and/or LPLA and LG Electronics relating to LCD Modules.

ANSWER:  LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party LG Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 133:  All agreements and/or contracts between LPL and/or LPLA and Philips Electronics relating to LCD Modules.

ANSWER:  LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the

Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Philips Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 134: All communications between LPL and/or LPLA and Philips Electronics relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Philips Electronics, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 135: All agreements and/or contracts between LPL and/or LPLA and Dell relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Dell, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 136: All communications between LPL and/or LPLA and Dell relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Dell, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 137: All agreements and/or contracts between LPL and/or LPLA and Hewlett-Packard relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Hewlett-Packard, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 138: All communications between LPL and/or LPLA and Hewlett-Packard relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Hewlett-Packard, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 139: All agreements and/or contracts between LPL and/or LPLA and Toshiba relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Toshiba, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 140: All communications between LPL and/or LPLA and Toshiba relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Toshiba, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to the extent it is inconsistent with the agreements reached by the parties with respect to electronic

discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 141: All agreements and/or contracts between LPL and/or LPLA and Apple relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Apple, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. Subject to and without waiving these objections, LPL will produce non-privileged, responsive, relevant documents, to the extent such documents exist.

REQUEST NO. 142: All communications between LPL and/or LPLA and Apple relating to LCD Modules.

ANSWER: LPL objects to this Request because it is overly broad and unduly burdensome, in that the definition of "LCD Modules" is not limited or tailored to the scope of the Patents-in-Suit. LPL objects on the grounds that AUO seeks any and all communications between LPL and non-party Apple, without any attempt to focus the discovery upon documents, information, or communications potentially relevant to the claims in this case. LPL objects to this Request to the extent that it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LPL. LPL objects to this Request to

DEFENDANT LPL's OBJECTIONS TO                    - 73 -                    07-C-0137-S
AU OPTRONICS CORP'S FIRST SET OF
DOCUMENT REQUESTS (NOS. 1-142)

the extent it is inconsistent with the agreements reached by the parties with respect to electronic

discovery in connection with negotiation and adoption of the Rule 26(f) Conference Report.

Subject to and without waiving these objections, LPL will produce non-privileged, responsive,

relevant documents, to the extent such documents exist.

Dated: May 21, 2007

Respectfully submitted,

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Counsel for Defendants LG.Philips LCD Co., Ltd.
and LG.Philips LCD America*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

AU Optronics Corporation,                    )    Civil Action No.: 07 C 0137 S
                                             )
           *Plaintiff,*                       )    Judge John C. Shabaz
                                             )
                                             )
vs.                                          )
                                             )
LG.Philips LCD Co., Ltd. and                 )
LG.Philips LCD America,                      )
                                             )
           *Defendants.*                      )
                                             )

## JOINT RULE 26(F) REPORT

Pursuant to Federal Rule of Civil Procedure 26(f) counsel for all parties in the above-captioned action have conferred regarding a discovery plan in this matter, the nature and basis of their respective claims and defenses, and the possibility of settlement. In accordance therewith, the parties submit this Joint Rule 26(f) Report outlining the parties' proposed discovery plan.

**1.    Brief Description of Action**:

This is an action arising under the patent laws of the United States, Title 35 of the United States Code. Plaintiff AU Optronics Corporation ("AUO") has brought this action against Defendants LG.Philips LCD Co., Ltd. ("LPL") and LG.Philips LCD America ("LPLA") for patent infringement.

**2.    Initial Disclosures Pursuant to Rule 26(a)(1)**:  The parties exchanged initial disclosures on May 11, 2007.

**3.    Subjects on Which Discovery May be Needed**:  The parties agree that discovery will be needed on the general issues of (1) infringement and noninfringement, (2) validity and invalidity, (3) enforceability and unenforceability, and (4) damages.

**4.** **Completion of Discovery**: The parties intend to complete both fact and expert discovery at such time the Court requires. The parties agree that fact discovery should not be conducted in phases or sequenced to focus upon particular issues.

**5.** **Electronically Stored Information**: The parties both have electronically stored information.

    (a)    Subject to requests to production and any objections, the parties will produce relevant electronically stored information in TIFF format along with load files. To the extent any electronically stored information cannot be converted to TIFF format, the parties will produce that information in its native format.

    (b)    Where electronic or paper documents are not natively in a text-searchable format, the parties will not OCR or convert such documents into a text-searchable format prior to production.

    (c)    The parties may produce documents that natively exist in a paper format on paper rather than electronically.

    (d)    From time to time, an electronic file may contain information that is impossible or difficult to read or decipher in a TIFF format. This is often the case with, for example, Excel spreadsheets, executable files, AutoCAD drawings, and so forth. Also, on occasion, the metadata associated with a file may be important to the case and may not be visible in a TIFF format. Accordingly, any party may request that certain electronic files produced by the other side be reproduced to that party in a native format. Such a request should include a short explanation of why the native format is likely to provide more relevant information or more legible information than the TIFF format file. The party receiving the request will reasonably cooperate in providing such information.

    (e)    The parties have discussed preservation of discoverable electronic information.

AUO has asked relevant personnel to maintain and not destroy any relevant electronic information. AUO has e-mail backup tapes that are rotated on a weekly basis. AUO also has some system backup tapes several years old that are periodically rotated. AUO maintains that the backup tapes contain information identical to and redundant with the information individual users have or have had on their local computers. AUO's backup tapes will continue to be rotated as is done in the ordinary course of business and will not be preserved. Nonetheless, all relevant information will be preserved on local computers.

Because AUO's back-up tapes may contain discoverable information that was inadvertently deleted by individual users or otherwise lost from AUO's local computer, LPL and LPLA requested that AUO cease rotation of its back-up tapes. This request was first made on May 11, 2007, in connection with negotiation of this Rule 26(f) report. AUO is still considering Defendants' request and has not yet responded with its position. If the parties are unable to reach agreement on this issue, it is highly likely the parties will seek the Court's guidance on how to proceed with the preservation of AUO's electronic information.

LPL and LPLA have taken measures to ensure the preservation of relevant electronic information, including instructing relevant personnel not to destroy any relevant electronic information. LPL has 12 email servers, the contents of which are periodically backed up to a tape system. LPL has a back-up system that updates and does not overwrite archived e-mails. LPL also has a separate database system to archive electronic documents related LPL's LCD models, mechanical design CAD files, test reports, and related documents.

(f)     The parties have met and conferred further to discuss the scope of e-mail that will be searched for and produced by each side and have agreed to produce documents responsive to an appropriate discovery request (e.g., seeking non-privileged

documents relevant to the claim or defense of any party) that fall within the following categories:

(1) e-mail by or to a party's engineers that are to or from the party's driver circuit vendors that may contain design information;

(2) e-mail demonstrating either or both a party's knowledge or awareness of use or sale of alleged infringing products by anyone in the United States;

(3) e-mail demonstrating either or both a party's knowledge or assessments of the asserted patents;

(4) communications between a party and any customers, distributors, or end users of the party's LCD products (which include but are not limited to LCD panels, LCD modules, or finished LCD products, whether by itself or incorporated into or with another device) that is doing any business in and/or into the United States;

(5) e-mail providing relevant technical or sales information unavailable from any other documents; and

(6) communications reflecting or providing relevant information regarding a party's acquisition of an asserted patent.

6. **Claims of Privilege**: The parties have agreed to a procedure addressing any inadvertent production of privileged documents. That procedure is set forth in the proposed Protective Order.

7. **Limitations On Discovery**: The parties have agreed on the following limitations on discovery:

(a)   The parties agree to follow the discovery limitations set forth in the Federal Rules of Civil Procedure for depositions and interrogatories unless otherwise stated here.

(b)     Plaintiff will propound no more than fifty interrogatories on both Defendants collectively. Both Defendants collectively will propound no more than fifty interrogatories on Plaintiff.

(c)     The parties stipulate and agree that draft expert reports and attorney communications with experts that are not relied upon as a basis for expert opinions will not be discoverable and will not be used as evidence in the case.

(d)     The parties agree that each side (with AUO on one side and with LPL and LPLA collectively on the other side) may take the following depositions:

(i)     ten (10) personal depositions of party witnesses (i.e., under Rule 30(b)(1)), each 7.5 hours in length. Translated depositions under this subsection (i) shall be allotted one and one half as much time as untranslated depositions. For example, three hours of translated personal deposition of a party witness shall only count as two hours against the time limits above;

(ii)     forty-two (42) hours of party depositions pursuant to Fed. R. Civ. P. 30(b)(6), whether translated or otherwise; and

(iii)     thirty (30) hours of third party, whether translated or otherwise.

The parties make this agreement without waiving their rights to object to any particular depositions and/or the scope of any depositions as being unduly burdensome.

**8.     Protective Order**: The parties have agreed to a proposed Protective Order to protect the parties' and non-parties' confidential information pursuant to Fed. R. Civ. P. 26(c) and have submitted that Protective Order to the Court.

**9.     Service of Process**: The parties have agreed that documents (other than production documents and court filings, which are addressed below) will be served on opposing parties by sending the documents via both e-mail (to counsel identified below) by or before 6 pm Central Time and by sending documents by overnight mail to one designated counsel. Any documents filed with the court will be served via both e-mail

and hand delivery on the parties' Wisconsin counsel. Documents filed with the court must be served by both hand-delivery (to the opposing party's Wisconsin counsel) by or before 5 pm Central Time and by e-mail (to counsel identified below) by or before 6 pm Central Time. Documents served by hand-delivery after 5 p.m. Central Time will be considered served the next day.

With regard to production documents and other documents of such volume that service via e-mail is impractical, the parties agree to serve as much as is reasonable without causing undue burden by e-mail (including the text of any motion if the exhibits to the motion are voluminous) and will serve the remainder by overnight mail (including for Saturday delivery for time-sensitive matters).

AUO designates the following e-mail addresses for service:

> JRTroupis@michaelbest.com; pdbarbato@michaelbest.com; rshulman@wsgr.com; jyoon@wsgr.com; ctyler@wsgr.com; jholloway@wsgr.com; brange@wsgr.com; jrich@wsgr.com; and ktang@wsgr.com

AUO designates the following address for service via Federal Express:

> M. Craig Tyler
> Wilson Sonsini Goodrich & Rosati
> 8911 Capital of Texas Highway North
> Westech 360, Suite 3350
> Austin, TX 78759-8497

LPL and LPLA designate the following e-mail address for service:

> bwilliam@gklaw.com; jpeterson@gklaw.com; ntalbott@gklaw.com; gbono@mckennalong.com; lbrzezynski@mckennalong.com; tgoodwyn@mckennalong.com; kjohnson@mckennalong.com; schippendale@mckennalong.com; mcaplan@mckennalong.com; and amollo@mckennalong.com.

LPL and LPLA designate the following address for process via Federal Express:

> Gaspare J. Bono
> McKenna Long & Aldridge LLP
> 1900 K Street, N.W.
> Washington, D.C. 20006

The parties may make reasonable changes or modifications to their designees for

service upon notice to the opposing side.

DATED this _21_ th day of May, 2007

Respectfully submitted,

MICHAEL BEST & FRIEDRICH LLP

By: _____
James R. Troupis
Paul D. Barbato
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806
Telephone: (608) 257-3501
Facsimile: (608) 283-2275

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Ron E. Shulman
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497
Telephone: (512) 338-5400

ATTORNEYS FOR PLAINTIFF
AU OPTRONICS CORPORATION

GODFREY & KAHN, S.C.

By: _Jmr O. Rt_

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756

*Counsel for Defendant LG.Philips LCD
America and Defendant LG.Philips LCD
Co., Ltd.*

DOCKET #

U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MAY 3 0 2007

FILED
THERESA M. OWENS CLERK

| | |
|---|---|
| AU OPTRONICS CORPORATION, | ) |
| | ) CASE# |
| Plaintiff, | ) Case No.: 07-C-0137-S |
| | ) |
| v. | ) Judge John C. Shabaz |
| | ) |
| LG.PHILIPS LCD CO., LTD. and | ) |
| LG.PHILIPS LCD AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PROTECTIVE ORDER

### INTRODUCTION

WHEREAS, the parties believe in good faith that certain information discoverable in this case consists of financial information, proprietary information, confidential sales information, and/or commercially valuable information that the respective parties, or non-parties from whom the parties seek discovery, maintain in confidence in the ordinary course of business;

WHEREAS, the parties reasonably believe that public disclosure of such confidential information would cause financial and competitive harms to the disclosing party or non-party;

WHEREAS, the parties believe that good cause exists for the entry of this Protective Order, which is narrowly tailored to protect the aforementioned confidential information.

By reason of the foregoing, the parties, by their counsel, jointly request that this Court enter the following Protective Order Regarding Confidential Information in this matter.

### DEFINITIONS

1.      The term "Confidential Information" shall mean and include any Documents, whether in paper, electronic, or other form, portions of Documents, tangible items, information or other things furnished by any party, including third-parties, answers to interrogatories, responses to requests to produce documents or other things, responses to requests for admissions, depositions, transcripts of depositions, all copies, extracts, summaries, compilations,

Copy of this document has been
provided to:

this ___ day of May, 20__
by ___
M. Hardin, Secretary to

designations and portions thereof, and technical or commercial information derived therefrom deemed by any party to be its confidential information. Documents designated "Confidential Information" shall meet the criteria stated in the Introduction of this Stipulation. This Order shall not govern the admissibility of evidence during the trial proceedings nor does it prohibit any party or interested member of the public from seeking a protective order to govern disclosure of confidential information to the public during the trial proceedings. However, any Confidential Information designated with a confidentiality marking under the terms of this Protective Order shall continue to be afforded the protection of this Order by the parties unless the Confidential Information becomes a public record at trial.

2.      The term "Documents" shall mean all materials within the scope of F.R.C.P. Rule 34.

## SPECIFIC PROVISIONS

1. **DESIGNATION OF MATERIAL AS CONFIDENTIAL**. Any Document, tangible item, or testimony provided by any party or non-party which the producing party in good faith contends contains information proprietary to it and is entitled to protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure, may be designated as "CONFIDENTIAL" and, except as permitted by further order of a court of competent jurisdiction, or by subsequent written agreement of the producing party, such designated documents or testimonial information shall be received by counsel of record for the party upon the terms and conditions of this Protective Order (hereafter, "this Protective Order").

2. **DESIGNATION OF MATERIAL AS ATTORNEYS' EYES ONLY**. Any CONFIDENTIAL Document, tangible item, or testimony produced by any party which contains particularly sensitive information proprietary to the producing party, including, for example, particularly sensitive competitive information, may be designated as "ATTORNEYS' EYES ONLY." Non-exclusive examples of the types of information that may be ATTORNEYS' EYES ONLY include:

(a)     The names, or other information tending to reveal the identities, of a party's suppliers, present or prospective customers, or distributors;

(b)     Information relating to pending patent applications;

(c)     Financial information of a party;

(d)     Information constituting product specifications;

(e)     Technical notebooks and technical reports of a party or other like information;

(f)     Marketing plans of a party; and

(g)     Other information that a party considers a trade secret.

Other categories of ATTORNEYS' EYES ONLY information may exist. Disputes regarding whether material is properly designated as "ATTORNEYS' EYES ONLY" shall be resolved in accordance with paragraph 15. The parties agree to designate information as CONFIDENTIAL or ATTORNEYS' EYES ONLY on a good faith basis and not for purposes of harassing the receiving party or for purposes of unnecessarily restricting the receiving party's or the public's access to information concerning the lawsuit.

3. **PROCEDURE FOR DESIGNATING MATERIAL**. Documents or tangible items shall be designated confidential within the meaning of this Protective Order in the following ways:

(a)     In the case of documents and the information contained therein, by placing on the document the legend "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" or similar;

(b)     In the case of interrogatory answers and the information contained therein, designation shall be made by placing on the first page and all subsequent pages containing the confidential information the legend "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY";

(c)     In the case of tangible items, designation shall be made by visibly marking the item "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" if practicable or, if not practicable, by placing such marking visibly on a package or container for the item;

(d)     In producing original files and records for inspection, no marking need be made by the producing party in advance of the inspection. For the purposes of the inspection, all documents produced shall be considered as marked "ATTORNEYS' EYES ONLY." Thereafter, upon selection of specified documents for copying by the inspecting party, the producing party shall mark as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" the copies of such documents as may contain confidential information at the time the copies are produced to the inspecting party.

4.     **DESIGNATED MATERIAL SHALL BE KEPT CONFIDENTIAL**. With respect to all documents, information, or tangible items, produced or furnished by a party during this litigation, which are designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" by the producing party, such information shall be kept confidential and shall not be given, shown, made available, discussed, or otherwise communicated in any manner ("disclosed"), either directly or indirectly, to any person not authorized to receive the information under the terms of this Protective Order.

5. **DEPOSITION TESTIMONY**. If, in the course of this proceeding, depositions are conducted that involve confidential information, counsel for the witness or party producing such information may state, on the record, the portion of the deposition which counsel believes may contain CONFIDENTIAL or ATTORNEYS' EYES ONLY information. If such designation is made, that portion of the deposition will be taken with no one present except those persons who are authorized to have access to such CONFIDENTIAL or ATTORNEYS' EYES ONLY information, as the case may be, in accordance with this Protective Order, and the Court Reporter. Subject to the terms hereof, CONFIDENTIAL or ATTORNEYS' EYES ONLY information may be disclosed by a receiving party to a deponent, to the extent that its use is necessary, at the deposition(s) of (a) employees, officers, and/or directors of the producing party, (b) an author, addressee, or other person indicated as a lawful recipient of a document containing the information; (c) a person clearly identified in prior discovery or by the deponent in his or her deposition as an author or recipient of the information; (d) any independent advisor, consultant

or expert otherwise qualified under this Protective Order to receive such information; and (e) any person for whom prior authorization is obtained from the producing party (which agrees not to unreasonably withhold, condition, or delay such consent) or the Court.

Each party shall have until thirty (30) days after receipt of the final deposition transcript within which to inform the other parties to the action of the portions of the transcript (by specific page and line reference) to be designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." The right to make such designation shall be waived unless made within the thirty (30) day period. Prior to such designation, or expiration of the thirty (30) day period, the entire deposition transcript shall be deemed ATTORNEYS' EYES ONLY information. Transcripts of testimony, or portions thereof, containing CONFIDENTIAL or ATTORNEYS' EYES ONLY information shall be filed only under seal as described in paragraph 6, until further order of the Court.

6. **COURT FILINGS CONTAINING CONFIDENTIAL INFORMATION**. Any document, pleading, or tangible item which contains Confidential Information, if filed or submitted to the court, shall be filed in a sealed envelope marked "Confidential - Not To Be Opened Except By Order Of The Court."

7. **SIGNED UNDERTAKINGS REQUIRED**. Before disclosure of any information subject to this Protective Order is made to any employee, officer, or director of a non-producing party, or to any consultant or expert (who may not be a present or former employee, officer, or director of the non-producing party) who is retained by a non-producing party, or to any witness, or prospective witness (outside of an actual deposition of such witness), counsel for the party disclosing the information shall obtain the written Undertaking, attached hereto as Exhibit A, from each person to whom disclosure is to be made, acknowledging that any document, information or tangible item that has been designated as confidential is subject to this Protective Order, that the person has read this Protective Order, that such person agrees to comply with, and be bound by, this Protective Order, and that such person is aware that contempt sanctions may be entered for violation of this Protective Order. The written Undertaking shall be provided to

opposing counsel ten (10) days in advance of the first disclosure of any Confidential Information to such person. If no objection is made to such person receiving Confidential Information within such ten (10) day period, then Confidential Information may be disclosed to such person. Any and all objections must be made in writing with all grounds for objection stated with specificity. If objection is made, then any party may bring before the Court the question of whether the Confidential Information may be disclosed to such person. All signed Undertakings shall be maintained by the counsel who obtained such Undertakings through the conclusion of this action. After completion of the action, the originals of all such Undertakings shall be provided to counsel for the party whose Confidential Information was provided to such person.

In connection with disclosures to experts and consultants, each party shall disclose to the opposing counsel in writing the identity, residence, and curriculum vitae of each expert or consultant (whether testifying or non-testifying). Such curriculum vitae shall provide or summarize the expert or consultant's full name, professional address, educational background, general areas of expertise, all present or prior relationships between the expert or consultant and the receiving party, and the qualifications of the expert or consultant (including a list of all publications authored within the preceding four years and a listing of any other cases in which the expert or consultant has testified as an expert at trial or by deposition within the preceding four years) and disclose all of the expert's or consultant's current employers and consulting engagements as well as his or her former employers and past consulting engagements, each for the past four (4) years.

In the event a party retains an expert or consulting firm, the party shall disclose each person to whom the disclosing party's Confidential Information is disclosed whose education, work experience, and role on the matter qualifies him or her as an expert or consultant. In such cases, the party need not submit disclosures for junior analysts and staff members, so long as they are working on the matter with an expert or consultant that has been disclosed and approved as set forth in this Paragraph.

The expert or consultant may designate his or her disclosures as CONFIDENTIAL or ATTORNEYS' EYES ONLY. To the extent the expert's or consultant's employments or engagements are confidential, the expert or consultant may make a representation that his or her undisclosed employments and engagement (whether current or from the past) did not involve the subject matter of this case (e.g., display technologies), the parties, or affiliates of the parties, in lieu of providing details regarding the employer or particular project.

This disclosure shall be made at the same time the written Undertaking is provided to opposing counsel. The right of a party to object shall be waived if no objection is received by the party disclosing the expert or consultant within ten (10) business days of receipt of said disclosure, except to the extent that the non-designating party later discovers that the original disclosure of a particular expert or consultant was in error or otherwise not fully responsive to the requirements of this Paragraph 7.

In connection with disclosures to employees, officers, or directors of a non-producing party, each party shall disclose to the opposing counsel in writing the identity and title of each employee, officer, or director of the non-producing party. This disclosure shall be made at the same time the written Undertaking is provided to opposing counsel.

8.  **LIMITATIONS ON DISCLOSURE OF ATTORNEYS' EYES ONLY**

**MATERIALS**. Except as permitted by further order of this Court or by subsequent written agreement of the producing party, disclosure of ATTORNEYS' EYES ONLY documents, deposition transcripts, tangible items or information, including summaries thereof, but not including documents or tangible items with the confidential portions redacted, shall be limited to:

(a) outside counsel for the parties, whether trial counsel or not, and associate attorneys, paralegal, secretarial and clerical employees assisting such counsel;

(b) Judges, Magistrates, law clerks, and clerical personnel of the Court before which this action is pending and qualified court reporters, videographers, and translators;

(c)     consultants or experts, who are not present or former employees or officers of the parties, retained by either of the parties to consult or testify in the case, who have executed the attached Undertaking;

(d)     employees and officers of the party producing the documents or information;

(e)     authors or drafters, addressees and those who received the documents or information prior to the commencement of this action; and

(f)     third party contractors and their employees whose regular business is providing litigation support services and who are engaged by a party to assist counsel with coding, imaging, or other document management services, translation services, trial preparation services, the preparation of demonstratives or other visual aids for presentation at a hearing or trial, and/or jury consulting services for this litigation, provided that such personnel of third party vendors shall not be employees of a party or otherwise working for or on behalf of a party in connection with that party's business.

The persons receiving (pursuant to Sections 8(a), 8(c), or 8(f) above) mask files, electronic CAD files, or process specifications for LCD display products that are designated ATTORNEYS EYES' ONLY information, or any testimony or other discovery (e.g., interrogatory responses) containing such information, shall not supervise or participate on behalf of any party in drafting, filing, or prosecuting any patent applications involving the subject matter of any of the patents at suit in this action from the time the ATTORNEYS' EYES ONLY information is received and until one (1) year following the conclusion of their participation in the above captioned case.

9. **LIMITATIONS ON DISCLOSURE OF CONFIDENTIAL MATERIALS**.

Except as permitted by further order of this Court or by subsequent written agreement of the producing party, disclosure of CONFIDENTIAL documents, deposition transcripts, tangible items or information, including summaries thereof, but not including documents or tangible items with the confidential portions redacted, shall be limited to (a) the persons and entities

identified in paragraph 8; and (b) no more than 7 employees or officers of the non-producing party whose identities shall be made known ten (10) days in advance to the producing party and who shall sign an Undertaking in the form attached hereto as Exhibit A.

However, nothing in this Protective Order shall bar or otherwise restrict counsel for a party from rendering legal advice to his or her client which is party to this litigation with respect to this litigation and, in the course thereof, relying upon his or her examination of information designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," provided, however, that in rendering such advice and in otherwise communicating with his or her client, such person shall not make any disclosure of information designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" to any person not entitled to have access to it.

10. **PROCEDURE FOR DISCLOSURES TO OTHER PERSONS**. If it becomes necessary for counsel for a party receiving Confidential Information to seek the assistance of any person, other than those persons referred to in paragraphs 8 and 9, such as any employee of the receiving party, and to disclose certain Confidential Information to such person in order to properly prepare this litigation for trial, the following procedures shall be employed:

(a)     Counsel for the receiving party shall notify, in writing, counsel for the party producing the Confidential Information of their desire to disclose certain Confidential Information and shall identify the person(s) to whom they intend to make disclosure;

(b)     If no objection to such disclosure is made by counsel for the producing party within ten (10) days of such notification, counsel for the receiving party shall be free to make such disclosure to the designated person(s); provided, however, that counsel for the receiving party shall serve upon opposing counsel, prior to disclosure, an Undertaking in the form attached hereto as Exhibit A, whereby such person agrees to comply with and be bound by this Protective Order;

(c)     If the producing party objects to such disclosure, no disclosure shall be made. Any party may bring before the court the question of whether the particular Confidential

Information can be disclosed to the designated person(s) and the party requesting such disclosure shall have the burden of establishing before the Court the necessity for such disclosure.

11. **CORRECTION OF INADVERTENT FAILURE TO DESIGNATE MATERIAL AS CONFIDENTIAL OR ATTORNEYS' EYES ONLY**. If, through inadvertence, a producing party provides any information pursuant to this litigation without marking the information as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" information, the producing party may subsequently inform the receiving party of the CONFIDENTIAL or ATTORNEYS' EYES ONLY nature of the disclosed information, and the receiving party shall treat the disclosed information as CONFIDENTIAL or ATTORNEYS' EYES ONLY information upon receipt of written notice from the producing party. The failure of the producing party to designate material CONFIDENTIAL or ATTORNEYS' EYES ONLY shall not be deemed or construed to constitute an admission that such material is not confidential or proprietary. The receiving party's disclosure of such CONFIDENTIAL or ATTORNEYS' EYES ONLY information to persons not authorized to receive that information prior to receipt of the confidentiality designation shall not be deemed a violation of this Order. However, in the event the document has been distributed in a manner inconsistent with the designation, a receiving party will take reasonable steps to retrieve all copies of the CONFIDENTIAL or ATTORNEYS' EYES ONLY information that are inconsistently designated, or notes or extracts thereof. In the event distribution has occurred to a person not under the control of a receiving party, the receiving party shall make a request in writing for return of the document and for an Undertaking (in the form provided at Exhibit A). In the event the request is not promptly agreed to in writing, or in the event there is no response, or in the event that the receiving party deems the making of the request to be a useless act, the receiving party shall promptly notify the producing party of the distribution and all pertinent facts concerning it, including the identity of the person or entity not under the control of the receiving party.

12. **CORRECTION OF INADVERTENT PRODUCTION OF PRIVILEGED OR WORK PRODUCT IMMUNE MATERIALS OR INFORMATION**. The inadvertent

production of documents or information subject to the attorney-client privilege, work-product immunity, or other privilege, despite the parties' reasonable efforts to prescreen such documents and information prior to production, shall be without prejudice to any claim that such material is privileged or protected from discovery. No party will be held to have waived any rights by such inadvertent production if the designating party gives prompt notice upon learning of the inadvertent production to all other parties that it is asserting a claim of privilege or other objection with respect to such document or other information. Once the receiving party has received notice of the claim of inadvertent production, the receiving party shall not review, copy, disseminate, or otherwise use the inadvertently produced document or information in any manner or for any purpose until further order of the Court, and the receiving party shall, within five (5) business days of receipt of such notice, use his or her best efforts to retrieve and return to the producing party or destroy all copies of the documents or information at issue and shall destroy any documents, copies, abstracts, excerpts, analyses or other writings that contain, reflect, reveal, suggest or otherwise disclose such documents or information. The return of any discovery item to the producing party shall not in any way preclude the non-producing party from moving the Court for a ruling that: (a) the document or thing was never privileged or otherwise immune from disclosure; and/or (b) that any applicable privilege or immunity has been waived. The receiving party will notify the designating party and certify in writing that such documents or information and all copies, abstracts, excerpts, analyses or other writings that contain, reflect, reveal, suggest or otherwise disclose such documents or information have been returned or destroyed.

13. **INFORMATION NOT COVERED BY THIS ORDER**. The restrictions set forth in this Order will not apply to information which is in the possession of or otherwise known to the receiving party or the public before the date of its transmission to the receiving party, or which comes into the possession of or becomes known to the receiving party or comes into the possession of or otherwise becomes known to the public after the date of its transmission to the receiving party, provided that such information does not become publicly known by any act or omission of the receiving party, its employees, or agents which would be in violation of this

order. If such information known to or possessed by the receiving party or the public is designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY", the receiving party must provide ten (10) days written notice to the producing party of the pertinent circumstances before the restrictions of this order will be inapplicable.

14. **LIMITATIONS ON USE OF CONFIDENTIAL OR ATTORNEYS' EYES ONLY INFORMATION**. No person or party receiving any CONFIDENTIAL or ATTORNEYS' EYES ONLY information obtained pursuant to any pretrial discovery in this action shall directly or indirectly utilize or disclose such information, except for the purpose of this action only, as permitted by further order of a court of competent jurisdiction, or by subsequent written agreement of the producing party (whether a party or non-party).

15. **CONTESTING DESIGNATION OF CONFIDENTIALITY**. Acceptance by a party of any information, document, or thing designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall not constitute a concession that the information, document or thing is confidential. Any party or interested member of the public may contest a claim of confidentiality. If the receiving party disagrees with the designation and marking by any producing party of any material as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY", then the parties shall first try to resolve such disputes on an informal basis. If agreement cannot be reached between counsel, then such dispute may be presented to the Court by any party by motion or otherwise. In the resolution of such matter, the burden of establishing confidentiality shall be on the party who made the claim of confidentiality, but information designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" shall be deemed as such until the matter is resolved.

16. **NO LIMITATION OF OTHER RIGHTS**. This Protective Order shall be without prejudice to the right of any party to oppose production of any information on any and all grounds other than confidentiality.

17. **RELIEF FROM OR MODIFICATION OF THIS ORDER**. This Protective Order shall not prevent any party or interested member of the public from applying to the Court for

relief therefrom, or from applying to the Court for further or additional protective orders, or from agreeing among themselves to modify or vacate this Protective Order, subject to the approval of the Court.

18. **RETURN OF CONFIDENTIAL INFORMATION**. At the conclusion of this action, including any appeals, all Confidential Information furnished pursuant to this Protective Order, and all copies thereof, shall be returned to the attorneys of record for the producing party, or destroyed by counsel for the receiving party. In the case where the latter option is used, within thirty (30) days of the conclusion of this action, counsel for the receiving party shall notify counsel for the producing party, in writing, that such destruction has taken place. Notwithstanding the foregoing, outside counsel for the parties may maintain a reasonable number of copies of work product (including internal communications such as e-mail), discovery requests and responses (other than document production), correspondence, briefs, depositions, trial transcripts, trial exhibits, deposition exhibits. The provisions of this Protective Order insofar as it restricts the disclosure, communication of, and use of, Confidential Information produced hereunder shall continue to be binding after the conclusion of this action.

19. **INFORMATION PRODUCED BY THIRD PARTIES**. If discovery is sought of a person or other entity not a party to this action ("third-party") requiring disclosure of information that such third-party believes in good faith must be kept CONFIDENTIAL or ATTORNEYS' EYES ONLY, such information disclosed by the third-party may be shared with only those persons designated in paragraphs 9 and 8 respectively. Additionally such information will be subject to all other protections provided by the remainder of this Order. Furthermore, to the extent that the Court, any party and/or any other person seeks to change the designation of or protection of any such CONFIDENTIAL or ATTORNEYS' EYES ONLY information, use such information in open Court, or provide such information to any person not listed in paragraphs 9 and 8 respectively, the producing third-party shall have notice of no less than ten (10) days and shall be given an opportunity to be heard with respect to such action. Finally, except as provided in paragraph 12 with respect to inadvertent disclosure, the burden of proving that a document is

entitled to less protection than that selected by the producing third-party shall be on the receiving party who seeks to change such designation or use such information in a manner not permitted by paragraph 9 and 8.

20. **PROCESS IN OTHER ACTIONS**. In the event any person or receiving party having possession, custody, or control of any document, testimony, or information produced in the above captioned action and designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY by a disclosing party receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall notify by mail the attorneys of record of the disclosing party claiming such confidential treatment of the document sought by such subpoena or other process or order, shall furnish those attorneys with a copy of said subpoena or other process or order, and shall cooperate with respect to any reasonable procedure sought to be pursued by the party whose interest may be affected. The disclosing party asserting the confidential treatment shall have the burden of defending against such subpoena, process or order. The person or party receiving the subpoena or other process, or order shall be entitled to comply with it except to the extent the disclosing party asserting the confidential treatment is successful in obtaining an order modifying or quashing it.

21. **APPLICATION OF ORDER TO PREVIOUSLY DISCLOSED MATERIALS**.

This Protective Order shall apply to information and materials produced in this action prior to the entry of this order.

#### ORDER

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED:

DATED this 24 day of MAY, 2007.

The Hon. John C. Shabaz
United States District Judge

-14-
PROTECTIVE ORDER

## **UNDERTAKING OF PROPOSED EXPERT OR OTHER DESIGNEE**

I, _____, hereby acknowledge that I might receive material or information designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" (hereinafter "Confidential Information") as set forth in the Protective Order in this case.

I certify my understanding that the Confidential Information is being provided to me pursuant to the terms and restrictions of the Protective Order, and that I have been given a copy of and have read and understood my obligations under that Protective Order. I hereby agree to be bound by the terms of the Protective Order. I understand that the Confidential Information or any information derived therefrom, including excerpts, summaries, indices, abstracts, or copies thereof, and my copies or notes relating thereto may only be disclosed to or discussed with those persons permitted by the Protective Order to receive such Confidential Information.

I will return on request or at the termination of this action all materials containing, referring to, relating to, or otherwise reflecting Confidential Information, or derived in whole or part from Confidential Information, copies thereof and notes that have been prepared relating thereto, to outside trial counsel for the party by whom or on whose behalf I am employed or retained.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulated Protective Order and waive any and all objections to jurisdiction and venue.

_____
(Signature)

_____
(Printed Name)

_____
(Date)

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN



AU OPTRONICS CORPORATION,

                    Plaintiff,

                                        MEMORANDUM AND ORDER
          v.                            07-C-137-S

LG.PHILIPS LCD CO., LTD.
and LG.PHILIPS LCD AMERICA,

                    Defendants.

_____

     Plaintiff AU Optronics Corporation commenced this action
against LG.Philips LCD Co., Ltd. and LG.Philips LCD America for
infringement of its United States patents nos. 6,689,629, 6,976,781
and 6,778,160.  Jurisdiction is pursuant to 28 U.S.C. §1331 and
§1338(a).  The matter is presently before the Court on defendants'
motions to dismiss for lack of personal jurisdiction and improper
venue or to transfer venue to the District of Delaware.  The
following facts are undisputed for purposes of these motions.


                              FACTS

     Plaintiff AU Optronics Corporation (AU) is a Taiwanese
corporation with its principal place of business in Taiwan.
Defendant LG.Philips LCD Co., Ltd. (LPL) is a Korean corporation
with its principal place of business in Seoul, South Korea.  LPL is

A TRUE COPY, Certified
June 1, 2007
Theresa M. Owens, Clerk
U.S. District Court
Western District of Wisconsin
By E. Stuhoff
          Deputy Clerk

Copy of this document has been
provided to: Hllus Trops.
Tulen, Petuson + Bono
this 30 day of May, 20
by Attaleli
M. Hardin, Secretary to
Judge John C. Shabaz

in the business of developing and manufacturing liquid crystal display modules (LCDs) used in computer monitors and televisions.

Defendant LG.Philips LCD America (LPLA) is a California corporation and wholly owned subsidiary of LPL with offices in California, Texas, North Carolina and Illinois in the business of selling LPL's LCDs. The LCDs sold by LPLA are incorporated in televisions and computers which are sold throughout the country under various brands by retailers including Best Buy, Radio Shack and Circuit City. Since January 2004 LPLA has sales of $5,250,000 in the United States. LPLA does not sell finished consumer products.

On December 1, 2006 LPL commenced a suit in the United States District Court for the District of Delaware (C.A. No. 06-726-JJF) against AU, Chi Mei Optoelectronics Corporation, AU Optronics Corporation America, Tatung Company, Tatung Company of America, Inc. and Viewsonic Corporation. The Delaware complaint alleges that AU and the other defendants infringe LPL's United States patents nos. 5,019,002, 5,825,449 and 4,624,737. In that action plaintiff stipulated at AU's request to a ninety day extension for AU to answer the complaint.

On March 8, 2007 AU filed the present complaint. On April 11, 2007 LPL filed a First Amended Complaint in C.A. No. 06-726-JJF for declaratory judgment of invalidity and non-infringement of

2

AU's '629, '781 and '160 patents.   All six patents-in-suit involve various aspects of liquid crystal display modules (LCDs).

## MEMORANDUM

Defendants move to dismiss for lack of personal jurisdiction and improper venue or, alternatively to transfer the case to the United States District Court for the District of Delaware.   The issues of personal jurisdiction (both in Wisconsin and Delaware) are integrally related to the venue transfer motion.   The Court now concludes that personal jurisdiction would be appropriate over all parties in the United States District Court for the District of Delaware and the facts compel transfer to Delaware.

A motion for change of venue is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In ruling on this transfer motion the Court must consider all circumstances of the case, using the three statutory factors, "the convenience of parties and witnesses, in the interest of justice," as place holders in its analysis.   Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986).

The convenience of the parties does not favor one forum over the other because LPL and AU are foreign corporations.   Neither

3

party has identified any witnesses for which this Court would be more convenient than the district of Delaware.

As a result, the question of transfer hinges entirely on the interest of justice factor. Defendants argue that the interest of justice would be served by transferring the case to the District of Delaware for consolidation with the suit previously filed there by the defendants. Plaintiff argues that although defendant LPL filed suit first in Delaware, it was first to file the suit concerning the patents '629, '781 and '160 in this Court.

The interest of justice clearly disfavors the duplication and waste which is resulting from the simultaneous prosecution of mirror image patent suits in different federal courts.

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent.

Ferens v. John Deere Co., 494 U.S. 516, 531 (1990). The interests of justice therefore compel that one case or the other be transferred or stayed. The legal presumption is that the case to be stayed or transferred is the one filed second. Genentech, Inc. v. Eli Lily and Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993). Furthermore, the first filed rule is applicable regardless of whether the first action was an action for declaratory relief and regardless of the time period by which the first filed case

4

preceded the second. Id. Accordingly, the general rule would compel transfer to Delaware.

The fact that the Delaware action became a complete mirror image only after amendment does not change the analysis. In Versus Technology, Inc. v. Hillenbrand Industries, Inc., 2004 WL 3457629, (W.D. Mich. 2004)(also collecting similar cases), the Court addressed a case where the first filed suit was subsequently amended to add the claims in the second filed suit. The Court held that the first-filed rule applied where a plaintiff amends its first filed suit to add claims raised in a second-filed suit in another district. The Court transferred the second filed case to the first court to determine how the two cases should proceed. Similarly, in Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421 (2d Cir. 1965), the Court found it immaterial that the issues raised in the second suit were not included in the first until after a subsequent amendment was filed, holding that the first suit was the only suit where all the issues between the parties had been raised. It transferred the case to the court where the first suit was filed.

The interest of justice factor weighs heavily in favor of transfer to Delaware. The Delaware action was first filed and is the only action where all the issues between the parties have been raised. The interest of justice would by undermined by the duplication and waste of judicial resources that would occur by keeping this action in both courts. Zipher Ltd. v. Markem Corp.,

5

2007 WL 8450514 (W.D. Wis. 2007). The interest of justice would best be served by transferring this case to the United States District Court of Delaware where consolidation is feasible. Trafficast, Inc. v. Pritchard, 2005 WL 3002267 (W.D. Wis. 2005).

Notwithstanding the obvious efficiencies of transfer, plaintiff suggests that the matter remain in this Court because it can be adjudicated more promptly. While the parties would likely receive a speedy trial in this district, the advantages of consolidation outweigh the impact of slightly greater delay:

> While the interests of justice are served when an action is transferred to a district where the litigants are more likely to receive a speedy trial, the interests of justice are also served when related litigation is transferred to a forum where consolidation is feasible.

Id. at *4. As in Trafficast, even though the parties statistically can expect a more speedy disposition in this action it does not justify deviating from the first to file rule. This is particularly true in light of the fact that the parties have already stipulated to a three month delay in the Delaware action, indicating that speed of resolution is not critical to either party. The interest of justice overwhelmingly favors transfer to the United States District Court for the District of Delaware where the first suit was filed.

Notwithstanding that the convenience of parties and witnesses and the interest of justice favor transfer, §1404(a) does not

6

permit transfer unless this action "might have been brought" in Delaware.  28 U.S.C. § 1414.  A case "might have been brought" in the other district only if personal jurisdiction and venue was available for all defendants in that district at the time the action was filed.  Hoffman v. Blaski, 363 U.S. 335, 344 (1960); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3845, 57-59 (2007).  However, where appropriate a defendant may be dismissed or severed from the action and the matter transferred to a district where it might have been brought against the remaining defendants.  Wild v. Subscription Plus, Inc., 292 F.3d 526, 531. (7th Cir. 2002).

It is conceded that personal jurisdiction and venue were available in Delaware at the time this action was commenced.  The issue on the present motion is whether venue and personal jurisdiction would have been proper against LPLA in Delaware.  The question of personal jurisdiction in Delaware appears nearly identical to the personal jurisdiction issue in Wisconsin.  LPLA is a nationwide distributor of LCDs to manufacturers of televisions and computers.  The manufacturers incorporate the LCDs in their products and sell them to consumers via electronics outlets throughout the United States.  LPLA maintains offices in California, Texas, North Carolina but does not have an office in either Wisconsin or Delaware.  Apparently, LPLA does not sell LCDs to manufacturers in either state.  The relevant (local injury,

7

foreign act) long arm statutes are similar in Delaware and Wisconsin. Accordingly, it seems very likely that personal jurisdiction over LPLA will be appropriate in both states or neither.

In light of the powerful arguments for transferring this matter to the District of Delaware one of two outcomes seems appropriate: dismissal of defendant LPLA from this action for lack of personal jurisdiction and transfer of the action between the remaining parties to Delaware in accordance with Wild, or transfer of the entire action including LPLA to Delaware on the basis that personal jurisdiction is proper in both states. The Court is convinced that the stream of commerce theory of personal jurisdiction as applied to patent actions by the Federal Circuit in Beverly Hills Fan Co. Royal Sovereign Corp., 21 F.3d 1558 (1994) operates to afford nationwide personal jurisdiction over LPLA under the particular circumstances of this action and therefore adopts the second alternative.

The question of personal jurisdiction in a patent infringement action is governed by Federal Circuit law. Id. at 1564-65. On several occasions the Federal Circuit has recognized, but declined to choose, between the two potential tests for stream of commerce jurisdiction discussed by members of the Supreme Court in Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987). In Asahi four members of the Court found the

8

constitutional minimum contacts requirement met when a defendant sells goods where "the regular and anticipated flow of those products" will bring them into the state. Id. at 117. Four other Justices thought that in addition to placing the goods in the stream of commerce there must be an act of the defendant "purposefully directed toward the forum state." Id. at 112. In both Beverly Hills Fan and Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996) the Court declined to choose between the tests, finding it unnecessary because the facts of those cases satisfied both tests:

> Defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably anticipated being brought into court there.

Beverly Hills Fan, 21 F.3d at 428; Viam, 84 F.3d at 429. In Viam the Court noted the importance of the fact that the defendant "knowingly and intentionally exploited" the state market.

In this case, there is very limited evidence of contact with either state other than general stream of commerce sales, raising the issue which the Federal Circuit has thus far declined to address: whether personal jurisdiction can be established over a defendant in a patent infringement action based solely on stream of commerce activities. See Commissariat A L'Energie Atomique v. Chi Mei Optelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir.

9

2005) (identifying the issue but declining to reach it based on the failure of the district court to permit additional discovery) Based on the nature of the particular activities in this case, the answer is yes. Defendant LPLA exists for the purpose of exploiting the entire United States market for the sale of LPL's LCDs. LPLA has offices throughout the United States to reach the entire U.S. market. LPLA sells a product that is incorporated in mass marketed consumer products by large producers of brand name electronics and sold through nationwide retail chains thereby guaranteeing their sale everywhere in the country. LPLA sells a product that employs cutting edge technology which is the subject of numerous patents.

The inevitable conclusions from these facts are that LPLA "knowingly and intentionally exploited" the markets in both Wisconsin and Delaware and that LPLA should reasonably anticipate being sued for patent infringement in any United States district court. Commissariat A L'Energie Atomique, while declining to directly resolve the issue, held that the sale of LCDs for the same purposes in similar distribution channels satisfied the requirements of one of the Asahi tests. Id. at 1321. Furthermore, the defendant there was the foreign LCD manufacturer and therefore significantly further removed from the final point of sale than LPLA as the United States distributor. Given the substantially closer ties between LPLA and the distribution of products within the United States, the Court now concludes that personal

10

jurisdiction is available under the long arm statutes of Wisconsin and Delaware and assertion of jurisdiction in either state is consistent with due process requirements.

There being no impediment to personal jurisdiction or venue in Delaware, this action "might have been brought" in Delaware as required by 28 U.S.C. § 1404(a). The interest of justice overwhelmingly favors transfer to Delaware for consolidation with the first filed case presently pending in that Court.

## ORDER

IT IS ORDERED that this case is transferred to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

Entered this 30st day of May, 2007.

BY THE COURT:

JOHN C. SHABAZ
District Judge