31

DOC NO
REC'D/FILED
2007 APR 30 PM 4:09
THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| AU OPTRONICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LG.PHILIPS LCD CO., LTD. and<br>LG.PHILIPS LCD AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 07-C-0137-S |

**REPLY MEMORANDUM IN SUPPORT OF LG.PHILIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

# TABLE OF CONTENTS

**Page**

I. AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE ..... 1

A. LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin ..... 2

B. LPLA Does Not Have The Contacts With Wisconsin Required For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute ..... 5

II. AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS ..... 8

A. LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin ..... 8

1. Beverly Hills Fan does not support AUO's stream of commerce theory based on the facts in this case ..... 8

2. LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin ..... 11

B. The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play ..... 14

III. VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER ..... 16

IV. CONCLUSION ..... 17

AUO misconstrues the facts and misapplies controlling authority in an attempt to find a basis for personal jurisdiction over LPLA in Wisconsin that does not exist. AUO asks this Court to allow a large Taiwanese corporation to bring a lawsuit, with no Wisconsin state law claims, in Wisconsin against a Korean based manufacturer and a California based subsidiary, neither of whom have any connection to Wisconsin. AUO claims LPLA made a sale of LCD modules in Wisconsin. That claim is wrong. Instead, the sale AUO describes was made in California by California based LPLA to a California based distributor. AUO also claims LPLA sells products over its website. That claim is also wrong. LPLA does not sell products over any website. The website AUO describes is owned and operated by LPL. Finally, AUO claims that the availability of finished LCD products in Wisconsin retail stores is a basis for asserting personal jurisdiction over LPLA. That claim is meritless. LPLA plays no role in the unilateral, independent decisions of third-party companies to manufacture or distribute finished LCD products. AUO then pins its argument for venue in this Court on the foregoing erroneous personal jurisdiction conclusions. Accordingly, AUO has failed to carry its burden of proving the existence of a ground for jurisdiction and a basis for venue, and this Court should grant LPLA's motion to dismiss.

## I. AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE

Plaintiff asserts three bases for jurisdiction under the Wisconsin long-arm statute: (1) substantial and not isolated activities within Wisconsin; (2) an act or omission arising within Wisconsin; and (3) injury to AUO within Wisconsin based on an LPLA act outside of Wisconsin. (*See* Plaintiff's Opposition to LG.Philips LCD America's Motion to Dismiss ("AUO Opp'n") at 6-10.) AUO's arguments in support of each of these bases fail.

**A. LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin.**

AUO's argument that LPLA is engaged in "substantial, continuous and ongoing activities" sufficient to establish jurisdiction under § 801.05(1)(d) is meritless. This Court recently explained that contacts considered relevant under the Wisconsin long-arm statute include visits to the state; registration to do business within the state; engaging in one's own advertising within the state; soliciting business within the state; and having employees, real estate, bank accounts, registered agents, customers, or sales people in the state. *Ricoh Co., Ltd. v. Austek Computer, Inc.*, 06-C-0462-C, *18-19 (April 3, 2007 W.D. Wis.). As fully explained in LPLA's Memorandum In Support Of Its Motion To Dismiss ("LPLA's Memo"), none of these contacts exists here. LPLA is not registered to do business in Wisconsin. (LPLA's Memo, Han Declaration ¶ 9.) LPLA does not engage in its own advertising or otherwise solicit business in Wisconsin. (Han Declaration ¶8.) LPLA has not participated in trade shows or other promotion events in Wisconsin. (Han Supplemental Declaration, "Han Supplemental", attached, ¶ 3.) LPLA has no employees, real estate, bank accounts, registered agents, customers, or sales people in Wisconsin. (Han Declaration ¶¶ 3, 10, 12-15.) AUO unsuccessfully attempts to counter this overwhelming evidence demonstrating no "substantial and not isolated activities" in Wisconsin with allegations concerning a separate Illinois based company, Synergistic; LPL's website, not owned or operated by LPLA; and a sale in California to a California based customer. (*See* AUO Opp'n at 6-9.)

First, AUO misconstrues Illinois based Synergistic as an LPLA distributor. (AUO Opp'n at 4.) Instead, Synergistic merely had a sales representation agreement with LPLA that expired by its own terms on December 31, 2006. (Han Supplemental ¶ 4.) Synergistic does not ship or distribute any LPLA products within Wisconsin or any other state. (Han Supplemental ¶ 5.)

Synergistic is not and has never been a partner, employee or agent of LPLA. (Id.) The evidence AUO cites in support of the supposedly "close working relationship between Synergistic and LPLA" is a link from Synergistic's website to a website owned and operated by LPLA, not by LPLA. (AUO Opp'n at 7; Han Supplemental ¶15.) That link is one of nineteen links to various manufacturers. (AUO Opp'n, Ex. N.) Moreover, AUO's failure to provide any information about how much, if any, of the Illinois based Synergistic's business is done in Wisconsin and whether or not Synergistic has even sold a single accused product in Wisconsin is fatal to its argument. *Ricoh Co., Ltd.*, 06-C-0462-C at *14-15.

Next, AUO falsely claims that LPLA operates a website through which it offers to sell products to customers in Wisconsin. (AUO Opp'n at 4.) The website identified by AUO is owned and operated by LPL, not LPLA. (Han Supplemental ¶ 15.) LPL's conduct cannot be assigned to LPLA for AUO's benefit in a personal jurisdiction analysis. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that in a personal jurisdiction analysis, due process requires each defendant's contacts with a forum be considered individually regardless of whether the defendants have a parent-subsidiary relationship); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (affirming dismissal of a defendant for lack of personal jurisdiction that was in a parent-subsidiary relationship with a co-defendant that was subject to personal jurisdiction). LPLA does not offer products for sale on the LPL website to any of its customers, let alone residents of Wisconsin. (Han Supplemental ¶ 15.) In fact, LPLA has no involvement whatsoever in the operation a website.[1] (Han Supplemental ¶ 16.)

[1] Even if LPLA were involved or had ownership of the website, the requirement of commercial activity within Wisconsin would still not be met. *See Neomedia Technologies, Inc. v. Airclic,*

*(footnote continued on next page)*

AUO then erroneously argues that a single sale of products in *California* to a *California* based customer is sufficient to assert jurisdiction under *Wisconsin's* long-arm statute and attempts to support this claim by citing a discussion of the due process jurisdictional analysis in an unreported District of Colorado case. (AUO Opp'n at 8.) However, that discussion does not involve the application of any state's long-arm statute, let alone Wisconsin's long-arm statute and is therefore irrelevant. *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124, *6 (D.Colo. July 21, 2005). AUO also cites to *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed Cir. 1994), but that case does not apply here. In *North American*, the Federal Circuit found that the allegedly infringing sales took place in Illinois because the customers were based in Illinois. *Id.* Furthermore, the defendants had ongoing business relationships with Illinois based customers, including regular visits and product shipments to Illinois and participation in trade shows and other promotional events in Illinois. 35 F.3d at 1577-58.

Here, the sale AUO discusses occurred in California, where both LPLA and the customer, All-American Semiconductor, are based and operate. (Han Declaration ¶¶ 2, 19.) Title to the product changed hands in California. (Han Declaration ¶ 19.) Only after title had passed to All-American Semiconductor, did LPLA, for the benefit and at the direction of its customer, ship that product to a location in the Eastern District of Wisconsin. (Id.) Moreover, LPLA does not participate in trade shows or other promotional events in Wisconsin. (Han Supplemental ¶ 3.)

---

*(footnote continued from previous page)*

*Inc.*, No. 04-C-566, 2004 WL 848181,*4 (N.D.Ill. April 16, 2004) (finding in a patent case that a website that is not targeted toward a particular state and does not allow for commercial transactions "does not reach the level of commercial interactivity" required for asserting personal jurisdiction).

In addition, LPLA has no control over where independent distributors such as All-American Semiconductor choose to sell products. (Han Supplemental ¶ 11.) Instead, LPLA's distributors make unilateral, independent decisions about where to sell their products. The tenuous at best contact with Wisconsin is a far cry from the numerous contacts with the state in the sole case AUO relies on for its § 801.05(1)(d) argument, *K.W. Muth Co., Inc. v. Getnex Corp.*, No. 06-C-378-C, 2006 WL 2772828, *2 (W.D. Wis. Sep. 22, 2006). There, the defendant had alliances with two Wisconsin based companies and a network of *at least 21* distributors selling defendant's own product within Wisconsin. (*Id.*)

**B. LPLA Does Not Have The Contacts Required With Wisconsin For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute**

As an initial matter, AUO, in its complaint, does not properly identify any accused products and thus fails to satisfy the pleading requirements of Fed. R. Civ. 8. *See Ricoh,* 06-C-0462-C at *10 (finding that identifying accused products by referring to a product type such as "disk drives" rather than specific model numbers is not enough to satisfy pleading standards in a patent infringement case). In its opposition brief, AUO identifies only four accused LPLA products by model number, so only sales of those products could qualify as an injury under Wis. Stat. § 801.05(3) and § 801.05(4). *Id* (considering only alleged sales of products with model numbers clearly identified in the complaint).

AUO identifies only a single transaction involving an accused product that AUO itself was not involved in: a sale in *California* between *California* based LPLA and *California* based All-American Semiconductor.[2] Recognizing that the sale at issue occurred in California, AUO

[2] In its opposition brief, AUO claims it made three purchases of allegedly infringing products, none of which were manufactured or sold by LPL or LPLA, in Wisconsin. (AUO Opp'n at 3-4.) Because AUO was responsible for these purchases, the purchases can not constitute an injury

*(footnote continued on next page)*

attempts to invoke a stream of commerce type theory described in *Nelson v. Park Industries, Inc.*, 717 F.2d 1120 (7th Cir. 1983), a products liability case involving a Wisconsin minor who suffered severe burns when a shirt she wore ignited and two corporate defendants from Hong Kong who manufactured and distributed that shirt. *Id.* at 1122. The stream of commerce theory had its genesis in product liability law and is particularly applicable when a consumer with relatively little power seeks redress at the site of an injury caused by a relatively more powerful foreign corporation because there is likely no other forum available. *See World-Wide Volkswagen v. Wilson*, 444 U.S. 286 (1980) (discussing the stream of commerce theory for the first time in a product liability suit); *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 114-15 (1987) (reversing a finding of personal jurisdiction over a Japanese company in part because the suit no longer included a safety claim by a California consumer, but instead only an indemnification claim by a Taiwanese manufacturer).

In this case, however, the plaintiff is a major foreign corporation that could have filed suit against LPLA in California, where LPLA is based, or in Texas, North Carolina, or Illinois where LPLA has additional offices. (Han Declaration ¶ 2, 3.) Applying a stream of commerce theory to permit a large Taiwanese corporation to bring suit in Wisconsin against a Korean based manufacturer and a California based subsidiary with no connection to Wisconsin that involves no right or interest under Wisconsin state law should not be permitted. *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115-16 (1987) (explaining that permitting a suit by a Taiwanese Corporation against a Japanese corporation in California when it was unclear

---

*(footnote continued from previous page)*

under § 801.05(3) or § 801.05(4). *See Ricoh Co.*, 06-C-0462, at *12 (explaining that a patent holder cannot be harmed by a loss of business from a sale of a competitor's product that patent holder itself chose to make).

whether or not California law would apply simply because products made by the Japanese corporation were shipped to California was contrary to due process). If personal jurisdiction may be asserted over LPLA under the circumstances here, the Court would essentially establish universal jurisdiction.

Additionally, a single sale is not enough to trigger application of § 801.05(4)(b). Under the local injury, foreign act provision of the Wisconsin long-arm statute, the defendant must engage in additional contact with Wisconsin besides the foreign act and local injury before a Wisconsin court may assert personal jurisdiction. *Landreman v. Martin*, 530 N.W.2d 62, 66 n.3 (Wis. Ct. App. 1995). As explained above and throughout LPLA's Memorandum In Support Of Its Motion To Dismiss, such additional contact between LPLA and Wisconsin does not exist.

AUO also claims that the use or sale of finished LCD products that include parts sold by LPLA gives rise to jurisdiction under § 801.05(4)(b), again citing *Nelson* for authority. However, in *Nelson* the defendant distributor (Bunnan) acted as the retailer's (Woolworth) buying agent and bought product samples for Woolworth, placing purchase contracts for Woolworth, inspecting products for Woolworth, acting as Woolworth's representative in efforts to obtain reimbursement from a manufacturer for defective merchandise, and holding Woolworth harmless from certain claims made against Woolworth involving the merchandise purchased by Woolworth through Bunnan. *Id.* at 1123. That close business relationship is in stark contrast to the complete lack of any relationship between LPLA and retail outlets that sell finished LCD products that have LPL components inside. LPLA does not market, sell, or distribute LCD module products to American, Best Buy, BJ's TV & Appliance, Chase TV, Circuit City, or Radio Shack or any other retail store. (Han Supplemental ¶ 10.) Nor does LPLA control or participate in any retail sales by any retail store of any finished LCD product. (Id.)

Accordingly, the Wisconsin long-arm statute does not allow for jurisdiction over LPLA.

## II. AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS

AUO's contention that jurisdiction over LPLA complies with due process is largely a rehash of their flawed arguments regarding the Wisconsin long-arm statute. As explained above and in LPLA's opening brief, AUO's allegations against LPLA have no connection to Wisconsin. The very few allegations that do relate to Wisconsin only concern unilateral and independent actions by *other* entities, not LPLA. However, "[d]oing business with a company that does business in [a forum state], is not the same as doing business [in the forum state]." *Red Wing Shoe Co., Inc., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Accordingly, AUO can assert no contacts with a forum state "resulting from 'the unilateral activity of another party or third person'" to LPLA. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.17 (1985)). Consequently, none of AUO's claimed bases for jurisdiction comport with due process.

### A. LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin.

#### 1. *Beverly Hills Fan* does not support AUO's stream of commerce theory based on the facts in this case.

The Supreme Court explains that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. 102 at 112 (1987). AUO clings to *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), in support of its stream of commerce theory, but that case is inapposite. There, the defendant distributor directly shipped accused ceiling fans intended for end user consumption from a manufacturer to retail outlets in Virginia. *Beverly Hills Fan*, 21 F.3d at 1560. Consumers buying those ceiling fans at a retail outlet received

manuals identifying the defendant distributor as the source of the fans and a warranty that the defendant distributor honored. *Id.*

Here, however, LPLA sells component parts to LCD product manufacturers who independently and unilaterally incorporate those parts into LCD products and then independently and unilaterally sell those products to retail outlets where the products are ultimately sold to end consumers. (Han Supplemental ¶¶ 9-11.) The LCD products sold to end users in Wisconsin are not branded or otherwise identified as coming from LPLA, nor does LPLA offer warranties or service options to end consumers of those monitors. (Han Supplemental ¶ 14, 17.) Also significant in *Beverly Hills Fan* was the intentional nature of the alleged infringement, evidenced by the fact that several months before the lawsuit was filed and before accused fans were shipped into Virginia, the plaintiff notified the defendants of its charge that the fans infringed plaintiff's patent. *Id.* at 1567-86. No such notification occurred here. (Han Supplemental ¶ 18.)

Although *Beverly Hills Fan* is clearly distinguishable, the circumstances here are analogous to the long line of cases finding no purposeful availment. For example, in *Adell Corp. v. Elco Textron, Inc.*, the defendant sold components to General Motors who then independently integrated the components into pickup trucks and then shipped some of those trucks to the forum state. 51 F. Supp. 2d 752, 754 (N.D. Tex. 1999). Like LPLA, the *Adell* defendant had no input on the distribution of the finished product that incorporated the allegedly infringing component, did not warrant the finished product to forum state customers, did not advertise in the forum state and did not have any direct sales of the accused device in the forum state. *Id.* The *Adell* court explicitly distinguished that case from *Beverly Hills Fan* and explained that the defendant's "shipments of parts to General Motors, who uses them in conjunction with parts obtained from

others in its final products that are eventually shipped to Texas, are not purposeful minimum contacts with Texas" and do not warrant application of the stream of commerce theory. *Id.*

Similarly, allegations that a defendant manufactured allegedly infringing products, arranged for distribution of those products through two intermediaries, and advertised its product through an internet website to forum state residents did not permit an assertion of jurisdiction. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, No. Civ.A. 99-218-SLR, 1999 WL 615175, *5 (D. Del. Aug. 3, 1999) (distinguishing those allegations from the facts in *Beverly Hills Fan*). Significantly, and similar to the circumstances here, in *American Bio*, there was no evidence demonstrating that the defendant directed the intermediaries' sales efforts at residents of the forum state. *Id.* Like here, the record in *American Bio*, did not "demonstrate the existence of ongoing commercial relationships with retailers and customers in [the forum state]." *Id.* Furthermore, the court for the sake of argument reluctantly assumed that the defendant's website displaying product information constituted an "'offer to sell,'" but declined to find that the defendant transacted business in the forum state in the absence of evidence demonstrating that forum state residents actually accessed the website. *Id.* There is also no such evidence here. In fact, LPLA does not even operate a website. (Han Supplemental ¶ 16.)

In addition, although it is common knowledge that Frigidaire and Kenmore brand products are widely available for sale in Pennsylvania, the stream of commerce theory does not justify an assertion of personal jurisdiction in Pennsylvania over a defendant who sold component parts (oven gaskets and clips) to a manufacturer, Electrolux/Frigidaire, that makes Frigidaire and Kenmore products. *Davlyn Mfg. Co., Inc., v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 528-31 (E.D. Pa. 2005) (citing *Ashai* and *World-Wide Volkswagen* and distinguishing *Beverly Hills Fan*). The defendant in that case sold all of the oven gaskets and clips it

manufactured to Electrolux/Frigidaire, but had no control over and only a general knowledge of where the oven gaskets and clips would eventually end up. *Id.* at 528-29. Here, LPLA sells its LCD modules to various companies and has no control or involvement in the subsequent manufacturing and distribution of finished LCD monitor products those manufacturers produce. (Han Supplemental ¶ 9, 19.)

AUO also cites *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), in support of its stream of commerce theory. However, in that case, the Federal Circuit remanded for jurisdictional discovery but did not find based on the record that the District of Delaware had personal jurisdiction over the Taiwanese defendant. The Federal Circuit indicated that "additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." *Id.* at 1321-22.

**2. LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin.**

AUO also argues that LPLA purposely availed itself of the privilege of conducting activities within Wisconsin when it sold LCD modules to a California based customer. (AUO Opp'n at 1.) AUO erroneously asserts that LPLA shipped products directly to a customer in Wisconsin. (AUO Opp'n at 9.) Instead, *California* based LPLA sold products to a *California* based customer that took title to those products in *California*. (Han Declaration ¶ 19.) The California based customer then unilaterally and independently decided to have those products shipped to the Eastern District of Wisconsin. (Id.) This is directly analogous to the facts in *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509 (E.D. Wis. July 17, 1996). There, a Tennessee based manufacturer sold toilets to a Texas based retailer. *Id.* at *1. Placing the orders as "F.O.B. warehouse", the retailer directed the manufacturer to ship the toilets

directly from the manufacturer's Tennessee warehouse to the retailer's local stores in Wisconsin. *Id.* The Kohler court granted the motion to dismiss for lack of personal jurisdiction, holding that the presence of the toilets in Wisconsin stores "did not 'proximately result' from actions taken by [the manufacturer]," therefore no substantial connection to this forum could have been established. *Id.* at *6. The lone shipment of product to Wisconsin that AUO identifies here, occurred after the product was sold in *California* to a *California* customer, was the result of the customer's unilateral action, and therefore can not justify exercising personal jurisdiction over LPLA.[3]

AUO offers no other evidence that any accused module distributed by LPLA has ever been *sold* in Wisconsin. Each of the accused products AUO claims can be found on the shelves of retail stores in Wisconsin are finished LCD products unilaterally and independently manufactured by third parties. Jurisdiction is not proper because LPLA in no way created, controls, or employs the distribution system for those monitors. (Han Supplemental ¶ 7, 9.); *see Asahi*, 480 U.S. at 112 (reversing a finding of personal jurisdiction under the stream of commerce theory because the defendant "did not create, control, or employ the distribution system that brought [the product] to [the forum state]"). In fact, LPLA has no control or involvement whatsoever in the subsequent sale or use of their LCD modules once they are sold to distributors or manufacturers. (Han Supplemental ¶ 7, 9.) Jurisdiction is not proper over a defendant merely because an unrelated retailer independently sells a third-party product that

[3] Even if LPLA had made a sale in Wisconsin, a single sale or shipment is not enough to establish the minimum contacts required under the jurisdictional due process analysis. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1317 (S.D. Fla. 2006).

happens to contain a part manufactured or distributed by that defendant.[4] *Neomedia Technologies, Inc., v. Ariclic, Inc.*, No. 04-C-566, 2004 WL 848181 (N.D. Ill. 2004 April 16, 2004) (distinguishing *Beverly Hills Fan* because there was no evidence of coordination between retailer's efforts in the forum state and the defendant).

Even a company that grants exclusive access to its wholly owned subsidiary to market and distribute a product in the forum is not subject to personal jurisdiction. *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86 (D.Conn. 2001). In *Savage*, the defendant designed a lighter product and manufactured and shipped components for that lighter to a subsidiary in Mexico that completed assembly of the lighter. *Id.* at 88-89. Then another of the defendant's subsidiary

[4] The cases AUO cites on page 14 of its brief are inapposite. First, in *Donnelly Corp. v. Reitter & Schefenacker*, 189 F. Supp. 2d 696 (W.D. Mich. 2002), the list of contacts with Michigan is seemingly endless. The *Donnelly* defendant moving for dismissal there was a limited partner in a Michigan limited partnership that maintained offices in Michigan and manufactured the alleged infringing products. *Id.* at 698. That defendant made at least 50 shipments of allegedly infringing product samples to the limited partnership in Michigan for use in sales presentations to General Motors and Chrysler in Michigan. *Id.* at 699. The defendant also collaborated with the limited partnership in Michigan on the design of the allegedly infringing products. *Id.* at 700. The defendant's personnel were sent to Michigan every other month to participate in sales presentations, meet with prospective customers, oversee supply contract arrangements, and attend related trade shows. *Id.* at 700-01. Some of the defendant's other employees were stationed in Michigan to provide technical assistance on the manufacturing of accused products by the Michigan limited partner. *Id.* at 700. Still more employees actively provided technical support via phone and e-mail to the Michigan partnership while that partnership was manufacturing the accused products. *Id.* This endless stream of contacts is nothing like the tenuous at best connection AUO attempts to find between LPLA and Wisconsin. In *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, the defendant manufactured only drill chucks marked with the RIDGID brand name for exclusive use in RIDGID brand drills sold exclusively at Home Depot. No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 2, 2005). Here, LPLA sells its LCD modules to various companies. (Han Supplemental ¶ 19.) In *Motorola Inc. v. PC-TEL*, unlike LPLA, the co-defendant seeking dismissal had licensing agreements incorporated under Delaware law and operated a website from which its Delaware customers ordered products and sought support. 58 F. Supp. 2d 349, 351-52 (D. Del. 1999). Furthermore, the forum state Delaware had a much more significant interest in the litigation than exists here. Both the plaintiff and a co-defendant in *Motorola* were Delaware corporations. *Id.* at 351.

corporations distributed the lighter throughout the United States, including in Connecticut where a family filed a product liability suit involving the lighter. *Id.* The defendant there had even named the president and some board members of the subsidiary corporations. *Id.* at 89-90. However, the *Savage* court held that the defendant's involvement in naming corporate directors and officers of its subsidiaries and having a direct ownership interest in subsidiaries were not enough for a Connecticut court to assert personal jurisdiction based on the subsidiaries' contact with Connecticut. *Id.* at 94-95.

The relationship in *Savage* is much closer than the relationship between LPLA and any finished LCD manufacturer, including LG Electronics. LPLA has no ownership interest in any finished LCD producer and plays no role in the distribution of any finished LCD product. (Han Supplemental ¶¶ 7, 9, 11.) Nor has LPLA designed or created a product that is marketed or distributed by any LCD manufacturer. (Id.) Instead, LPLA merely sells component parts that finished LCD manufacturers unilaterally and independently choose to integrate into LCD products that those manufacturers unilaterally and independently choose to sell and distribute. Accordingly, the facts here are "insufficient to support the constitutional exercise of jurisdiction over [LPLA]" in Wisconsin. *Savage*, 147 F. Supp. 2d at 94.

**B. The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play.**

As explained in LPLA's Memorandum In Support Of Its Motion To Dismiss, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. Instead of filing suit in an appropriate forum, AUO engaged in blatant forum shopping, seeking merely to take advantage

of this court's reputation for speed and efficiency.[5] Such forum shopping is disfavored. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877-878 (Fed. Cir. 1983) (noting that Congress created the Federal Circuit to prevent forum shopping). This Court must be particularly vigilant considering plaintiffs' particular attraction to it. *See Reynolds and Reynolds Holding, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 551-52 (E.D.Va. 2004) (recognizing that the Eastern District of Virginia's reputation as the "rocket docket" attracts plaintiffs, but that the court must guard against that attraction dulling the very expediency the court is known for).

Furthermore, as explained above, Wisconsin's connection to this suit is tenuous at best. In a case with much stronger connections between the defendant and the forum state than exist here, this Court explained that it was "doubtful" that due process would allow an assertion of personal jurisdiction. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840512 (W.D. Wis. Mar. 16, 2007) (referring to the defendant's three employees within Wisconsin, at least one Wisconsin customer that makes repeat product purchases, and a website accessible from Wisconsin). That neither party here are citizens or residents of Wisconsin erodes any potential interest Wisconsin may have had in this suit. *See Asahi*, 480 U.S. at 114 (explaining that "because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). Moreover, AUO is not attempting to vindicate a right or interest protected by Wisconsin law, but an interest under federal law. An action already filed prior to this action, pending in Delaware, and involving the same patents at issue here, gives

[5] On April 16, 2007, defendant LG.Philips LCD Co., Ltd., recognizing that this forum is inappropriate, filed a motion to transfer this case to the District of Delaware where another suit involving the patents at issue here is pending.

AUO that same opportunity.[6] Accordingly, Wisconsin's only interest here is to have its federal court in the Western District protect its docket from having AUO's forum shopping force that court to devote time and resources to a case that should have been filed elsewhere.

## III. VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER

AUO apparently and appropriately concedes venue is not proper under § 1391(b)(1) and § 1391(b)(3). The bases for venue in this district that AUO does assert to establish venue are tied to its erroneous personal jurisdiction conclusions. However, the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher*, 2007 WL 804512 at *3 (emphasis added). Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)). AUO recognizes that LPLA does not have a regular and established place of business in Wisconsin and accordingly makes no effort to justify venue under that clause of § 1400(b).

However, AUO goes on to conclude that jurisdiction is proper in the Western District and, thus venue is also proper. Because its premise is false, AUO's venue argument fails. As explained above, LPLA has no control or involvement in the distribution of finished product LCD monitor products manufactured by LG Electronics or any other manufacturer to retail outlets in Wisconsin, thus the availability of those products can not be a basis for personal jurisdiction over LPLA in the Western District of Wisconsin. (Han Supplemental ¶¶ 7, 9 .)

---

[6] In an effort to enforce its intellectual property rights, LPL filed a complaint in the District Court for the District of Delaware ("Delaware complaint") against AUO and other defendants alleging infringement of three LPL patents. (*See* LPL's Complaint for Patent Infringement in the United States District Court for the District of Delaware, Exh. A.) On April 11, 2007, LPL amended its Delaware complaint to assert claims for declaratory judgment of invalidity and non-infringement of the AUO patents at issue in this suit. (*See* LPL's First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation, Exh. B.)

AUO's other unfounded jurisdictional arguments also fail. LPLA makes no sales over any website to any customers, let alone customers in the Western District. (Han Supplemental ¶ 15-16.) AUO does not offer any evidence of LPLA product sales in Wisconsin by Synergistic, whose only Wisconsin office lies in the Eastern District. (AUO Opp'n, Ex. O.) Finally, the post-sale shipment of LCD modules owned by All-American Semiconductor was made to the Eastern District of Wisconsin. (Han Declaration ¶ 19.) If this Court finds the other alleged conduct satisfies personal jurisdiction in Wisconsin, it could only do so in the Eastern District of Wisconsin not the Western District.

For similar reasons AUO's argument for proper venue under § 1391(b)(2) is also erroneous. Here, once again, AUO relies on independent and unilateral conduct by unrelated retailers who sell products that are not manufactured, sold, or distributed by LPLA rather than conduct by LPLA. AUO fails to identify any relevant LPLA conduct within the Western District.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against Defendant LG.Philips LCD America.

Dated: April 30, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

mn313961_1

**CERTIFICATE OF SERVICE**

I, Nicole Talbott Settle, hereby certifies that on April 30, 2007, true and correct copies of the attached:

- **REPLY MEMORANDUM IN SUPPORT OF LG.PHILLIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; AND**
- **SUPPLEMENTAL DECLARATION OF DONG HOON HAN IN SUPPORT OF LPLA'S MOTION TO DISMISS.**

were caused to be served upon attorney(s) of record at the following addresses in the following manner:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

**Hand Delivered**

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

**By email and overnight delivery**

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

**By email and overnight delivery**

on the 26th day of April 2007.

Nicole Talbott Settle

mn313966_1