# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD. and<br>LG.PHILIPS LCD AMERICA, INC.,<br><br>    Counterclaim Plaintiffs,<br><br>    v.<br><br>AU OPTRONICS CORPORATION;<br>AU OPTRONICS CORPORATION<br>AMERICA; CHI MEI OPTOELECTRONICS<br>CORPORATION; and CHI MEI<br>OPTOELECTRONICS USA, INC.,<br><br>    Counterclaim Defendants. | Civil Action No.  06-726-GMS |
| AU OPTRONICS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>LG.PHILIPS LCD CO., LTD. and<br>LG.PHILIPS LCD AMERICA, INC.,<br><br>    Defendants. | Civil Action No. 07-357-JJF<br><br>**CONSOLIDATED CASES**<br><br>**JURY TRIAL DEMANDED** |

## LG.PHILIPS LCD CO., LTD.'S ANSWER TO AU OPTRONICS CORPORATION'S AMENDED COUNTERCLAIMS AND ADDITIONAL COUNTERCLAIMS AGAINST AU OPTRONICS CORPORATION

Defendant LG.Philips LCD Co., Ltd. ("LPL"), by and through its undersigned counsel, hereby files its Answer in Response to the Amended Counterclaims of Plaintiff AU Optronics Corporation ("AUO"), in the above titled action, filed on or about July 10, 2007, asserts affirmative defenses to those claims, and asserts counterclaims against AUO.  A jury trial is demanded for all claims so triable.

1

## RESPONSE TO ALLEGATIONS AS TO THE COUNTERCLAIM PARTIES

1.    LPL admits that AUO is a corporation organized under the laws of the Republic of China with its principal place of business in Taiwan as alleged in paragraph 56 of the Counterclaims.

2.    LPL lacks knowledge or information sufficient to admit or deny the allegations of paragraph 57 of the Counterclaims and therefore denies them.

3.    LPL admits the allegations of paragraph 58 of the Counterclaims.

4.    LPL denies the allegations of paragraph 59 of the Counterclaims.

5.    LPL admits the allegations of paragraph 60 of the Counterclaims.

6.    The allegations in paragraph 61 of the Counterclaims are conclusions of law to which no response is required.

7.    The allegations in paragraph 62 of the Counterclaims are conclusions of law to which no response is required.

## RESPONSE TO ALLEGATIONS AS TO JURISDICTION AND VENUE

8.    LPL admits that this Court has jurisdiction over these Counterclaims, but the remaining allegations of paragraph 63 of the Counterclaims are conclusions of law to which no response is required.

9.    LPL admits that this Court has jurisdiction over these Counterclaims, but the remaining allegations of paragraph 64 of the Counterclaims are conclusions of law to which no response is required.

10.    LPL admits the allegations of paragraph 65 of the Counterclaims.

## RESPONSE TO COUNTERCLAIM COUNT ONE

11.    LPL admits that Exhibit A to the Counterclaims purports to be a copy of United States Patent No. 6,734,944, entitled "Liquid Crystal Display" ("the '944 patent"),

2

but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 66 of the Counterclaims, and therefore denies them.

12.     LPL denies the allegations in paragraph 67 of the Counterclaims.

13.     LPL denies the allegations in paragraph 68 of the Counterclaims.

14.     LPL denies the allegations in paragraph 69 of the Counterclaims.

**RESPONSE TO COUNTERCLAIM COUNT TWO**

15.     LPL admits that Exhibit B to the Counterclaims purports to be a copy of United States Patent No. 7,125,157, entitled "Backlight Unit and Liquid Crystal Display Utilizing the Same" ("the '157 patent"), but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 70 of the Counterclaims, and therefore denies them.

16.     LPL denies the allegations in paragraph 71 of the Counterclaims.

17.     LPL denies the allegations in paragraph 72 of the Counterclaims.

18.     LPL denies the allegations in paragraph 73 of the Counterclaims.

**RESPONSE TO COUNTERCLAIM COUNT THREE**

19.     LPL admits that Exhibit C to the Counterclaims purports to be a copy of United States Patent No. 7,090,506, entitled "Signal Transmission Device Having Flexible Printed Circuit Boards" ("the '506 patent"), but LPL lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 74 of the Counterclaims, and therefore denies them.

20.     LPL denies the allegations in paragraph 75 of the Counterclaims.

21.     LPL denies the allegations in paragraph 76 of the Counterclaims.

22.     LPL denies the allegations in paragraph 77 of the Counterclaims.

665790-1

## RESPONSE TO COUNTERCLAIM COUNT FOUR

23.     LPL refers and incorporates herein its responses to AUO's allegations in paragraphs 1-10, above, as though fully set forth herein.

24.     LPL admits the allegations of paragraph 79 of the Counterclaims.

25.     LPL denies the allegations in paragraph 80 of the Counterclaims.

26.     LPL denies the allegations in paragraph 81 of the Counterclaims.

27.     LPL denies the allegations in paragraph 82 of the Counterclaims.

28.     LPL denies the allegations in paragraph 83 of the Counterclaims.

## RESPONSE TO COUNTERCLAIM COUNT FIVE

29.     LPL refers and incorporates herein its responses to AUO's allegations in paragraphs 1-10 and 23-28, above, as though fully set forth herein.

30.     LPL denies the allegations of paragraph 85 of the Counterclaims.

31.     LPL denies the allegations in paragraph 86 of the Counterclaims.

32.     LPL denies the allegations in paragraph 87 of the Counterclaims.

33.     LPL denies the allegations in paragraph 88 of the Counterclaims.

## RESPONSE TO COUNTERCLAIM COUNT SIX

34.     LPL refers and incorporates herein its responses to AUO's allegations in paragraphs 1-10 and 23-33, above, as though fully set forth herein.

35.     LPL admits that the LPL patents relate to, inter alia, thin film transistors having double-layer metal gate structures, but otherwise denies the allegations in paragraph 90 of the Counterclaims.

36.     LPL denies the allegations in paragraph 91 of the Counterclaims.

37.     LPL admits that an application for patent was filed on October 25, 2001 that became U.S. Patent No. 6,753,127. LPL also admits that during the prosecution of

4

the '127 Patent, the Examiner issued an office action on or about August 14, 2002, citing

the Seiki Reference. LPL denies the remaining allegations in paragraph 92 of the

Counterclaims.

38.    LPL denies the allegations in paragraph 93 of the Counterclaims.

39.    LPL denies the allegations of paragraph 94 of the Counterclaims.

40.    LPL denies the allegations in paragraph 95 of the Counterclaims.

41.    LPL denies the allegations in paragraph 96 of the Counterclaims.

42.    LPL admits that the Examiner rejected the original claim 1 of the '274

Patent and that the applicant amended the original claim. LPL denies the remaining

allegations in paragraph 97 of the Counterclaims.

43.    LPL denies the allegations of paragraph 98 of the Counterclaims.

44.    LPL admits that U.S. Application No. 09/243,556 was filed on or about

February 2, 1999 ("the '556 Application"), which led to U.S. Patent No. 6,340,610 that

issued on January 22, 2002, but denies the remaining allegations in paragraph 99 of the

Counterclaims.

45.    LPL admits that during the prosecution of the '556 Application, the

Examiner rejected the original claim 9 in separate office actions (dated September 6,

2000 and March 29, 2001), but denies the remaining allegations in paragraph 100 of the

Counterclaims.

46.    LPL denies the allegations in paragraph 101 of the Counterclaims.

47.    LPL denies the allegations of paragraph 102 of the Counterclaims.

48.    LPL denies the allegations in paragraph 103 of the Counterclaims.

**RESPONSE TO ALLEGATIONS AS TO EXCEPTIONAL CASE**

49.    LPL denies the allegations in paragraph 104 of the Counterclaims.

## RESPONSE TO PRAYER FOR RELIEF

50.    As to paragraphs A through K of the Prayer For Relief, LPL denies that AUO is entitled to the requested relief.

## AFFIRMATIVE DEFENSES

Without conceding that any of the following necessarily must be pleaded as an affirmative defense, or that any of the following are not already at issue by virtue of the foregoing denials, and without prejudice to LPL's right to plead additional defenses as discovery into the facts of the matter warrants, LPL hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

51.    One or more claims of the Asserted AUO Patents are invalid for failing to meet one or more of the requisite conditions or requirements for patentability specified by 35 U.S.C. §§ 101, 102, 103, and/or 112.

## SECOND AFFIRMATIVE DEFENSE

52.    LPL's products have not and do not infringe any claim of the Asserted AUO Patents, either literally or under the doctrine of equivalents.

## THIRD AFFIRMATIVE DEFENSE

53.    LPL has not directly or indirectly contributed to infringement of, nor induced another to infringe the Asserted AUO Patents.

## FOURTH AFFIRMATIVE DEFENSE

54.    AUO has failed to state a claim for which relief can be granted.

665790-1

## FIFTH AFFIRMATIVE DEFENSE

55.     Pursuant to 35 U.S.C. § 287(b), LPL is not liable for damages for infringement under any section of 35 U.S.C. § 271 before receiving notice of AUO's allegations of infringement in this action.

## SIXTH AFFIRMATIVE DEFENSE

56.     AUO's claims are barred, in whole or in part, because of the affirmative defense of license.

## SEVENTH AFFIRMATIVE DEFENSE

57.     AUO's '944 Patent is unenforceable due to inequitable conduct, including, but not limited to the allegations set forth in Counterclaim IX below, which are incorporated herein.

## ADDITIONAL COUNTERCLAIMS AGAINST
## AU OPTRONICS CORPORATION

58.     By these Counterclaims and pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff LG.Philips LCD Co., Ltd. ("LPL") seeks injunctive and declaratory relief and damages, including treble or multiple damages against Counterclaim Defendant AU Optronics Corporation ("AUO").

59.     Counterclaim Plaintiff LG.Philips LCD Co., Ltd. ("LPL") is a Korean corporation having its head office at 18th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721.

60.     Counterclaim Defendant AU Optronics Corporation ("AUO") is a Taiwanese corporation, having its principal place of business at 1, Li-Hsin Rd., II, Science-Based Industrial Park, Hsinchu City 30077 Taiwan, ROC.

7

61.    These Counterclaims are based upon and arise under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and in particular §§ 271, 281, 283, 284 and 285, and is intended to redress infringement of United States Patent No. 6,664,569 ("the '569 Patent") owned by LPL.

62.    These Counterclaims are also under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, based upon an actual controversy between LPL and AUO regarding the validity and infringement of the claims of the AUO Patents, and is intended to provide appropriate and necessary declaratory relief.

63.    This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

64.    This Court has personal jurisdiction and venue over AUO because, *inter alia*, AUO has submitted itself to the jurisdiction of this Court.

65.    On December 16, 2003, the '569 Patent, entitled "Liquid Crystal Display Device Array Substrate and Method of Manufacturing the Same," was duly and legally issued.  LPL is the owner by assignment of all rights, title, and interest in and to the '569 Patent. A copy of the '569 Patent is attached as Exhibit A.

66.    LPL owns the '569 Patent and possesses the right to sue and to recover for infringement of the '569 Patent.

67.    AUO claims to be the owner of the '944 Patent, the '157 Patent, and the '506 Patent.

665790-1

## COUNTERCLAIM COUNT VI
## <u>INFRINGEMENT OF THE '569 PATENT</u>

68.    LPL hereby incorporates paragraphs 57-67 above as though fully set forth herein.

69.    AUO has infringed, and/or induced infringement of the '569 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that infringe one or more claims of the '569 Patent in this judicial district and elsewhere in the United States.

70.    The products that are used, caused to be used, sold, caused to be sold, offered for sale, caused to be offered for sale, imported, and/or caused to be imported by AUO meet each and every limitation of at least one claim of the '569 Patent, either literally or equivalently.

71.    LPL has been and will continue to be injured by AUO's past and continuing infringement of the '569 Patent and is without adequate remedy at law.

72.    AUO, upon information and belief, infringed and is infringing the '569 Patent with knowledge of LPL's patent rights and without a reasonable basis for believing its conduct is lawful. AUO's infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling LPL to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

9

## COUNTERCLAIM COUNT VII
## CLAIM FOR DECLARATORY JUDGMENT OF INVALIDITY OF THE '944 PATENT, THE '157 PATENT, AND THE '506 PATENT AGAINST PLAINTIFF AU OPTRONICS CORPORATION

73.     LPL hereby incorporates paragraphs 57-72 above as though fully set forth herein.

74.     AUO has accused LPL of infringing the AUO Patents by filing counterclaims in this action.  As such, there is a substantial controversy between the parties having adverse legal interests.

75.     Claims of the '944 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

76.     Claims of the '157 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

77.     Claims of the '506 Patent are invalid for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code.

78.     Because AUO has asserted the AUO Patents against LPL, thereby creating an actual controversy, declaratory relief is both appropriate and necessary to establish that one or more of the claims of the '944 Patent, the '157 Patent, and the '506 Patent are invalid.

## COUNTERCLAIM COUNT XIII
## CLAIM FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '944 PATENT, THE '157 PATENT, AND THE '506 PATENT AGAINST PLAINTIFF AU OPTRONICS CORPORATION

79.     LPL hereby incorporates paragraphs 57-78 above as though fully set forth herein.

10

665790-1

80.    LPL's LCD modules do not infringe any claim of the '944 Patent, either literally or under the doctrine of equivalents.

81.    LPL's LCD modules do not infringe any claim of the '157 Patent, either literally or under the doctrine of equivalents.

82.    LPL's LCD modules do not infringe any claim of the '506 Patent, either literally or under the doctrine of equivalents.

83.    Because AUO maintains that LPL infringes the AUO Patents, thereby creating an actual controversy, a declaration of rights between LPL and AUO is both appropriate and necessary to establish that LPL has not infringed and does not infringe any claim of the '944 Patent, the '157 Patent, or the '506 Patent.

**COUNTERCLAIM COUNT IX**
**CLAIM FOR DECLARATORY JUDGMENT OF UNENFORCEABILITY OF**
**THE '944 PATENT AGAINST PLAINTIFF AU OPTRONICS CORPORATION**

84.    LPL hereby incorporates paragraphs 57-83 above as though fully set forth herein.

85.    The '944 Patent relates to a liquid-crystal display having a photosensitive resin regulating cell gaps having dynamic hardness or plastic deformation values within a fixed range.

86.    The listed inventors Toshihiko Koseki, Hidefumi Yamashita, Taro Hasumi, Yuichi Momoi, Yoshinori Shohmitsu, and Tomohito Johnai ("the Inventors") and the original assignee of the patent International Business Machines, Corp. ( "IBM") knew of prior art references disclosing a photosensitive resin regulating cell gaps having a dynamic hardness value and a plastic deformation value within a fixed range that is the same as or similar to the claimed photosensitive resin of the '944 Patent, and on

665790-1

information and belief, willfully and with the intent to deceive the United States Patent and Trademark Office ("USPTO"), refrained from disclosing such references to the USPTO. Such prior art references include but are not limited to Japanese Patent ("JP") 06-273774, JP 05-080343, JP 03-287127, JP 04-191823, JP 06-265912, JP 62-090622, and JP 11-109372 (collectively, "the Japanese references").

87.    On information and belief the Inventors and IBM knew of the teachings of the Japanese references before filing, or during the prosecution in the United States of application number 09/558,819 ("the US '819 application") for the '944 Patent. The Inventors and IBM filed patent application JP 11-122923 ("the JP '923 application") in Japan on April 28, 1999. This application to which the '944 Patent claims foreign priority is listed on the face of the '944 Patent. The JP '923 application discloses the same photosensitive resin for regulating cell gaps having a dynamic hardness value and a plastic deformation value within a fixed range as in the '944 Patent.

88.    During the prosecution of the JP '923 application, the Examiner in the Japanese Patent Office issued a first Office Action on March 5, 2002, citing and discussing the Japanese references in rejecting the claims. The applicant amended the original claims in an attempt to overcome the Examiner's rejections. On April 16, 2003, the Japanese Patent Office Examiner issued an Advisory Action rejecting the amended claims, citing and discussing the same Japanese references. After learning of the Examiner rejections in the Office Action and Advisory Action in the Japanese priority application, the Inventors and assignee IBM continued to prosecute the co-pending US '819 application without disclosing these rejections to the USPTO. In fact, the Inventors

12

and assignee IBM did not submit any Information Disclosure Statements during the prosecution of the '944 Patent application.

89.    The applicant filed an Appeal in Japan from the Advisory Action on July 11, 2003, appealing the Examiner's rejections over the Japanese References. A Decision from the Japanese Patent Office on May 19, 2006 denied the Appeal on a number of grounds, including unpatentability over JP 06-273774, one of the Japanese references. As a result, the applicant abandoned the JP '923 application.

90.    The Japanese references and their teachings were highly material to the patentability of the '944 Patent during its prosecution. On information and belief, the Japanese references would have been viewed as important by a reasonable Examiner. The Japanese references are not cumulative of other art of record in the US '819 application. The Japanese references alone or in combination with the other prior art references of record, would establish a prima facie case of unpatentability of one or more claims of the '944 Patent, and/or refute the arguments made by the applicant during the prosecution of the US '819 application. On information and belief, the Inventors and assignee IBM knew, or should have known, the high materiality of the Japanese references.

91.    On information and belief, the Inventors and IBM knew of material information relating to and arising from the Japanese Patent Office Examiner's rejections in the March 5, 2002 Office Action and the April 16, 2003 Advisory Action of the claims of the JP '923 application that are substantially similar to the issued claims of the '944 Patent, and willfully and with the intent to deceive the USPTO, refrained from disclosing such material information to the USPTO.

92.     The original claim 1 of the JP '923 application, as filed on April 28, 1999, is the same or substantially similar to the claims of the '944 Patent as issued as original claim 1 of the JP '923 application contains a number of limitations that are the same or substantially similar to the limitations recited in the claims of the '944 Patent as issued.

93.     An actual and justiciable controversy exists between the parties as to the enforceability of the '944 Patent.  Declaratory relief is both appropriate and necessary to establish that the '944 Patent is unenforceable.

94.     Because the Inventors and/or IBM failed to disclose material prior art and/or material information to the USPTO with the intent to deceive the USPTO during the prosecution of the '944 Patent, the '944 Patent is unenforceable due to inequitable conduct.  LPL is entitled to a judicial declaration that the '944 Patent is unenforceable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, LPL prays for judgment as follows:

A.     That the Court dismiss AUO's Counterclaims with prejudice;

B.     That the '569 Patent is valid and enforceable;

C.     That AUO has infringed the '569 Patent;

D.     That AUO's infringement of the '569 Patent has been willful;

E.     That AUO and its parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them, are enjoined and restrained from continued infringement, including but not limited to using, making, importing, offering for sale and/or selling products that infringe, and from inducing the infringement of, the '569 Patent, prior to their expiration, including any extensions;

665790-1

F.    That AUO, its parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert or participation with any of them deliver to LPL all products that infringe the '569 Patent for destruction at LPL's option;

G.    That LPL be awarded monetary relief adequate to compensate LPL for AUO's acts of infringement of the '569 Patent within the United States prior to the expiration of the '569 Patent, including any extensions;

H.    That any monetary relief awarded to LPL regarding the infringement of the '569 Patent by AUO be trebled due to the willful nature of AUO's infringement of the '569 Patent;

I.    That any monetary relief awarded to LPL be awarded with prejudgment interest;

J.    That a post trial accounting be done as part of the monetary relief awarded to LPL;

K.    That the Court issue a declaratory judgment that LPL does not directly or indirectly infringe any Asserted AUO Patent under any applicable provision of 35 U.S.C. § 271;

L.    That the Court issue a declaratory judgment that the Asserted AUO Patents are invalid;

M.    That the Court issue a declaratory judgment that the '944 Patent is unenforceable;

N.    That this is an exceptional case under 35 U.S.C. § 285 and that LPL be awarded the attorneys' fees, costs and expenses that it incurs prosecuting this action; and

O.　　That the Court award LPL other relief as it may find appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, LG.Philips LCD

Co., Ltd. respectfully demands a trial by jury on all issues so triable in this action.


July 24, 2007　　　　　　　　　　　　THE BAYARD FIRM

　　　　　　　　　　　　　　　　　　/s/ Richard D. Kirk (rk0922)
　　　　　　　　　　　　　　　　　　Richard D. Kirk
　　　　　　　　　　　　　　　　　　222 Delaware Avenue, Suite 900
　　　　　　　　　　　　　　　　　　P.O. Box 25130
　　　　　　　　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　　　　　　　　(302) 655-5000
　　　　　　　　　　　　　　　　　　Attorneys for Defendant/Counterclaim-
　　　　　　　　　　　　　　　　　　Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.　20006
(202) 496-7500

16

665790-1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 24, 2007, he served the foregoing

documents by email and by hand upon the following counsel:

Edmond D. Johnson
Thomas H. Kovach
PEPPER HAMILTON LLP
1313 Market Street, Suite 5100
PO Box 1709
Wilmington, DE  19899-1709

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Philip A. Rovner
Dave E. Moore
POTTER ANDERSON & CORROON
LLP
1313 North Market Street
Wilmington, DE  19899-0951

William E. Manning
Jennifer M. Becnel-Guzzo
BUCHANAN INGERSOLL & ROONEY
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801

The undersigned counsel further certifies that, on July 24, 2007, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

John N. Zarian
Samia McCall
Matthew D. Thayne
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702

Vincent K. Yip
Peter J. Wied
Jay C. Chiu
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Bryan J. Sinclair
Karineh Khachatourian
BUCHANAN INGERSOLL & ROONEY
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418

656846-1

Ron E. Shulman, Esquire
Steven Baik, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

James R. Troupis, Esquire
Paul D. Barbato, Esquire
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street
Suite 700
P.O.Box 1806
Madison, WI  53701-1806

/s/ Richard D. Kirk, (rk0922)
Richard D. Kirk

656846-1

# EXHIBIT A

US006664569B2

(12) **United States Patent**　(10) **Patent No.:**　**US 6,664,569 B2**
Moon　(45) **Date of Patent:**　**Dec. 16, 2003**

(54) **LIQUID CRYSTAL DISPLAY DEVICE ARRAY SUBSTRATE AND METHOD OF MANUFACTURING THE SAME**

(75) Inventor: **Hong-Man Moon**, Kumi-shi (KR)

(73) Assignee: **LG. Philips LCD Co., Ltd.**, Seoul (KR)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/867,484**

(22) Filed: **May 31, 2001**

(65) **Prior Publication Data**

US 2001/0050368 A1 Dec. 13, 2001

(30) **Foreign Application Priority Data**

Jun. 9, 2000　(KR) ........................................ 2000-31848

(51) Int. Cl.$^7$ .............................................. H01L 29/04
(52) U.S. Cl. ............................ **257/72**; 257/59; 257/249; 257/401
(58) Field of Search ............................ 257/72, 59, 249, 257/245, 225, 401, 459, 331; 349/42

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,827,146 | A | * | 5/1989 | Ogawa et al. | ............... 250/578 |
| 4,902,638 | A | * | 2/1990 | Muto | ........................ 437/51 |
| 5,414,283 | A | | 5/1995 | den Boer et al. | ............. 257/59 |
| 5,414,427 | A | | 5/1995 | Gunnarsson | ................. 342/51 |
| 5,656,824 | A | * | 8/1997 | den Boer et al. | ............. 257/59 |
| 5,808,317 | A | * | 9/1998 | Kuo | ............................ 257/66 |
| 5,874,746 | A | * | 2/1999 | Holmberg et al. | ............ 257/59 |
| 5,929,489 | A | | 7/1999 | Deane | ........................ 257/347 |
| 6,057,904 | A | | 5/2000 | Kim et al. | |

| | | | | | |
|---|---|---|---|---|---|
| 6,256,077 | B1 | * | 7/2001 | Baek | ............................ 349/43 |
| 6,310,668 | B1 | | 10/2001 | Ukita | |
| 6,320,221 | B1 | | 11/2001 | Choi et al. | |
| 2001/0030719 | A1 | * | 10/2001 | Yamaguchi et al. | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| JP | 64-82674 | * | 3/1989 |
| JP | 64-059216 | | 3/1989 |
| JP | 3-46631 | * | 2/1991 |
| JP | 3-233431 | * | 10/1991 |
| JP | 4-158580 | * | 6/1992 |
| JP | 10-228031 | * | 8/1998 |
| JP | 11-352517 | | 12/1999 |
| JP | 2000-171825 | * | 6/2000 |

* cited by examiner

*Primary Examiner*—Nathan J. Flynn
*Assistant Examiner*—Ahmed J. Sefer
(74) *Attorney, Agent, or Firm*—McKenna Long & Aldridge LLP

(57) **ABSTRACT**

An array substrate for use in a liquid crystal display device includes a thin film transistor as a switching element, having a gate electrode, a source electrode and a drain electrode, wherein the gate electrode is a portion of a gate line near the crossing of the gate and data lines, and has an inverted "T"-shaped opening or a rectangularly-shaped opening. The drain electrode is shaped like the inverted "T"-shape and corresponds to the opening of the gate electrode. The source electrode surrounds the drain electrode along the steps of the semiconductor layer. Accordingly, in the thin film transistor having this structure, the gate electrode is only overlapped by the edges of the drain electrode. And thus, the gate-drain parasitic capacitance is reduced and minimized. Also, variations in the gate-drain parasitic capacitance are prevented. As a result, a high resolution is achieved and the picture quality is improved in the liquid crystal display device.

**37 Claims, 8 Drawing Sheets**



FIG.1
(RELATED ART)



FIG.2
(RELATED ART)



FIG.3
(RELATED ART)



FIG.4
(RELATED ART)



FIG.5



Case 1:07-cv-00357-JJF     Document 103-2     Filed 07/24/2007     Page 6 of 16

FIG.6A



FIG.6B



FIG.6C



FIG.7



FIG.8



FIG.9



US 6,664,569 B2

1

# LIQUID CRYSTAL DISPLAY DEVICE ARRAY SUBSTRATE AND METHOD OF MANUFACTURING THE SAME

This application claims the benefit of Korean Patent Application No. 2000-31848, filed on Jun. 9, 2000, the entirety of which is hereby incorporated by reference for all purposes as if fully set forth herein.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to an array substrate for use in a liquid crystal display (LCD) device, and more particularly, an array substrate having a thin film transistor (TFT) with a reduced parasitic capacitance.

### 2. Discussion of the Related Art

FIG. 1 shows the configuration of a typical TFT-LCD device. The TFT-LCD device 11 includes upper and lower substrates 5 and 22 with an interposed liquid crystal material 14. The upper and lower substrates 5 and 22 are generally referred to as a color filter substrate and an array substrate, respectively.

On the upper substrate 5, on a surface opposing the lower substrate 22, black matrix 6 and color filter layer 7, including a plurality of red (R), green (G), and blue (B) color filters, are formed in the shape of an array matrix, such that each color filter is surrounded by the black matrix 6. Also, on the upper substrate 5 a common electrode 18 is formed covering the color filter layer 7 and the black matrix 6.

On the lower substrate 22, on a surface opposing the upper substrate 5, a thin film transistor (TFT) "T", as a switching device, is formed in the shape of an array matrix corresponding to the color filter layer 7, and a plurality of crossing gate and data lines 13 and 15 are positioned such that each TFT "T" is located near each crossover point of the gate and data lines 13 and 15. Also, on the lower substrate 22 a plurality of pixel electrodes 17 are formed in an area defined by the gate and data lines 13 and 15. The area defined thereby is a pixel region "P". The pixel electrode 17 is usually formed from a transparent conductive material having good transmissivity, for example, indium-tin-oxide (ITO) or indium-zinc-oxide (IZO).

The pixel and common electrodes 17 and 18 generate electric fields that control the light passing through the liquid crystal cells provided therebetween. By controlling the electric fields, desired characters or images are displayed.

The operation of the TFT-LCD device having the above-mentioned structure is based on the a principle that the alignment direction of the liquid crystal molecules depends on an applied electric field. Namely, the liquid crystal layer having a spontaneous polarization characteristic is a dielectric anisotropy material. The liquid crystal molecules have dipole moments based on the spontaneous polarization when a voltage is applied. Thus, the alignment direction of the liquid crystal molecules is controlled by applying an electric field to the liquid crystal molecules. When the alignment direction of the liquid crystal molecules is properly adjusted, the liquid crystals are aligned and light is refracted along the alignment direction of the liquid crystal molecules to display image data. The liquid crystal molecules function as an optical modulation element having optical characteristics that vary depending upon the polarity of the applied voltage.

FIG. 2 is a plan view illustrating one pixel of an array substrate for the liquid crystal display device according to a related art. As shown, the array substrate includes gate line

2

13 arranged in a transverse direction; data line 15 arranged in a longitudinal direction perpendicular to the gate line 13; and a thin film transistor (TFT) "T" as a switching element formed near the crossing of the gate and data lines 13 and 15. The TFT "T" has a gate electrode 31, a source electrode 33 and a drain electrode 35. The gate electrode 31 is extended from the gate line 13, and the source electrode 33 is extended from the data line 15. The drain electrode 35 is spaced apart from the source electrode 33. The source and drain electrodes 33 and 35 respectively overlap both ends of the gate electrode 31. The TFT "T" also has a semiconductor layer 32 that is made of amorphous silicon (a—Si:H) or poly-silicon.

Moreover, the array substrate further includes a pixel electrode 17 formed on a pixel region "P" that is defined by the gate and data lines 13 and 15. The pixel electrode 17 is electrically connected with the drain electrode 35 through a drain contact hole 36, and is usually made of a transparent conductive material such as indium tin oxide (ITO) and indium zinc oxide (IZO). A portion of the pixel electrode 17 overlaps a portion of the gate line 13 such that a storage capacitor "C" is comprised of the pixel electrode 17 and gate line 13 and the interposed dielectric layer (not show).

Still referring to FIG. 2, the gate line 13 supplies scanning signals to the gate electrode 31 of the TFT "T" such that the switching element, i.e., the TFT, turns ON. The scanning signals transmitted to the gate line 13 then control the magnitude of the data signals transmitted from the data line 15 to the pixel electrode 17 via the TFT "T." The data signals of the pixel electrode 17 cause the polarization and re-arrangement of the liquid crystal molecules that are disposed over the pixel electrode 17. When the scanning signals are not supplied to the gate line 13, the TFT "T" is turned OFF. At this time, electric charges stored in the pixel are discharged through the TFT "T" and through the liquid crystals. In this discharge phenomenon, if the off resistance is larger or if the pixel area is smaller for improving the resolution, the electric charges stored in the pixel are more rapidly discharged.

In order to solve these problems, the storage capacitor "C" has a parallel connection with the pixel electrode 17 and compensates for electric discharges. Thus, the data signal is maintained in the pixel. At this time, the data signal, however, is affected by source-gate or drain-gate parasitic capacitance. This effect leads to pixel flickering, image retention and non-uniform display.

In general, the parasitic capacitance occurs between the source and gate electrodes 33 and 31 of the TFT "T" or between the drain and gate electrodes 35 and 31 of the TFT "T". The parasitic capacitance between the source and gate electrodes 33 and 31 is referred to as source-gate or gate-source parasitic capacitance ($C_{gs}$ or $C_{sg}$). The parasitic capacitance between the drain and gate electrodes 35 and 31 is referred to as drain-gate or gate-drain parasitic capacitance ($C_{dg}$ or $C_{gd}$). When the semiconductor layer 32 is fully saturated by the electric charges, the gate-drain parasitic capacitance $C_{gd}$ is increased due to the fact that the electric charges stored in the pixel electrode 17 are transmitted to the drain electrode 35. Again, this parasitic capacitance causes pixel flickering, the image retention, and gray scale nonuniformity. Thus, it is essentially required to decrease the gate-drain parasitic capacitance $C_{gd}$.

Still referring to FIG. 2, the gate electrode 31 is protruded from the gate line 13 over the pixel region "P" near the crossing of the gate and data lines 13 and 15. The source and drain electrodes 33 and 35 overlap both ends of the gate electrode 31. In this structure shown in FIG. 2, the gate-drain

US 6,664,569 B2

3

parasitic capacitance $C_{gd}$ is defined by an area in which the drain electrode 35 overlaps the gate electrode 31. Moreover, misalignment often occurs between the gate and drain electrodes 31 and 35 when forming the co-planar source and drain electrodes 33 and 35 over both ends of the gate electrode 31 using a pattern process. Thus, the gate-drain parasitic capacitance $C_{gd}$ varies owing to this misalignment between the gate and drain electrodes 31 and 35. For example, if the width and length of the drain electrode 35 are respectively 30 $\mu m$ and 5 $\mu m$, the ratio of the width and the length is 30 to 5. In this case, the overlapped ratio of the drain electrode 35 is usually determined to be 30 to 4, and thus the overlapped area between the drain and gate electrodes becomes 120 $\mu m^2$ (i.e., 30 $\mu m \times 4$ $\mu m$). However, if the drain electrode 35 horizontally further overlaps by 1 $\mu m$, the overlapped area between the gate and drain electrodes 31 and 35 is 150 $\mu m^2$ (i.e., 30 $\mu m \times 5$ $\mu m$). Further, if the drain electrode 35 horizontally less overlaps by 1 $\mu m$, the overlapped area between the gate and drain electrodes 31 and 35 is 90 $\mu m^2$. These means that a misalignment of 1 $\mu m$ causes great variations of the gate-drain parasitic capacitance $C_{gd}$ by 25%.

As described above, the parasitic capacitance fluctuates depending on the overlapped area, and the unstable parasitic capacitance affects the data signal transmitted from the data line to the pixel electrode through the TFT. Accordingly, the display characteristics of the liquid crystal display become irregular. As a result, the picture quality is deteriorated by these irregular display characteristics.

FIGS. 3 and 4 are schematic partial plan views illustrating the crossover point of the gate and data lines of an array substrate for the liquid crystal display device according to another related art. As shown, in contrast to the above-mentioned array substrate, a gate electrode 41 is formed in the gate line 47. Namely, a portion of the gate line 47, near the crossing of the gate and data lines 47 and 43, is used as the gate electrode 41. In order to form the TFT, a drain electrode 45 is formed over the gate line 47. Thus, the gate-drain parasitic capacitance $C_{gd}$ is determined by an area of the drain electrode 45.

Referring to FIG. 3, a portion of the data line 43, in which the gate line 47 is overlapped, functions as a source electrode. However, although FIG. 4 is similar to FIG. 3, a source electrode 46 of FIG. 4 is extended from the gate line 43 over the gate line 47. As shown in FIG. 4, the source electrode 46 has a U-shape in order to increase the width of the channel region between the drain electrode 45 and the source electrode 46. Even though the structure of the drain electrode 45 causes parasitic capacitance, as shown in FIGS. 3 and 4, the variation of the parasitic capacitance that is caused by the misalignment is smaller than the above-mentioned TFT depicted in FIG. 2. However, whenever the drain electrode pattern becomes smaller and smaller in order to lower the parasitic capacitance, the process control for forming the drain electrode is difficult and at least an error of about 1 $\mu m$ surely occurs in the overlapped area. And thus, a critical dimension loss occurs during the patterning process.

In order to overcome the above-mentioned problem, the drain electrode 45 is designed to have a sufficiently large dimension. Thus, the horizontal length "d" is enlarged. At this time, the gate-drain parasitic capacitance $C_{gd}$, however, is also enlarged.

Accordingly, as described before, due to not only the gate-drain parasitic capacitance but also the variation of that parasitic capacitance, the pixel flickering and other image deteriorations occur in the liquid crystal display device.

4

## SUMMARY OF THE INVENTION

Accordingly, the present invention is directed to an array substrate of a liquid crystal display device that substantially obviates one or more of the problems due to limitations and disadvantages of the related art.

To overcome the problems described above, the present invention provides an array substrate that has a novel structure for decreasing the gate-drain parasitic capacitance.

Another object of the invention is to provide an array substrate that decreases an overlapped area between gate and drain electrodes.

Additional features and advantages of the invention will be set forth in the description which follows, and in part will be apparent from the description, or may be learned by practice of the invention. The objectives and other advantages of the invention will be realized and attained by the structure particularly pointed out in the written description and claims thereof as well as the appended drawings.

To achieve these and other objects and in accordance with the purpose of the present invention, as embodied and broadly described, an array substrate for use in a liquid crystal display device having a lower gate-drain parasitic capacitance includes a gate line arranged in a horizontal direction on a substrate; a data line arranged in a vertical direction perpendicular to the gate line over the substrate; and a thin film transistor formed near the crossing of the gate and data lines, the thin film transistor comprising a gate electrode that is a portion of the gate line near the crossing, wherein the gate electrode has an open portion in its central portion, a first insulation layer on the gate electrode, a semiconductor layer formed on the first insulation layer and over the gate electrode, a drain electrode formed on the semiconductor layer and over the gate electrode, the drain electrode corresponding to the open portion of the gate electrode, and a source electrode extended from the data line and formed in the same plane as the drain electrode, the source electrode surrounding the drain electrode and the open portion of the gate electrode along the steps of the semiconductor layer.

The array substrate further includes a second insulation layer formed over the thin film transistor, the second insulation layer having a drain contact hole that exposes a portion of the drain electrode; and a pixel electrode formed in a pixel region that is defined by the gate and data lines, the pixel electrode contacting the drain electrode through the drain contact hole.

In one embodiment, the open portion of the gate electrode has an inverted "T"-shape and first and second open portions. The first open portion is formed in a horizontal direction parallel with the gate line and the second open portion is formed in a vertical direction perpendicular to the first open portion. The drain electrode also has an inverted "T"-shape and includes first and second electrode portions. The first electrode portion is arranged in a horizontal direction parallel with the gate line and corresponds to the first open portion of the gate electrode. And the second electrode portion is arranged in a vertical direction perpendicular to the first electrode portion and corresponds to the second open portion.

The open portion of the gate electrode can also be shaped like a rectangle.

Edges of the first electrode portion of the drain electrode overlap the gate electrode. Namely, two or three side edges of the first electrode portion overlap the gate electrode.

It is to be understood that both the foregoing general description and the following detailed description are exem-

US 6,664,569 B2

5

plary and explanatory and are intended to provide further explanation of the invention as claimed.

### BRIEF DESCRIPTION OF THE DRAWING

The accompanying drawings, which are included to provide a further understanding of the invention and are incorporated in and constitute a part of this specification, illustrate embodiments of the invention and together with the description serve to explain the principles of the invention.

In the drawings:

FIG. 1 shows the configuration of a typical TFT-LCD device;

FIG. 2 is a plan view illustrating one pixel of an array substrate for the liquid crystal display device according to a related art;

FIGS. 3 and 4 are schematic partial plan views illustrating the crossover point of the gate and data lines of an array substrate for the liquid crystal display device according to related arts;

FIG. 5 is a schematic partial plan view illustrating the crossover point of the gate and data lines of an array substrate according to a first embodiment;

FIGS. 6A to 6C are plan views illustrating a manufacturing process for the array substrate of FIG. 5;

FIG. 7 is a schematic partial plan view illustrating the crossover point of the gate and data lines of an array substrate according to a second embodiment;

FIG. 8 is a schematic partial plan view illustrating the crossover point of the gate and data lines of an array substrate according to a third embodiment; and

FIG. 9 is a cross-sectional view taken along line IX—IX of FIG. 6C and illustrates layer elements of the thin film transistor according to a principle of the invention.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Reference will now be made in detail to embodiments of the present invention, which are illustrated in the accompanying drawings.

FIG. 5 is a schematic partial plan view illustrating the crossover point of gate and data lines of an array substrate according to a first embodiment. As shown, the array substrate includes a gate line 113, which is arranged in a horizontal direction, and a data line 125, which is arranged in a vertical direction. The gate line 113 has a portion used for a gate electrode 115 near the crossing of the gate and data lines 113 and 125. In the central portion of the gate line 113 used for gate electrode 115, an inverted "T"-shaped opening 114 is formed. The source electrode 119 is extended from the data line 125, and has a quadrilateral opening in its central portion. Thus, the source electrode 119 surrounds the inverted "T"-shaped opening in the gate line 113. The drain electrode 117 is shaped like the inverted "T"-shape and positioned corresponding to the inverted "T"-shaped opening 114 of the gate electrode 115. Moreover, the drain electrode 117 is divided into a first electrode portion 117a and a second electrode portion 117b. And thus, the source electrode 119 also surrounds the first electrode portion 117a of the drain electrode 117. As shown in FIG. 5, at the end of the second electrode portion 117b of the drain electrode 117, a drain contact hole 221 is formed, thus a pixel electrode 225 is electrically connected with the drain electrode 117 through this drain contact hole 221.

Still referring to FIG. 5, in order to decrease an overlapped area between the gate electrode 115 and the drain

6

electrode 117, the portion of the gate electrode 115 under the drain electrode 117 is etched such that the inverted "T"-shaped opening 114 is formed. In other words, the portion of the gate electrode 115 corresponding to the first electrode portion 117a of the drain electrode 117 is etched in a smaller area than the first electrode portion 117a. Thus, edges of the first electrode portion 117a of the drain electrode 117 overlap the gate electrode 115. Moreover, a portion of the gate electrode 115 under the second electrode portion 117b is etched in a wider area than the second electrode portion 117b of the drain electrode 117. Thus, the gate electrode 115 is not overlapped by this second electrode portion 117b.

Accordingly, as described above, since the edges of the first electrode portion 117a of the drain electrode 117 only overlap the gate electrode 115, the gate-drain parasitic capacitance that depends on the overlapped area is minimized.

FIGS. 6A to 6C are plan views illustrating a manufacturing process for the array substrate of FIG. 5, and FIG. 9 is a cross-sectional view taken along line IX—IX of FIG. 6C.

Referring to FIG. 6A and FIG. 9, a first metal layer is formed on a substrate 111 by depositing a metallic material selected from a group consisting of aluminum (Al), chrome (Cr), molybdenum (Mo), tungsten (W) and the like. After that, the first metal layer is patterned so as to form the gate line 113 in a horizontal direction, and an imaginary line 112 where the data line is formed in a later step is defined. At this time, near the crossover point of the gate line 113 and imaginary line 112, a portion of the gate line 113 is etched so as to form the inverted "T"-shaped opening 114 and the gate electrode 115 is defined there around. The inverted "T"-shaped opening 114 is divided into a first opening portion 114a and a second opening portion 114b. The first opening portion 114a is horizontally disposed in parallel with the gate line 113 in the gate electrode 115, and the second opening portion 114b is vertically elongated from a top edge to a center of the gate line 113 in the gate electrode 115. Thereby, the gate electrode 115 includes the inverted "T"-shaped opening 114 having the first and second opening portion 114a and 114b.

Further, although not depicted in FIG. 6A but shown in FIG. 9, a first insulation layer 116 is formed on the substrate 111 and gate line 113 by depositing an inorganic material, such as silicon nitride ($SiN_x$) or silicon oxide ($SiO_2$), or an organic material, such as benzocyclobutene (BCB) or acryl.

Thereafter, an amorphous silicon layer and impurity-included-amorphous silicon layer are formed successively. The amorphous silicon layer and the impurity-included-amorphous silicon layer are patterned into an island-shaped layer so as to form a semiconductor layer 123. As shown in FIG. 6A, the semiconductor layer 123 is located over the inverted "T"-shaped opening 114 of the gate electrode 115 and is larger than the first opening portion 114a.

Referring to FIGS. 6B and 9, a second metal layer is formed on the entire surface of the substrate 111 including the gate line 113, a first insulation layer 116 and the semiconductor layer 123. The second metal layer is the same kind of material as the first metal layer. After that, the second metal layer is patterned so as to form the data line 125 in the area defined by the imaginary line 112 of FIG. 6A. Thus, the data line 125 is perpendicular to the gate line 113 and, with the gate line 113 defines a pixel area "P." During this patterning process, the source electrode 119 extended from the data line 125 is simultaneously formed over the gate electrode 115. The shape of the source electrode 119 is a quadrilateral and has a quadrilateral opening therein such

US 6,664,569 B2

7

that the source electrode 119 surrounds the first opening portion 114a of the inverted "T"-shaped opening 114. Also, the drain electrode 117 is simultaneously formed over the inverted "T"-shaped opening 114 in the same plane as the source electrode 119.

Still referring to FIGS. 6B and 9, the drain electrode 117 is patterned into an inverted "T"-shape and corresponds to the inverted "T"-shaped opening 114 of the gate electrode 115. Again, the drain electrode 117 is divided into the first electrode portion 117a and the second electrode portion 117b. The first electrode portion 117a overlaps the gate electrode 115 such that the edges of the first electrode portion 117a form a "U"-shaped overlapped area (depicted by oblique lines) with the gate electrode 115. The second electrode portion 117b is vertically extended from the first electrode portion 117a over the pixel area "P," and does not overlaps the gate electrode 115 due to the fact that the second electrode portion 117b is narrower than the second opening portion 114b of FIG. 6A. Moreover, the drain electrode 117 is spaced apart from the source electrode 119, and the first electrode portion 117a of the drain electrode 117 is surrounded by the source electrode 119 along the steps of the semiconductor layer 123.

Further, although not depicted in FIG. 6B but depicted in FIG. 9, a second insulation layer 118 is formed on the above-mentioned intermediates by depositing an inorganic material, such as silicon nitride ($SiN_x$) or silicon oxide ($SiO_2$), or an organic material, such as benzocyclobutene (BCB) or acryl. Next, the second insulation layer (not shown) is patterned in order to form a drain contact hole 221 at the end of the second electrode portion 117b of the drain electrode 117.

Now, referring to FIG. 6C, a transparent conductive material such as indium-tin-oxide (ITO) or indium-zinc-oxide (IZO) is deposited on the above-mentioned second insulation layer. After that, the transparent conductive material is patterned to form a pixel electrode 225 in the pixel region "P" (see FIG. 6B). And thus, the pixel electrode 225 contacts the drain electrode 117 through the drain contact hole 221.

As described hereinbefore, since only the edges of the fist electrode portion of the drain electrode overlaps the gate electrode, the gate-drain parasitic capacitance $C_{gd}$ is reduced and minimized due to the smaller overlapped area. Moreover, referring to the enlarged view of the first electrode portion of the drain electrode as shown in FIG. 6C, the compensation for any misalignment will be explained. When forming the drain electrode 117 over the inverted "T"-shaped opening 114 of the gate electrode 115, the drain electrode 117 can be misaligned in a horizontal or vertical direction. If the left portion "$A_1$" of the overlapped area is decreased due to horizontal misalignment, the right portion "$A_2$" is increased. In this manner, if the bottom portion "$B_1$" of the overlapped area is decreased due to vertical misalignment, the top portion "$B_2$" is increased. Thus, the overlapped area between the drain electrode 117 and the gate electrode 115 is maintained uniformly even though misalignment occurs. Therefore, the variation of the gate-drain parasitic capacitance is reduced and minimized.

FIG. 7 is a schematic partial plan view illustrating the crossover point of the gate and data lines of an array substrate according to a second embodiment. As shown, the second embodiment is similar to the first embodiment depicted in FIG. 5 and the manufacturing process is the same as the first embodiment depicted in FIGS. 6A to 6C and in FIG. 9. However, the gate line 113 has a rectangle-shaped opening 229 in a portion for the gate electrode 115.

8

Referring to FIG. 7, the source electrode 119 is extended from the data line and has a "U"-shape. The drain electrode 117 is formed into an inverted "T"-shape and located over the rectangle-shaped opening 229 of the gate electrode 115. The drain electrode 117 is also surrounded by the source electrode 119 along the steps of the semiconductor layer 123, as in the first embodiment. Moreover, edges of the drain electrode 117 overlap the gate electrode 115, and thus the overlapped area is formed generally with a "U"-shape (depicted by oblique lines). As a result, the gate-drain parasitic capacitance $C_{gd}$ is reduced and minimized as in the first embodiment.

Moreover, referring to the enlarged view of the drain electrode 117 of FIG. 7, any misalignment occurring in the step of forming the drain electrode 117 is compensated. When forming the drain electrode 117 over the rectangle-shaped opening 229 of the gate electrode 115, the drain electrode 117 can be misaligned in a horizontal or vertical direction. If the left portion "$A_1$" of the overlapped area is decreased due to horizontal misalignment, the right portion "$A_2$" is increased. In this manner, if the bottom portion "$B_1$" of the overlapped area is decreased due to vertical misalignment, the left and right portions "$A_1$" and "$A_2$" are increased. Thus, the overlapped area between the drain electrode 117 and the gate electrode 115 is maintained uniformly even though the misalignment occurs. Therefore, the variation of the gate-drain parasitic capacitance is lowered and minimized.

FIG. 8 is a schematic partial view illustrating the crossover point of the gate and data lines of an array substrate according to a third embodiment. As shown, the third embodiment is similar to the second embodiment and the manufacturing process is the same as the second embodiment. However, the overlapped area (depicted by oblique lines) is formed on both end sides of the drain electrode 117.

As shown in FIG. 8, the gate line 113 is arranged in a horizontal direction and the data line 125 is arranged in a vertical direction perpendicular to the gate line 113. The source electrode 119 is extended from the data line 125 and has a "U"-shape. A rectangle-shaped opening is formed in a portion for the gate electrode 115 in the gate line 113. Also, the drain electrode 117 is formed over the rectangle-shaped opening of the gate electrode 115. Although the drain electrode 117 has an inverted "T"-shape, only both end sides of the drain electrode 117 overlap the gate electrode. Thus, the overlapped area (depicted in oblique lines) is reduced and minimized, and the gate-drain parasitic capacitance $C_{gd}$ is also reduced and minimized.

Moreover, referring to the enlarged view of the drain electrode 117 as shown in FIG. 8, any misalignment occurring in the step of forming the drain electrode 117 is compensated. When forming the drain electrode 117 over the rectangle-shaped open of the gate electrode 115, the drain electrode 117 can be misaligned in a horizontal direction. If the left portion "$A_1$" of the overlapped area is decreased due to horizontal misalignment, the right portion "$A_2$" is increased. Thus, the overlapped area between the drain electrode 117 and the gate electrode 115 is maintained uniformly even though misalignment occurs. Therefore, the variation of the gate-drain parasitic capacitance is reduced and minimized.

As described hereinbefore, according to the principles of the present invention, a portion of the gate line is used as the gate electrode. And a portion of the gate electrode is patterned so as to form a certain-shaped opening. Accordingly, there is a reduced overlap area between the

US 6,664,569 B2

9

gate electrode and the drain electrode. As a result, the gate-drain parasitic capacitance is reduced and minimized. Moreover, although misalignment occurs between the drain and gate electrodes, this misalignment is compensated according to the present invention. Thus, the variation of the gate-drain parasitic capacitance is prevented.

Therefore, flickering and the image retention are prevented so that a high resolution is achieved in the liquid crystal display device. And the picture quality is improved in the liquid crystal display device.

It will be apparent to those skilled in the art that various modifications and variation can be made in the present invention without departing from the spirit or scope of the invention. Thus, it is intended that the present invention cover the modifications and variations of this invention provided they come within the scope of the appended claims and their equivalents.

What is claimed is:

1. An array substrate for use in a liquid crystal display device, comprising:

a gate line arranged in a horizontal direction on a substrate;

a data line arranged in a vertical direction perpendicular to the gate line over the substrate; and

a thin film transistor formed near a crossing of the gate and data lines, the thin film transistor comprising:

a gate electrode that is a portion of the gate line near said crossing, wherein the gate electrode has an opening portion in its central portion;

a first insulation layer on the gate electrode;

a semiconductor layer formed on the first insulation layer and over the gate electrode;

a drain electrode formed on the semiconductor layer and over the gate electrode, the drain electrode corresponding to the opening of the gate electrode; and

a source electrode extended from the data line and formed in a same plane as the drain electrode, the source electrode surrounding the drain electrode and opening of the gate electrode along steps of the semiconductor layer.

2. The array substrate according to claim 1, further comprising a second insulation layer formed over the thin film transistor, the second insulation layer having a drain contact hole that exposes a portion of the drain electrode.

3. The array substrate according to claim 2, further comprising a pixel electrode formed in a pixel region that is defined by the gate and data lines, the pixel electrode contacting the drain electrode through the drain contact hole.

4. The array substrate according to claim 1, wherein the opening of the gate electrode has an inverted "T"-shape.

5. The array substrate according to claim 4, wherein the opening of the gate electrode includes first and second opening portions.

6. The array substrate according to claim 5, wherein the first opening portion is formed in a horizontal direction parallel with the gate line.

7. The array substrate according to claim 5, wherein the second opening portion is formed in a vertical direction perpendicular to the first opening portion.

8. The array substrate according to claim 1, wherein the drain electrode has an inverted "T"-shape.

9. The array substrate according to claim 8, wherein the drain electrode includes first and second electrode portions.

10. The array substrate according to claim 9, wherein the first electrode portion is arranged in a horizontal direction

10

parallel with the gate line and corresponds to the first opening portion of the gate electrode.

11. The array substrate according to claim 9, wherein the second electrode portion is arranged in a vertical direction perpendicular to the first electrode portion and corresponds to the second opening portion.

12. The array substrate according to claim 1, wherein the opening of the gate electrode is shaped like a rectangle.

13. The array substrate according to claim 12, wherein the drain electrode has an inverted "T"-shape and first and second electrode portions.

14. The array substrate according to claim 13, wherein edges of the first electrode portion overlap the gate electrode.

15. The array substrate according to claim 14, wherein three side edges of the first electrode portion overlap the gate electrode.

16. The array substrate according to claim 14, wherein two side edges of the first electrode portion overlap the gate electrode.

17. A liquid crystal display (LCD) device, comprising:

a substrate;

a gate line on the substrate and extending along a first direction, the gate line having an opening therein;

a first insulating layer on the gate line;

a semiconductor layer on the first insulating layer over at least a portion of the opening;

a data line on the insulating layer and extending along a second direction substantially perpendicular to the first direction;

a drain electrode on the semiconductor layer over at least a portion of the opening; and

a source electrode on the semiconductor layer, extending from the data line and being separated and spaced apart from the drain electrode.

18. The LCD device of claim 17, further comprising a second insulation layer over the semiconductor layer and the source and drain electrodes, the second insulation layer having a drain contact hole that exposes a portion of the drain electrode.

19. The LCD device to claim 18, further comprising a pixel electrode disposed in a pixel region that is defined by an intersection of the gate and data lines, the pixel electrode contacting the drain electrode through the drain contact hole.

20. The LCD device of claim 17, wherein the opening in the gate line has substantially a "T" shape.

21. The LCD device of claim 17, wherein the source electrode substantially surrounds the drain electrode.

22. The LCD device of claim 17, wherein the drain electrode has substantially a "T" shape.

23. The LCD device of claim 17, wherein the drain electrode comprises:

a first portion which overlaps the opening; and

a second portion which overlaps the gate line on at least two opposing sides of the opening.

24. The liquid crystal display (LCD) device of claim 17, wherein the source electrode surrounds the drain electrode and the opening of the gate electrode along steps of the semiconductor layer.

25. A liquid crystal display (LCD) device, comprising:

a substrate;

a gate line on the substrate and extending along a first direction, the gate line including a gate electrode, the gate electrode having an opening therein, wherein the opening includes a first opening portion and a second opening portion;

US 6,664,569 B2

11

a first insulating layer on the gate line;

a semiconductor layer on the first insulating layer;

a data line on the insulating layer and extending along a second direction;

a drain electrode having a first electrode and a second electrode, the first electrode of the drain electrode overlapping at least a part of the first opening portion of the gate electrode; and

a source electrode on the semiconductor layer, extending from the data line and being separated and spaced apart from the drain electrode.

26. The liquid crystal display device of claim 25, wherein the first opening portion and the second opening portion of the gate electrode together substantially form a T-shape.

27. The liquid crystal display device of claim 26, wherein the first opening portion corresponds to the head of the T-shape.

28. The liquid crystal display device of claim 25, wherein a width of the first opening portion is greater than a width of the second opening portion.

29. The liquid crystal display device of claim 25, wherein the first electrode of the drain electrode completely overlaps the first opening portion of the gate electrode.

30. The liquid crystal display device of claim 29, wherein the first electrode of the drain electrode partially overlaps the second opening portion of the gate electrode.

12

31. The liquid crystal display device of claim 25, wherein a width of the second electrode of the drain electrode is less than a width of the second opening portion of the gate electrode.

32. The liquid crystal display device of claim 25, further comprising a pixel electrode and the drain electrode further comprising a third electrode contacting the pixel electrode.

33. The liquid crystal display device of claim 32, wherein the third electrode contacts the pixel electrode via a contact hole.

34. The liquid crystal display device of claim 32, wherein the second electrode of the drain electrode connects the first and third electrodes of the drain electrodes.

35. The liquid crystal display device of claim 32, wherein the second electrode of the drain electrode partially overlaps the second opening portion of the gate electrode.

36. The liquid crystal display device of claim 25, wherein the source electrode substantially surrounds the first electrode of the drain electrode and the first opening portion of the gate electrode.

37. The liquid crystal display device of claim 36, wherein the source electrode surrounds a portion of the second electrode of the drain electrode and a portion of the second opening portion of the gate electrode.

* * * * *